UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDSAY SMITH<br>　　3305 18th Street, NW<br>　　Washington, D.C. 20010<br><br>　　　　Plaintiff,<br><br>　v.<br><br>THREE UNKNOWN MPD OFFICERS<br>　　Third District Station<br>　　1620 V St., NW<br>　　Washington, D.C. 20009<br><br>*and*<br><br>The District of Columbia<br>　　1350 Pennsylvania Avenue, NW<br>　　Washington, D.C. 20004<br><br>　　　　Defendants. | Case No.: _____<br><br><br>Jury Trial Demanded |

## COMPLAINT

**(Police Misconduct: Violation of rights under the Constitution of the United States and the common and statutory law of the District of Columbia)**

Plaintiff Lindsay Smith ("Ms. Smith" or "plaintiff"), by and through undersigned counsel, hereby files this Complaint against four unknown officers of the Metropolitan Police Department ("MPD") and the District of Columbia, asserting claims of false imprisonment, intentional infliction of emotional distress, violations of plaintiff's Fourth, Fifth and Eighth Amendment rights, and violations of the Code of the District of Columbia, arising from the improper arrest and subsequent detention of Ms. Smith on November 15, 2005. Plaintiff seeks damages, fees, costs and other appropriate relief.

## JURISDICTION & VENUE

1. Ms. Smith brings this action to redress the deprivation of rights secured to her by the United States Constitution, as made actionable under 42 U.S.C. § 1983, and additional rights secured to her by the law of the District of Columbia.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. In addition, this Court has supplemental jurisdiction to adjudicate claims under the laws of the District of Columbia pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the conduct giving rise to this action occurred in the District of Columbia.

## PARTIES

4. .Plaintiff Lindsay Smith is an adult resident of the District of Columbia. Her current address is 3305 18th Street, NW, Washington, D.C. 20010. She is employed as a Program Coordinator by the Moroccan American Center, a nonprofit organization.

5. Defendant JOHN DOE #1 is an unknown officer of the District of Columbia Metropolitan Police Department. Upon information and belief, JOHN DOE #1 has the last name "Smith," and upon information and belief is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C. 20009. Officer JOHN DOE #1 is sued in his individual and official capacities.

6. Defendant JOHN DOE #2 is an unknown officer of the District of Columbia Metropolitan Police Department. Upon information and belief, JOHN DOE #2 has the last name "Rodriguez," and upon information and belief is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C. 20009. Officer JOHN DOE #2 is sued in his individual and official capacities.

7.     Defendant JANE DOE is an unknown officer of the District of Columbia MPD. Upon information and belief, Officer JANE DOE has the last name "Acebal," and upon information and belief is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C. 20009. Officer JANE DOE is sued in her individual and official capacities.

8.     Defendant District of Columbia is a municipal corporation duly organized and existing under the laws of the United States.

9.     The MPD, which employs Officers JOHN DOE #1, JOHN DOE #2, and JANE DOE (collectively, "the Officers"), is a department of the District of Columbia government.

## FACTS

### A. The Plaintiff's Unlawful Arrest and Detention

10.    Around midnight on the evening of November 15, 2005, plaintiff and her friend Adrien Marsoni were walking to plaintiff's apartment in the Mount Pleasant neighborhood when they decided to stop at the 7-11 convenience store located at 3146 Mount Pleasant Street, NW, Washington, D.C.

11.    Plaintiff and Mr. Marsoni noticed an unusual amount of police activity outside the 7-11, including what they felt was an unusually large number of officers standing inside the store, as well as a van marked "Police" parked outside with its flashing police lights on. There were also several police cruisers parked outside.

12.    Upon entering the 7-11, plaintiff, a resident of that neighborhood, inquired of the officers whether something had happened about which she should be concerned. Rather than answering her question, the officers were rude and non-responsive. Since the officers could not be bothered to respond to a legitimate resident concern in a

professional manner, Plaintiff indicated that there must be a better use of her tax dollars than to have a group of police officers standing around a 7-11. Officer JOHN DOE #1 aggressively demanded that she repeat what she had just said, but plaintiff declined.

13. After completing their purchases, plaintiff and Mr. Marsoni left the 7-11. As they were leaving, a man in civilian clothing sitting in an SUV parked outside the 7-11 asked Mr. Marsoni whether he had been having problems with the officers inside the store. Mr. Marsoni told him to mind his own business.

14. As Mr. Marsoni and plaintiff left the 7-11, they heard the 7-11 door open and close again, and heard the door on the SUV open and close. Two officers, including JOHN DOE #1 and JANE DOE, followed them from the store. The individual from the SUV (JOHN DOE #2), apparently an undercover officer now wearing a badge around his neck, joined the other two officers. The three approached plaintiff and Mr. Marsoni. The Officers demanded that plaintiff and Mr. Marsoni put their hands against the wall of a building approximately 50 yards north of the 7-11.

15. Mr. Marsoni and plaintiff were put against the wall and asked for identification. Plaintiff repeatedly inquired why they were being detained. The Officers did not respond. Instead they searched plaintiff's person and belongings. At no point did plaintiff become belligerent or disorderly. Nonetheless, the Officers placed plaintiff in handcuffs.

16. One of the Officers then told Mr. Marsoni that he could obtain immediate release of Ms. Smith for $25 cash. Indicating to the Officers that he would need to use the 7-11's ATM to obtain the money, Mr. Marsoni went back into the store. He returned with $40 and handed it to JOHN DOE #2, who refused to make change and sent Mr. Marsoni back

into the 7-11 to break a 20-dollar bill. When he returned with the change he had been sent to make, the Officers and Ms. Smith were gone.

17. Ms. Smith was transported to the Third District station where she was handcuffed to a chair in the waiting area. After a short while, Ms. Smith asked to use the restroom, at which point she was led into a cell and locked there.

18. Ms. Smith continued to ask why she had been arrested. Her questions were again ignored.

19. A short time later, Mr. Marsoni arrived at the Third District station and paid the $25 collateral to obtain Ms. Smith's release.

20. Shortly thereafter, JANE DOE approached Ms. Smith in the cell, and handed back her identification and a release form noting that at 2:50 am, the $25 collateral had been paid. Ms. Smith asked whether she would then be released. The officer ignored her and walked away. Her paperwork indicated that she had been arrested by Officer Acebal for "D/O Loud & Boisterous." Her arrest number was 030506884.

21. During the night, an officer at the station told Ms. Smith that they would be more inclined to release her if she would just sit down in her cell and "cry like a good girl."

22. Though she had been holding her release papers for over 4 hours, Ms. Smith was not released from custody until approximately 7:00 a.m.

23. As a result of the events described above, Ms. Smith suffered physical injury, pain, mental anguish, fear, humiliation, and embarrassment.

B. **MPD Misuse of "Post and Forfeit"**

24. "Post and forfeit" is a procedure the police can offer certain misdemeanor arrestees. The arrestee pays $25 or $50 (the amount is set in a court-approved collateral

schedule) and the District of Columbia agrees not to press charges. The practice involves a fiction: The payment constitutes posting of collateral, securing the arrestee's appearance at a trial that will not take place, because the charges are not pursued. When posting the collateral, the arrestee also forfeits any right to have the collateral returned.

25. Posting and forfeiting is, in effect, paying a fine without an admission or a finding of guilt. An arrestee who cannot afford to post and forfeit is incarcerated until his or her initial appearance before a judicial officer — or until a prosecutor decides not to proceed with criminal charges.

26. Citation release is another procedure the police can offer to eligible persons arrested for certain misdemeanors. The arrestee does not make any payment or post any sort of collateral, and the police do not agree to forego prosecution of the minor offense. Instead, the police issue the arrestee a citation to appear in court on a set date in the future and then release the arrestee. If the government pursues the misdemeanor charge, the arrestee is arraigned on the date noted in the citation and a trial date is set. Of course, the government still can decline to prosecute these minor offenses, and it often does so.

27. None of the Officers explained the post and forfeit procedure to Ms. Smith. JOHN DOE #1 indicated only that Mr. Marsoni could, essentially, "buy" Ms. Smith's freedom on the street for $25 in exact change. Nor did any officer explain that if Ms. Smith did post and forfeit she could, within 90 days, move the Superior Court to withdraw her post and forfeit and stand trial.

28. None of the Officers made citation release available — which would have cost Ms. Smith nothing — or let Ms. Smith know that citation release was an option.

29. At all times relevant to this complaint, the Officers acted under color of law, statute, custom or usage of the District of Columbia.

30. At all times relevant to this complaint, the Officers acted within the scope of their employment as MPD officers and acted on behalf of, and in the interests of, their employer.

31. At no time did the Officers have probable cause, or a reasonable basis, to believe that Ms. Smith had committed the offense of "D/O Loud & Boisterous," or any other criminal offense, and instead arrested her, without cause, because she had criticized the police.

32. Upon information and belief, the Officers made the arrest with the expectation that charges would never be filed against Ms. Smith.

33. The Officers acted with actual malice toward Ms. Smith and with reckless indifference to, and deliberate disregard for, Ms. Smith's constitutional and statutory rights.

34. Upon information and belief, the District of Columbia, through the MPD, maintains a policy or practice of offering only post and forfeit to many minor misdemeanor arrestees when the MPD has no expectation that the U.S. Attorney's office will pursue misdemeanor charges. This policy or practice generates money and curtails scrutiny of improper arrests.

35. At the time of Ms. Smith's arrest, the District of Columbia government knew or should have known that MPD officers were misusing the post and forfeit procedure both to inflict punishment and to sweep under the rug arrests for which there was no probable cause or likelihood of prosecution.

36. At the time of Ms. Smith's arrest, the District of Columbia government knew or should have known that MPD officers were demanding payment of collateral on the streets and without authorized personnel present, in violation of the Municipal Regulations of the District of Columbia.

37. The District of Columbia knew or should have known that this improper use of post and forfeit would likely violate some arrestees' constitutional and statutory rights.

38. At the time of Ms. Smith's arrest, the District of Columbia government had not provided adequate training, nor adequate supervision, to MPD officers regarding the proper use of post and forfeit.

39. The District of Columbia's actions and omissions reflect deliberate indifference to the constitutional and statutory rights of plaintiff Lindsay Smith.

40. At the time of Ms. Smith's arrest, it was clearly established as a matter of law that the government cannot arrest an individual without probable cause to do so.

41. At the time of Ms. Smith's arrest, it was clearly established as a matter of law that any amount of bail is excessive, and any fine is excessive, when there is no probable cause to believe an arrestee has committed a criminal offense.

42. At the time of Ms. Smith's arrest, it was clearly established as a matter of law that agencies of the District of Columbia are required to comply with their own internal regulations, as well as with the statutes and laws of the District of Columbia.

## CLAIMS FOR RELIEF

### I: Violation of Fourth Amendment Rights
### (The Officers)

43. The Officers arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

44.     The Officers had no good faith or reasonable belief that probable cause existed to arrest plaintiff.

45.     The actions of the Officers deprived plaintiff of her rights under the Fourth Amendment to the Constitution of the United States to be free of unreasonable search and seizure, as made actionable by 42 U.S.C. § 1983.

## II: False Arrest
## (The Officers)

46.     The Officers arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

47.     The Officers had no good faith or reasonable belief that probable cause existed to arrest plaintiff.

48.     The actions of the Officers in arresting plaintiff constitute false arrest under the common law of the District of Columbia.

49.     The violation by the Officers of D.C. Code §§ 5-335.01 and D.C. Mun. Reg. §§ 6A.702.1 and 702.6 constitutes prima facie evidence that the Officers violated plaintiff's rights.

## III.    Intentional Infliction of Emotional Distress
## (The Officers)

50.     The Officers' conduct in (a) confronting and arresting plaintiff when they lacked probable cause to believe she had committed any crime, (b) retaliating against her for her critical comments by detaining her for hours after her bond had been posted, and (c) telling her that she would be released only if she sat down and cried despite the fact that her collateral had already been tendered, was extreme and outrageous, and it was intentionally or recklessly calculated to cause plaintiff severe emotional distress.

51.     The Officers' conduct did cause plaintiff severe emotional distress.

52.   The Officers' conduct constitutes intentional infliction of emotional distress under the common law of the District of Columbia.

### IV:  Violation of Fifth Amendment Rights
### (The Officers)

53.   The Officers arrested Ms. Smith and required that she either post and forfeit or remain incarcerated, even though they had no probable cause to believe that plaintiff had committed or was about to commit a crime.

54.   The Officers had no good faith or reasonable belief that probable cause existed to justify prosecuting plaintiff.

55.   Because of the Officers' actions, Ms. Smith now has an arrest record, which is likely to cause difficulty for her throughout her life.

56.   The Officers offered post and forfeit as the only option for resolving Ms. Smith's arrest with the intent to punish Ms. Smith for voicing criticism of the police.

57.   The Officers' actions were specifically calculated to ensure that their unlawful arrest would evade review, particularly because the Officers failed to inform Ms. Smith of the 90-day window within which she could seek judicial review of her arrest.

58.   The actions of the Officers deprived plaintiff of her rights under the Fifth Amendment to the Constitution of the United States to be free of punishment prior to trial, as made actionable by 42 U.S.C. § 1983.

### V:  Violation of Eighth Amendment Rights
### (The Officers)

59.   The Officers required plaintiff to post and forfeit collateral in the amount of $25, or remain incarcerated, even though there was no probable cause to believe that plaintiff had committed or was about to commit a crime.

60.  The Officers had no good faith or reasonable belief that probable cause existed to justify prosecuting plaintiff.

61.  The actions of the Officers deprived plaintiff of her rights under the Eighth Amendment to the Constitution of the United States to be free of excessive bail and fines, as made actionable by 42 U.S.C. § 1983.

## VI: Assault and Battery
### (The Officers)

62.  The preceding paragraphs are incorporated and restated as if stated fully herein.

63.  Through their words and actions as described in paragraphs 10-42 above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe she had committed or was about to commit a crime, the Officers intentionally threatened or attempted to commit harmful, offensive and excessive contact on the plaintiff.

64.  The Officers' words and actions described above caused plaintiff an imminent apprehension of harmful, offensive and excessive contact.

65.  Through their words and actions as described in paragraphs 10-42 above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe she had committed or was about to commit a crime, the Officers did intentionally cause harmful, offensive and excessive contact on the plaintiff.

66.  The Officers' words and actions constitute assault and battery in violation of the common law of the District of Columbia.

## VII:  Violation of Fifth Amendment Rights
### (Defendant District of Columbia)

67.  The preceding paragraphs are incorporated and restated as if stated fully herein.

68. The District of Columbia maintains a policy, custom or practice of offering post and forfeit to arrestees, without offering citation release.

69. The policy, custom or practice described in the previous paragraph is implemented at times when the department's officers have no expectation that criminal charges will be pressed against the arrestee, including circumstances in which there is no probable cause that the arrestee committed the offense of disorderly conduct (or any other offense), in an attempt to avoid scrutiny for the officers' unlawful arrests.

70. The District of Columbia fails adequately to train MPD officers regarding the proper use of post and forfeit. In particular, the District of Columbia fails adequately to train officers that post and forfeit should not be used as a tool to keep arrestees incarcerated, and the District of Columbia fails adequately to train officers about the circumstances under which an arrestee should be released without having to post collateral. Likewise, the District of Columbia fails adequately to supervise police officers' resort to, and use of, post and forfeit.

71. The lack of adequate training and supervision described in the previous paragraph leads police officers frequently to use post and forfeit as a form of punishment, in violation of arrestees' Fifth Amendment rights.

72. At the time of Ms. Smith's arrest, the District of Columbia had actual or constructive knowledge that police officers were misusing post and forfeit in the ways alleged in this Complaint.

73. Both the policy, custom or practice alleged above and the failure to adequately train or supervise regarding post and forfeit reflect a deliberate indifference on the part of the government to the constitutional rights of arrestees.

74. The failure of the Officers to offer plaintiff citation release, or simply to release her for lack of probable cause in lieu of post and forfeit, was the result of the District of Columbia's lack of adequate training or supervision regarding the use of post and forfeit, its unjustified animus towards individuals who criticize the police, and its lack of desire for the plaintiff to appear in court to answer for her charges (because the District had no grounds upon which to base those charges).

75. The policy, custom or practice of the District of Columbia, and its failure adequately to train or supervise its officers, caused plaintiff to be deprived of her rights under the Fifth Amendment to the Constitution of the United States to be free of punishment prior to trial, as made actionable by 42 U.S.C. § 1983.

### VIII: Violation of Eighth Amendment Rights
(Defendant the District of Columbia)

76. The preceding paragraphs are incorporated and restated as if stated fully herein.

77. The failure of the Officers or of the District of Columbia to immediately release Ms. Smith upon receipt of her collateral caused plaintiff to be deprived of her rights under the Eighth Amendment to the Constitution of the United States to be free of excessive bail and fines, as made actionable by 42 U.S.C. § 1983.

### IX: False Arrest
(Respondeat Superior Liability of the District of Columbia)

78. The preceding paragraphs are incorporated and restated as if stated fully herein.

79.  The Officers acted within the scope of their employment with, and acted on behalf of and in the interests of, the District of Columbia MPD, when they arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

80.  The actions of the Officers in arresting plaintiff constitute false arrest under the common law of the District of Columbia.

81.  The violation by the Officers of D.C. Code §§ 5-335.01 and D.C. Mun. Reg. §§ 6A.702.1 and 702.6 constitutes prima facie evidence that the Officers violated plaintiff's rights.

82.  The conduct of the District of Columbia, by and through the actions of employees under its control and supervision acting within the scope of their employment, constitutes false arrest under the common law of the District of Columbia.

83.  The District of Columbia is liable for the intentional torts of its employees acting within the scope of their employment.

### X:  Intentional Infliction of Emotional Distress
### (Respondeat Superior Liability of the District of Columbia)

84.  The preceding paragraphs are incorporated and restated as if stated fully herein.

85.  The Officers acted within the scope of their employment with, and acted on behalf of and in the interests of, the District of Columbia MPD, in (a) confronting and arresting plaintiff when they lacked probable cause to believe she had committed any crime, (b) retaliating against her for her critical comments by detaining her for hours after her bond had been posted, and (c) telling her that she would be released only if she sat down and cried despite the fact that her collateral had already been tendered.

86. The actions of the Officers described above were extreme and outrageous, and intentionally or recklessly calculated to cause plaintiff severe emotional distress.

87. The Officers' conduct did cause plaintiff severe emotional distress.

88. The Officers' conduct constitutes intentional infliction of emotional distress under the common law of the District of Columbia.

89. The conduct of the District of Columbia, by and through the actions of employees under its control and supervision acting within the scope of their employment, constitutes intentional infliction of emotional distress under the common law of the District of Columbia.

90. The District of Columbia is liable for the intentional torts of its employees acting within the scope of their employment.

## XI. Assault and Battery
(Respondeat Superior Liability of the District of Columbia)

91. The preceding paragraphs are incorporated and restated as if stated fully herein.

92. The Officers acted within the scope of their employment with, and acted on behalf of and in the interests of, the District of Columbia MPD, when committing the actions described in paragraphs 10-42 above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe she had committed or was about to commit a crime.

93. The Officers acted within the scope of their employment with, and acted on behalf of and in the interests of, the District of Columbia MPD when the Officers intentionally threatened or attempted to commit harmful, offensive and excessive contact on the plaintiff.

94. The Officers' words and actions described above caused plaintiff an imminent apprehension of harmful, offensive and excessive contact.

95. The Officers acted within the scope of their employment with, and acted on behalf of and in the interests of, the District of Columbia MPD when, through their words and actions as described in paragraphs 10-42 above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe she had committed or was about to commit a crime, the Officers did intentionally cause harmful, offensive and excessive contact on the plaintiff.

96. The Officers' words and actions constitute assault and battery in violation of the common law of the District of Columbia.

97. The conduct of the District of Columbia, by and through the actions of employees under its control and supervision acting within the scope of their employment, constitutes assault and battery under the common law of the District of Columbia.

98. The District of Columbia is liable for the intentional torts of its employees acting within the scope of their employment.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Court (a) enter judgment holding defendants liable to plaintiff for compensatory damages in an amount appropriate to the proof adduced at trial; (b) enter judgment holding the Defendant Officers liable to plaintiff for punitive damages in an amount appropriate to the proof adduced at trial; (c) enter judgment imposing injunctive relief that (1) bars the District of Columbia from incarcerating arrestees who are eligible for citation release or post and forfeit, but who lack the funds to post collateral, (2) requires the District of Columbia to offer citation release, as well as post and forfeit, to arrestees who are eligible for both, (3) requires that

the District of Columbia train and supervise police officers in the proper use of citation release and post and forfeit; and (4) requires that the District of Columbia immediately release any arrestee who has posted requisite bail, bond, or collateral; (d) requires that the District of Columbia properly inform all arrestees offered Post-and-Forfeit of their 90-day window within which to challenge their arrests, (e) award plaintiff her costs and reasonable attorneys' fees; and (f) grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests that her claims be tried by a jury.

                                        Respectfully submitted,

                                        John Moustakas (D.C. Bar # 422076)
                                        Joshua Ian Rosenstein (D.C. Bar # 482585)
                                        Goodwin | Procter LLP
                                        901 New York Avenue, NW
                                        Washington, D.C. 20001
                                        (202) 346-4000
                                        (202) 346-4444 (fax)

                                        Arthur B. Spitzer (D.C. Bar #235960)
                                        Frederick V. Mulhauser, (D.C. Bar # 455377)
                                        American Civil Liberties Union of the
                                        National Capital Area
                                        1400 20th St., NW, Suite 119
                                        Washington, D.C. 20036
                                        (202) 457-0800
                                        (202) 452-1868 (fax)

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS

Lindsay Smith
3305 18th St NW
Washington DC 20010

## DEFENDANTS

FOUR UNKNOWN MPD OFFICERS, Third District Station, 1620 V St. NW, Washington DC 20009
and

The District of Columbia, 1350 Pennsylvania Ave NW Washington, DC 20004

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF __Washington__
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT __Washington__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

John Moustakas and Joshua Ian Rosenstein
Goodwin Procter LLP, 901 NY Ave NW, Washington DC 20001 (202-346-4000)

Arthur Spitzer and Frederick V. Mulhauser
ACLU of the National Capital Area, 1400 20th St NW Ste 119, Washington DC 20036 (202-457-0800)

CASE NUMBER  1:06CV01871
JUDGE: Henry H. Kennedy
DECK TYPE: Civil Rights (non-employment)
DATE STAMP: 11/02/2006

JURY ACTION

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⦿ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES
(FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ⦿ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☒ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
42 USC Section 1983 (violation of rights secured by the Constitution of the United States and additional rights secured by statutes of D.C.)

**VII. REQUESTED IN COMPLAINT**    CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐    DEMAND $ 1,000,000    Check YES only if demanded in complaint
JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ☒    If yes, please complete related case form.

DATE Nov. 2, 2006    SIGNATURE OF ATTORNEY OF RECORD [signature]

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.