UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| **LINDSAY SMITH** | ) |
| 3305 18th Street, NW | ) |
| Washington, D.C. 20010 | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| **THE DISTRICT OF COLUMBIA** | )   No. 06-ca-1871 (HHK) |
|  | ) |
| *and* | ) |
|  | ) |
|  | )   TRIAL BY JURY DEMANDED |
|  | ) |
| **OFFICER L. ACEBAL** | ) |
| Badge Number 1313 | ) |
| Metropolitan Police Department | ) |
| Third District Station | ) |
| 1620 V St., NW | ) |
| Washington, D.C. 20009 | ) |
|  | ) |
| **OFFICER J. ANTONIO** | ) |
| Badge Number 4409 | ) |
| Metropolitan Police Department | ) |
| Third District Station | ) |
| 1620 V St., NW | ) |
| Washington, D.C. 20009 | ) |
|  | ) |
| **OFFICER J. MORALES** | ) |
| Badge Number 273 | ) |
| Metropolitan Police Department | ) |
| Third District Station | ) |
| 1620 V St., NW | ) |
| Washington, D.C. 20009 | ) |
|  | ) |
| *Defendants.* | ) |
| _____ | ) |

## AMENDED COMPLAINT

**(Police Misconduct: Violation of rights under the Constitution of the United States and the common and statutory law of the District of Columbia)**

Plaintiff Lindsay Smith ("Ms. Smith" or "plaintiff"), by and through undersigned counsel, hereby files this Amended Complaint against District of Columbia Metropolitan Police Officers L. Acebal, Badge Number 1313; J. Antonio, Badge Number 4409; J. Morales, Badge Number 273 (collectively, "the Officers"); and the District of Columbia, asserting claims of false imprisonment, intentional infliction of emotional distress, assault and battery, violations of plaintiff's First, Fourth, Fifth and Eighth Amendment rights, and violations of the Code of the District of Columbia, arising from the improper arrest and subsequent detention of Ms. Smith on November 15th and 16th, 2005.  Plaintiff seeks compensatory and punitive damages, fees, costs and other appropriate relief.

## JURISDICTION AND VENUE

1. Ms. Smith brings this action to redress the deprivation of rights secured to her by the United States Constitution, as made actionable under 42 U.S.C. § 1983, and additional rights secured to her by the law of the District of Columbia.

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.  In addition, this Court has supplemental jurisdiction to adjudicate claims under the laws of the District of Columbia pursuant to 28 U.S.C. § 1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the conduct giving rise to this action occurred in the District of Columbia.

## PARTIES

4. Plaintiff Lindsay Smith is an adult resident of the District of Columbia.  Her current address is 3305 18th Street, NW, Washington, D.C. 20010. She is employed as a Program Coordinator by the Moroccan American Center, a nonprofit organization.

5.      Defendant L. Acebal is an officer of the District of Columbia Metropolitan Police Department ("MPD"), assigned Badge Number 1313.  Upon information and belief, Officer Acebal is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C. 20009.

6.      Defendant J. Antonio is an officer of the District of Columbia MPD, assigned Badge Number 4409.  Upon information and belief, Officer Antonio is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C. 20009.

7.      Defendant J. Morales is an officer of the District of Columbia MPD, assigned Badge Number 273.  Upon information and belief, Officer Morales is assigned to the Third District, located at 1620 V Street, NW, Washington, D.C. 20009.

8.      Defendant District of Columbia is a municipal corporation duly organized and existing under the laws of the United States.  The District of Columbia was at all relevant times the employer of Defendants Acebal, Antonio and Morales.

## FACTS

**A.      The Plaintiff's Unlawful Arrest and Detention**

9.      Around midnight on the evening of November 15, 2005, plaintiff and her friend Adrien Marsoni were walking to plaintiff's apartment in the Mount Pleasant neighborhood when they decided to stop at the 7-Eleven convenience store located at 3146 Mount Pleasant Street, NW, Washington, D.C.

10.     Plaintiff and Mr. Marsoni noticed an unusual amount of police activity outside the 7-Eleven, including what they felt was an unusually large number of officers standing inside the store, as well as a van marked "Police" parked outside with its flashing police lights on.  There were also several police cruisers parked outside.

11.     Upon entering the 7-Eleven, plaintiff, a resident of that neighborhood, inquired of the officers whether something had happened about which she should be concerned. Rather than answering her question, the officers were rude and non-responsive. Since the officers could not be bothered to respond to a legitimate resident concern in a professional manner, plaintiff indicated that there must be a better use of her tax dollars than to have a group of police officers standing around a 7-Eleven. One of the Defendant Officers[1] (Officer #1) aggressively demanded that she repeat what she had just said, but plaintiff declined.

12.     After completing their purchases, plaintiff and Mr. Marsoni left the 7-Eleven. As they were leaving, a man in civilian clothing sitting in an SUV parked outside the 7-Eleven asked Mr. Marsoni whether he had been having problems with the officers inside the store. Mr. Marsoni told him to mind his own business.

13.     As Mr. Marsoni and plaintiff left the 7-Eleven, two of the Defendant Officers (Officers #1 and #2) followed them from the store. The individual from the SUV (Officer #3), apparently an undercover officer now wearing a badge around his neck, joined the other two officers. The three approached plaintiff and Mr. Marsoni. The Officers demanded that plaintiff and Mr. Marsoni put their hands against the wall of a building approximately 50 yards north of the 7-Eleven.

14.     Mr. Marsoni and plaintiff were put against the wall and asked for identification. Plaintiff repeatedly inquired why they were being detained. The Officers did not respond. Instead they searched plaintiff's person and belongings. At no point did

---

[1] Plaintiff has only recently become aware of the three Defendant Officers' surnames and badge numbers. Absent discovery, however, it is unclear which particular officer committed the individual actions alleged herein. References to individual actions taken by a particular officer will thus identify the officer by the numbers 1, 2, or 3, rather than name.

- 4 -

plaintiff become belligerent or disorderly. At no point did a crowd or group of bystanders gather at the scene. Nonetheless, the Officers placed plaintiff in handcuffs.

15. One of the Officers told Mr. Marsoni that he could obtain immediate release of Ms. Smith for $25 cash. Indicating to the Officers that he would need to use the 7-Eleven's ATM to obtain the money, Mr. Marsoni went back into the store. He returned with $40 and handed it to Officer #3, who refused to make change and sent Mr. Marsoni back into the 7-Eleven to break a 20-dollar bill. When he returned with the change he had been sent to make, the Officers and Ms. Smith were gone.

16. Ms. Smith was transported to the Third District station where she was handcuffed to a chair in the waiting area. After a short while, Ms. Smith asked to use the restroom, at which point she was led into a cell and locked there.

17. Ms. Smith continued to ask why she had been arrested. Her questions were again ignored.

18. At some point during this period, Mr. Marsoni arrived at the Third District station and paid the $25 collateral to obtain Ms. Smith's release.

19. An officer approached Ms. Smith in the cell, and handed back her identification and a Collateral/Bond Receipt form (PD 67) noting that at 2:50 am, the $25 collateral had been paid. Ms. Smith asked whether she would then be released. The officer ignored her and walked away.

20. During the night, an officer at the station told Ms. Smith that they would be more inclined to release her if she would just sit down in her cell and "cry like a good girl."

21. Though she had been holding her release papers for more than 4 hours, Ms. Smith was not released from custody until approximately 7:00 a.m.

22.     As a result of the events described above, Ms. Smith suffered mental anguish, fear, humiliation, and embarrassment.

**B.     MPD Misuse of "Post-and-Forfeit"**

23.     "Post-and-forfeit" is a procedure the police can offer certain misdemeanor arrestees. The arrestee pays $25 or $50 (the amount is set in a court-approved collateral schedule) and the District of Columbia agrees not to press charges. The practice involves a fiction: The payment constitutes posting of collateral, securing the arrestee's appearance at a trial that will not take place, because the charges are not pursued. When posting the collateral, the arrestee also forfeits any right to have the collateral returned.

24.     Posting and forfeiting is, in effect, paying a fine without an admission or a finding of guilt. An arrestee who cannot afford to post-and-forfeit is incarcerated until his or her initial appearance before a judicial officer — or until a prosecutor decides not to proceed with criminal charges.

25.     Citation release is another procedure the police can offer to eligible persons arrested for certain misdemeanors. The arrestee does not make any payment or post any sort of collateral, and the police do not agree to forego prosecution of the minor offense. Instead, the police issue the arrestee a citation to appear in court on a set date in the future and then release the arrestee. If the government pursues the misdemeanor charge, the arrestee is arraigned on the date noted in the citation and a trial date is set. Of course, the government still can decline to prosecute these minor offenses, and it often does so.

26.     To address the MPD's misuse of the post-and-forfeit procedure, the District of Columbia had enacted subchapter III of the First Amendment Assemblies Act of 2004, D.C. Code § 5-335.01. That statute, which became effective approximately seven

months before plaintiff's arrest, requires that any person in custody who is offered the opportunity to post-and-forfeit be given a written notice stating that "if the arrestee elects to proceed with the criminal case he or she may also be eligible for prompt release on citation, or will be promptly brought to court for determination of bail." No notice complying with that statute was provided to plaintiff, nor was the required information provided to plaintiff in any other manner.

27. None of the Officers made citation release available — which would have cost Ms. Smith nothing — or let Ms. Smith know that citation release was an option because Ms. Smith was arrested without probable cause and the police could not afford to have their unlawful arrest become subject to judicial scrutiny and because the police, as a general policy, do not offer citation release to those arrested without probable cause.

28. At all times relevant to this complaint, the Officers acted under color of law, statute, custom or usage of the District of Columbia.

29. At all times relevant to this complaint, the Officers acted within the scope of their employment as MPD officers and acted on behalf of, and in the interests of, their employer.

30. At no time did the Officers have probable cause, or a reasonable basis, to believe that Ms. Smith had committed the offense of "D/O Loud & Boisterous," or any other criminal offense, and instead arrested her as punishment for her criticism of the police and the content of her speech.

31. Upon information and belief, the Officers made the arrest with the expectation that charges would never be filed against Ms. Smith.

32. The Officers acted with malice toward Ms. Smith and with reckless indifference to, and deliberate disregard for, Ms. Smith's constitutional and statutory rights.

33. Upon information and belief, the District of Columbia, through the MPD, maintains a policy or practice of unlawfully distinguishing between classes of individuals, in offering only post-and-forfeit release, and not citation release, to misdemeanor arrestees when the MPD has no probable cause for the arrest, in an effort to generate and curtail scrutiny of improper arrests.

34. At the time of Ms. Smith's arrest, the District of Columbia government knew or should have known that MPD officers were arresting people as a means of pre-trial punishment for making comments critical of the police.

35. At the time of Ms. Smith's arrest, the District of Columbia government knew or should have known that MPD officers were misusing the post-and-forfeit procedure both to inflict punishment prior to trial and to sweep under the rug arrests for which there was no probable cause or likelihood of prosecution.

36. At the time of Ms. Smith's arrest, the District of Columbia government knew or should have known that MPD officers were demanding payment of collateral on the streets and without authorized personnel present, in violation of the Municipal Regulations and Laws of the District of Columbia.

37. The District of Columbia knew or should have known that this improper use of post-and-forfeit release would likely violate the constitutional and statutory rights of arrestees like Ms. Smith.

38.    At the time of Ms. Smith's arrest, the District of Columbia government had not provided adequate training, nor adequate supervision, to MPD officers regarding the proper use of post-and-forfeit release.

39.    The District of Columbia's actions and omissions reflect deliberate indifference to the constitutional and statutory rights of plaintiff Lindsay Smith.

40.    At the time of Ms. Smith's arrest, it was clearly established as a matter of law that the government cannot search or arrest an individual without probable cause to believe that the person committed or was about to commit a criminal offense.

41.    At the time of Ms. Smith's arrest, it was clearly established as a matter of law that the government cannot search or arrest an individual as retaliation or punishment for peacefully criticizing the police.

42.    At the time of Ms. Smith's arrest, it was clearly established as a matter of law that any amount of bail is excessive, and any fine is excessive, when there is no probable cause to believe an arrestee has committed a criminal offense.

43.    At the time of Ms. Smith's arrest, it was clearly established as a matter of law that the government cannot differentiate between groups of individuals in conferring benefits, rights, or privileges, absent sufficient governmental interest in drawing the distinction.

44.    At the time of Ms. Smith's arrest, it was clearly established as a matter of law that the government cannot, based on animus and without probable cause, inflict punishment on an individual prior to trial.

45.    At the time of Ms. Smith's arrest, it was clearly established as a matter of law that the government cannot search or arrest an individual because the government dislikes the

content of the person's speech, or because the person uses crude language in describing or addressing police officers.

46.  At the time of Ms. Smith's arrest, it was clearly established as a matter of law that agencies of the District of Columbia are required to comply with their own internal regulations, as well as with the statutes and laws of the District of Columbia.

## CLAIMS FOR RELIEF

### I:  False Arrest
### (Defendants Acebal, Antonio and Morales)

47.  The preceding paragraphs are incorporated and restated as if stated fully therein.

48.  The Officers arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

49.  The Officers had no good faith or reasonable belief that probable cause existed to arrest plaintiff.

50.  The actions of the Officers in arresting plaintiff constitute false arrest under the common law of the District of Columbia.

### II:  Intentional Infliction of Emotional Distress
### (Defendants Acebal, Antonio and Morales)

51.  The preceding paragraphs are incorporated and restated as if stated fully herein.

52.  The Officers' conduct in (a) confronting and arresting plaintiff when they lacked probable cause to believe she had committed any crime and based solely on her criticism of the police, (b) retaliating against her for her critical comments by detaining her for hours after her bond had been posted, and (c) telling her that she would be released only if she sat down and cried despite the fact that her collateral had already been tendered,

was extreme and outrageous, and it was intentionally or recklessly calculated to cause plaintiff severe emotional distress.

53.    The Officers' conduct did cause plaintiff severe emotional distress.

54.    The Officers' conduct constitutes intentional infliction of emotional distress under the common law of the District of Columbia.

### III: Assault and Battery
### (Defendants Acebal, Antonio and Morales)

55.    The preceding paragraphs are incorporated and restated as if stated fully herein.

56.    Through their actions as described above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe she had committed or was about to commit a crime, the Officers intentionally threatened or attempted to commit harmful, offensive and excessive contact on the plaintiff.

57.    The Officers' actions caused plaintiff an imminent apprehension of harmful, offensive and excessive contact.

58.    Through their actions as described above, and in detaining, searching, touching, and arresting plaintiff without probable cause to believe she had committed or was about to commit a crime, the Officers did intentionally cause harmful, offensive and excessive contact on the plaintiff.

59.    The Officers' actions constitute assault and battery in violation of the common law of the District of Columbia.

### IV: Negligence Per Se
### (Defendants Acebal, Antonio and Morales)

60.    The preceding paragraphs are incorporated and restated as if stated fully herein.

61. In failing to provide plaintiff with the information to which she was entitled under D.C. Code § 5-335.01, the Officers were negligent per se.

62. By reason of the Officers' negligence per se, plaintiff was injured as described above.

### V: Violation of First Amendment Rights
### (Defendants Acebal, Antonio and Morales)

63. The preceding paragraphs are incorporated and restated as if stated fully herein.

64. Plaintiff peacefully voiced criticism of the police.

65. The Officers overheard Ms. Smith's criticism and arrested her based on the content of her statements.

66. The Officers had no probable cause to arrest Ms. Smith, and had no good faith or reasonable belief that probable cause existed to pursue, arrest, and detain Ms. Smith, but did so to punish her for her criticism of the police and/or for her use of crude language directed towards or about the police.

67. The actions of the Officers deprived plaintiff of her First Amendment right to freedom of speech, as made actionable by 42 U.S.C. § 1983.

### VI: Violation of Fourth Amendment Rights
### (Defendants Acebal, Antonio and Morales)

68. The preceding paragraphs are incorporated and restated as if stated fully herein.

69. The Officers searched plaintiff's person and belongings, and arrested plaintiff, without probable cause to believe that plaintiff had committed or was about to commit a crime.

70. The Officers had no good faith or reasonable belief that probable cause existed to search or arrest plaintiff.

71.     The actions of the Officers deprived plaintiff of her rights under the Fourth Amendment to the Constitution of the United States to be free of unreasonable search and seizure, as made actionable by 42 U.S.C. § 1983.

### VII:  Violation of Fifth Amendment Rights
**(Defendants Acebal, Antonio and Morales)**

72.     The preceding paragraphs are incorporated and restated as if stated fully herein.

73.     The Officers arrested Ms. Smith and required that she either post-and-forfeit a fine or remain incarcerated, even though they had no probable cause to believe that plaintiff had committed or was about to commit a crime.

74.     The Officers had no good faith or reasonable belief that probable cause existed to justify prosecuting plaintiff.

75.     Because of the Officers' actions, Ms. Smith now has an arrest record, which is likely to cause difficulty for her throughout her life.

76.     The Officers offered post-and-forfeit as the only option for resolving Ms. Smith's arrest with the intent to punish Ms. Smith for voicing criticism of the police prior to trial.

77.     The Officers intentionally requested the fine from Mr. Marsoni; demanded exact change; whisked Ms. Smith off to the station while Mr. Marsoni was obtaining change at their request; detained Ms. Smith without cause for hours after her fine had been paid; and told her that her release would be hastened if she would sit down and cry "like a good girl"; all in an effort to inflict and maximize the punishment inflicted on Ms. Smith prior to trial.

78.     The Officers maintain a policy of offering post-and-forfeit release, but denying citation release, to those individuals arrested for misdemeanors without probable cause in

an effort to avoid judicial scrutiny of unlawful arrests, thus drawing illegitimate distinctions between classes of individuals.

79. The Officers refused to offer plaintiff citation release because Ms. Smith was in the class of misdemeanor-arrestees who are arrested without probable cause.

80. The Officers' actions were specifically calculated to ensure that their unlawful arrest would evade review, particularly because the Officers failed to provide Ms. Smith with the notice required by D.C. Code § 5-335.01.

81. The actions of the Officers deprived plaintiff of her rights under the Fifth Amendment to the Constitution of the United States to (i) the equal protection of the law and (ii) to be free of punishment prior to trial, as made actionable by 42 U.S.C. § 1983.

### VIII: Violation of Eighth Amendment Rights
**(Defendants Acebal, Antonio and Morales)**

82. The preceding paragraphs are incorporated and restated as if stated fully herein.

83. The Officers required plaintiff to post-and-forfeit collateral in the amount of $25, or remain incarcerated, even though there was no probable cause to believe that plaintiff had committed or was about to commit a crime.

84. The Officers had no good faith or reasonable belief that probable cause existed to justify prosecuting plaintiff.

85. The actions of the Officers deprived plaintiff of her rights under the Eighth Amendment to the Constitution of the United States to be free of excessive bail and fines, as made actionable by 42 U.S.C. § 1983.

### IX: False Arrest
**(*Respondeat Superior* Liability of the District of Columbia)**

86. The preceding paragraphs are incorporated and restated as if stated fully herein.

87. The Officers acted within the scope of their employment with, and acted on behalf of and in the interests of, the District of Columbia MPD, when they arrested plaintiff without probable cause to believe that plaintiff had committed or was about to commit a crime.

88. The actions of the Officers in arresting plaintiff constitute false arrest under the law of the District of Columbia.

89. The Arrest/Prosecution Report indicated that Ms. Smith had been arrested for "Disorderly Conduct (Loud & Boisterous)." The report stated that Ms. Smith criticized the police. It did not identify any complainants or witnesses to the incident, nor did it contain any mention of a crowd or group of bystanders gathering at the time of the incident. Under "M.O., Weapons, Hangouts, Habits, Instruments," the report states that Ms. Smith "Hates Police."

90. The contents of plaintiff's Arrest/Prosecution Report put the District of Columbia on notice that plaintiff was unlawfully arrested for her criticism of the police and the content of her speech, that no disorderly conduct had occurred, and that a claim against the District of Columbia was therefore likely.

91. The District of Columbia is liable for the intentional torts of its employees acting within the scope of their employment.

### X: Violation of First Amendment Rights
### (Defendant District of Columbia)

92. The preceding paragraphs are incorporated and restated as if stated fully herein.

93. The lack of adequate training and supervision described above leads police officers frequently to arrest, or to use post-and-forfeit release in conjunction with

arresting, individuals who have voiced opinions critical of the police, in violation of the arrestees' First Amendment rights.

94.     The Officers' arrest of Ms. Smith as retaliation for her critical comments about the police was the result of the District of Columbia's policy, custom or practice and the failure to adequately train or supervise MPD Officers regarding the proper grounds for arrest and/or the proper use of post-and-forfeit release.

95.     At the time of Ms. Smith's arrest, the District of Columbia had actual or constructive knowledge that police officers were abusing arrest procedures and/or misusing post-and-forfeit release in the ways alleged in this Complaint.

96.     Both the policy, custom or practice alleged above and the failure to adequately train or supervise regarding arrest and/or post-and-forfeit release reflect a deliberate indifference on the part of the government to the constitutional rights of arrestees.

97.     The policy, custom or practice of the District of Columbia, and its failure adequately to train or supervise its officers, caused plaintiff to be deprived of her right to freedom of speech under the First Amendment to the Constitution of the United States, as made actionable by 42 U.S.C. § 1983.

### XI:  Violation of Fourth Amendment Rights
### (Defendant District of Columbia)

98.     The lack of adequate training and supervision described above leads police officers frequently to arrest and search individuals, without probable cause, and/or to use post-and-forfeit release as a means of arresting individuals without probable cause, in violation of the arrestees' Fourth Amendment rights.

99.     The Officers' search and subsequent arrest of Ms. Smith without probable cause was the result of the District of Columbia's policy, custom or practice and the failure to

adequately train or supervise MPD Officers regarding the proper search and arrest methodology and regarding proper use of post-and-forfeit release.

100.    The policy, custom or practice of the District of Columbia, and its failure adequately to train or supervise its officers, caused plaintiff to be deprived of her rights under the Fourth Amendment to the Constitution of the United States to be free of unreasonable search and seizure, as made actionable by 42 U.S.C. § 1983.

### XII:  Violation of Fifth Amendment Rights
### (Defendant District of Columbia)

101.    The District of Columbia maintains a policy, custom or practice of offering post-and-forfeit release to arrestees who have been arrested without probable cause, without offering citation release, in an effort to evade scrutiny for unlawful arrests.

102.    The policy, custom or practice described above is implemented at times when the department's officers intend to punish an arrestee prior to trial for voicing criticism of the police.

103.    The policy, custom or practice described above resulted in the Officers refusing to offer plaintiff citation release because Ms. Smith was not in the class of misdemeanor-arrestees who are arrested with probable cause.

104.    The District of Columbia fails adequately to train MPD officers regarding the proper use of post-and-forfeit release.  In particular, the District of Columbia fails adequately to train officers that post-and-forfeit release should not be used as a tool to punish arrestees prior to trial and to keep arrestees incarcerated.  The District of Columbia additionally fails adequately to train officers about the circumstances under which an arrestee should be released without having to post collateral.  The District of Columbia fails adequately to train officers that they may not offer citation release only to

the class of arrestees who are detained with probable cause, thus denying citation release to the class of arrestees detained without probable cause. Likewise, the District of Columbia fails adequately to supervise police officers' resort to, and use of, post-and-forfeit release.

105. The District of Columbia intentionally or negligently failed to obey the commands of D.C. Code § 5-335.01, which, had they been complied with, would have informed plaintiff of her right to obtain citation release.

106. At the time of Ms. Smith's arrest, the District of Columbia had actual or constructive knowledge that police officers were misusing post-and-forfeit in the ways alleged in this Complaint.

107. Both the policy, custom or practice alleged above, the failure to adequately train or supervise regarding post-and-forfeit, and the failure to obey the commands of D.C. Code § 5-335.01 reflect a deliberate indifference on the part of the government to the constitutional rights of arrestees.

108. The failure of the Officers to offer plaintiff citation release, or simply to release her for lack of probable cause in lieu of post-and-forfeit, was the result of the District of Columbia's lack of adequate training or supervision regarding the use of post-and-forfeit release, its unjustified animus towards individuals who criticize the police, and its lack of desire for the plaintiff to appear in court to answer for her charges (because the District had no grounds upon which to base those charges).

109. The policy, custom or practice of the District of Columbia, and its failure adequately to train or supervise its officers, caused plaintiff to be deprived of her rights under the Fifth Amendment to the Constitution of the United States to (i) the equal

protection of the law and (ii) the due process right to be free of punishment prior to trial, both as made actionable by 42 U.S.C. § 1983.

### XIII:  Violation of Eighth Amendment Rights
### (Defendant District of Columbia)

110.   The preceding paragraphs are incorporated and restated as if stated fully herein.

111.   The failure of the Officers or of the District of Columbia promptly to release Ms. Smith upon receipt of her collateral caused plaintiff to be deprived of her rights under the Eighth Amendment to the Constitution of the United States to be free of excessive bail and fines, as made actionable by 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff requests that the Court (a) enter judgment holding all defendants liable to plaintiff for compensatory damages in an amount appropriate to the proof adduced at trial; (b) enter judgment holding the Defendant Officers liable to plaintiff for punitive damages in an amount appropriate to the proof adduced at trial; (c) enter judgment imposing injunctive relief that (1) bars the District of Columbia from incarcerating arrestees who are eligible for citation release or post-and-forfeit, but who lack the funds to post collateral, (2) requires the District of Columbia to offer citation release, as well as post-and-forfeit release, to arrestees who are eligible for both, (3) requires that the District of Columbia train and supervise police officers in the proper use of citation release and post-and-forfeit release; and (4) requires that the District of Columbia promptly release any arrestee who has posted requisite bail, bond, or collateral; (d) award plaintiff her costs and reasonable attorneys' fees; and (e) grant such other and further relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff requests that her claims be tried by a jury.

Respectfully submitted,

   /s/ Joshua Ian Rosenstein
John Moustakas (D.C. Bar # 422076)
Joshua Ian Rosenstein (D.C. Bar # 482585)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, D.C. 20001
(202) 346-4000
(202) 346-4444 (fax)

Arthur B. Spitzer (D.C. Bar #235960)
Frederick V. Mulhauser, (D.C. Bar # 455377)
American Civil Liberties Union of the
National Capital Area
1400 20th St., NW, Suite 119
Washington, D.C. 20036
(202) 457-0800
(202) 452-1868 (fax)