UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
LINDSAY SMITH                           )
                                        )
                Plaintiff,              )
                                        )
        v.                              )
                                        )
THE DISTRICT OF COLUMBIA,               )
    *et al.*,                           )   Case No.: 06-1871 (HHK)
                                        )
                Defendants.             )
_____)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
PARTIAL MOTION TO DISMISS**

Plaintiff Lindsay Smith hereby opposes the District of Columbia's Motion to Partially Dismiss the Amended Complaint.

Arising out of her false and punitive arrest and the systematic abuse of the District's "post-and-forfeit" procedures to mete out illegitimate punishment for patently false charges, Plaintiff filed suit against the District and three MPD officers alleging violations of the First, Fourth, Fifth and Eighth Amendments to the U.S. Constitution, as well as various common law violations. The District has sought to dismiss Counts XII and XIII of the Amended Complaint, which allege, respectively, that the District violated Plaintiff's Fifth and Eighth Amendment rights.

As we show below, the District cannot satisfy the stringent standard for obtaining dismissal at this juncture. First, Plaintiff has adequately alleged that the District's use of "post-and-forfeit" procedures constituted a violation of her Fifth Amendment rights to equal protection and due process. Second, since the District's abuse of the "post-and-forfeit" procedure in this case amounted to the imposition of a fine upon which release

1

from unconstitutional arrest and detention was conditioned, the fine violated the excessive bail and fine clauses of the Eighth Amendment.

## FACTUAL BACKGROUND

This lawsuit relates to the defendants' unlawful arrest of Ms. Smith after she had voiced criticism at the police, and to the improper way in which defendants subsequently used the "post-and-forfeit" procedure to impose punishment on her.

Plaintiff alleges that she and her companion, Mr. Marsoni, entered a 7-Eleven convenience store around midnight on the evening of November 15, 2005, where they noticed an unusually large police presence in and around the store. Concerned that something was wrong, Plaintiff inquired whether there had been an incident nearby. Rather than responding, however, the officers were rude and non-responsive. Ms. Smith alleges that, since the officers refused to respond in a professional manner and brusquely brushed her off, she indicated that there was a better use of her tax dollars than to have a group of officers standing around a 7-Eleven. After Plaintiff and Mr. Marsoni had left the store, they were pursued by several officers, who ordered the two to put their hands against the wall of a nearby building. Plaintiff and Mr. Marsoni were searched—nothing was found—and Plaintiff was arrested. She repeatedly asked why they were being detained, but the Officers failed to respond. Plaintiff alleges that at no point was she belligerent or disorderly, and that the police pursued and arrested her because of their unjustified animus towards citizens who exercise their right to criticize police practices. Amended Complaint ¶¶ 11-14.

The Officers demanded the payment of $25 collateral from Mr. Marsoni on the street in exchange for Plaintiff's immediate release.[1] By the time Mr. Marsoni had retrieved exact change to pay the "fine," Ms. Smith had been taken to the Third District station. A short time later, Mr. Marsoni arrived and paid the $25 collateral to secure Plaintiff's release. At approximately 2:50 a.m., Ms. Smith was handed her release papers, yet she was not released until approximately 7:00 a.m. During the course of the evening, an officer told her that they would be more inclined to release her if she would simply sit down and "cry like a good girl." Amended Complaint ¶¶ 15-21.

In sum, Plaintiff alleged, among other things, that there was no probable cause for her arrest; that her arrest and detention were based upon unjustified animus directed towards those who criticize police activity; that the officers and the District never had any intention of filing any charges against her; that the treatment afforded her was different than treatment afforded to those arrested with probable cause in an effort by the District and the Officers to evade scrutiny for unlawful arrests; that the treatment afforded to her constituted punishment prior to trial; and that the fine charged was excessive in light of the fact that she had committed no crime for which any fine could lawfully be imposed. Amended Complaint ¶¶ 27, 30-31, 42-50, 78-81, 86-111. Plaintiff alleged that the actions of the Officers and the District constituted assault and battery, false arrest,

---

[1] Through the "post-and-forfeit" procedure, the arrestee "posts" $25 or $50 as collateral securing his appearance at trial, and then agrees to forfeit any right to recoup that collateral. The police, in turn, agree not to press charges against the arrestee. "Post-and-forfeit" release is an elaborate legal fiction; in all practical effect the arrestee has paid a fine to end his confinement and dispose of the charges.

intentional infliction of emotional distress, negligence per se, and violations of her First, Fourth, Fifth and Eighth Amendment rights.[2]

## ARGUMENT

"Dismissal for failure to state a claim is appropriate only it if appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Chandler v. D.C. Dep't of Corr.*, 145 F.3d 1355, 1360 (D.C. Cir. 1998) (citation and quotations omitted) (allowing Eighth Amendment claim based on verbal threat to go forward); *see also Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (noting that "the complaint need only set forth a short and plain statement of the claim" and that the complaint need not even "allege every legal element or fact that must be proven"(citing Fed. R. Civ. P. 8(a)(2)). A motion to dismiss is not an opportunity to evaluate the sufficiency of the evidence supporting the complaint's allegations, and "the court must construe the complaint in the light most favorable to the plaintiff." *Vincent v. Anderson*, 621 A.2d 367, 372 (D.C. 1993).

**A.    Plaintiff Has Stated A Claim Under the Fifth Amendment.**

The District attacks Plaintiff's Fifth Amendment claims on four grounds. First, it mischaracterizes her injury as the deprivation of a privilege and not a right in order to render the deprivation inconsequential. Second, it contends that even if there had been a deprivation of a right, any such deprivation was insufficient to support a substantive due process claim. Third, it argues that Plaintiff's Fifth Amendment claim is somehow subsumed within her Fourth Amendment Claim. Finally, the District misrepresents the allegations in an effort to argue that no equal protection violation has been stated. Motion

---

[2]    The District has not sought dismissal on the Counts alleging malfeasance by the individual Metropolitan Police Department Officers; nor has the District sought to dismiss the First or Fourth

to Dismiss at 6-10. But as we now show, the District is wrong; Plaintiff's Amended Complaint states at least two distinct claims under the Fifth Amendment sufficient to survive a motion to dismiss.

> 1.      The Amended Complaint Alleges an Equal Protection Violation.

The District casually combines two of its arguments in an effort to beguile the Court into believing that no Fifth Amendment claim has been stated: it first argues that Plaintiff has failed to state a procedural due process claim because the right to "citation release is not a procedural right" but rather is "within the discretion of the" arresting officer. Motion to Dismiss at 6. Three pages later, the District argues that where a matter is "solely within the law enforcement official's discretion…[it cannot] serve as the basis of an Equal Protection claim." Motion to Dismiss at 9-10.

The District's argument – that Plaintiff has stated no procedural due process claim because only a "privilege" and not a "right" was implicated – is immaterial, given one main thrust of Plaintiff's Amended Complaint: that the MPD's actions deprived her of the right to equal protection. The Fifth Amendment prohibits differential treatment of similarly-situated parties, absent a sufficient governmental interest, whether the treatment involves a privilege, benefit, or right. *Tele-Communications of Key West, Inc. v. United States*, 757 F.2d 1330, 1340 (D.C. Cir. 1985) ("Under equal protection doctrine, differential treatment of parties is constitutional only if adequately related to a sufficient governmental interest.").

To be sure, not every deprivation of a privilege or benefit rises to the constitutional level. But where, as here, a complaint alleges that two similarly-situated

---

Amendment or common law charges against it.

groups were treated differently in the distribution of benefits without a legitimate basis behind the distinction, the allegation suffices to withstand a motion to dismiss. For example, a person suffers an equal protection violation when the government erects a barrier that makes it more difficult to obtain a benefit due to her membership in one group than it would be if she belonged to another group. *Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). Likewise, in *Key West*, the D.C. Circuit held that a cable company, which had been banned from competing for customers on an Air Force base, stated a valid equal protection claim because it had alleged that there was no rational basis for the exclusion. *See Key West,* 757 F.2d at 1340. If the District of Columbia decided to give a gift of $100 to all residents except those whose last names begin with the letter "S," a resident named Smith would have a valid claim for a denial of equal protection, notwithstanding that the $100 was a "benefit."

      Plaintiff alleges that MPD officers arrested her without probable cause for having exercised her First Amendment right to criticize the police, and in an effort to punish her and to dissuade her from criticizing the police again. Thus, the officers could not afford to have their lawless arrest exposed to either the United States Attorney's Office, whose personnel would be called upon to decide whether to "paper" the case (*i.e.*, authorize it for prosecution), or to a Superior Court Judge.[3] There was one way to avoid such exposure and evade review by offering "post-and-forfeit" release.

---

[3] D.C. Code Section 23-1101(b)(1) provides for "citation release," a procedure by which an officer who arrests an individual for a misdemeanor may, without taking him into custody, "issue a citation requiring the person to appear before" an MPD official acting as a Superior Court clerk at a subsequent date to answer for the charges.

While post-and-forfeit release and citation release both permit an arrestee to be promptly released, post-and-forfeit release results in dismissal of the case before it is ever seen by prosecutors or the Court, while citation release keeps the case against the arrestee alive, but merely delays its presentation to the court. It is undisputed that if Plaintiff's arrest for being "loud and boisterous" – a highly subjective offense subject to easy abuse – had been legitimate, it would have fallen within the class of cases for which citation release is appropriate. That it was not offered in this case is telling.

The Amended Complaint alleges that the Officers and the District had two distinct policies.  When there is probable cause to believe that a misdemeanor has been committed, the MPD makes citation release available to arrestees, because it knows that the charges are valid and will survive scrutiny.  Thus, there is no need to avoid third-party review of its unjustified arrest.  By contrast, when the police intentionally make unlawful arrests to punish illegitimately individuals, they do not offer citation release.  Since the arrestees are never presented in court there is no reason for either prosecutors or judges to review the officers' arrest, and by granting post-and-forfeit release to individuals who are falsely arrested, police avoid detection of their unlawful conduct. Amended Complaint ¶¶ 27, 33, 43, 78-80, 101, 103.  From this abuse of the post-and-forfeit system, a rational jury could affirmatively infer a design by the MPD to impose illegitimate punishment without facing the consequences of unlawful arrests.

Because there is no legitimate government interest in permitting post-and-forfeit release to be used punitively to extend the length of an unlawful detention, and, simultaneously, to shield the arrest from meaningful review, the Officers' abuse of the post-and-forfeit procedures in this and other cases cannot withstand constitutional

7

scrutiny. *See*, *e.g.*, *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) (Fifth Amendment rights of District of Columbia plaintiffs violated because racial segregation is not legitimate government interest); *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 447 (1985) (discrimination against politically unpopular group is illegitimate aim); *Hooper v Bernalillo City Assessor*, 472 U.S. 612, 618 (1985) (distinguishing between new immigrants and long-time residents in the distribution of benefits violates equal protection); *Zobel v. Williams*, 457 U.S. 55 (1982).

But even more striking is the fact that the District never once mentions that the Amended Complaint alleges that Plaintiff's disparate treatment was based on her exercise of her First Amendment rights to criticize the MPD. The District's failure to acknowledge that crucial fact underscores the weakness of its argument. Because Plaintiff's exercise of a fundamental liberty was at the base of the District's refusal to offer citation release, the disparate treatment violates the Fifth Amendment.[4] Amended Complaint ¶¶ 34, 41, 43, 45, 92-97, 101-109. Indeed, it has long been held that where a fundamental liberty has been denied to one group but not another, the government must show that its distinction between the two groups meets strict scrutiny – that it was narrowly-tailored to achieve a compelling government interest. *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 102 n.9 (1972) (noting that content-based discrimination among pickets implicates a fundamental liberty (the First Amendment) and violates the Equal Protection Clause of the Fourteenth Amendment). The Defendant can make no such showing here.

---

[4] The Due Process Clause of the Fifth Amendment, as opposed to the Fourteenth Amendment, imposes equal protection requirements upon the federal government and the District of Columbia. *Bolling v. Sharpe*, *supra*; *Calloway v. District of Columbia*, 216 F.3d 1, 6 (D.C. Cir. 2000).

8

In short, Plaintiff's Amended Complaint clearly alleges that she was denied the benefit of being offered citation release, and this denial was the result of her being in the class of individuals falsely arrested for nonprosecutable, nonexistent offenses. Amended Complaint ¶¶ 33, 43, 92-97, 104.  It further alleges that she was denied the benefit of being offered citation release as a result of her exercising her First Amendment rights to criticize the MPD.  Whether viewed under the rational-basis rubric (for the government's unjustified distinction between types of arrestees) or under strict scrutiny (that the distinction was based on the government's desire to punish her for exercising her First Amendment rights) Plaintiff has alleged that she was refused a right, benefit or privilege on the basis of an unlawful distinction, and has consequently articulated a valid equal protection claim under the Fifth Amendment. *Tele-Communications of Key West, Inc.*, 757 F.2d at 1340 (allegations that denial of access to cable customers sufficient to survive motion to dismiss under either rational basis test or under strict scrutiny, where First Amendment rights impacted by government action).

2.  The Complaint Alleges a Denial of Substantive Due Process.

In addition to the equal protection claim clearly stated in the Amended Complaint and as described above, Plaintiff has also stated a valid substantive due process claim.[5] "The Supreme Court has repeatedly held that the Due Process Clause includes a substantive component, which encompasses the right of individuals to be protected from arbitrary government action." *Turner v. District of Columbia*, 2006 U.S. Dist. LEXIS 12578, *12-13 (D.D.C. Mar. 7, 2006) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998); *Collins v. Harker Heights Tex.*, 503 U.S. 115, 126 (1992)).

---

[5]  The Due Process Clause of the Fifth Amendment guarantees that "[no] person shall be . . . deprived of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. V.

9

The District argues that Plaintiff has failed to allege misconduct that rises to the level of a substantive due process violation because, according to its own assessment, the conduct alleged in the Amended Complaint does not "shock the conscience." Motion to Dismiss at 7-8. The District supports its self-serving conclusion by relying upon two cases in which the Eight Circuit found that no constitutional violations occurred when the release of arrestees was delayed due to legitimate administrative processing. *See Stepnes v. Hennepin County,* 153 Fed. Appx. 410 (8th Cir. 2005); *Goldberg v. Hennepin County*, 417 F.3d 808 (8th Cir. 2005) (cited at Motion to Dismiss at 8). These cases, however, have no bearing on Ms. Smith's claims.

Ms. Smith does not allege merely that the length of time between the posting of her collateral and her release is, on its own, a deprivation of due process. Rather, Ms. Smith alleges that her arrest and subsequent prolonged detention arose from an express intent to punish, which is a clearly-established violation of due process.[6] *See*, *e.g., U.S. v. Salerno*, 481 U.S. 739, 746-47 (1987) (accepting that pretrial detention would violate substantive due process if it were punishment); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); *Schall v. Martin*, 467 U.S. 253, 273 (1984) (rejecting facial challenge to preventive detention of juveniles, but leaving open possibility that "case-by-case" consideration could reveal detentions made with intent to punish that violate due process); *Gaylor v. Does*, 105 F.3d 572, 577-78 (10th Cir. 1997) (failure to notify arrestee that bail could be posted to end detention was

---

[6] Additionally, unlike the cases cited by the District, the delay in releasing Plaintiff in this case was not based upon mere administrative snafus. Indeed, the District, aside from its comments that indicate an intent to punish Plaintiff by delaying her release, has never explained the delay.

10

punitive and thus violated due process; "a policy not to inform detainees of their bail status" would satisfy first element for municipal liability); *McMillian v. Johnson*, 88 F.3d 1554, 1557, 1564 (11th Cir. 1996) (plaintiff alleged "that state and local officials prosecuted and punished him for a crime that they knew he did not commit," and court held that "[d]ue process prohibits a state from punishing a pretrial detainee at all until he is lawfully convicted of a crime", and this right to be free of pre-trial punishment was clearly established).

Moreover, despite the District's protestations, the length of time between the posting of collateral and the eventual release is not dispositive of whether a substantive due process violation has occurred; rather, whether a delay was reasonable under the circumstances is an issue for the jury to decide. *See*, *e.g. Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir. 1988) (jury must determine whether the 11 hours it took for a sheriff to finish tasks relating to administrative discharge of detainee was reasonable); *Green v Baca*, 306 F. Supp. 2d 903 (C.D. Cal. 2004) (finding triable issues of fact existed as to whether sheriff's delay in releasing parolee was reasonable due to conflicting evidence concerning when sheriff first received notice that parolee was to be released and whether sheriff's policies were reasonable regarding responses to prisoner complaints of wrongful detention).

The circumstances surrounding Plaintiff's arrest and detention are sufficient to permit a jury to infer that the arrest constituted punishment prior to trial, based, among other things, upon the District's intent to punish Plaintiff. Plaintiff was arrested because the police wanted to teach her a lesson. The Amended Complaint is replete with allegations of the Officers' and the District's improper motives. These motives, and the

11

resultant punishment, can be seen in the Officers' and the District's abuse of post-and forfeit release, and in the gratuitous way they toyed with Mr. Marsoni by whisking Plaintiff away precisely when he left to retrieve the exact change they required.  They are also manifest in the Officers' calculated efforts to delay Plaintiff's release by thwarting that release at the scene, by conditioning her release upon her crying "like a good girl," by delaying that release an extra four hours beyond the completion of her release papers, and by inexplicably causing a routine release to extend some seven hours. Amended Complaint ¶¶ 19-21.  Plaintiff alleges that it was the District of Columbia's "policy, custom, or practice . . . and its failure adequately to train or supervise" officers which directly resulted in the deprivation of her constitutional right to be free of punishment prior to trial. Amended Complaint ¶ 109.

These allegations clearly point to actions by the District and the Officers that were *intended* to inflict as much punishment as was possible on Plaintiff prior to trial and while she was in custody – since the Officers knew, from the moment of her unlawful arrest, that there could never be a prosecution.  This is enough to state a claim for violations of Plaintiff's substantive due process rights. *See*, *e.g.*, *McMillian*, 88 F.3d at 1564 ("A showing of an intent to punish suffices to show unconstitutional pretrial punishment . . . . An intent to punish may be inferred when a condition of pretrial punishment is not reasonably related to a legitimate governmental goal.").

    3.    Plaintiff's Fifth Amendment Claims are Not Subsumed Within Her Fourth Amendment Claims.

According to the District, a civil rights plaintiff cannot allege serial violations of constitutional rights, and despite the ample authority supporting Plaintiff's Fifth Amendment claims under either equal protection or due process provisions, the District

categorizes Plaintiff's Fifth Amendment claims as "homeless." Motion to Dismiss at 9. The District seems to argue that because the defendants first violated Plaintiff's Fourth Amendment rights by arresting her with no justification, any subsequent constitutional violations are "subsumed" within that Fourth Amendment claim. *Id*. But the Defendant has cited no support for its far-fetched notion because there is none.

The only authority the District proffers is inapt. In *Albright v. Oliver*, 510 U.S. 266 (1994), the Supreme Court considered whether to recognize a new, previously unexplored substantive due process right "to be free from criminal prosecution except upon probable cause." *Id.* at 268. Rather than extend the due process clause in a novel way, the Supreme Court found that plaintiff's claim may have actually stated a Fourth Amendment violation. *Id.* at 273-75.

By stark contrast, Ms. Smith's Fifth Amendment claims do not require the Court to recognize a previously undiscovered substantive due process right or to inappropriately house a "homeless" claim. To the contrary, as shown above, the Amended Complaint sufficiently states two alternative, well-established theories of liability under the Fifth Amendment: that imposing punishment upon an arrestee prior to trial violates due process, and that differential treatment based on illegitimate purposes violates equal protection. As such, the District has come nowhere close to satisfying its burden on a motion to dismiss.[7]

**B.      The Use of "Post & Forfeit" Under These Circumstances Constitutes an Excessive Fine and an Excessive Bond Under the Eighth Amendment.**

---

[7] Indeed, the District raised identical arguments two years ago in a similar case pending before this Court; the Court rejected the arguments there, and should do so here. *See Ricks v. Barnes*, No. 05-1756 (HHK).

13

The District has also urged the Court to dismiss Ms. Smith's Eighth Amendment claims because the "fine was not excessive," in that it was not "grossly disproportionate[] to the gravity of [Ms. Smith's] offense." Motion to Dismiss at 10 (citing *United States v. Bajakajian*, 524 U.S. 321).[8]

The problem with the District's analysis is what it ignores: that no offense was actually committed. Because the "gravity of [Ms. Smith's] offense" was zero, Motion to Dismiss at 10, any fine is, by definition, disproportionate.

The Complaint alleges, *inter alia*,

- That Plaintiff was arrested without probable cause, for doing nothing more than voicing her complaints against the MPD. Amended Complaint ¶¶ 30, 47-50, 63-67, 86-97.

- That the Officers and the District knew that there was no probable cause to arrest or detain Plaintiff but did so anyway, based on their animus against those who criticize the MPD and in order to teach them a lesson. Amended Complaint ¶¶ 30-32, 108.

- That the Officers and the District never intended to bring charges against her, and had no grounds to do so. Amended Complaint ¶¶ 30, 47-50, 68-71, 86-91, 98-100.

- That the District, through its failure to adequately train and supervise its officers in the proper use of "post-and-forfeit" release, routinely demands the surrender of a fine for arrestee for whom the District had no probable cause to arrest and against whom the District never intended to file charges, in an effort to evade review of these unjustified arrests. Amended Complaint ¶¶ 33-46, 101-111.

These Eighth Amendment violations, and the others in the Amended Complaint, are sufficient to survive a motion to dismiss. Despite the District's attempts to argue otherwise, Ms. Smith does not assert that $25 would never be a fair amount to pay for "a disorderly conduct criminal charge that carries with it a potential penalty of up to $250 or imprisonment of up to 90 days, or both." Motion to Dismiss at 11. It is one thing for the

---

[8] The Eighth Amendment protects against (1) inflicting "cruel and unusual punishment"; (2) requiring "excessive bail"; and (3) imposing "excessive fines." U.S. Const. amend. VIII.

14

government to accept forfeited collateral as a fine when it otherwise could go forward with criminal charges. It is quite another to purposefully offer "post-and-forfeit" release in order to coerce a $25 collateral payment where charges cannot legitimately be brought. Indeed, even an otherwise modest $25 fine is excessive when it is maliciously fabricated to mete out extrajudicial punishment, just as any amount of force used by the police without probable cause and based on animus would constitute excessive force. *See*, *e.g.*, *Thornton v. City of Macon*, 132 F.3d 1395, 1400 (11th Cir. 1998) ("Under the circumstances [absence of probable cause], the officers were not justified in using any force . . . . Therefore, the district court properly denied the officers' motions for summary judgment.") (emphasis omitted); *United States v. Harrison*, 671 F.2d 1159 (8th Cir. 1982), *cert. denied*, 459 U.S. 847 (1982) (lack of provocation or need to use force would make any use of force excessive); *Agee v. Hickman*, 490 F.2d 210, 212 (8th Cir. 1974) ("the use of any force by officers simply because a suspect is argumentative, contentious, or vituperative" would be improper).[9]

### C. The Court Can Defer Ruling Until After Discovery, Since the Proof for Each Claim is the Same.

As an alternative, the Court simply need not address the District's arguments in its Motion to Dismiss, since those arguments are wholly academic. Plaintiff has raised First, Fourth, Fifth and Eighth Amendment violations, as well as a common law claim for false arrest against the District. Each of these allegations stems from the identical set of facts. Indeed, the discovery and proof for each of the constitutional claims will be the same

---

[9] The District argues again, this time in passing and without any authority whatsoever, that Plaintiff's Eighth Amendment Claims are somehow subsumed within her Fourth Amendment claim. As described above, there is no authority for the District's position—that multiple, distinct, constitutional claims cannot be brought when they stem from a single unlawful arrest. Indeed, these Eighth

whether the claims lie under the First, Fourth, Fifth, and/or Eighth Amendments. Only the remedy may differ.

Under these circumstances, the Court would be justified in permitting the case to move forward through discovery prior to ruling. *Alexander v. Fed. Bureau of Investigations*, 971 F. Supp. 603, 609 (D.D.C. 1997) (deferring ruling on motion to dismiss when further discovery would be helpful to the Court); *City of Rome v. United States*, 450 F. Supp. 378, 380 (D.D.C. 1978) (deferring ruling on motion to dismiss several interrelated constitutional claims concerning Voting Rights Act until after full discovery and summary judgment briefing). Should the Court not deny the District's Motion, which it should, an alternative efficient use of judicial resources would be for the Court to exercise its discretion to defer ruling until after full discovery is completed.

Accordingly, the District's Motion to Dismiss Counts XII and XIII of the Complaint should be denied.

Respectfully submitted,

    /s/   Joshua Ian Rosenstein
John Moustakas (DC Bar # 422076)
Joshua Ian Rosenstein (DC Bar # 482585)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346 – 4000
(202) 346 – 4444 (fax)

---

Amendment violations are not previously-unrecognized or otherwise homeless. They are in line with long-standing precedent and clearly-established rights under this particular Amendment as well.

16

                    Arthur B. Spitzer (DC Bar #235960)
                    Frederick V. Mulhauser, (DC Bar # 455377)
                    American Civil Liberties Union
                       of the National Capital Area
                    1400 20th St., NW, Suite 119
                    Washington, DC 20036
                    (202) 457-0800
                    (202) 452-1868 (fax)

                    Attorneys for Plaintiff Lindsay Smith

June 11, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
LINDSAY SMITH                       )
                                    )
            Plaintiff,              )
                                    )
    v.                              )
                                    )
THE DISTRICT OF COLUMBIA,           )
    *et al.*,                       )   Case No.: 06-1871 (HHK)
                                    )
            Defendants.             )
_____)

# ORDER DENYING DISTRICT OF COLUMBIA'S MOTION TO PARTIALLY DISMISS PLAINTIFF'S AMENDED COMPLAINT

Upon consideration of the Defendant's Motion to Dismiss, Plaintiff's Opposition thereto, any Replies, and the facts and law presented, it is this ____ day of _____ , 2007:

HEREBY ORDERED that the Defendant's Motion to Dismiss is DENIED.

_____
The Honorable Henry H. Kennedy
United States District Court for the District of Columbia