## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LINDSAY HUTHNANCE,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | **Civil Action No. 06-CV-1871 (HKK)** |
| **v.** ] | |
| ] | |
| **DISTRICT OF COLUMBIA,** *et al.,* ] | |
| ] | |
| **Defendants.** ] | |
| ] | |

### DEFENDANT DISTRICT OF COLUMBIA'S MOTION FOR PROTECTIVE ORDER

Defendant District of Columbia, by counsel and pursuant to Fed. R. Civ. P. 26(c), moves this Court for the entry of a protective order which upholds the non-disclosure of privileged information requested by Plaintiff, and restricts inquiries that are irrelevant and/or overly broad, burdensome and costly to this Defendant.

The grounds for this Motion are more fully set forth in the accompanying Memorandum of Points and Authorities, which is attached hereto and incorporated by reference.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

 /s/
PATRICIA A. JONES [428132 ]
Chief, General Litigation, Section IV

_/s/__Eric S. Glover_____

ERIC S. GLOVER
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295

## CERTIFICATE PURSUANT TO RULE 7(m)

I hereby certify that on June 3, 2008, and June 9, 2008, the undersigned contacted plaintiff's counsel to obtain consent to the relief sought in this motion. Plaintiff opposes the requested relief.

/s/__Eric S. Glover_____

Eric S. Glover
Assistant Attorney General

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LINDSAY HUTHNANCE,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ]    **Civil Action No.  06-CV-1871 (HKK)** |
| **v.** | ] |
| | ] |
| **DISTRICT OF COLUMBIA,** *et al.,* | ] |
| | ] |
| **Defendants.** | ] |
| | ] |

DEFENDANT DISTRICT OF COLUMBIA'S MEMORANDUM
OF POINTS AND AUTHORITIES IN SUPPORT OF ITS
MOTION FOR PROTECTIVE ORDER

In support of its Motion for Protective Order, defendant District of Columbia
(hereinafter "the District"), hereby states as follows:[1]

1)      This action stems from Plaintiff Lindsey Huthnance (formerly Smith),
who claims she was falsely arrested for disorderly conduct by defendants Officers Liliana
Acebal, James Antonio and Jose Morales on or about November 15, 2007, at the 7-
Eleven convenience store located at 3146 Mount Pleasant Street, N.W.  See First
Amended Complaint, generally.  Plaintiff further avers that the defendants were negligent
in their interaction with her, intentionally inflicted emotional distress upon her, assaulted
and battered her, and violated her First, Fourth, Fifth and Eighth Amendment Rights.  *See*
First Amended Complaint, at ¶¶ I through XIII.

2)      On February 5, 2008, the Plaintiff served the District with her First Set of
Interrogatories and Requests for Production of Documents purportedly in an effort to
establish a District custom, practice and/or policy for using the post-and-forfeit procedure

---

[1] The District defendants intend to renew their dispositive motion.

indiscriminately.  While many of Plaintiff's discovery requests lack relevance, they require the disclosure of confidential and/or privileged information, and/or seek overly broad, burdensome, and costly discovery for which this Defendant now seeks protection. See Plaintiff's Discovery Requests at Exhibit A.

     3)    Fed. R. Civ. P. 26(b)(1) provides that "a party may obtain discovery regarding any matter, not privileged, that is relevant to the claim . . ."  Fed. R. Civ. P. 26(b)(2)(C) provides that the "frequency or extent of the use of the discovery methods otherwise permitted under these rules and by any local rules shall be limited by the court if it determines that the burden or expense of the proposed discovery outweighs its likely benefit…"

     4)    Fed. R. Civ. P. 26(c) provides that the Court may, for good cause, issue an order to protect a party from … undue burden or expense, including on or more of the following:

     "(A)  forbidding the disclosure or discovery;

     (B)   specifying terms, including time and place, for the disclosure or discovery;

     …

     (D)   forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters…"

As shown below, the District is entitled to a protective order governing the non-disclosure of responses to Plaintiff's discovery requests.

### **Interrogatory/Document Production Requests**

    Interrogatory Question #1:  List the current home addresses of each of the Individual Defendants.

Request for Production of Documents # 4.  For each of the Individual Defendants, [provide] all Documents constituting their personnel records, including all Documents constituting, referring to, or relating to their performance evaluations, informal and formal complaints filed against them and any disciplinary actions taken against them.

**<u>Reason for Non-Disclosure and/or Entitlement to Protective Order:</u>**  Fed. R. Civ. P. 26 provides that a party is entitled to relevant discovery.  The home addresses and personnel records of the named defendants are not relevant to this litigation.  Moreover, this defendant is precluded by statute from releasing the home addresses or personnel records of its employees without their consent and/or absent Court order.  *See* D.C. Official Code § 1-631.01 (all official personnel records of the District government shall be established, maintained, and disposed of in a manner designed to ensure the greatest degree of applicant or employee privacy….), § 1-631.03 (It is the policy of the District government to make personnel information in its possession or under its control available upon request to appropriate personnel and law-enforcement authorities, except if such disclosure would constitute an unwarranted invasion of personal privacy or is prohibited under law or rules and regulations issued pursuant thereto); § 2-534(a) (The following matters may be exempt from disclosure under the provisions of this subchapter: (2) Information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy).  *See also* D.C. Personnel Reg. § 31A District Personnel Manual 3111.6j.  Not only are the request irrelevant, and in violation of the personal privacy of the named defendants, the disclosure would compromise the safety of the named MPD officers.

Interrogatory Question # 8:   For each of the years 2004-2007, provide the total number of MPD arrests for Disorderly Conduct: (a) in which the post and forfeit was involved; or (b) in which citation release was involved; or (c) in which neither procedure was utilized.[2]

ANSWER: Objection as overly broad and burdensome, and as to relevance. Notwithstanding the objections and without waiver thereto, upon information and belief, the MPD cases involving post and forfeit were as follows: 2004 = 1,397; 2005 = 1,194; 2006 = 1,411; 2007 = 1,326. MPD arrest involving citation releases were as follows: 2004 = 0; 2005 = 0; 2006 = 5; 2007 = 6. In addition, MPD arrests involving neither were as follows: 2004 = 9,340; 2005 = 10,709; 2006 = 13,362; 2007 = 13,273.

Interrogatory Question # 9: For each of the arrests identified in response to Interrogatory 8, provide the following information:

      a.  Name of Arrestee
      b.  Date and Time of Arrest
      c.  Arrest Number
      d.  Location of Arrest
      e.  Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)
      f.  Whether Arrestee was permitted to post and forfeit, was given citation release, or neither[3].

Interrogatory Question # 10:   For every arrest between November 15, 2003 and November 16, 2007 involving post and forfeit or citation release for all offenses other than Disorderly Conduct, provide the following information:

      a   Name of Arrestee
      b.  Date and Time of Arrest
      c.  Arrest Number
      d.  Location of Arrest
      e.  Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)

---

[2] The District has provided a response to the Interrogatory and is only listing it as it is related to interrogatory # 9.

Whether Arrestee was permitted to post and forfeit, was given citation release, or neither.

Interrogatory Question # 12:  All Documents related to arrest made between November 15, 2003 and November 16, 2007 involving post and forfeit release, citation release or arrest for Disorderly Conduct.

Requests for Production of Documents No. 12:  All Documents related to arrests made between November 15, 2003 and November 16, 2007 involving either post and forfeit release, citation release, or arrest for Disorderly Conduct.

Requests for Production of Documents No. 13.  All Documents referring or relating to arrests made by or involving the participation of any of the Individual Defendants in the following circumstances: (a) where post-and forfeit release was either offered or utilized; (b) where citation release was either offered or utilized; or (c) where arrestees were charged with Disorderly Conduct.

**Reason for Non-Disclosure and/or Entitlement to Protection:**  Plaintiff's requests are overly broad and burdensome and would exact undue costs on this Defendant. Therefore, the District requests that the Court grant it a protective order denying answers to the above-mentioned request.  The burden and expense far outweigh the value of the requested discovery.

Plaintiff avers that after she was arrested, she was provided the opportunity to post-and-forfeit in lieu of citation release.  *See* First Amended Complaint, generally. The post-and-forfeit procedure is purely discretionary, as is citation release.  *See* D.C. Official Code § 23-1110(b)(1), (2), and (3); see also General Order 308-02, dated June 20, 1980, at pg. 6, hereto attached as Exhibit B.   Plaintiff was not required to post-and-forfeit, nor was she forced to do so.  Instead, Plaintiff elected to post-and-forfeit.  *See*

Collateral/Bond Receipt, hereto attached as Exhibit C.  Plaintiff now seeks volumes of documents from the District reflecting MPD officers' discretionary decisions to afford arrestees the opportunity for citation release in lieu of post-and-forfeit.  *See* Pl.'s Interrogatories No. 9, 10, and 12, and Requests for Production of Documents Nos. 12, and 13, at Exhibit A.  As set forth in the District's Answer to Interrogatory #8, 52,023 records are responsive to Plaintiff's request for information and/or documents which reflect arrestees who were given the opportunity to post-and-forfeit for disorderly conduct, for citation release for disorderly conduct, and/or for neither.  Although on June 9, 2008, Plaintiff agreed to reduce her requests to the period January 1, 2004, to December 31, 2005, 22,640 records would still have to be pulled and reviewed to disclose the information requested in Interrogatories Nos. 9 and 10 and Requests for Production Nos. 12, and 13.

The D.C. Metropolitan Police Department's Records Branch simply does not have the manpower to conduct the requested search.  *See* Declaration of Deloris Hunter, Director of the Police Business Services Division of the District of Columbia Metropolitan Police Department, hereto attached as Exhibit D.   According to Ms. Hunter, in order to retrieve the requested files, a staff member would have to manually search the arrest files at the Record Branch office.  She estimates that the search for plaintiff's request would take 3,773.33 days at a cost to the Record Branch of $181,104, not including the copying charges.  The District submits that this would be an undue burden of time and cost to the District, and will not assist Plaintiff in establishing her claims against the District or the individually named Defendants.

The Office of Police Complaints has also conducted a preliminary search for records that may be responsive to plaintiff's requests. According to Thomas Sharpe, Deputy Director of the Office of Police Complaints, the Office may have 180 complaints that may be responsive to Plaintiff's discovery requests. Again, a staff person would have to manually retrieve the requested documents at undue expense and burden to the Department. *See* Thomas Sharpe Declaration, at Exhibit E.

In *Hammerman v. Peacock,* 108 F.R.D. 66 (D.D.C. 1985), the Court noted that Fed. R. Civ. P. 26(b)(1) gave the court the power to limit discovery sought. In limiting the scope of discovery, the Court may consider whether "the discovery is unduly burdensome or expensive, taking in account the needs of the case, the amount in controversy, the limitations on the parties' resources and the importance of the issues at stake in litigation. *Id* at page 3. The requested documents will not evidence whether the District's officers abused their discretion to offer citation release in lieu of post-and-forfeit when an individual is arrested for disorderly conduct. More specifically, whether based on District practices, officers violate the constitutional rights of individuals who have been arrested for exercising their First Amendment rights. Because the burden to the District far outweighs Plaintiff's need for the requested documents, this Defendant is entitled to an order of protection precluding the production of the requested information.

WHEREFORE, defendant District of Columbia requests this Court to grant its motion for a protective order.

Respectfully submitted,

PETER J. NICKLES

Interim Attorney General for the District of
Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

  /s/
PATRICIA A. JONES [428132 ]
Chief, General Litigation, Section IV

  /s/   Eric S. Glover
ERIC S. GLOVER
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
(202) 442-9754; (202) 727-6295

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LINDSAY HUTHNANCE,** | ] |
| | ] |
| **Plaintiff,** | ] |
| | ]    **Civil Action No.  06-CV-1871 (HKK)** |
| **v.** | ] |
| | ] |
| **DISTRICT OF COLUMBIA,** *et al.,* | ] |
| | ] |
| **Defendants.** | ] |
| | ] |

**ORDER**

Upon consideration of Defendant District of Columbia's Motion for Protective

Order, plaintiff's opposition thereto, and the entire record herein, it is this _____ day of

_____, 2008, hereby:

ORDERED:  that the District's Motion is GRANTED for the reasons set forth

therein, and it is,

FURTHER ORDERED: the District shall not disclose the home addresses and/or

personnel files of its employees; and it is,

FURTHER ORDERED:  that the District is not required to produce documents

as related to plaintiff's Interrogatory Requests Nos. 1, 9, 10, and 12, and document

requests Nos. 12, and 13.

SO ORDERED.

_____
JUDGE,
U.S. District Court for the District of Columbia

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDSAY HUTHNANCE,          )
                             )
                             )
                             )
        Plaintiff,           )
                             )
    vs.                      )
                             )   Case No. **06-CV-1871 (HKK)**
DISTRICT OF COLUMBIA, *et al.* )
                             )
        Defendants.          )
                             )
                             )

## PLAINTIFF'S FIRST SET OF INTERROGATORY REQUESTS
## TO DEFENDANT DISTRICT OF COLUMBIA

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff hereby requests that Defendant District of Columbia, within 30 days of service, answer separately and fully in writing, under oath, the interrogatories set forth below.

### Definitions

A.      "Individual Defendants" refers to Officer L. Acebal, Badge Number 1313; Officer J. Antonio, Badge Number 4409; and Officer J. Morales, Badge Number 273.

B.      "MPD" refers to the District of Columbia Metropolitan Police Department.

C.      The term "policies, procedures, or practices" refers to formal or informal policies, procedures, or practices, whether written or conveyed orally.  Where you are asked to identify or describe "policies, procedures, or practices," please set forth in as much detail as possible the specific policy, procedure, or practice, including the manner in which it is/was conveyed to members of the Metropolitan Police Department.

D.      "Document" is used in the broadest sense permissible under the Federal Rules of Civil Procedure, and means any writing (whether printed, typed, photocopied, handwritten,

recorded, stored, produced, or reproduced), tangible thing, or any other compilation of information in the possession, custody, or control of the District of Columbia, any other Defendant, or any employee or official of the District of Columbia, including, without limitation, any: (a) advisories, agreements, appointment books, articles, bills, binders, books, brochures, bulletins, calendars, charts, checks, circulars, communications (intra-office, inter-office, external, or other), computer printouts, confirmations, contracts, correspondence, desk-pads, diaries, drafts, drawings, e-mails, exhibits, facsimiles, financial statements, flyers, forecasts, graphs, guidelines, invoices, instructions, Internet printouts, letters, lists, logs, Lotus Notes, manuals, meeting minutes, memoranda, messages, microfiche, microfilm, notebooks, notes, outlines, pamphlets, periodicals and clippings from periodicals, pleadings, policies, post-it notes, projections, questionnaires, receipts, records, reports, rules, schedules, statements, studies, subscription agreements or pages, summaries, telecopies, telefaxes, telegrams, telephone messages, telexes, transcripts, translations, treaties, voicemail transcriptions, and worksheets; (b) graphic or audio records or representation (including, without limitation, photographs, charts, drawings, graphs, microfiche, microfilm, videotapes, recordings, and motion pictures); (c) electronic, Internet, magnetic, mechanical, or optical data, records, or representations (including, without limitation, tapes, cassettes, computer discs, recordings, computer memories, or other electronic data compilations); and (d) drafts and final versions and all originals and copies that differ from originals in any respect (including, without limitation, differences due to handwritten notes, editing, interlineations, blind copies, or other alterations).

    E.    Except where otherwise indicated below, "Identify" means:

        1.    when used in reference to a natural person, to state his or her name, present or last known address, present or last known employer, and, for

MPD employees, badge number, position or job title at time of employment with the District of Columbia (whether as a consultant, part-time employee, full-time employee, or other type of employment) and dates of employment with the District of Columbia.

2. when used in reference to any entity other than a natural person, to state the name and present or last known address of such entity to be identified, the present or last known telephone number of such entity, and the name of any natural person who can be contacted as a representative or agent of such entity.

3. when used in reference to any Document, to state the names of the author(s), addressee(s), and all known or presumed recipients, the title, the subject matter, and the date of such Document.

4. when used in reference to any statement, to state the date of the statement, the person making it, the person receiving it, and the statement's content.

F. "Post and forfeit" refers to the procedure defined in D.C. Code § 5-335.01 (2007).

G. "Plaintiff" refers to Lindsay Huthnance, formerly known as Lindsay Smith.

## Instructions

A. All uses of the conjunctive include the disjunctive (and vice versa). All words in the singular include the plural (and vice versa). All uses of the word "all" include "any" (and vice versa). All uses of the word "each" include "every" (and vice versa). The use of a verb in any tense encompasses the use of the verb in all tenses.

B.   Each interrogatory shall operate and be construed independently. Unless otherwise indicated, no paragraph limits the scope of any other paragraph.

C.   Except as provided in Federal Rule of Civil Procedure 33, do not incorporate by reference facts contained in Documents. Specify the facts, allegations, names, or other information requested by each interrogatory regardless of whether such information is set forth elsewhere.

D.   If a request is made for description or identification of Documents that are no longer in your possession, custody, or control, state the following: when such Documents were most recently in your possession, custody, or control; what disposition you made of them; who is the person or entity currently in possession, custody, or control of such Documents; and the identity of any persons or entities referred to in the Document or sent a copy of the Document. If the Documents have been destroyed, Identify the person who destroyed the Documents and the person who directed that the Documents be destroyed; state when they were destroyed; and state the reasons the Documents were destroyed.

E.   If you object to any interrogatory, state the basis for your objection, explain in detail why you contend that the interrogatory is subject to the objection, and respond to the interrogatory to the extent that you consider it not to be objectionable.

F.   If the information called for by an interrogatory is unknown to you, explain the reason for your inability to respond and provide your best estimate of the information requested and the basis for that estimate.

G.   Answers to these interrogatories should include the identification of all relevant Documents.

H.     You are reminded to supplement and amend your response to each interrogatory in accordance with Federal Rule of Civil Procedure 26(e).

## INTERROGATORIES

1.     List the current home addresses of each of the Individual Defendants.

2.     Identify the immediate supervisors of each of the Individual Defendants on November 15th and 16th, 2005.

3.     Identify each MPD officer present in the 3100 Block of Mount Pleasant NW, Washington, D.C., whether inside the 7-Eleven, on the street, or elsewhere, from any time between 11:00 p.m. on November 15, 2005 through 3:00 a.m. on November 16, 2005, and describe what, if any, contact each had with Plaintiff.

4.     Identify the station crew on duty at the time of Plaintiff's transportation to the MPD station or substation to which she was brought on November 16, 2005.

5.     Identify each individual who interacted with Plaintiff or authored any of the police paperwork relating to her arrest or release between November 15th and 16th, 2005.

6.     Identify anyone involved in informing Plaintiff or Adrien Marsoni that Plaintiff's release could be secured by payment of a $25.00 bond on the scene.

7.     Explain whether it was consistent with MPD policies, procedures, and practices officers to solicit payment of a $25.00 bond on the scene of the arrest to obtain Plaintiff's immediate release and, if so, how.

8.     For each of the years 2004-2007, provide the total number of MPD arrests for Disorderly Conduct:  (a) in which the post and forfeit was involved; or (b) in which citation release was involved; or (c) in which neither procedure was utilized.

9.    For each of the arrests identified in response to Interrogatory 8, provide the following information:

      a.  Name of Arrestee
      b.  Date and Time of Arrest
      c.  Arrest Number
      d.  Location of Arrest
      e.  Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)
      f.  Whether Arrestee was permitted to post and forfeit, was given citation release, or neither.

10.    For every arrest between November 15, 2003 and November 16, 2007 involving post and forfeit or citation release for all offenses other than Disorderly Conduct, provide the following information:

      a.  Name of Arrestee
      b.  Date and Time of Arrest
      c.  Arrest Number
      d.  Location of Arrest
      e.  Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)
      f.  Whether Arrestee was permitted to post and forfeit, was given citation release, or was held

11.    Including the arrests identified in Interrogatories 7 and 9, provide the total number of MPD arrests that involved the post and forfeit procedure between November 15, 2003 and November 16, 2007.

12.    For each Complaint that has been made to or filed with the MPD, the Office of Police Complaints, or the Office of Professional Responsibility (or any other municipal entity) about or against any of the Individual Defendants, provide the following information:

      a.  Name and Address of Complainant
      b.  Date of Complaint
      c.  Nature of the Complaint
      d.  Date of Incident about which Complaint was made
      e.  Name and Badge Number of each MPD Officer, including any of the Individual Defendants, named in Complaint
      f.  Disposition of Complaint, including any disciplinary action taken

13.    Identify whether the date and time an individual who is arrested is released is recorded, and if so, identify where and for how long this information is stored.

14.    Identify any statement made by the District of Columbia and its agents and the Individual Defendants, relating to Plaintiff's arrest, detention and release or the litigation that resulted therefrom.

Respectfully submitted,

_____
John Moustakas (DC Bar # 422076)
/s/ Sarah Keast (DC Bar # 493632)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser (DC Bar # 455377)
American Civil Liberties Union
     of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Plaintiff Lindsay Huthnance

- 7 -

**CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of February, 2008, I caused a copy of the foregoing

"Plaintiff's First Set of Interrogatory Requests to Defendant District of Columbia" to be served

by hand delivery to counsel for the defendants at the address indicated below:


Eric S. Glover
Assistant Attorney General
Office of Attorney General
441 4th Street, N.W., 6th Floor North
Washington, D.C.  20001




_____
Manas Mohapatra

 **Metropolitan Police Department Washington D.**

| Subject: | Series | Number | Change |
|----------|--------|--------|--------|
| **Nuisances, Incidentals, Defects And PD Form 61D (Violation Citation)** | **308** | **02** | |
| | Effective Date **June 20, 1980** | | |
| | Revision Date * | | |

The purpose of this order is to establish policy and procedures for handling nuisances, incidentals, defects in public space and the issuance of PD Form 61D. This order consists of the following parts:

PART I Responsibilities and Procedures for Members of the Department

A.    Nuisances to be abated.
B.    Reporting Incidentals.
C.    Accidents involving Defects in Public Space.
D.    Damage to District of Columbia Government Property.
E.    Violation Citations.

PART II Responsibilities and Procedures for Special Assignment Personnel

A.    Station Clerks.
B.    Vending Coordinator.

PART III Responsibilities and Procedures for Supervisory and Command Personnel

A.    Commanding Officers.
B.    Identification and Recording Division.
C.    Court Liaison Division.


PART I

A.    <u>Nuisances to be Abated</u>.
      Any member who discovers or whose attention is directed to a nuisance as described in Title 5, Section 504 of the D.C. Code (See Attachment "A") shall:

      1.    Prepare a PD 251 (Event Report) to include:

            a.    An accurate description of the nuisance.
            b.    The exact location of the lot.
            c.    The lot and square number.
            d.    The name and address of the owner of the property.

NOTE:    Items b, c, and d are available .y calling the Maps and
         Title Section, Department of Finance and Revenue.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 2 of 12 |

2.    Notify the owner of record by one of the following methods:

    a.    If the owner can be served within the issuing
       district, the issuing officer shall prepare PD 166
       (Notice to Abate a Nuisance) in triplicate and serve
       the property owner with the original.

NOTE:    Title 5, Section 505 of the D.C. Code specifies that the
notice will be deemed to have been served if left at the usual
residence or place of business of the person to be notified, with a
person of suitable age and discretion then resident therein or
employed therein. Service on a corporation may be made on the
president, secretary, treasurer, general manager, or any principal
officer Of such corporation.

    b.    If the owner must he served by another district, the
       issuing officer shall prepare PD 166 in triplicate.
       The original and both copies shall be forwarded via
       department mail to the serving district that district
       shall serve the property owner with the original. The
       two copied copies shall be returned via department
       mail by the serving district to the issuing district.

    c.    If the owner cannot be served within the District of
       Columbia, the issuing officer shall:

       (1)    Notify the Department of Economic Development
          (DED). Office of Licenses and Permits for real
          property occupied by a dwelling of any kind, or

       (2)    Notify the Department of Environmental Services
          (DES) for vacant lots, commercial, or industrial
          property.

       (3)    Enter, on PD 251, the time, date, and the name of
          the person notified. The agency notified shall be
          responsible for notifying the property owner and
          assuring abatement of the nuisance.

3.    Turn in the copied copies of PD 166 to the station clerk.

4. Follow-up on his original report to assure that the nuisance has been abated.

   a. If PD 166 has been served and the nuisance has not been abated after 5 days from the date of service, the issuing officer shall issue PD 61D (Violation Citation) to the property owner citing "Maintenance of a Nuisance on Property". The collateral for the violation is $100.00.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 3 of 12 |

   b. If the person to be served lives in another district, both copies of PD 61D shall be forwarded via department mail to the serving district and that district shall be responsible for serving the property owner with the original. The second copy of PD 61D shall be copied and returned via department mail to the issuing district for filing in the Citation Violation File.

   c. If PD 61D has been served and, after 15 days from the date of service, the property owner has neither abated the nuisance nor requested a court date on the previously issued PD 61D, the issuing officer shall present the facts, i.e., the element file copies of PD 166 and PD 61D, and all other information required by General Order 702.1 (Arrest and Bench Warrants), to the Office of the Corporation Counsel (OCC) for issuance of a warrant.

5. Prepare PD 252 (Supplement Report) after the nuisance has been abated by the property owner. In the event the nuisance is not abated, prepare PD 252 listing all attempts to bring about compliance with the law, i.e., PD 51D issued, date, and time warrant applied for, date, and time, include an explanation if the warrant was denied.

B. Reporting incidentals.
Any member who discovers or whose attention is directed to an incidental shall:

1. Notify the proper authority as described in Attachment "B".

2. Make the appropriate entry on the district's Incidental Book to include:

   a. The type of incidental being reported.
   b. The exact location of the incidental.
   c. The date and time observed.

> d.   The name of the person observing the incident if other than the reporting officer.
> e.   The date, time, name and agency of the person notified.
> f.   The reporting officer's name and badge number.
> g.   The complaint number, if a PD 251 or a PD 10 (Traffic Accident Report) is prepared.

C.   Accidents Involving Defects in Public Space.
Any member who discovers, or whose attention is directed to, an accident involving injuries or property damage due to defects in public space shall:

> 1.   Take complete charge of the scene.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 4 of 12 |

> 2.   Where possible, see that nothing is touched or moved.
>
> 3.   Give immediate attention to any injured person making sure that medical care is obtained, if needed.
>
> 4.   Obtain the names, addresses and statements from all witnesses and persons involved.
>
> 5.   If a private vehicle is involved, record in his notebook a list of all pertinent articles which may be found in or near the car, such as alcoholic beverage or narcotic containers; the location and condition of Street lights; the exact condition of the street or sidewalk; and If the accident occurred at night, whether red lanterns had been placed on the obstruction or defect in public space, their number and location, whether or not they were Lighted, and if not lighted, the last time they were observed lighted, as well as any other facts that the member believes to be relevant.
>
> 6.   Refrain from taking any measurements or photographs of the condition unless it is likely to change before the Investigative Section, OCC, arrives to take its own measurements.

NOTE:    This shall not be construed as relieving members from making measurements for the preparation of PD 10 or CC Form 3 (Vehicle Accident Report).

> 7.   Mark with a yellow grease crayon all pertinent locations such as the position of cars, points of impact, skid marks, broken glass, and defects in the sidewalk,

8.  Refrain from making admissions or expressing an opinion indicating ideas concerning liability on the part of anyone.

9.  Notify the proper authority and make the appropriate entry n the Incidental Book as specified in Part 1B.

10. Notify the Investigative Section, OCC, as described in Attachment

11. Prepare PD 251 or PD 10, as applicable, to include:

   a.  The exact location of the obstruction or defect.

NOTE:    Members shall, when possible, have the injured person accompany them to the location where the accident took place so that the injured person may point out the exact location.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 5 of 12 |

   b.  The exact position of any vehicle involved, the location and length of any skid marks, and the location and amount of any glass.

   c.  The exact nature of any damage to property.

   d.  The condition of the street or sidewalk as to whether or not any defects were existent.

   e.  Weather conditions.

   f.  Whether anyone involved was charged with any violation of the traffic or other regulations.

   g.  The name of the hospital and doctor giving treatment, the nature of the injuries and whether or not the injured person was admitted, released or refused treatment.

   h.  The notification to the Investigative Section, OCC.

   i.  The notification to any other authority as specified in Part 1B.

NOTE:    Unless an officer actually witnesses the accident his report shall be written as having been reported

to him and not as he reports from actual knowledge.

D.    **Damage to D.C. Government Property**
      Any member who discovers or whose attention is directed to an
      accident involving damage to fire hydrants, water drinking
      fountains, Street lamps, traffic lights, magnetic traffic signal
      detectors, or fire alarm boxes shall:

      1.    Notify the investigative Section, OCC.
      2.    Prepare PD 251 or PD 10, as applicable, to include:

            a.    The extent of the damage.
            b.    A description of how the damage occurred.
            c.    The name of the person responsible for the damage.
            d.    The name of the person's insurance company.
            e.    Whether the person responsible for the damage is
                  willing to pay to repair it.
            f.    The date, time, and name of the person notified at the
                  investigative Section, OCC.

      3.    Make the appropriate entry on the incidental Book.
      4.    Make the appropriate notifications as required in Part 1B.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 6 of 12 |

E.    **Violation Citations.**

      1.    PD Form 61D (Violation Citation) may be issued for all
            violations coming under the jurisdiction of the Superior
            Court for which collateral may be accepted by the
            department. (See General Order 503.3, Attachment A,
            Distribution E, for a list of these violations).

      2.    PD Form 61D shall not be issued to persons having
            diplomatic immunity nor to juveniles.

      3.    Verbal warnings may be issued in lieu of PD Form 61D when,
            in the judgment of the member, a situation is at hand that
            can best be resolved through the issuance of a verbal
            warning.

      4.    Warning Citations.

            a.    Warning Citations shall only be issued for first
                  offense violations of the Vending Regulations.

    b.   Warning Citations shall not be issued to persons who
        reside outside the Washington Metropolitan Area
        (defined as any point <u>outside</u> a 25 mile radius of the
        U.S. Capitol building) who are <u>vending without a
        license</u>. Persons who reside outside the Washington
        Metropolitan Area who are vending without a license
        shall be summarily arrested and transported to the
        district station house for processing.

    c.   Persons residing within the Washington Metropolitan
        Area (defined as any point extending to a 25 mile
        radius of the U.S. Capitol building) who are vending
        without a license may be issued a Warning Citation or
        a Violation Citation if, in the issuing officer's
        judgment, the vendor will immediately cease vending.
        If the officer believes that the vendor will continue
        vending without a license, the vendor shall be
        summarily arrested and transported to the district
        station house for processing.

5.   Preparation instructions for Violation Citations and
    Warning Citations are contained in the Field Report Writing
    Handbook.

6.   Distribution Instructions.

    a.   Violation Citations.
        1)  White — to violator.
        2)  Yellow - retain.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 7 of 12 |

    b.   Warning Citations.
        1)  White-retain.
        2)  Yellow - to violator.

    c.   The appropriate copy of the Violation Citation or the
        Warning Citation shall be turned over to a section
        sergeant before checking off duty.

7.   Obtaining Warrants.

    a.   The issuing officer shall be responsible for obtaining
        warrants for PD 61Ds that he has issued.

    b.   If, after 15 days from the date of service, the
        violator has neither requested a court date nor

forfeited collateral, the issuing officer shall present the facts, i.e., the element file copy of PD 61D and all other information required by General Order 702.1 (Arrest and Bench Warrants), to the Office of the Corporation Counsel (OCC) for issuance of a warrant.

c.   If the Corporation Counsel approves the warrant, the PD Form 61D shall remain at the OCC stapled to the warrant application.

d.   If the Corporation Counsel disapproves the warrant the PD Form 61T) shall be refilled in the element's Violation Citation File. The 15 Day Suspense Book shall he annotated to reflect "No Papers" along, with the name of the prosecutor who "No Papered" the case.

8. Vending Violations.

a.   If the violation involves non-compliance with the Vending Regulations, the officer shall request that the vendor's name be checked through the WALES Complainant Name File. inquiries shall be made as follows:

   1)   COMP/NAME/Last Name, First Name, Middle Name, or

   2)   Last Name, First Name, Middle Name

b.   If the Complainant Name File indicates that the vendor has not received a previous Warning Citation (PD 61D) the officer shall acquaint the vendor with the city's Vending Regulations and issue the vendor a Warning Citation (PD 61D).

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 8 of 12 |

c.   If the Complainant Name File indicates that the vendor has received a previous Warning Citation (PD 61D) for a violation of any of the Vending Regulations, the officer shall issue the vendor a Violation Citation (PD 61D).

d.   Whenever a Violation Citation (PD 6 1D) is scheduled for court, the issuing officer shall respond for papering on the stipulated court date to the Office of the Corporation Counsel, with the white copy and the yellow copy of the Violation Citation (PD 61D) and the

white copy of the previously issued Warning Citation (PD 61D). The white copy of the previously issued Warning Citation (PD 61D) shall be obtained by calling the First District Vending Coordinator.

9. Trash Violations.

   a. Enforcement of trash, garbage, and health regulations as contained in the Police Regulations and the D.C. Rules and Regulations shall first be accomplished by the issuance of a verbal warning to correct the existing condition which is in violation.

   b. Failure to comply with the verbal warning within a reasonable amount of time (not to exceed 7 days) without a valid excuse shall lead to the issuance of a Violation Citation (PD 61D).

   c. Commissioner's Order 73-73 established the Environmental Health School as an alternative to prosecution for violations of the anti-litter regulations as specified in Article 3, Sections 1, 2, 4, 8, 11, and 12 of the Police Regulations.

4. Members Issuing PD 61D for any one of the above violations shall also Issue an ES Form 175 (Environmental Health School Information Card) to the violator.

PART V

A. Station Clerks shall be responsible for:

   1. Maintaining the district's PD 166 5 day suspense file containing the first copied copy of PD 166.

   2. Forwarding the second copied copy of PD 166 to DED or as applicable.

   3. Preparing PD 107 (Outside Agency Report) for each item listed on the Incidental Book.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 9 of 12 |

   a. PD 107 shall be prepared in duplicate.

   b. A separate PD 107 shall be prepared for each outside agency that requires notification.

   c. Incidentals involving injuries or property damage to

public space shall be clearly identified on PD 107 so that the DOT Maintenance Engineer knows not to make repairs until notified to do so by the investigative Section, 0CC.

    d.   The original of PD 107 shall be forwarded to the concerned outside agency and the copy shall be retained at the element.

4.   Forwarding the white copy of all Warning Citations (PD 61D) to the ID Vending Coordinator's Office.

5.  Filing the yellow copy of all Violation Citations (PD 61D) by date of Issuance in the Violation Citation File

6.  Logging the Violation Citation (PD 61D) on the element's 15 Day Suspense Book when it reaches an overdue date.

    a.   The 15 Day Suspense Book shall contain the date of issuance, the name of the violator, the name of the issuing officer and a space for recording the final disposition.

    b.   A notification shall be placed in the officer's mail box notifying him that the Violation Citation has reached an overdue status.

7.   Processing the PD LID, when the violator appears to forfeit collateral, as follows:

    a.   Obtain the white copy of the Violation Citation from the violator.
    b.   Collect the required collateral and issue PD 67 (Collateral Receipt) to the violator.
    c.   Book the case on the Arrest Book.
    d.   Prepare PD 255 (Arrest Report).
    e.   Pull the yellow copy of PD 61D from the Citation Violation File, record the disposition on the reverse side, staple the white and yellow copies together, and refile same in the Citation Violation File.

8.   Processing PD 61D, when the violator appears to post collateral to appear in court, as follows:

    a.   Performs items 7a-d, above.

    b.   Pull the yellow copy of the Violation Citation from the Violation Citation File and note the court date appearing on the reverse side.

    c.   Advise the violator that he must appear in Superior Court at 0900 hours on the stipulated court date.

    d.   Deliver the white and yellow copy of the Violation Citation to the issuing officer making sure that the issuing officer is aware that the case is schedule for court.

9.   Transferring Violation Citation cases as follows:

    a.   If the violator posts collateral <u>to forfeit</u> at a location other than the issuing officer's element the case shall be booked in red using the issuing officer's element arrest number and transferred to the issuing officer's element so that the disposition may be recorded on the reverse side of the yellow copy in the Violation Citation File. The white copy shall be obtained from the violator and forwarded via department mail to the issuing officer's element so that it may be stapled to the yellow copy and ref lied in the Citation Violation File.

    b.   If the violator posts collateral <u>to appear</u> at a location other than the issuing officer's element the case shall be booked in red using the issuing officer's element arrest number and transferred to the issuing officer's element. The station clerk at the issuing officer's element shall pull the yellow copy of the PD 61D and advise the calling element as to the issuing officer's next available court date. The white copy shall be obtained from the violator and forwarded via department mail to the issuing officer's element so that it may be delivered to the issuing officer along with the yellow copy. The issuing officer's station clerk shall be responsible for notifying the issuing off leer that the case is scheduled for court.

10.   Processing Environmental Health School cases as follows:

    a.   Upon receiving notification from the Court Liaison Division that the violator plans to attend Environmental Health School, the station clerk shall withdraw the PD 61D from file, enter the projected attendance date, and re-file the PD 61D by the date of projected attendance.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 11 of 12 |

       b.  Upon receiving notification that the violator attended Environmental Health School, the station clerk shall withdraw PD 61D from file, enter the date of attendance, and refile PD 61D in the Citation Violation File by the date the violator attended the school.

    11.  Maintaining and disposing of all records in accordance with the department's Records Disposition and Retention Schedule.

B.  <u>Vending Coordinator, First District</u> shall be responsible for:

    1.  Filing all Warning Citations (PD 61D) in the Warning Citation File.

    2.  Assuring that Warning Citations are available for court presentation, when needed.

    3.  Entering all Warning Citations into the Complainant Name File.

    4.  Coordinating the department's Vending Program to assure that the Vending Regulations are uniformly enforced throughout the department.

PART III.

A.  <u>Commanding Officers</u>.
Commanding officers shall direct all members of their command to be vigilant in noting violations of the above described regulations and to take immediate corrective action.

B.  <u>Identification and Records Division</u>.
The Director, Identification and Records Division, shall be responsible for:

    1.  Forwarding a copy of PD 251 and/or PD 252 to the Department of Economic Development or the Department of Environmental Services, as applicable, in the case of all nuisances to be abated.

    2.  Forwarding a copy of PD 251 or PD 10 to the investigative

Section, 0CC, in the case of all injuries or accidents due to defects, obstructions, or depressions .in public space.

3. Forwarding a copy of PD 251 or PD 10 to the Investigative Section, 0CC, in the case of all damage to D.C. government property as described in Part ID.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 12 of 12 |

C. <u>Court Liaison Division</u>.
The Court Liaison Officer shall be responsible for notifying the appropriate district whenever a notification is received from the Department of Environmental Services that a violator is scheduled to attend Environmental Health School, completed school, failed to attend, or is rescheduled.

Burtell M. Jefferson
Police

## Attachments

**Title 5. Section 504 of the D.C. Code** states that "the existence on any lot or parcel of land, in the District of Columbia. of any uncovered well, cistern, dangerous hole, excavation, any dead. dangerous or diseased tree, or part thereof, or of any abandoned vehicles of any description or parts thereof, miscellaneous materials or debris of any kind, including substances that have accumulated as the result of repairs to yards or any building operations, insofar as they affect the public health, comfort. safety. and welfare is hereby declared a nuisance dangerous to life and limb, and any person. corporation, partnership, syndicate. or company, owning a lot or parcel of land in said District on which such a nuisance exists who shall neglect or refuse to abate the same to the satisfaction of the Commissioners (Mayor) of the District of Columbia. after 5 days notice from them (him) to do so. shall, on conviction in the Superior Court of the District of Columbia. be punished by a fine of not exceeding $50.00 for each and every day said person, corporation, partnership, or syndicate, fails to comply with such notice."

General Order 308.02
Attachment "A"

**PD 67**
REV. 7/25/04

**COLLATERAL/BOND RECEIPT**
**METROPOLITAN POLICE DEPARTMENT**
*WASHINGTON, D.C. 20001-2188*

19434

☒ **COLLATERAL**
You are eligible to elect to forfeit collateral for this charge. If you elect to forfeit the collateral amount assigned to the charge, you are agreeing to waive your right to a hearing in court, and the case against you will be concluded without an admission of guilt. However, you will have an arrest record of all charges for which you forfeited collateral.

Forfeiture is final unless you (or your attorney) file a "Motion To Set Aside Forfeiture" within 90 days from the date of the forfeiture. You may wish to file this motion if you decide to contest the charge at a later date.

The motion must be filed with the D.C. Superior Court (Traffic Clerk's Office, 500 Indiana Avenue NW, Room 4110). A copy of the motion must also be served on the prosecuting agency (Attorney General for the District of Columbia, Public Safety Division, 441 4th Street NW, Suite 450 North). **You MUST bring this form with you.**

By signing this form, you are acknowledging that it is your choice to elect to forfeit the collateral amount set for this charge, and that by doing so, you are agreeing to waive your right to a hearing in court.

☐ **BOND**
You are eligible to post bond for this charge. You may post a cash bond amount assigned to the charge, OR a bondsman licensed by the D.C. Superior Court may agree to post the bond amount for you.

You will be required to appear in D.C. Superior Court for an arraignment hearing, the date and time of which is recorded in Box Number 16 on this form. If you are convicted, you will have a criminal record in addition to your arrest record. If you fail to appear in court on the date and time indicated, a warrant will be issued for your arrest.

| 1. BOOKING DISTRICT 3 | 2. DATE COLLATERAL/BOND POSTED 11/16/05 | 3. TIME COLLATERAL/BOND POSTED 2:50 ☒A.M. ☐P.M. |

4. THIS IS TO CERTIFY THAT: SMITH (LAST NAME) LINDSAY (FIRST NAME) (MIDDLE)

5. ADDRESS 1748 WILLARD ST #2 NW (CITY) (STATE) (ZIP)
6. HAS DEPOSITED: $25

7. ON CHARGE OF: TO LOUD + BOISTEROUS

8. PERMIT/LICENSE NUMBER | 9. ARREST NUMBER 030506884 | 10. NOI/PD 61D NUMBER

11. ARRESTING/ISSUING OFFICER/DISTRICT ACEBAL (LAST NAME) (FIRST NAME) (MIDDLE) 3 (DISTRICT)

12. COLLATERAL OR BOND DEPOSITED BY: SMITH (LAST NAME) LINDSAY (FIRST NAME) (MIDDLE)

13. ARRESTEE SIGN NAME TO ACKNOWLEDGE HE/SHE HAS READ AND UNDERSTANDS STATEMENT ON COLLATERAL OR BOND, AS APPLICABLE

14. STATION CLERK NAME/CAD ID LEE (LAST NAME) T (FIRST NAME) (MIDDLE) 6754 (CAD ID)

**FOR BOND CASES ONLY**
15. DATE AND TIME OF ARRAIGNMENT HEARING

Distribution: White copy: Violator, Yellow copy: Superior Court Copy, Pink Copy: Police Department Copy

THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

LINDSAY SMITH,               )
                                        )
       Plaintiff,            )
                                          )       Civil Action No. 1:06–1871 (HHK)
       v,                   )
                                          )
                                          )
THE DISTRICT OF COLUMBIA, *et al.,* )
                                          )
       Defendants.          )
                                          )

## DECLARATION OF DELORIS HUNTER

      I, Deloris Hunter, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct:

      1.     I am over the age of twenty one (21) and am competent to provide the information set forth herein.

      2.     I am the Manager of the Records Branch of the District of Columbia Metropolitan Police Department.  I have held this position for seven (7) years.

      3.     The Records Branch maintains the Criminal Justice Information System (CJIS) database, and hard copy records of arrest reports, including PD 163s (Arrest/Prosecution Reports), PD 251s (Incident Reports), and PD 252s (Supplemental Reports).

      4.     The statement of facts field is not contained on the CJIS system.  The PD 163 contains defendant's name, race, sex, date of birth, address, phone number, arrest number, PDID number (if assigned), charge, location of the offense, date and time of offense, birth place, Social Security Number, clothing description, date and time of arrest, officer name and

badge number, and the unit to which he/she is assigned. These fields are keyed in CJIS if the information is available or provided by the defendant at time of arrest.

5.     The hard copy files consist of documents that are maintained numerically by PDID number or arrest number according to the various Districts. In order to obtain the statement of facts associated with an arrest, clerical staff must manually retrieve the paper document from MPD files.

6.     Plaintiff has requested documents related to arrests for disorderly conduct from November 15, 2004, through November 15, 2005[1], (a) in which post and forfeit was involved; (b) in which citation release was involved; and/or (c) in which neither was involved. The estimated number of individuals who fit this category is 22,640.

7.     The Records Branch does not have the manpower to conduct Plaintiff's request without undue burden and cost. There are three (3) clerical staff persons assigned to the Records Branch that are responsible for filing and retrieving arrest records. Only one (1) staff person is available to conduct this production of documents. It is estimated the staff person can dedicate an average of three (3) hours a day to comply with the request without severely impacting the staff person's current responsibilities to the MPD. Based on a search, retrieval, and copy rate of 30 minutes per arrest report, I estimate that it will take **11,320 hours or 3,773.33 days**, based upon one clerical person working 3 hours per day, to produce the 22,640 PD 163s.

8.     PD 251s are filed apart from PD 163s. Based on a search, retrieval, and copy rate of 15 minutes per incident report, it would take a minimum of **5,660 hours or 1,886.67 days**, based upon one clerical person working 3 hours per day, to produce 22,640 PD 251s and

---

[1] Notably to conduct this search, the Records Branch would still have to retrieve records from January ˌ, 2004 to December 15, 2005 to determine which arrest fall within this category.

PD 252s. Additional time will likely be needed because the PD 251s and PD 252s for 2004 are no longer housed in the Records Branch. They have been archived in the Federal Records Storage Center in Suitland, MD. To retrieve the 2004 PD 251s and PD 252s, MPD must fill out a separate request for each document to be produced. Employees of the Federal Records Storage Facility would then pull the requested documents and transmit them to MPD for copying and production.

9.    The Records Branch does not have additional staff assigned to pulling PD 163s, 251s, and 252s. Other criminal history technicians are in the Criminal History Section and are attending to the over 200 customers who demand service each day for criminal background checks. Two other clerical staff in the Public Documents Section attend to the over 50 customers per day who request incident and accident reports, and provide assistance with the 200 customers requiring criminal background checks.

10.    If additional personnel were used to accomplish the task of pulling the estimated 22,640 PD 163s, and 22,640 PD 251s and 252s identified in response to Plaintiff's discovery requests, certain functions of the Department would have to be closed down or risk severe complaints.

11.    MPD charges $ 4.00 per quarter hour, after the first hour, for record searches conducted by clerical personnel (DS-1 through 8). The charge for searching for the requested PD 163s would be approximately **$ 181,104**. The charge for searching for the requested PD 251s and 252s would be approximately **$ 90,544**. This does not include the charges for copying the requested documents ($.25 per page) or the charges for the employees of the Federal Records Storage Facility to search and transmit the 2004 PD 251s and 252s.

12.    Generally, a PD 163 is two (2) pages in length, a PD 251 is four (4) pages, and a

3

PD 252 is two (2) pages in length. Assuming that each of the 22,640 records contains a PD 163, PD 251, and PD 252, the charge for copying these records would be approximately **$45,280**.

Date: 6/10/08

Deloris Hunter

4

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LINDSAY SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:06–1871 (HHK)** |
| **v,** | ) | |
| | ) | |
| | ) | |
| **THE DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## DECLARATION OF THOMAS E. SHARP

I, Thomas E. Sharp, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct:

1.   I am over the age of twenty one (21) and am competent to provide the information set forth herein.

2.   I am the Deputy Director of the District of Columbia's Office of Police Complaints (OPC).  I have held this position since October 2002.

3.   OPC is responsible for investigating and resolving police misconduct complaints filed with the agency by the public against Metropolitan Police Department (MPD) and the District of Columbia Housing Authority Police Department (DCHAPD) officers.  A member of the public who wishes to file a complaint against an MPD or DCHAPD officer may also choose to file a complaint directly with either police department that will be investigated and resolved by the police department.  OPC maintains files related to the complaints filed with the agency.

4.   OPC currently has 19 full-time employees, 12 of whom work in the agency's

investigative unit. OPC has one public affairs specialist who is the person responsible for fulfilling most requests made to the agency for records or documents.

5.    Each OPC case file contains all of the records related to the agency's investigation of a complaint. At a minimum, most files contain at least 50 pages of documents, and, depending on the nature of the complaint and the extent of the investigation, an individual file can contain several hundreds of pages of documents, as well as recordings, pictures, and other records.

6.    Plaintiff has requested documents related to arrests for disorderly conduct from November 15, 2004, through November 15, 2005, (a) in which post and forfeit was involved; (b) in which citation release was involved; and/or (c) in which neither was involved.

7.    During the period from November 15, 2004, to November 15, 2005, OPC received approximately 340 complaints.

8.    In order to retrieve complaints related to a specific issue or issues, OPC must conduct general keyword searches of its database to identify a universe of complaints that may be relevant. Due to the wide variation among complaints, and the discretion given to investigators in writing narratives in the database to describe the allegations contained in a complaint, a variety of terms must be used in an attempt to capture all complaints that may be relevant. Under this approach, the searches will result in a number of complaints that are not relevant.

9.    To ultimately determine if a complaint is relevant to a request, each paper file must then be located and reviewed to determine if it is relevant. The information contained in the database records is not necessarily sufficient to make this determination.

10.    Based on my keyword searches of the database using the terms "arrest,"

"disorderly," "conduct," "collateral," "forfeit," "citation," and "release," I identified approximately 160 of the 340 files that may be relevant.

11.    It takes approximately 15 minutes per file to locate and review the materials necessary to determine if a complaint is relevant.  To pull and review 160 files, this process would amount to approximately 40 hours of work.

12.    For any file that is relevant, it must then be disassembled and photocopied.  It takes at least 30 minutes per file to copy it and duplicate any recordings or other records contained in the file.  Conservatively assuming that 80 of the files are relevant, this process would amount to at least 40 hours of work.

13.    After relevant files have been located and duplicated, all of the documents must be reviewed by a supervisor to identify any documents that would be subject to privilege or any other protection that may limit production of the documents.  This process would amount to approximately 15 to 20 hours of work.

14.    Devoting two and a half weeks of manpower to responding to this discovery request would impose an undue burden and cost on OPC.  It would consume the significant majority of the work time of OPC's public affairs specialist, who also has responsibility for conducting OPC's community outreach, maintaining OPC's website, and responding to the more than 400 Freedom on Information Act (FOIA) requests received by OPC each year.  In addition, responding to this request would impose a noticeable burden on supervisors or managers to review the large amount of responsive documents.  Beyond the time involved, there would also be costs associated with duplicating documents and recordings.

___6-11-08___
Date

___Thomas E. Sharp___