UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LINDSAY HUTHNANCE, | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | **Civil Action No. 06-CV-1871 (HKK)** |
| v. | ] | |
| | ] | |
| DISTRICT OF COLUMBIA, *et al.,* | ] | |
| | ] | |
| **Defendants.** | ] | |
| | ] | |

## DEFENDANT DISTRICT OF COLUMBIA'S OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL

Defendant District of Columbia, by and through counsel, herein opposes plaintiff's motion to compel, and states as follows:

1.      The plaintiff in her motion argues that the District is "up to its old tricks" and has engaged in its "dilatory litigation tactics".  Plaintiff also argues that the District continues "to express its contempt for the Federal Rules of Civil Procedure, Local Rules and court orders that govern the conduct of litigation in this Court."  The District takes considerable offense to the suggestion that it has in anyway engaged in any tactics or behavior with the intent to stall or delay the progress of this case.  Contrary to plaintiff's claims, the District has not shown or expressed any contempt for the Rules by which governs discovery.  On the other hand, plaintiff's counsels, for whatever reason, do not believe they must comply with the same rules that apply to the District.  *See* District of Columbia's Motion to Compel, at Docket Entry #46.  While the District admits that it has requested extensions from the Court in this matter to respond to both plaintiff's pleadings and discovery requests, Fed. R. Civ. P. 6 allows it to move for relief when needed.  The District submits that its requests for extensions in this case were made in good faith and

with legitimate basis.  As shown below, many of plaintiff's discovery requests are overly broad, not relevant, and/or the non-disclosure of the information or documents are protected by statute.  Fed. R. Civ. P. 26(e), provides that "a party who has made a disclosure or response is under a duty to supplement or correct the disclosure or response to include information thereafter acquired if ordered by the court or in the following circumstances:  (1) …(a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…."  Additionally, Rule 26(e)(2) provides that "a party is under a duty seasonably to amend a prior response to an interrogatory, request for production…if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  While the District has supplemented its responses even when it believed that many of its prior disclosures were not deficient or incorrect in some **material** respect, plaintiff has failed to do so.

2.     Plaintiff Lindsey Huthnance (formerly Smith) avers that she was falsely arrested by defendants Officers Liliana Acebal, James Antonio and Jose Morales on or about November 15, 2005, at the 7-Eleven convenience store located at 3146 Mount Pleasant Street, N.W.  See Amended Complaint, generally.  Plaintiff further avers that the defendants were negligent in their interaction with her, intentionally inflicted emotional distress upon her, assaulted and battered her, and violated her First, Fourth, Fifth and Eighth Amendment Rights.  *See* Complaint, at ¶¶ I through XIII.

2

3.      On February 5, 2008, the plaintiff served the District with her First Set of Interrogatories and Requests for Production of Documents, attached hereto as Exhibit 1. On April 18, 2008, the District served the plaintiff with its Responses to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, after having received an extension of time to respond.  On May 15, 2008, the District supplemented its responses to plaintiff's discovery demands.   In accordance with its obligation to supplement discovery, on June 19, 2008, the District served plaintiff with its Third Supplemental Response to Plaintiff's First Set of Request for Production of Documents. On June 20, 2008, the District again supplemented its discovery responses and served plaintiff with its Amended and Supplemental Responses to Plaintiff's First Set of Production of Documents, and Documents Requests.  A review of the District's discovery responses clearly demonstrates that, to the extent not objectionable, the District has substantially complied with its discovery obligations, and plaintiff's motion for sanctions should be denied.

   A.      *Requests for Production ("RFPs")*

   Plaintiff seeks to compel the production of documents that are responsive to virtually all of her discovery requests.  See Motion, generally.  Beginning with RFP No. 2, plaintiff argues that the District's response is deficient and it has failed to produce the requested documents.  Contrary to plaintiff's claims, the District substantially complied with its obligation for production regarding RFP No. 2.  See responses to RFP No. 2 below, in which the District referred plaintiff to the answer and documents provided with its Response to RFP No. 1.  The District has included the responses to both RFP Nos. 1 and 2 to support its claim that plaintiff is not entitled to an order to compel against this defendant.

RFP No. 1:  All Documents referring or relating to Plaintiff, whether by name, Social Security number, or any other means of identification, including all police paperwork filled out in connection with Plaintiff's arrest and the results of any NCIC, WALES, or similar queries respecting Plaintiff's prior arrest record.

> **RESPONSE:  Objection as overly broad and burdensome. Notwithstanding the objections and without waiver thereto, see Attachment 1, PD 163-MPD Arrest/ Prosecution Report (previously provided, but provided again herein; Attachment 2, PD 168-MPD Court Case Review Form (previously provided, but provided again herein); Attachment 3, PD 67-MPD Collateral/Bond Receipt (previously provided, but provided again herein); Attachment 7, Columbo printout  (provided as a supplement on May 15, 2008, again herein provided); Attachment 8, Wales printout (provided as a supplement on May 15, 2008, again herein provided).**

Plaintiff is correct that the District initially referred plaintiff to its Response to RFP No. 1, when it answered RFP No. 2.  The same documents were responsive to both questions. It is unclear whether plaintiff herein argues that because the District did not provide two copies of the same documents in response to RFP No. 2 that it provided with its response to RFP No. 1, that it is in violation of discovery.  The District substantially complied with its production request when it supplied the documents in response to RFP No. 1 and referred plaintiff to those same documents in response to RFP No. 2.  Nonetheless, the District has supplemented its response to RFP No. 2 with a more complete response, but sees no reason to provide duplicate documents.  See below:

RFD No. 2:  All Documents referring or relating to the arrest and detention of Plaintiff (and any encounter that preceded it) on November 15th and 16th, 2005, including, without limitation, any police reports, witness statements, log entries, video recordings, post and forfeit paperwork, and all radio communications/transmissions relating to Plaintiff's arrest, detention, and transportation and identifying all MPD

4

personnel on the scene of Plaintiff's arrest, detention and transportation (and any

encounter that preceded it) and returning to service thereafter.

> **Response RFP No. 2: Objection as overly broad and burdensome.
> Notwithstanding the objections and without waiver thereto, see
> Attachment 1, PD 163-MPD Arrest/ Prosecution Report (previously
> provided, but provided again herein; Attachment 2, PD 168-MPD
> Court Case Review Form (previously provided, but provided again
> herein); Attachment 3, PD 67-MPD Collateral/Bond Receipt
> (previously provided, but provided again herein); Attachment 7,
> Columbo printout  (provided as a supplement on May 15, 2008, again
> herein provided); Attachment 8, Wales printout (provided as a
> supplement on May 15, 2008, again herein provided), the District has
> search several sources in an effort to obtain any radio
> communications pertaining  to the plaintiff arrest.  As result of its
> search, , the District has concluded that there are no radio
> communications related to plaintiff's arrest, however see Attachment
> 21, radio log related to plaintiff's arrest.**

Upon information and belief, the District has produced all documents that are known to

be in its possession that are responsive to this request.  Plaintiff's request to compel

production must be denied.

> RFP No. 3: All Documents identifying MPD officers working in PSA 301

on November 15th and 16th, 2005 (3-11 shift 11/15; midnight shift 11/15-16; day shift

11/16), and any other MPD officers on special assignments, details, initiatives, or shifts

that involved deployment within or around PSA 301 on those dates, including but not

limited to any log books entries, rosters, roll call attendance sheets, time and attendance

records for the Third District Station and Substations, and any dispatcher records.

> Pursuant to Fed. Civ. R. 26(b)(1), a party is entitled to relevant discovery.

Plaintiff avers that she was arrested in violation of her constitutional rights at the 7-

Eleven located in the 3100 block of Mt. Pleasant Street, N.W., and was offered the option

to post-and-forfeit as opposed to citation release.  Plaintiff has also filed common law tort

claims allegedly arising from her arrest. See Amended Complaint. According to the arrest report prepared in connection with plaintiff's arrest, plaintiff's arrest occurred on November 16, 2005, at 0145. See Arrest/Prosecution Report, pg. 2, Statement of Facts, at Attachment 1. See also, Plaintiff's Amended Complaint, at ¶ 9. Plaintiff's request for documents identifying MPD officers working in PSA 301 from 3-11 on November 15, 2005, and on November 16, 2005 during the day is overly broad. For example, an officer working in PSA 301 on the 3-11 shift on November 15, 2005, would have no personal knowledge about plaintiff's claim because the incident occurred on November 16, 2005. When the District initially responded to the request it did not have the requested documents. However, in accordance with its duty to supplement its responses, the District provided plaintiff with the roll call entries for November 15-16, 2005.

> **RESPONSE: RFP No. 3: Objection as overly broad and as to relevance. Notwithstanding said objections, see Attachment 4, roll call log for PSA 301 on November 15, 2005, and Attachment 5, roll call log for November 16, 2005.**

> <u>RFP No. 4:</u> For each of the Individual Defendants, all Documents constituting their personnel records, including all Documents constituting, referring to, or relating to their performance evaluations, informal and formal complaints filed against them, and any disciplinary actions taken against them.

Contrary to plaintiff's claim, the District has not waived its objection to non-disclosure of the requested documents. The District does not have the authority to release the personnel records of its employees without their consent or absent Court Order. The District objected to responding to plaintiff' discovery demand for the personnel records of the individually named officers as the documents requests are privileged. *See* Fed. R. Civ. P. 26(b)(1) which provides that a party may obtain

6

discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Plaintiff argues that the court has already rejected the code sections relied on by the District as creating a privilege. She cites to *Truelove v. Trustees of Univ. of D.C.* 1991 U.S. Dist. Lexis 1512 (D.D.C. 1991). However a review of *Truelove* reveals that the court only addressed D.C. Code § 1-631.03, which was then numbered § 1-632.3, and did not address any of the other D.C. Codes relied upon by the District to object to the production of the individually named officer's personal records. Additionally, while the court held that § 1-632.3 did not preclude the exchange of discovery, it held that § 1-632.3 prevents the disclosure of discovery without a court order. *Id* at 1513-1514. The District does not have a Court order to produce the requested personnel files.

Further, contrary to the plaintiff's argument that the D.C. Code sections relied upon by the District does not create a privilege from discovery, the District submits that the statutes it cited support its inability to produce the requested discovery. *See* D.C. Official Code § 1-631.01 (all official personnel records of the District government shall be established, maintained, and disposed of in a manner designed to ensure the greatest degree of applicant or employee privacy….), § 2-534(a) (The following matters may be exempt from disclosure under the provisions of this subchapter: (2) Information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy). *See also*, D.C. Personnel Reg. § 31A District Personnel Manual 3111.6j. Thus the District again submits that that plaintiff's request is objectionable and must be denied as it would require the District to disclose privileged documents. Moreover, the personnel files of the named defendants are not relevant to whether plaintiff was falsely arrested and/or whether she had a right to be

offered the option of citation release as opposed to post-and-forfeit. Because the District has moved for a protective order precluding the release of the requested documents, plaintiff's request should be denied.

RFP No. 5: A copy of the MPD General Orders.

The plaintiff argues that she should be entitled to all of the General Orders so that she may "review both the General Orders specifically relating to the procedures used in her arrest, detention and release, and so that she can [*sic*] the nature of the guidance and supervision provided for post and forfeit and disorderly conduct, as compared to that of other topics. Fed. R. Civ. P. 26 provides that a party is only entitled to relevant discovery. As per its objections, the District submits that this demand is overly broad and seeks irrelevant evidence. For example, General Order 401.01 deals with animal complaints and reporting animal bites. General Order 101.02 deals with the establishment of the police auxiliary services. General Order 306.01 deals with canine teams. See General Orders at Exhibit 2. This matter involves claims of false imprisonment, intentional infliction of emotion distress and violations of the 4th, 5th and 8th Amendment rights. See Amended Complaint, generally. Production of Exhibit 2 would not assist plaintiff in prosecuting the claims set forth in her Amended Complaint. The District has provided plaintiff with its MPD's General Order pertaining to its Citation Release Program. Because the District has provided the requested documents that are responsive to plaintiff's request, plaintiff's motion must be denied.

RFP No. 6: All Documents constituting, referring to, or relating to any formal or informal MPD general orders, rules, regulations, policies, procedures, or practices in effect or under consideration at any time that concern post and forfeit or citation and release.

Response: Objection as overly broad and burdensome.
Notwithstanding the objections, see Attachment 4, General
Order 502-06 – Citation Release Program, Attachment 5 –
PD Form 61D (Violation Citation) and Attachment 6, SO-
02-06 – Citation Release Processing.

The plaintiff's demand is for "all documents" within the District's possession related to the District's post and forfeiture and citation and release policy, and does not provide any timeframe for said request. Thus, the District objected to plaintiff's demand as overly broad and burdensome. Although the District objected that the request was overly broad and burdensome, it provided plaintiff with its General Order regarding the Citation Release Program, a PD Form 61D, a Violation Citation, and a Special Order for Citation Release Processing. In accordance with its obligation to supplement its discovery request, the District provided additional documentation that it has discovered and that is responsive to the request. See below:

> **Response RFP No. 6: Objection as overly broad and burdensome.
> Further objection as the request violates the deliberate process
> privilege. Notwithstanding the objections, see Attachment 6, General
> Order 502-06, Citation Release Program; Attachment 9, General
> Order 308-02, Nuisance, Incidental, Defects & PD Form 61 D
> (violation, citations); Attachment 10, Standard Operating
> Procedures PD Form 61D (Violation Citation); Attachment 11,
> Special Order SO-02-06, Citation Release Processing; Attachment
> 12, Report and Recommendations of the Citizen Complaint Review
> Board; titled Disorderly Conduct Arrests Made By Metropolitan
> Police Department Officers.**

As shown above, the District has met its discovery obligation and plaintiff's motion to compel should be denied.

RFP No. 7: All Documents constituting, referring to, or relating to any formal or informal MPD general orders, rule, regulations, policies, procedures, or practices in effect or under consideration defining or otherwise giving meaning to the

9

offense of disorderly conduct, including any guidance provided on the appropriate use of

the designation "Disorderly Conduct - Loud & Boisterous" and under what circumstances

such behavior warrants detention or arrest.

> Response RFP No. 7: Objection as vague, ambiguous, and
> overly broad and burdensome. Further objection under the
> deliberative process privilege. Notwithstanding the
> objections, see as Attachment 1, PD 163-MPD
> Arrest/Prosecution Report, Attachment 5 PD Form 61D
> (Violation Citation). See also, D.C. Official Code § 5-
> 335.01, § 22-132 1.

At the time the District provided its response, it produced documents that it had

located. However, since that time, the District has supplemented its response as follows:

> **Response RFP No. 7:  Objection as overly broad and burdensome,
> and not related to any specific time period. Notwithstanding the
> objections, Attachment 12, Report and Recommendations of the
> Citizen Complaint Review Board, November 13, 2007, Report, titled
> Disorderly Conduct Arrests Made By Metropolitan Police
> Department Officers; Attachment 13, October 2005 D.C. Criminal
> Code Handout.**

.

> RFP No. 8: All Documents constituting, referring to, or relating to any

formal or informal MPD general orders, rules, regulations, policies, procedures, or

practices in effect or under consideration concerning the training or supervision of MPD

officers regarding the post and forfeit procedure; including any training materials, and any

Documents identifying the times, dates, and content of any such training.

Plaintiff's request is overly broad and burdensome. However, the District has

supplemented its response. See the following:

> **Response RFP No. 8: Objection as overly broad and burdensome, and
> not related to any specific time period. Notwithstanding the
> objections, see Attachment 6, General Order 502-06, Citation Release**

**Program; Attachment 9, General Order 308-02, Nuisance, Incidental, Defects & PD Form 61 D (violation, citations); Attachment 10, Standard Operating Procedures PD Form 61D (Violation Citation); Attachment 11, Special Order SO-02-06, Citation Release Processing.**

RFP No. 9: All Documents constituting, referring to, or relating to any records reflecting training actually received by the Individual Defendants and all of their supervisors relating to: post and forfeit procedure, citation release procedure, or the bases for arrest for the offense of disorderly conduct, and the times, dates, and content of any such training.

Plaintiff seeks the release of training records for each individually named defendant and their supervisors. The request is overly broad, burdensome and the non-disclosure of the specific request is protected by statute. Notwithstanding its objection, the District has produced the November 13, 2007, Report and Recommendations of the Citizen Complaint Review Board, titled Disorderly Conduct Arrests Made By Metropolitan Police Department Officers; and Attachment 13, October 2005 D.C. Criminal Code Hand Out, and applicable General Orders and Special Orders that officers are required to read. The District would ask that any more specific information on individual training be subject to production pursuant to a protective order. On June 20, 2008, the District produced a privilege log for the employee class history of the named defendants.

RFP 10: All reports, studies, evaluations, recommendations or data compilations created by any individual, group, or entity concerning the post and forfeit or citation release procedures.

Response RFD No. 10: Objection as overly broad and burdensome and as to relevance. Further objection under

the deliberative process privilege. This defendant does not
have any responsive information.

As shown by the request itself, it is overly broad and burdensome.  It is not
limited to any specific time frame, and the District cannot be expected to have
possession of documents created by any individual, group or entity concerning the
post-and forfeit or citation release information.  Moreover, the District had not located
responsive documents at the time it provided its response.  Since the filling of it initial
response to plaintiff request for the production of documents, the District has received
and forwarded to plaintiff documents responsive to plaintiff's demands. See Amended
Response:

> **Response No. 10: Objection as overly broad and burdensome and as
> to relevance. Further objection, under the deliberative process
> privilege.  Notwithstanding said objections, See Attachment 12,
> Citizen Complaint Review Board's November 13, 2007, Report,
> titled Disorderly Conduct Arrest Made By Metropolitan Police
> Officers, Attachment 14, Office of Police Complaints 2003 Annual
> Report; Attachment 15, Office of Police Complaint's 2004 Annual
> Report; Attachment 16, Office of Police Complaint's 2005 Annual
> Report; and Attachment 18, Office of Police Complaint's 2006
> Annual Report.**

These are the only reports, studies, evaluations recommendations or data compilations
that the District is aware of pertaining to post and forfeiture or citation release.

RFP No. 11: All Documents constituting, referring to, or relating to the
annual public reports submitted by the Mayor to the D.C. Council as required by D.C.
Code § 5-335.01(h).

> **Response RFP No. 11: Objection as overly broad and as to relevance.
> Further objection as the request seeks a legal conclusion.
> Notwithstanding the objections, a five year search was performed and
> no records were located.  As such, the District is unable to produce the
> requested documents.**

On June 20, 2008, the District amended its response to plaintiff's RFP No. 11. As set forth above, the District does not have documents that are responsive to this request, and cannot produce documents that it does not have.

- RFPs 12 & 13 are collectively addressed below.

RFP 12: All Documents related to arrests made between November 15, 2003 and November 16, 2007 involving either post and forfeit release, citation release, or arrest for Disorderly Conduct.

RFP 13: All Documents referring or relating to arrests made by or involving the participation of any of the Individual Defendants in the following circumstances: (a) where post-and forfeit release was either offered or utilized; (b) where citation release was either offered or utilized; or (c) where arrestees were charged with Disorderly Conduct.

The District has objected to plaintiff's document requests # 12 and # 13 as overly broad and burdensome. Specifically, the District submits that it would have to expend considerable expense and time to comply with Plaintiff's discovery demands. See Declaration of Ms. Deloris Hunter, Manager, MPD's Record Branch Unit, at Exhibit 3. As reflected by Ms. Hunter's declaration, in order to retrieve the requested documents for RFP Nos. 12, even for the narrower search for the period November 2005 through November 2005 now sought by plaintiff, the District would be required to retrieve 22,640 files, which would take approximately 3,773.33 days at a cost of approximately $181,104.00. The District submits that to obtain the documents necessary to respond to plaintiff's Request to Production of Document No. 13 it would have to engage in the same overly burdensome search outlined in Ms. Hunter's

declaration.   Thus plaintiff's Request for Production of Documents Nos. 12 and 13

should be denied as unduly burdensome     *See also,* Thomas Sharpe's Declaration, at

Exhibit 4.  Additionally, these RFD are the subject of the District's Motion for

Protective Order, at Docket Entry #47.  The District herein incorporates the

arguments set forth in that motion as if fully set forth herein in response to these

requests for documents.

   • <u>RFP No. 14:</u> Except in the instant case, all Documents related to

any civil, criminal or other actions (including citizen complaints) against any of the

Individual Defendants.

   Contrary to the plaintiff's argument that the D.C. Code sections relied upon by

the District do not create a privilege from discovery, the District is precluded by the cited

codes from producing personnel records of its employees without their consent and/or

absent Court order.  Moreover, plaintiff's request for documents are overly broad as they

are not limited to any specific period, and is not specifically tailored to complaints

against the individual defendants as related to their work performance, and does not

narrow the request to complaints in this jurisdiction.  See RFP No. 14.  For example,

documents related to discipline of an officer in the broad sense would be responsive to

the request as it would fit into the "other actions" against any of the Individual

Defendants.  Although discipline meted out to any of the officers for even a no show in

court would be responsive to the request.  However, those discipline records would not be

relevant to plaintiff's causes of action, nor would it lead to admissible or other relevant

evidence.  Additionally, if a creditor filed a claim against any of the named individual

defendants, those documents would be responsive to the request, but would not be

relevant to plaintiff's claims.  As phrased, plaintiff's motion to compel the production of

request for production #14 must be denied.  Subject to a protective order approved by this

Court, the District could produce information any civil or criminal complaints against the

named defendants, in this jurisdiction, or others if the District has that knowledge, related

to these defendants' performance as a D.C. Metropolitan Police Officer.

     **B.**    *Interrogatories*

        <u>Interrogatory No. 1.</u> This Interrogatory states: List the current home

address of each of the Individual Defendants.

        The requested information is protected from disclosure by statute, and is currently

the subject of the District's Motion for Protective Order, at Docket Entry #46.  The

District herein incorporates its arguments in the Motion for Protective Order as if fully set

forth herein.  Moreover, plaintiff is only entitled to relevant information, and the

requested information is not relevant to the claims set forth in plaintiff's Amended

Complaint.  See Fed. R. Civ. P. 26(a)(1).

        <u>Interrogatory No. 2.</u>   Identify the immediate supervisors of each of the

Individual Defendants on November 15th and 16th, 2005.

        The District provided the name of Sgt. Smith at the 301 Substation.  However, the

District has supplemented its response as follows:

> **ANSWER: Objection as to relevance. Notwithstanding the objection
> and further answering, Sgt. Michael Smith, whose badge number is
> S0506, and whose work address is 1620 V St., NW, Washington, DC
> 20009.  Sgt. Smith remains stationed at the same location.**

.

        <u>Interrogatory No.3.</u> Identify each MPD officer present in the 3100 Block of

Mount Pleasant NW, Washington, DC, whether inside the 7-Eleven, on the street, or

elsewhere, from any time between 11:00 p.m. on November 15, 2005 through 3:00 a.m.

on November 16, 2005, and describe what, if any, contact each had with Plaintiff.

Plaintiff was arrested on November 16, 2005, at approximately 0145 hours. See

Attachment 1, Arrest/Prosecution Report at page 2, Statement of Facts, and Amended

Complaint, at ¶ 9. Thus, plaintiff's request for the identity of MPD officers present in the

3100 Block of Mount Pleasant NW, Washington D.C. from 11:00PM to 3:00AM,

whether inside the store, or simply on the street is overly broad and may not lead to the

discovery of relevant material. Nonetheless, the District has supplemented its response as

follows:

> **ANSWER: Objection as overly broad and burdensome, and as to relevance. Notwithstanding the objections and further answering, Officers Liliana Acebal, and James Antonio were in the 7-Eleven when they first encountered plaintiff. Officer Jose Morales was seated outside in the squad car. Plaintiff was loud and boisterous both inside and outside the store. The officers asked that she move along, but she continued to be loud and boisterous. Officer Acebal placed plaintiff under arrest. Upon information and belief, Officer James Paige at the same District, transported plaintiff to the police station at 3D. The District is unaware of then names of the any other officers who may have been on the scene at the time of plaintiff's arrest.**

> Interrogatory No. 4. Identify the station crew

on duty at the time of Plaintiff's transportation to the MPD station or substation to which

she was brought on November 16, 2005.

> **ANSWER: Objection as overly broad and burdensome, and as to relevance. Notwithstanding the objections and further answering, upon information and belief, Toniere Lee, David Anderson, Latrice Washington-Burney and Everette Copeland were the station crew during the midnight tour (2200-0630) on November 15, 2005. Suzette Little and Carlos Carter where the station crew during the day tour on November 16, 2005.**

The District argues that it has sufficiently responded to plaintiff's demands. The

District has provided the names of the station crew on duty during the midnight tour of

November 15, 2005 and the day tour of November 16, 2005.

Interrogatory No. 5. Identify each individual who interacted with

Plaintiff or authored any of the police paperwork relating to her arrest or release

between November 15th and 16th, 2005.

> **ANSWER: Objection as overly broad and burdensome,
> and as to relevance. Notwithstanding the objections and
> further answering, Officer Liliana Acebal completed
> the Arrest/ Prosecution Report related to the Plaintiffs
> November 16, 2005, arrest and Station Clerk Toniere
> Lee completed the Plaintiff's Collateral Bond Receipt.**

The District has satisfied its discovery obligation.

Interrogatory Nos. 6 and 7.

Interrogatory No. 6:  Identify anyone involved in informing Plaintiff or Adrien

Marsoni that Plaintiff's release could be secured by payment of a $25.00 bond on the

scene.

> ANSWER: Objection as overly broad and burdensome.
> Notwithstanding the objections and further answering,
> upon information and belief, Officer James Antonio
> informed both the Plaintiff and Adrien Marsoni that the
> Plaintiff could be bailed out at the Third District
> Stationhouse.

Interrogatory No. 7:  Explain whether it was consistent with MPD policies,

procedures, and practices for officers to solicit payment of a $25.00 bond on the

scene of the arrest to obtain Plaintiffs immediate release and, if so, how.

> ANSWER: Objection as this request seeks a conclusion.
> Further objection as to form. This defendant did not solicit
> payment of any kind. Notification was made to Plaintiff of
> the option to post and forfeit.

The plaintiff has objected to the District's responses to interrogatories as

confusing, contradictory and confusing. However a plain reading of the District's

responses clearly demonstrates that the District's responses to these interrogatories are

not contradictory, confusing, nor non-responsive. Plaintiff was informed about post-

and-forfeit at the scene of the arrest. However, no one "solicited" the payment to be

made on the scene. However, in an effort to clarify its responses, the District has

amended them to read as follows:

> **Answer No. 6: Objection as overly broad and burdensome, and as vague. Notwithstanding the objections and further answering, Officer James Antonio informed both the plaintiff and Adrien Marsoni at the scene that the plaintiff could be bailed out at the Third District Stationhouse.**
>
> **ANSWER: Objection as vague and ambiguous. It is unclear what plaintiff means by solicit payment on the scene of the arrest to obtain plaintiff's immediate release. It is consistent with MPD policies, procedures and/or practices to notify an arrestee of any decision to offer the option to post and forfeit, and notify them of the amount required if known. To the extent plaintiff's question seeks to ascertain whether an officer can ask an arrestee to pay him $25.00 directly on the scene of the arrest to gain the arrestee's release, then that would not be consistent with MPD policies, procedures, or practices.**
>
> •     <u>Interrogatory No. 8.</u> For each of the years 2004-2007, provide

the total number of MPD arrests for Disorderly Conduct: (a) in which the post and

forfeit was involved; or (b) in which citation release was involved; or (c) in which

neither procedure was utilized.

> **ANSWER: Objection as overly broad and burdensome, and as to relevance. Notwithstanding the objections and without waiver thereto, upon information and belief, the MPD cases involving post and forfeit were as follows: 2004 = 1,397; 2005 = 1,194; 2006 = 1,411; 2007 = 1,326. MPD arrest involving citation releases were as follows: 2004 = 0; 2005 = 0; 2006 = 5; 2007 = 6. In addition, MPD arrests involving neither were as follows: 2004 = 9,340; 2005 = 10,709; 2006 = 13,362; 2007 = 13,273.**

The District's responses are responsive to the Request.  The request seeks

information related to disorderly conduct, and the response satisfies the inquiry.

•     Interrogatories No. 9 and 10.

Interrogatory No. 9:   For each of the arrests identified in response to

Interrogatory 8, provide the following information:

a.     Name of Arrestee
b.     Date and Time of Arrest
c.     Arrest Number
d.     Location of Arrest
e.     Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)
f.     Whether Arrestee was permitted to post and forfeit, was given citation
       release, or neither.

Interrogatory No. 10: For every arrest between November 15, 2003 and

November 16, 2007 involving post and forfeit or citation release for all offenses other than

Disorderly Conduct, provide the following information:

a.     Name of Arrestee
b.     Date and Time of Arrest
c.     Arrest Number
d.     Location of Arrest
e.     Name of Arresting Officer (AO) and Assisting Arresting Officer
       (AAO)
f.     Whether Arrestee was permitted to post and forfeit, was given
       citation release, or was held.

The District submits that plaintiff's interrogatories 9 and 10 are overly

broad, and are the subject of the District's Motion for Protective Order.  See

Docket Entry #47.  The District herein incorporates its arguments in the Motion as

if fully set forth herein.  The probative value of the responses is far outweighed by

the expense to be incurred by the District for the requested production.  As such,

the District asks this Court to deny the requested motion to compel.

•     Interrogatory No. 11.   Including the arrests identified in

Interrogatories 7 and 9, provide the total number of MPD arrests that involved the post

and forfeit procedure between November 15, 2003 and November 16, 2007.

> **ANSWER: Objection as overly broad and burdensome. Notwithstanding the objections and without waiver thereto, upon information and belief, 5,393**.

Plaintiff accepts the District's response to Interrogatory No. 11 in substance, but

requests that the Court order the District to amend its response so that it is no longer made

"upon information and belief." There is no reason to compel the District to amend its

response.

> Interrogatory No. 12. For each Complaint that has been made to or filed

with the MPD, the Office of Police Complaints, or the Office of Professional

Responsibility (or any other municipal entity) about or against any of the Individual

Defendants, provide the following information:

> a.  Name and Address of Complainant
> b.  Date of Complaint
> c.  Nature of the Complaint
> d.  Date of Incident about which Complaint was made
> e.  Name and Badge Number of each MPD Officer, including any of the Individual Defendants, named in Complaint
> f.  Disposition of Complaint, including any disciplinary action taken

> **ANSWER: Objection as to relevance, vagueness, and overly broad. See Fed. R. Civ. 33. Further objecting, this defendant is precluded by statute from disclosing the requested information. See D.C. Official Code § 1-631.01, and 1-631.03 5-113.05, 5-113.06 and 3102.01 of the District Personnel Manual and as it constitute an unwarranted invasion of personal privacy. Further responding, the non-production of the requested documents is the subject of the District's pending motion for a protective order.**

The District submits that the plaintiff has failed to present a non-speculative

argument to support her request for complaints made or filed with the MPD, Office of

Police Complaints or the Office of Professional responsibility to warrant disclosure of the

information requested in the Interrogatory No. 12. Moreover, the requests are overly

broad, and is protected from disclosure by statute. See District's Motion for Protective

Order, at Docket Entry #47.

•    Interrogatory No. 13: Identify whether the date and time an

individual who is arrested is released is recorded, and, if so, identify where and for how

long this information is stored.

> **ANSWER: Objection, as it vague and ambiguous.
> Notwithstanding the objection and further answering, at
> this time, this defendant lacks sufficient information to
> respond to this request. Should information become
> available, this defendant will supplement the response.**

At the time of said initial response, the District was unclear as to the specific

information the plaintiff sought as to this request. However, since it provided its initial

response, the District learned that information regarding the date and time an individual

who has been arrested is released is contained in a logbook. However, at the time of the

plaintiff's arrest on November 16, 2005, said information was maintained on a log

sheet. The log sheet is no longer in existence, and the District's response has been

supplemented.

### C.    Cost

In addition to moving to compel in this matter, the plaintiff seeks the expenses

associated with preparing this motion, in accordance with Federal Rule of Civil Procedure

37(a)(5). While Federal Rule of Civil Procedure 37(a)(5) allows the moving party who

filed motion to compel to recover the cost associated with preparing said motion, the

Rule prohibits the Court from ordering costs if the opposing parties nondisclosure,

response or objection was substantially justified, or other circumstances make an award

of expenses unjust.  The District argues that as is shown by plaintiff's discovery requests,

the motion itself, and the District's responses, the District either substantially complied

with the requests, or had a valid basis for non-compliance.  Prior to plaintiff filing the

instant motion, the District notified her of its decision to move for a protective order for

the overly burdensome discovery.  However, the District was unable to complete the

drafting of the motion before plaintiff filed her Motion to Compel.

    Fed. R. Civ. P. 26(e) provides that a party is only entitled to relevant, non-

privileged discovery.  A substantial portion of plaintiff's discovery requests are

irrelevant, overly broad and burdensome, and/or are protected from disclosure by statute.

Plaintiff is not entitled to an award in fees for filing this motion.

    WHEREFORE, the District respectfully requests that the Court denies Plaintiff's

Motion to Compel Discovery.

                          Respectfully submitted:

                          PETER J. NICKLES
                          Interim Attorney General for the District of
                          Columbia

                          GEORGE C. VALENTINE
                          Deputy Attorney General
                          Civil Litigation Division


                          _____
                          PATRICIA A. JONES [428132]
                          Chief, General Litigation, Section IV

                          __/s/Eric S. Glover_____
                          ERIC S. GLOVER [8 200]
                          Assistant Attorney General
                          441 4th Street, N.W., 6th Floor North
                          Washington, DC 20001
                          (202) 442-9754; (202) 724-6295

(202) 727-3625 (fax)
E-mail: eric.glover@dc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDSAY HUTHNANCE,                )
                                  )
                                  )
                                  )
         Plaintiff,               )
                                  )
        vs.                       )
                                  )    Case No. **06-CV-1871 (HKK)**
DISTRICT OF COLUMBIA, *et al.*    )
                                  )
         Defendants.              )
                                  )
                                  )

**PLAINTIFF'S FIRST SET OF REQUESTS
FOR PRODUCTION OF DOCUMENTS
<u>TO DEFENDANT DISTRICT OF COLUMBIA</u>**

Pursuant to Federal Rule of Civil Procedure 34, Plaintiff hereby requests that Defendant

District of Columbia, within 30 days of service, produce the following documents for inspection

and copying at the offices of counsel for Plaintiff, Goodwin Procter LLP, Attn: Sarah Keast, 901

New York Avenue, N.W., Washington, D.C., 20001.

<u>**Definitions**</u>

A.      "Defendant" refers to any defendant named in the First Amended Complaint filed

in this action, and any successor in office to any individual defendant named in an official

capacity.

B.      "Document" is used in the broadest sense permissible under the Federal Rules of

Civil Procedure.  It means any writing (whether printed, typed, photocopied, handwritten,

recorded, stored, produced, or reproduced), any  tangible thing, or any other compilation of

information, whether created by the District of Columbia or any other Defendant, in the

possession, custody, or control of the District of Columbia, any other Defendant, or any

employee or official of the District of Columbia, including, without limitation, any:

(a) advisories, agreements, appointment books, articles, bills, binders, books, brochures, bulletins, calendars, charts, checks, circulars, communications (intra-office, inter-office, external, or other), computer printouts, confirmations, contracts, correspondence, desk-pads, diaries, drafts, drawings, e-mails, exhibits, facsimiles, financial statements, flyers, forecasts, graphs, guidelines, invoices, instructions, Internet printouts, letters, lists, logs, Lotus Notes, manuals, meeting minutes, memoranda, messages, microfiche, microfilm, notebooks, notes, outlines, pamphlets, periodicals and clippings from periodicals, pleadings, policies, post-it notes, projections, questionnaires, receipts, records, reports, rules, schedules, statements, studies, subscription agreements or pages, summaries, telecopies, telefaxes, telegrams, telephone messages, telexes, transcripts, translations, treaties, voicemail transcriptions, and worksheets;

(b) graphic or audio records or representation (including, without limitation, photographs, charts, drawings, graphs, microfiche, microfilm, videotapes, recordings, and motion pictures);

(c) electronic, Internet, magnetic, mechanical, or optical data, records, or representations (including, without limitation, tapes, cassettes, computer discs, recordings, computer memories, or other electronic data compilations); and (d) drafts and final versions and all originals and copies that differ from originals in any respect (including, without limitation, differences due to handwritten notes, editing, interlineations, blind copies, or other alterations).

  C.  "You" or "your" refers to the District of Columbia and subdivisions thereof, and to any employee of the District of Columbia.

  D.  "Post and forfeit" refers to the procedure defined in D.C. Code § 5-335.01 (2007).

  E.  "Individual Defendants" refers to Officer L. Acebal, Badge Number 1313; Officer J. Antonio, Badge Number 4409; and Officer J. Morales, Badge Number 273.

F.    "MPD" refers to the District of Columbia Metropolitan Police Department.

G.    "Plaintiff" refers to Lindsay Huthnance, formerly known as Lindsay Smith.

**Instructions**

A.    You are to produce all responsive Documents in your possession, custody, or control.

B.    All uses of the conjunctive include the disjunctive (and vice versa). All words in the singular include the plural (and vice versa). All uses of the word "all" include "any" (and vice versa). All uses of the word "each" include "every" (and vice versa). The use of a verb in any tense encompasses the use of the verb in all tenses.

C.    Each request shall operate and be construed independently. Unless otherwise indicated, no paragraph limits the scope of any other paragraph.

D.    Each Document that in its original form was stapled, clipped, or otherwise attached to other Documents shall be produced in such form.

E.    If a request is made for production of Documents that are no longer in your possession, custody, or control, state the following: when such Documents were most recently in your possession, custody, or control; what disposition you made of them; who is the person or entity currently in possession, custody, or control of such Documents; and the identity of any persons or entities referred to in the Document or sent a copy of the Document. If the Documents have been destroyed, identify the person who destroyed the Documents and the person who directed that the Documents be destroyed (in a manner sufficient to permit process to be served upon such person); state when they were destroyed; and state the reasons the Documents were destroyed.

F.      In accordance with Federal Rule of Civil Procedure 26(b)(5), for each Document

that is responsive to Plaintiff's First Set of Requests for Production of Documents from

Defendant District of Columbia but is not produced by reason of claim of privilege or otherwise,

produce a log identifying each such Document by stating its title, date, author(s), and

recipient(s), and provide the basis for withholding it.  Each author, addressee, or recipient who is

an attorney shall be noted as such.

G.      Objection to any request in part does not justify wholly withholding production of

responsive material.  For any request to which You are objecting in part, specifically identify the

objections and include corresponding entries in the log referenced in the preceding paragraph.

## DOCUMENT REQUESTS

Defendants are directed to produce the following:

1.      All Documents referring or relating to Plaintiff, whether by name, Social Security

number, or any other means of identification, including all police paperwork filled out in

connection with Plaintiff's arrest and the results of any NCIC, WALES, or similar queries

respecting Plaintiff's prior arrest record.

2.      All Documents referring or relating to the arrest and detention of Plaintiff (and

any encounter that preceded it) on November 15th and 16th, 2005, including, without limitation,

any police reports, witness statements, log entries, video recordings, post and forfeit paperwork,

and all radio communications/transmissions relating to Plaintiff's arrest, detention, and

transportation and identifying all MPD personnel on the scene of Plaintiff's arrest, detention and

transportation (and any encounter that preceded it) and returning to service thereafter.

3.      All Documents identifying MPD officers working in PSA 301 on November 15th

and 16th, 2005 (3-11 shift 11/15; midnight shift 11/15-16; day shift 11/16), and any other MPD

officers on special assignments, details, initiatives, or shifts that involved deployment within or around PSA 301 on those dates, including but not limited to any log books entries, rosters, roll call attendance sheets, time and attendance records for the Third District Station and Substations, and any dispatcher records.

4.    For each of the Individual Defendants, all Documents constituting their personnel records, including all Documents constituting, referring to, or relating to their performance evaluations, informal and formal complaints filed against them, and any disciplinary actions taken against them.

5.    A copy of the MPD General Orders.

6.    All Documents constituting, referring to, or relating to any formal or informal MPD general orders, rule, regulations, policies, procedures, or practices in effect or under consideration at any time that concern post and forfeit or citation release procedures.

7.    All Documents constituting, referring to, or relating to any formal or informal MPD general orders, rule, regulations, policies, procedures, or practices in effect or under consideration defining or otherwise giving meaning to the offense of disorderly conduct, including any guidance provided on the appropriate use of the designation "Disorderly Conduct - Loud & Boisterous" and under what circumstances such behavior warrants detention or arrest.

8.    All Documents constituting, referring to, or relating to any formal or informal MPD general orders, rules, regulations, policies, procedures, or practices in effect or under consideration concerning the training or supervision of MPD officers regarding the post and forfeit procedure; including any training materials, and any Documents identifying the times, dates, and content of any such training.

9.      All Documents constituting, referring to, or relating to any records reflecting training actually received by the Individual Defendants and all of their supervisors relating to: post and forfeit procedure, citation release procedure, or the bases for arrest for the offense of disorderly conduct, and the times, dates, and content of any such training.

10.     All reports, studies, evaluations, recommendations or data compilations created by any individual, group, or entity concerning the post and forfeit or citation release procedures.

11.     All Documents constituting, referring to, or relating to the annual public reports submitted by the Mayor to the D.C. Council as required by D.C. Code § 5-335.01(h).

12.     All Documents related to arrests made between November 15, 2003 and November 16, 2007 involving either post and forfeit release, citation release, or arrest for Disorderly Conduct.

13.     All Documents referring or relating to arrests made by or involving the participation of any of the Individual Defendants in the following circumstances:  (a) where post- and forfeit release was either offered or utilized; (b) where citation release was either offered or utilized; or (c) where arrestees were charged with Disorderly Conduct.

14.     All Documents, including statistics, compilations, studies, reports, data, guidelines referring or relating to the policy regarding the time elapsed between when a person electing to post and forfeit provides the post money and the time that person is released from custody.

15.     Except in the instant case, all Documents related to any civil actions, or other complaint, criticisms, and challenges, arising from the use of MPD's post and forfeit procedures.

16.     Except in the instant case, all Documents related to any civil, criminal or other actions (including citizen complaints) against any of the Individual Defendants.

17.     All Documents constituting, referring to or relating to any challenges to or complaints about the post and forfeit procedure at any time since its implementation.

18.     All Documents constituting, referring to, or relating to any formal or informal MPD policies, procedures, or practices in effect at any time between November 15, 2003, and the present concerning the retention or destruction of Documents.

19.     All Documents identified in Your response to Interrogatories.

20.     All Documents reviewed, considered, or relied upon in making Your responses to Interrogatories.


Respectfully submitted,


_____ ____
John Moustakas (DC Bar # 422076)
/s/ Sarah Keast (DC Bar # 493632)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser (DC Bar # 455377)
American Civil Liberties Union
        of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Plaintiff Lindsay Huthnance

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2008, I caused a copy of the foregoing

"Plaintiff's First Set of Requests for Production of Documents to Defendant District of

Columbia" to be served by hand delivery to counsel for the defendants at the address indicated

below:


Eric S. Glover
Assistant Attorney General
Office of Attorney General
441 4th Street, N.W., 6th Floor North
Washington, D.C. 20001


_____
Manas Mohapatra

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDSAY HUTHNANCE,                          )
                                            )
                                            )
                                            )
            Plaintiff,                      )
                                            )
            vs.                             )
                                            )    Case No. **06-CV-1871 (HKK)**
DISTRICT OF COLUMBIA, *et al.*              )
                                            )
            Defendants.                     )
                                            )
                                            )

### PLAINTIFF'S FIRST SET OF INTERROGATORY REQUESTS
### TO DEFENDANT DISTRICT OF COLUMBIA

Pursuant to Federal Rule of Civil Procedure 33, Plaintiff hereby requests that Defendant

District of Columbia, within 30 days of service, answer separately and fully in writing, under

oath, the interrogatories set forth below.

### Definitions

A.      "Individual Defendants" refers to Officer L. Acebal, Badge Number 1313; Officer

J. Antonio, Badge Number 4409; and Officer J. Morales, Badge Number 273.

B.      "MPD" refers to the District of Columbia Metropolitan Police Department.

C.      The term "policies, procedures, or practices" refers to formal or informal policies,

procedures, or practices, whether written or conveyed orally.  Where you are asked to identify or

describe "policies, procedures, or practices," please set forth in as much detail as possible the

specific policy, procedure, or practice, including the manner in which it is/was conveyed to

members of the Metropolitan Police Department.

D.      "Document" is used in the broadest sense permissible under the Federal Rules of

Civil Procedure, and means any writing (whether printed, typed, photocopied, handwritten,

recorded, stored, produced, or reproduced), tangible thing, or any other compilation of information in the possession, custody, or control of the District of Columbia, any other Defendant, or any employee or official of the District of Columbia, including, without limitation, any: (a) advisories, agreements, appointment books, articles, bills, binders, books, brochures, bulletins, calendars, charts, checks, circulars, communications (intra-office, inter-office, external, or other), computer printouts, confirmations, contracts, correspondence, desk-pads, diaries, drafts, drawings, e-mails, exhibits, facsimiles, financial statements, flyers, forecasts, graphs, guidelines, invoices, instructions, Internet printouts, letters, lists, logs, Lotus Notes, manuals, meeting minutes, memoranda, messages, microfiche, microfilm, notebooks, notes, outlines, pamphlets, periodicals and clippings from periodicals, pleadings, policies, post-it notes, projections, questionnaires, receipts, records, reports, rules, schedules, statements, studies, subscription agreements or pages, summaries, telecopies, telefaxes, telegrams, telephone messages, telexes, transcripts, translations, treaties, voicemail transcriptions, and worksheets; (b) graphic or audio records or representation (including, without limitation, photographs, charts, drawings, graphs, microfiche, microfilm, videotapes, recordings, and motion pictures); (c) electronic, Internet, magnetic, mechanical, or optical data, records, or representations (including, without limitation, tapes, cassettes, computer discs, recordings, computer memories, or other electronic data compilations); and (d) drafts and final versions and all originals and copies that differ from originals in any respect (including, without limitation, differences due to handwritten notes, editing, interlineations, blind copies, or other alterations).

     E.    Except where otherwise indicated below, "Identify" means:

         1.    when used in reference to a natural person, to state his or her name, present or last known address, present or last known employer, and, for

MPD employees, badge number, position or job title at time of

employment with the District of Columbia (whether as a consultant, part-

time employee, full-time employee, or other type of employment) and

dates of employment with the District of Columbia.

2.  when used in reference to any entity other than a natural person, to state

the name and present or last known address of such entity to be identified,

the present or last known telephone number of such entity, and the name

of any natural person who can be contacted as a representative or agent of

such entity.

3.  when used in reference to any Document, to state the names of the

author(s), addressee(s), and all known or presumed recipients, the title, the

subject matter, and the date of such Document.

4.  when used in reference to any statement, to state the date of the statement,

the person making it, the person receiving it, and the statement's content.

F.  "Post and forfeit" refers to the procedure defined in D.C. Code § 5-335.01 (2007).

G.  "Plaintiff" refers to Lindsay Huthnance, formerly known as Lindsay Smith.


### Instructions

A.  All uses of the conjunctive include the disjunctive (and vice versa). All words in

the singular include the plural (and vice versa). All uses of the word "all" include "any" (and

vice versa). All uses of the word "each" include "every" (and vice versa). The use of a verb in

any tense encompasses the use of the verb in all tenses.

B.    Each interrogatory shall operate and be construed independently. Unless otherwise indicated, no paragraph limits the scope of any other paragraph.

C.    Except as provided in Federal Rule of Civil Procedure 33, do not incorporate by reference facts contained in Documents. Specify the facts, allegations, names, or other information requested by each interrogatory regardless of whether such information is set forth elsewhere.

D.    If a request is made for description or identification of Documents that are no longer in your possession, custody, or control, state the following: when such Documents were most recently in your possession, custody, or control; what disposition you made of them; who is the person or entity currently in possession, custody, or control of such Documents; and the identity of any persons or entities referred to in the Document or sent a copy of the Document. If the Documents have been destroyed, Identify the person who destroyed the Documents and the person who directed that the Documents be destroyed; state when they were destroyed; and state the reasons the Documents were destroyed.

E.    If you object to any interrogatory, state the basis for your objection, explain in detail why you contend that the interrogatory is subject to the objection, and respond to the interrogatory to the extent that you consider it not to be objectionable.

F.    If the information called for by an interrogatory is unknown to you, explain the reason for your inability to respond and provide your best estimate of the information requested and the basis for that estimate.

G.    Answers to these interrogatories should include the identification of all relevant Documents.

H.     You are reminded to supplement and amend your response to each interrogatory in accordance with Federal Rule of Civil Procedure 26(e).

## INTERROGATORIES

1.     List the current home addresses of each of the Individual Defendants.

2.     Identify the immediate supervisors of each of the Individual Defendants on November 15th and 16th, 2005.

3.     Identify each MPD officer present in the 3100 Block of Mount Pleasant NW, Washington, D.C., whether inside the 7-Eleven, on the street, or elsewhere, from any time between 11:00 p.m. on November 15, 2005 through 3:00 a.m. on November 16, 2005, and describe what, if any, contact each had with Plaintiff.

4.     Identify the station crew on duty at the time of Plaintiff's transportation to the MPD station or substation to which she was brought on November 16, 2005.

5.     Identify each individual who interacted with Plaintiff or authored any of the police paperwork relating to her arrest or release between November 15th and 16th, 2005.

6.     Identify anyone involved in informing Plaintiff or Adrien Marsoni that Plaintiff's release could be secured by payment of a $25.00 bond on the scene.

7.     Explain whether it was consistent with MPD policies, procedures, and practices officers to solicit payment of a $25.00 bond on the scene of the arrest to obtain Plaintiff's immediate release and, if so, how.

8.     For each of the years 2004-2007, provide the total number of MPD arrests for Disorderly Conduct: (a) in which the post and forfeit was involved; or (b) in which citation release was involved; or (c) in which neither procedure was utilized.

9.    For each of the arrests identified in response to Interrogatory 8, provide the following information:

        a.  Name of Arrestee
        b.  Date and Time of Arrest
        c.  Arrest Number
        d.  Location of Arrest
        e.  Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)
        f.  Whether Arrestee was permitted to post and forfeit, was given citation release, or neither.

10.    For every arrest between November 15, 2003 and November 16, 2007 involving post and forfeit or citation release for all offenses other than Disorderly Conduct, provide the following information:

        a.  Name of Arrestee
        b.  Date and Time of Arrest
        c.  Arrest Number
        d.  Location of Arrest
        e.  Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)
        f.  Whether Arrestee was permitted to post and forfeit, was given citation release, or was held

11.    Including the arrests identified in Interrogatories 7 and 9, provide the total number of MPD arrests that involved the post and forfeit procedure between November 15, 2003 and November 16, 2007.

12.    For each Complaint that has been made to or filed with the MPD, the Office of Police Complaints, or the Office of Professional Responsibility (or any other municipal entity) about or against any of the Individual Defendants, provide the following information:

        a.  Name and Address of Complainant
        b.  Date of Complaint
        c.  Nature of the Complaint
        d.  Date of Incident about which Complaint was made
        e.  Name and Badge Number of each MPD Officer, including any of the Individual Defendants, named in Complaint
        f.  Disposition of Complaint, including any disciplinary action taken

13.    Identify whether the date and time an individual who is arrested is released is recorded, and if so, identify where and for how long this information is stored.

14.    Identify any statement made by the District of Columbia and its agents and the Individual Defendants, relating to Plaintiff's arrest, detention and release or the litigation that resulted therefrom.

Respectfully submitted,

_____
John Moustakas (DC Bar # 422076)
/s/ Sarah Keast (DC Bar # 493632)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser (DC Bar # 455377)
American Civil Liberties Union
       of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Plaintiff Lindsay Huthnance

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2008, I caused a copy of the foregoing

"Plaintiff's First Set of Interrogatory Requests to Defendant District of Columbia" to be served

by hand delivery to counsel for the defendants at the address indicated below:


        Eric S. Glover
        Assistant Attorney General
        Office of Attorney General
        441 4th Street, N.W., 6th Floor North
        Washington, D.C. 20001


        _____
        Manas Mohapatra

# GENERAL ORDER



**METROPOLITAN POLICE**

**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Title** | Animal Complaints and Reporting Animal Bitings |
| **Series / Number** | GO–OPS–401.07 |
| **Effective Date** | September 3, 2004 |
| **Distribution** | A |
| **Replaces / Rescinds** | General Order 401.7 (Animal Complaints and Reporting Animal Bitings) <br> SO 96-4 [Handling Dangerous Dogs (Pit Bull and Rottweiler)] <br> TT#05-940-96 (Dangerous Dogs) <br> TT#28-161-93 (Abandoned Animals) |

I. Background............Page 1
II. Policy....................Page 1
III. Definitions..............Page 1

IV. Regulations.......................Page 2
V. Procedural Guidelines..........Page 2
VI. Cross References...............Page 11

## I. BACKGROUND

The Metropolitan Police Department recognizes the importance of responding to and reporting animal complaints and bitings. The Department of Human Services, Animal Control Agency (ACA) has been established to handle these types of calls for service (except cruelty to animals). However, for those instances when ACA is not immediately available, the call involves cruelty to animals, or a member observes or is notified of an animal problem, MPD has established policies and procedures for handling these types of calls for service.

## II. POLICY

The policy of the Metropolitan Police Department is to take the appropriate enforcement action to handle animal related calls for service.

## III. DEFINITIONS

When used in this directive, the following terms shall have the meaning designated:

1. "Dangerous Dog" - any dog that:

   a. Has bitten or attacked a person or domestic animal without provocation; or

   b. In a menacing manner, approaches without provocation any person or domestic animal as if to attack, or has demonstrated a propensity to attack without provocation, or otherwise to endanger the safety of human beings or domestic animals.

2. "Badly Injured Animal" – any animal that is suspected of being rabid or has sustained an injury that may cause death.

## IV.     REGULATIONS

A.     Members of the Department taking a report relative to an animal complaint or animal biting shall utilize all available means to establish ownership of the animal.

    1.     Dog ownership can be established, via the dog license number, by contacting the Department of Health, Animal Disease Prevention Division, during normal working hours (Monday through Friday 0815 to 1645 hours) on 535-2323; or

    2.     Dog ownership can be established, via the rabies vaccination number, by contacting the Department of Human Services, Animal Control Agency (ACA) twenty-four (24) hours a day, seven (7) days a week on 576-6664.

       Note:   The ACA cannot establish dog ownership, via the dog license number.

B.     Whenever a member receives a complaint of a dog running-at-large and the owner can be determined, the owner shall be notified of the violation and advised that a PD Form 61D (Violation Citation) will be issued for any subsequent violation.

C.     Members observing a stray dog running-at-large shall notify the ACA as soon as possible to have the animal removed from public space.

D.     To prevent the transmission of diseases (distemper, worms, lice, etc.), members shall not transport a stray dog or other animal in any Department vehicle, nor shall a stray dog or other animal be held in any stationhouse or K-9 Kennel, while awaiting removal by an employee of the Animal Disease Control unit.

E.     The Washington Humane Society has been delegated the authority and responsibility for enforcing cruelty to animal complaints, as set forth in D.C. Official Code § 44-1501 through 1511 and § 22-1001 through 1014.

## V.     PROCEDURAL GUIDELINES

A.     The Department of Human Services, Animal Control Agency (1201 New York Ave., N.E.) is responsible for handling all calls (<u>except</u> Cruelty to Animals and dead animal removal) regarding animals in distress, running-at-large, sick or injured and/or those involved in a biting incident (dead or alive), etc.  To provide these services, the ACA is staffed twenty-four (24) hours a day, every day of the week and can be contacted on 576-6664.

B.    Responsibilities of Members

    1.    Injured Animals

        a.    When an animal is found injured on public space and the owner/custodian <u>cannot</u> be located, members observing the condition or having it brought to their attention shall contact the ACA, via telephone or through the dispatcher, to respond immediately to remove the injured animal. The ACA will give all MPD calls for service a priority rating.

        b.    In all cases where the owner/custodian <u>can</u> be located, the owner shall be notified and requested to respond to remove the animal. If the owner/custodian refuses or is unable to respond the ACA shall be notified and requested to respond to remove the animal.

    2.    Cruelty to Animal Complaints

        a.    Members who are called to the scene of a "Cruelty to Animals" case by a member of the Washington Humane Society, who has viewed a violation of the law or regulation of the District of Columbia for the prevention of cruelty to animals, shall, after determining that probable cause exists and receiving proper identification from the member of the society, arrest the offending party <u>without a warrant</u> as set forth in D.C. Official Code § 44-1505. (CALEA 1.2.5)

        b.    If a member of the Humane Society is in possession of a warrant, and that member requests the assistance of the Metropolitan Police Department for service of the warrant, members shall provide the necessary assistance.

        c.    Should a member make an arrest for such an offense, that member is responsible for the processing of the arrestee, including booking, papering and release, via citation, (unless the arrest was based on a warrant, then Citation Release is not authorized).

    3.    Removal of Dead Animals From Public Space:

        a.    When a dead animal, which was not involved in a biting incident, is found on public space, members shall notify the City-Wide Call Center on 727-1000 of the location of the animal and then return to service and make an entry on their district's Incidental Book as soon as practical.

        b.    In addition, if the dead animal is wearing a License or Vaccination Tag, the member shall telephone the registration

number(s) to the ACA, who will in turn, make every reasonable effort to contact the owner/custodian of the deceased animal.

4.  Innoculation of Dogs and Cats:

    Rabies and distemper vaccinations are required for all dogs and cats over four (4) months old in the District of Columbia. Members who receive inquiries shall instruct all persons to contact the ACA for information relative to free vaccinations.

5.  Handling Dangerous Dogs

    a.  Members who observe or confront a dangerous dog shall attempt to identify the owner/custodian and determine if the dog is licensed and registered.

    b.  If not satisfied that a suspected dangerous dog is licensed or registered, or if no owner/custodian can be identified, members shall contact the Animal Control Agency (ACA) for purposes of impounding the animal.

    c.  Members shall seek the cooperation of the owner/custodian in confining the animal so as to eliminate any immediate danger and/or to await the response of an ACA representative.

    d.  If the owner/custodian is not available or is unable to confine or control the animal, members shall take appropriate steps necessary to alleviate any immediate danger from the animal (i.e., utilization of O.C. Spray and/or ASP) and attempt to contain the animal until an ACA representative can respond.

    e.  Dogs are not allowed to run at large on public property and must be restrained by a leash not exceeding 4 feet in length and controlled by a responsible person (24 DCMR, Chapter 9, Animal Control). A PD Form 61D [Violation Citation] may be issued for such violations.

    f.  The owner of a dangerous dog that causes injury to or kills a human being or a domestic animal without provocation is subject to arrest for a felony and the dog may be impounded and destroyed.

    g.  All incidents involving dangerous dogs are to be reported on a PD Form 251 (Event Report), setting forth the circumstances, including identity of the dog owner, breed and description of the dog, impoundment by ACA, or other enforcement action.

6. Reporting Animal Bitings:

a. When the identity of the animal's owner <u>is known</u>, the reporting member shall be responsible for the following:

(1) Preparing a PD Form 251 (Incident Report); (CALEA 82.2.1-a-b)

(2) Serving the owner/custodian of the biting animal with a PD Form 48 (Notice To Owner of Biting Animal);

(3) Notifying the ACA by telephone, prior to being relieved from duty, that a PD Form 48 has been served to the owner/custodian of a biting animal;

(4) Serving the owner with a PD Form 61D (Violation Citation) when applicable;

(5) Serving the owner/custodian with a second PD Form 48 upon being notified that the owner/custodian of a biting animal failed to have the animal examined;

(6) Applying for and obtaining a warrant if the owner/custodian fails to have the animal examined after being served with a second PD Form 48, or when the owner/custodian ignores the PD Form 61D;

(7) Notifying the victim of the disposition of the PD Form 48;

(8) Notifying the victim if a stray (biting) animal has been sent to the ACA, or if the biting animal could not be located; and/or

(9) Conducting a follow-up investigation within seven (7) days of the original report and completing a PD Form 252 (Supplemental Report). The investigative report shall contain all new pertinent facts such as: (CALEA 82.2.1-a-b-c)

(a) Time and date the biting animal was examined by the ACA;

(b) Failure of owner/custodian to have the biting animal examined; and

(c) Service of second PD Form 48.

b. When the identity of the animal's owner/custodian is <u>not</u> known, members shall:

(1) Notify the ACA and prepare the PD Form 251; (CALEA 82.2.1-a-b)

(2) Make every possible effort to locate the animal responsible for the biting and the owner/custodian thereof; and

(3) Conduct a follow-up investigation within seven (7) days of the original report and complete a PD Form 252 (Supplement Report). If the follow-up investigation results in the identity of the owner/custodian, the reporting member shall be responsible for section V, B, 6, a, (1) through (9) of this directive. (CALEA 82.2.1-a-b)

c. The ACA shall <u>not</u> be notified of animal bites involving MPDC canine, see GO-RAR-306.01 (Canine Teams).

7. Service of PD Form 48 (Notice to Owner of Biting Animal)

a. Members handling animal biting reports shall prepare an original and two copies of the PD Form 48. The original shall be served upon the owner/custodian of the biting animal and the remaining copies shall be turned in with the PD Form 251 or PD Form 252.

b. Upon serving the owner/custodian of a biting animal with the PD Form 48, members shall:

(1) Instruct the owner/custodian to present the animal for examination to the ACA or a private veterinarian within 24 hours;

(2) Notify the ACA on 576-6664 prior to being relieved from duty;

(3) Instruct the owner/custodian that he/she must keep the biting animal under his/her control for a period of ten (10) days from the date of the alleged biting;

(4) Instruct him/her to have the veterinarian report his/her findings to the ACA on the same day that the animal is examined, if the owner/custodian elects to take the animal to his/her own private veterinarian; and

(5) Immediately notify the ACA if the biting animal is other than a dog or cat, or if the biting animal appears to be sick.

c. When a member has been notified by the ACA that the owner/custodian of a biting animal has failed to present the animal for examination, the member shall:

(1)    Serve the owner/custodian with a second PD Form 48 and inform the owner/custodian that if he/she fails to adhere to the second notice an application will be sought for an arrest warrant;

(2)    Prepare a PD Form 252 and indicate the time and date that the owner/custodian was served with the second notice and what efforts were made to locate and notify the owner/custodian, if the owner/custodian of a biting animal was not served with a PD Form 48 within seven (7) days of the assignment; and

(3)    Immediately notify the ACA if the owner/custodian cannot be located, and prepare a PD Form 252, if the biting animal is suspected of being ill, or if the animal is other than a dog or cat.

d.    Upon being notified by the ACA that the owner/custodian has failed to produce the animal for examination after a second notice, the original reporting member shall:

(1)    Respond to the Office of the Attorney General for the District of Columbia, 441 4th Street, N.W. (Superior Court), to apply for a warrant;

(2)    Request that the Attorney General expedite the issuance of the warrant as the health of the person bitten may be in jeopardy;

(3)    Immediately execute the warrant (The Chief of the Animal Disease Control, Department of Human Services, or his/her designee, will be available as a witness in court); and

(4)    Immediately contact the ACA to have the animal impounded.

8.    Impoundment of Biting Animals

a.    When an animal has bitten a person or is suspected of having bitten a person and the owner/custodian cannot be located, members shall make every effort to confine the animal and shall notify the ACA for immediate impoundment and examination.

b.    If the biting animal or suspected biting animal is dead, the ACA shall be notified immediately and requested to respond and remove the animal for examination.

c.    Reports concerning the above instances shall indicate that the animal has been removed to the ACA for examination.

9. **Impoundment of Dangerous or Abandoned Animals**

    a. When a member confronts a dangerous animal and the owner/custodian is on the scene and refuses to confine the animal in a location that would eliminate the immediate danger, the member shall call the ACA and request that they respond and impound the animal.

    b. Members may request assistance from the ACA when they know in advance that they will be confronting a dangerous animal(s), while in the performance of their duties.

    c. Members who find animals inside the residence of a deceased person shall attempt to locate a relative or friend that will care for the animal. If unable to locate anyone to care for the animal, he/she shall contact the ACA and request that they respond and impound the abandoned animal.

    d. Anytime an animal is impounded by the ACA at the request of a member of this Department, a PD Form 251 shall be completed setting forth the circumstances of the incident that required the impoundment.

10. **Handling Suspected Rabid Animals**

    a. Any member who observes a suspected rabid animal, within the confines of the District of Columbia, shall take the following action:

        (1) Immediately contact the Animal Control Agency and keep the animal in sight until a member of that agency arrives;

        (2) Take every precaution to stay away from the animal. Rabies affects the brain and the affected animal may be unpredictable and become dangerous if aroused or harassed;

        (3) Keep all bystanders away and attempt to keep other animals from interfering with it;

        (4) Follow the procedures outlined in GO-RAR-901.01 section VI, H, (Use of Firearms and Other Service Weapons) if a restraining device is not readily available; and

            (a) For the purpose of this order, the suspected rabid animal shall be classified as a "Badly Injured Animal"

      (b)    If it is necessary to destroy a suspected rabid animal that has bitten someone, do not, if at all possible, shoot the animal in the head because the head must be preserved for examination in order to confirm the presence of rabies.

(5)    Do not, under any circumstances, handle any dead animal suspected of having rabies; call the Animal Control Agency and be guided by their instructions.

b.    If a member comes in direct contact with a suspected rabid animal, he/she shall:

(1)    Immediately wash the affected area with soap and water;

(2)    Immediately respond to a hospital facility;

(3)    Complete a PD Form 318 (Communicable Disease Contact Report) to include, in the remarks section, the type of animal involved, and complete a PD Form 42 (Injury or Illness Report); and

(4)    Notify a Medical Services Division (MSD) member as soon as possible and respond to sick call on the first day that the MSD is open for business following the initial contact.

C.    Responsibilities and Procedures for Station Clerks (CALEA 82.2.1-d-e)

In cases involving animal bites, the station clerk shall be responsible for:

a.    Forwarding all reports to Staff Review, Records Division;

b.    Filing a copy of all PD Forms 251, 252, and 48 in the district's suspense file where they will remain until the biting animal has been examined, or until it is determined that the case should be suspended;

c.    Mailing a copy of PD Forms 251 or 252 with attached copy of PD Form 48 to the ACA. This shall be accomplished by placing the form(s) in a messenger envelope addressed to the Animal Control Agency, 1201 New York Avenue, N.E., Washington, D.C. 20002, and forwarding it to the Identification and Records Division mailroom, via the morning papers;

d.    Making a notation on the copies of PD Form 251 or PD Form 252 prior to mailing them to the ACA.

    (1)    Date and time mailed;

    (2)    Name of forwarding station clerk; and

    (3)    Forwarding unit's phone number.

e.    Upon being notified by the ACA that an owner/custodian of a biting animal failed to have the animal examined:

    (1)    Pull the PD Form 251 and PD Form 48 from the suspense file and make a notation on the forms;

    (2)    Notify the member who served the initial PD Form 48 to serve a second notice to the owner/custodian of the biting animal; and

    (3)    Instruct the member to apply for a warrant if the owner/custodian fails to comply with the second notice.

f.    Upon receiving a copy of a PD Form 48 from the ACA, certifying that the biting animal has been examined; and

    (1)    Making a notation on the PD Form 48 in the district's suspense file;

    (2)    Notifying the issuing member that the biting animal has been examined; and

    (3)    Instructing the issuing member to complete a PD Form 252, closing out the original report, and submit the form through his/her supervisor.

g.    Removing all copies from the district's suspense file and the form(s) same in the district's general complaint file upon receiving a PD Form 252 closing out the original report or suspending the investigation.

D.    Responsibilities and Procedures for Supervisory and Command Personnel

1.    District Patrol Service Area (PSA) officials shall be responsible for:

a.    Assigning another member to serve the PD Form 48 if the reporting member was unable to locate the owner/custodian of a biting animal and is going on day off, leave or on detail (more than one tour of duty);

b.    Making a determination as to when all reasonable avenues have been pursued and exhausted to locate the owner/custodian of a biting animal; and

c.    Ensuring that all animal bites, except those involving MPDC canine, be reported to the ACA telephonically, prior to the reporting member being relieved of duty.

2.    Upon receiving information that a member has used a firearm to destroy a dangerous animal, the Watch Commander shall follow the procedures outlined in GO-RAR-901.01. (CALEA 1.3.9-a)

3.    Director, Records Division shall:

Ensure that all PD Forms 48, received from the ACA, are forwarded to the originating element indicating that the case has been closed.

Note:  The Chief of the Animal Disease Control, Department of Human Services, after completing the examination of an animal or learning that the examination has been completed by a private veterinarian, will forward a verified copy of the PD Form 48 to the Records Division, with a notation on the form, giving the time and date the animal was examined.

## VI.    CROSS REFERENCES

1.    GO-RAR-901.01 (Use of Firearms and Other Service Weapons)

2.    GO-RAR-306.01 (Canine Teams)

3.    D.C. Official Code § 22-1001 through 1014

4.    D.C. Official Code § 44-1501 through 1511

Charles H. Ramsey
Chief of Police

CHR:SOA:MAR:njg

1869

# Metropolitan Police Department ◻ Washington, D.C.



## GENERAL ORDER



| Subject: | Series 101 | Number 2 | Distribution B | Change Number |
|---|---|---|---|---|

**Establishment of the Police Auxiliary Service**

Effective Date **December 21, 1995**

Revision Date

The purpose of this General Order is to establish the policy and procedures for implementation of the Police Auxiliary Service Program within the Metropolitan Police Department to utilize the services of citizen volunteers who are willing to donate their time and services to the department.

PART I      The Police Auxiliary Service

     A.    Establishment.
     B.    Membership Qualifications.
     C.    Rules of Conduct.
     D.    Other Supplemental Programs.

PART II      Responsibility and Procedures for Administrative and Supervisory Staff

     A.    Commander, Reserve Corps Division.
     B.    Director, Personnel, Training and Testing Division.
     C.    Director, Identification and Records Division.
     D.    Department Commanders and Directors.
     E.    Departmental Supervisors.

PART I

     A.   Establishment.

       1.    The Police Auxiliary Service is hereby established pursuant to the provisions of the Volunteer Services Act, D.C. Code § 1-304 et seq. (1981); the rules implementing the Act, "Utilization of Volunteer Services," § 4000.1 et seq., 29 DCR 5405; and the "Implementing Guidance and Procedures," Chapter 35: Voluntary Services, District Personnel Manual.

       2.    The Commander, Reserve Corps Division, with appropriate assistance from the Personnel Liaison Officer, shall serve as the Volunteer Service Coordinator for the department.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 101.2** | **December 21, 1995** | | **Page 2 of 8** |

       3.     The Police Auxiliary Service program shall be administered as the Police Auxiliary Service Branch of the Reserve Corps Division and be directed by a volunteer with requisite knowledge, skills and abilities as designated by the Volunteer Service Coordinator.

**B.**    **Membership Qualifications.**

    1.    To participate in the Police Auxiliary Service, applicants must:

        a.    Be 18 years of age or older, have a high school education or equivalent, live within the District of Columbia - Metropolitan Area, and have no criminal record, excluding minor traffic violations.

        b.    Have skills needed and identified by the Department, and shall be assigned work which they are capable of performing based upon training and experience.

        c.    Be willing to work a minimum 2-hour tour of duty per scheduled day and no less than 16 hours per month; maintain a level of confidentiality in sensitive assignment areas; and abide by the rules and regulations required by all employees of the Metropolitan Police Department.

        d.    Complete a D.C. Form 2000 or other comparable application document, describing their work history and educational background and submit it to the Commander, Reserve Corps Division, 300 Indiana Avenue, N.W., Washington, D.C. 20001. All applications shall be carefully screened and shall include a background investigation.

        e.    Upon the satisfactory completion of a background investigation which reveals no criminal record (excluding any minor traffic violations), the volunteer shall be notified to report to the Reserve Corps Division for an interview prior to acceptance. Volunteers who are not accepted into the Program, for any reason, shall be notified.

        f.    Agree to conditions of work, confidentiality, conflict of interest and security appropriate to the duties for which they are engaged.

70

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 101.2** | **December 21, 1995** | | **Page 3 of 8** |

2. **Volunteers may apply for the following types of positions:**

> **Word Processor/Typist**
> **Data Entry Clerk**
> **Telephone Receptionist**
> **File Clerk or Mailroom Clerk**
> **Administrative Assistant**
> **Inventory Control Clerk**
> **Paralegal Clerk**
> **Assistant Police Dispatcher**
> **Public Relations Assistant**
> **Community Service Assistant**
> **Any other position or service identified by the department.**

C. **Rules of Conduct.**

Citizens who are interested in participating in the Police Auxiliary Service are expected to comply with the same ethical and legal standards which must be adhered to by regular employees of the Metropolitan Police Department. Volunteers who are accepted for service in the program shall:

a. Perform only those duties authorized to be performed by civilian employees of the department. Members of the Police Auxiliary Service shall have no police powers and shall, under no circumstances conduct or represent themselves in a manner that would suggest that they have police powers.

b. Establish a work schedule of two hours or more per scheduled day. Volunteers may also work full-time, part-time, or intermittent schedules and day or night shifts.

c. Receive an orientation session and appropriate on-site training, as needed.

d. Be assigned work in which they have appropriate training, knowledge, skills and abilities. Some assignments may involve minimal training, but within the scope of existing transferable skills.

e. Represent the Metropolitan Police Department in their assigned duties and follow the same standards of conduct prescribed for paid employees of the department. Volunteers shall maintain a neat and well-groomed appearance at all times and shall display a courteous demeanor. No form of substance abuse will be tolerated.

71

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 101.2   —   — | December 21, 1995 | | Page 4 of 8 |

f.  Not engage in any political activity during working hours for the Metropolitan Police Department. During non-working hours, however, volunteers are not subject to the prohibition on political activity that is applicable to the Metropolitan Police Department employees.

g.  Immediately notify a supervisor if injured while performing in an assigned task. Notification of injury must be made on the same day the injury occurred or as soon as possible thereafter.

h.  Use telephones within the department for official purposes only, both outgoing and incoming calls, except in cases of emergency.

i.  Not directly or indirectly communicate to any news media, person, or business any information of a confidential nature concerning the operations of the Police Auxiliary Service or the Metropolitan Police Department. Disclosure of any such confidential information is prohibited.

j.  Not be placed in any position likely to constitute a conflict of interest or give the appearance of such.

k.  Display an identification card (with photograph) which must be worn when involved in any volunteer services with the Metropolitan Police Department. Additional identifying insignia or accessory clothing may be authorized by the Chief of Police.

l.  Be utilized to perform the following:

(1)  Any service or function which augments or supplements an existing function, service or program which is staffed by employees of the Metropolitan Police Department.

(2)  Any service or function which creates a community service capability which would not be available under existing programs or within the level of available resources.

(3)  Duties assigned to a regular employee during the temporary absence of the regular employee, provided the volunteer is qualified to perform the assigned duties.

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| General Order 101.2 | December 21, 1995 | 1 | Page 5 of 8 |

(4)   Duties assigned to a regular employee, on a temporary basis, during periods of heavy workload or to assist in relieving an existing backlog of work.

(5)   Duties which require only minimal physical demands. No individual shall be denied an opportunity to volunteer services based on any disability, provided the individual can adequately perform the duties safely and without hazard to himself/herself or others.

D.   **Other Supplemental Programs.**

Although not specifically covered by this directive, the following types of programs of a similar nature, may be developed, upon approval of the Chief of Police, and administered under the general provisions of this program:

a.   College interns.
b.   Americorps or similar programs.
c.   Summer youth programs.
d.   Senior citizen volunteer programs (e.g., AARP-sponsored).
e.   Fellows programs sponsored by Government or private sector.

**PART II**

A.   **Commander, Reserve Corps Division.**

1.   The Commander, Reserve Corps Division, serving as Volunteer Service Coordinator and working closely with the Personnel Liaison Officer, shall be responsible for the administration of volunteer services within the department.

2.   The Volunteer Service Coordinator shall ensure, in consultation with the Personnel Liaison Officer, that volunteers working for the department are given fair and adequate supervision in accordance with all applicable rules and procedures of the D.C. Office of Personnel.

3.   The Volunteer Service Coordinator or designee shall identify functions and services within the department which volunteers may perform and for which adequate supervision is available.

4.   The Volunteer Service Coordinator or designee shall initiate recruiting efforts designed to encourage volunteer participation in the Police Auxiliary Service.

73

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 101.2** | **December 21, 1995** | | **Page 6 of 8** |

5.    The Volunteer Service Coordinator or designee shall ensure that an appropriate background investigation, including reference reviews and criminal history checks, have been conducted for each potential volunteer, in keeping with the security and sensitivity of the position to be filled and in consultation with the MPD Recruiting Unit and the appropriate Commander or Director.

6.    The Volunteer Service Coordinator or designee may interview applicants to determine their qualifications and shall refer applicants to properly designated supervisors for pre-selection interviews and placement decisions.

7.    The Volunteer Service Coordinator shall develop, in cooperation with the Personnel Liaison Officer, an orientation program to be presented to new members of the Police Auxiliary Service. The program may be presented by qualified staff of the Reserve Corps Division and may include ride-alongs or other demonstrations of police activity.

8.    Once an applicant has been selected for a position within the department, the Volunteer Service Coordinator or designee is authorized to communicate directly with the designated supervisor, through the appropriate district or division official, with regard to maintenance of records and general administrative responsibilities.

9.    The Volunteer Service Coordinator is authorized to develop, in consultation with the Personnel Liaison Officer, such forms and guidelines as will facilitate the administration of the program.

10.    The Volunteer Service Coordinator shall submit annually to the D.C. Office of Personnel, through the Personnel Liaison Officer, a report on the number of volunteers and hours worked during the preceding twelve months.

B.    Director, Personnel, Training and Testing Division.

The Director, Personnel, Training and Testing Division shall provide appropriate support and assistance to the Commander, Reserve Corps Division, in carrying out the Police Auxiliary Service program.

C.    Director, Identification and Records Division.

The Identification and Records Division shall complete a P.D. Form 70 (Criminal History Request) on each applicant, and forward the completed form back to the Volunteer Service Coordinator.

UN-11 (CONT.1) 10/95

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 101.2** | **December 21, 1995** | | **Page 7 of 8** |

**D.    Department Commanders and Directors.**

1.    All department Commanders and Directors shall survey their units for the purpose of identifying functions or services which might be performed by volunteers in compliance with the Volunteer Services Act and shall provide appropriate information to the Volunteer Service Coordinator or designee, including:

    a.    A brief (one paragraph) description of the services requested.

    b.    Location of the work site.

    c.    Immediate supervisor's name, title, unit, and phone number

    d.    Range of hours when services are needed and supervision is available.

    e.    Any other information needed for effective administration of the program.

2.    Department Commanders and Directors shall authorize supervisors designated under the Police Auxiliary Service program to communicate directly with the Volunteer Service Coordinator or designee with regard to maintenance of records and general administrative responsibilities.

3.    To request the services of a volunteer, the requesting unit may contact the Volunteer Service Coordinator or designee for information and assistance.

**E.    Departmental Supervisors.**

1.    All volunteers shall be assigned to a supervisor.  The supervisor shall be responsible for assigning and controlling work that is to be performed and for monitoring the working hours of the volunteer.

2.    The supervisor at the work site will complete a Request for Volunteer Service Form, giving a brief statement of the duties to be performed by the volunteer.  Once completed, this form shall be sent to the Volunteer Service Coordinator, who will match job positions with volunteers.

    a.    The brief statement shall only describe basic duties, so as to provide written documentation of the volunteer's assignment.

    b.    Such a statement should not be patterned after an official job description which would normally be used for grade and salary determinations.

UN-11 (CONT.1) 10/95

| Publication | Effective Date | Change Number | Page Number |
|---|---|---|---|
| **General Order 101.2** | **December 21, 1995** | | **Page 8 of 8** |

3.    Police Auxiliary Service members should work at least two hours per scheduled day.  The volunteer and his/her supervisor will jointly schedule hours and days that the volunteer will be able to work.  The volunteer may work a full-time, part-time, or an intermittent work schedule.  Day, as well as night shifts, may be available.  Volunteers must contribute at least 16 hours per month in order to remain in good standing.  Any volunteer who is unable to report to duty due to sickness or other causes shall, as soon as possible, notify his/her immediate supervisor and/or the Volunteer Services Coordinator.

4.    Supervisors should be as liberal as possible in allowing the volunteer to schedule work hours which will not conflict with the volunteer's employment or other outside activities.

5.    Each element utilizing volunteers shall complete a Volunteer's Hourly Commitment Form for recording the working hours of volunteers.  This form is designed to  meet the needs of the department and provides the volunteer with a written record of his or her own time and attendance.  The Volunteer's Hourly Commitment Form shall be forwarded on the first of each month to the department's Volunteer Service Coordinator.

6.    Supervisors shall provide regular or special evaluation reports as may be requested by the Volunteer Service Coordinator.

7.    Volunteers are to be treated fairly and in conformance with the accepted personnel policies of the department and the District Government to every extent possible.

Larry D. Soulsby
Chief of Police

LDS:AFA:afa

# GENERAL ORDER



| | |
|---|---|
| **Title** | Canine Teams |
| **Series / Number** | GO – RAR – 306.01 |
| **Effective Date** | February 18, 2005 |
| **Distribution** | B |

**Rescinds**
General Order RAR-306.01 (Canine Teams)
[Effective Date: October 7, 2002]

## DISTRICT OF COLUMBIA

I. Background...................... Page 1
II. Policy............................... Page 1
III. Definitions ......................... Page 1
IV. Rules................................ Page 3
V. Regulations......................... Page 4
VI. Procedural Guidelines ......... Page 6
VII. Cross References ............... Page 10

## I.    BACKGROUND

The Metropolitan Police Department utilizes trained law enforcement canines because their superior sense of smell and hearing make a valuable supplement to police manpower.  Because of their potential aggressiveness, the use of canines by this Department requires adherence to procedures that properly control their use of force potential and that channel their specialized capabilities into legally acceptable crime detection, prevention, and control activities.

## II.    POLICY

The policy of the Metropolitan Police Department is to ensure that all Department canines and canine handlers are trained in and utilize the handler-controlled alert methodology as defined in this order.  The policy of the Metropolitan Police Department is to ensure that members assigned to the canine unit adhere to the proper rules and procedures for the management of the Department's canine unit and to use police canines in patrol or field operations in accordance with General Order RAR-901.07 (Use of Force).  (CALEA 41.1.4)

## III.    DEFINITIONS

When used in this directive, the following terms shall have the meanings designated:

A.    **Alert** – Any movement by a canine that would indicate the presence of the subject to include the following: raising its head, sniffing, pawing, scratching, and barking.

B.    **Apprehension** – The lawful arrest, capture, or taking into physical custody of a subject.  When a canine is involved or on the scene, apprehension may be described as follows:

1.  <u>With contact</u> – where the canine physically made contact with a subject.

2.  <u>Without contact</u> – where articulated facts demonstrate that the presence of the canine was instrumental in the surrender of the subject.

3.  <u>Independent of canine involvement</u> – where the arrest, capture or custody is effected by police action without direct involvement of the canine on the scene.  If the canine was used for tracking or searching for a suspect, that fact should be noted.

C.  **Bite** – Physical contact with a subject that results in a skin wound or puncture produced by a canine's teeth.

D.  **Contact** – Any touching of a person by a canine, including nudging, pawing, seizing of subject's clothing, or biting, which may or may not require medical treatment (but not including playful or non-aggressive behavior).

E.  **Canine Handlers** – Sworn members who have been certified by the Canine Training Official as qualified to perform all responsibilities of a canine handler. **(CALEA 41.1.4-d,g)**

F.  **Canine Official** – A member of the Canine Unit, the rank of sergeant or above.

G.  **Canine Team** – A canine handler and his or her assigned police canine.

H.  **Handler-Controlled Alert Methodology** – The training methodology employed by MPD that results in both the canine and handler being trained to the point that the handler has demonstrated total control over the canine's actions.  Whereby, the handler, when authorized to conduct a tactical search, shall ensure that the canine is in constant view and under the handler's total control at all times.  The only time a canine will be out of the visual range of a handler is when the canine clears a threshold (e.g. rounding a corner, entering a room, ascending/descending a stairwell.) Clearing a threshold shall take no more than five (5) seconds.  The handler shall also ensure that he/she is at the canine's position within five (5) seconds of a canine "alert."

The canine will only bite upon handler command.  The only circumstance under which a canine may contact/bite without handler command is if the canine, the canine handler, or another is threatened with possible attack.

I.  **Serious Use of Force** – Lethal and less-than-lethal actions by MPD officers including:

1.  all firearm discharges by an MPD officer with the exception of range and training incidents and discharges at animals;

## THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

LINDSAY SMITH,          )
                                )
       Plaintiff,         )
                                )     **Civil Action No. 1:06–1871 (HHK)**
       v,            )
                                )
                                )
THE DISTRICT OF COLUMBIA, *et al.,*  )
                                )
       Defendants.      )
_____)

## <u>DECLARATION OF DELORIS HUNTER</u>

I, Deloris Hunter, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct:

1.      I am over the age of twenty one (21) and am competent to provide the information set forth herein.

2.      I am the Manager of the Records Branch of the District of Columbia Metropolitan Police Department.  I have held this position for seven (7) years.

3.      The Records Branch maintains the Criminal Justice Information System (CJIS) database, and hard copy records of arrest reports, including PD 163s (Arrest/Prosecution Reports), PD 251s (Incident Reports), and PD 252s (Supplemental Reports).

4.      The statement of facts field is not contained on the CJIS system.  The PD 163 contains defendant's name, race, sex, date of birth, address, phone number, arrest number, PDID number (if assigned), charge, location of the offense, date and time of offense, birth place, Social Security Number, clothing description, date and time of arrest, officer name and

badge number, and the unit to which he/she is assigned. These fields are keyed in CJIS if the information is available or provided by the defendant at time of arrest.

     5.     The hard copy files consist of documents that are maintained numerically by PDID number or arrest number according to the various Districts. In order to obtain the statement of facts associated with an arrest, clerical staff must manually retrieve the paper document from MPD files.

     6.     Plaintiff has requested documents related to arrests for disorderly conduct from November 15, 2004, through November 15, 2005[1], (a) in which post and forfeit was involved; (b) in which citation release was involved; and/or (c) in which neither was involved. The estimated number of individuals who fit this category is 22,640.

     7.     The Records Branch does not have the manpower to conduct Plaintiff's request without undue burden and cost. There are three (3) clerical staff persons assigned to the Records Branch that are responsible for filing and retrieving arrest records. Only one (1) staff person is available to conduct this production of documents. It is estimated the staff person can dedicate an average of three (3) hours a day to comply with the request without severely impacting the staff person's current responsibilities to the MPD. Based on a search, retrieval, and copy rate of 30 minutes per arrest report, I estimate that it will take **11,320 hours or 3,773.33 days**, based upon one clerical person working 3 hours per day, to produce the 22,640 PD 163s.

     8.     PD 251s are filed apart from PD 163s. Based on a search, retrieval, and copy rate of 15 minutes per incident report, it would take a minimum of **5,660 hours or 1,886.67 days**, based upon one clerical person working 3 hours per day, to produce 22,640 PD 251s and

---

[1] Notably to conduct this search, the Records Branch would still have to retrieve records from January  , 2004 to December 15, 2005 to determine which arrest fall within this category.

PD 252s. Additional time will likely be needed because the PD 251s and PD 252s for 2004 are no longer housed in the Records Branch. They have been archived in the Federal Records Storage Center in Suitland, MD. To retrieve the 2004 PD 251s and PD 252s, MPD must fill out a separate request for each document to be produced. Employees of the Federal Records Storage Facility would then pull the requested documents and transmit them to MPD for copying and production.

9.      The Records Branch does not have additional staff assigned to pulling PD 163s, 251s, and 252s. Other criminal history technicians are in the Criminal History Section and are attending to the over 200 customers who demand service each day for criminal background checks. Two other clerical staff in the Public Documents Section attend to the over 50 customers per day who request incident and accident reports, and provide assistance with the 200 customers requiring criminal background checks.

10.     If additional personnel were used to accomplish the task of pulling the estimated 22,640 PD 163s, and 22,640 PD 251s and 252s identified in response to Plaintiff's discovery requests, certain functions of the Department would have to be closed down or risk severe complaints.

11.     MPD charges $ 4.00 per quarter hour, after the first hour, for record searches conducted by clerical personnel (DS-1 through 8). The charge for searching for the requested PD 163s would be approximately **$ 181,104**. The charge for searching for the requested PD 251s and 252s would be approximately **$ 90,544**. This does not include the charges for copying the requested documents ($.25 per page) or the charges for the employees of the Federal Records Storage Facility to search and transmit the 2004 PD 251s and 252s.

12.     Generally, a PD 163 is two (2) pages in length, a PD 251 is four (4) pages, and a

3

PD 252 is two (2) pages in length.  Assuming that each of the 22,640 records contains a PD 163, PD 251, and PD 252, the charge for copying these records would be approximately **$45,280**.

Date: 6/10/08

Deloris Hunter

4

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **LINDSAY SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No. 1:06–1871 (HHK)** |
| **v,** | ) | |
| | ) | |
| | ) | |
| **THE DISTRICT OF COLUMBIA,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DECLARATION OF THOMAS E. SHARP

I, Thomas E. Sharp, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct:

1.    I am over the age of twenty one (21) and am competent to provide the information set forth herein.

2.    I am the Deputy Director of the District of Columbia's Office of Police Complaints (OPC). I have held this position since October 2002.

3.    OPC is responsible for investigating and resolving police misconduct complaints filed with the agency by the public against Metropolitan Police Department (MPD) and the District of Columbia Housing Authority Police Department (DCHAPD) officers. A member of the public who wishes to file a complaint against an MPD or DCHAPD officer may also choose to file a complaint directly with either police department that will be investigated and resolved by the police department. OPC maintains files related to the complaints filed with the agency.

4.    OPC currently has 19 full-time employees, 12 of whom work in the agency's

investigative unit. OPC has one public affairs specialist who is the person responsible for fulfilling most requests made to the agency for records or documents.

5.     Each OPC case file contains all of the records related to the agency's investigation of a complaint. At a minimum, most files contain at least 50 pages of documents, and, depending on the nature of the complaint and the extent of the investigation, an individual file can contain several hundreds of pages of documents, as well as recordings, pictures, and other records.

6.     Plaintiff has requested documents related to arrests for disorderly conduct from November 15, 2004, through November 15, 2005, (a) in which post and forfeit was involved; (b) in which citation release was involved; and/or (c) in which neither was involved.

7.     During the period from November 15, 2004, to November 15, 2005, OPC received approximately 340 complaints.

8.     In order to retrieve complaints related to a specific issue or issues, OPC must conduct general keyword searches of its database to identify a universe of complaints that may be relevant. Due to the wide variation among complaints, and the discretion given to investigators in writing narratives in the database to describe the allegations contained in a complaint, a variety of terms must be used in an attempt to capture all complaints that may be relevant. Under this approach, the searches will result in a number of complaints that are not relevant.

9.     To ultimately determine if a complaint is relevant to a request, each paper file must then be located and reviewed to determine if it is relevant. The information contained in the database records is not necessarily sufficient to make this determination.

10.     Based on my keyword searches of the database using the terms "arrest,"

"disorderly," "conduct," "collateral," "forfeit," "citation," and "release," I identified approximately 160 of the 340 files that may be relevant.

11.    It takes approximately 15 minutes per file to locate and review the materials necessary to determine if a complaint is relevant.  To pull and review 160 files, this process would amount to approximately 40 hours of work.

12.    For any file that is relevant, it must then be disassembled and photocopied.  It takes at least 30 minutes per file to copy it and duplicate any recordings or other records contained in the file.  Conservatively assuming that 80 of the files are relevant, this process would amount to at least 40 hours of work.

13.    After relevant files have been located and duplicated, all of the documents must be reviewed by a supervisor to identify any documents that would be subject to privilege or any other protection that may limit production of the documents.  This process would amount to approximately 15 to 20 hours of work.

14.    Devoting two and a half weeks of manpower to responding to this discovery request would impose an undue burden and cost on OPC.  It would consume the significant majority of the work time of OPC's public affairs specialist, who also has responsibility for conducting OPC's community outreach, maintaining OPC's website, and responding to the more than 400 Freedom on Information Act (FOIA) requests received by OPC each year.  In addition, responding to this request would impose a noticeable burden on supervisors or managers to review the large amount of responsive documents.  Beyond the time involved, there would also be costs associated with duplicating documents and recordings.

_6-11-08_
Date

_Thomas E. Sharp_