**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

LINDSAY HUTHNANCE,            )
                             )
            Plaintiff,        )
                             )
v.                           )    Case No. 06-CV-1871 (HKK)
                             )
                             )
DISTRICT OF COLUMBIA, ET AL.  )
                             )
            Defendants.       )
_____ )

**<u>PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL</u>**

Contrary to both common practice and logical, efficient litigation, Defendants' motion seeks to compel Plaintiff to respond to Defendants' 14 contention interrogatories at the very beginning of discovery. Further, Defendant seeks to require what amounts to a signed statement by Ms. Huthnance, which is not authorized by the federal rules. For these reasons, Defendants' Motion to Compel should be denied.

**BACKGROUND**

Because of Defendants' misleadingly incomplete factual account and their continued unwillingness to resolve discovery disputes without court intervention, we are constrained to begin with a necessary account of the historical facts. After Plaintiff received Defendants' deficient discovery responses, undersigned counsel arranged a telephone conference with the assigned Assistant Attorney General ("AAG") to discuss these deficiencies. It was not until Plaintiff arranged a telephonic "meet-and-confer" regarding ***<u>Defendants'</u>*** discovery deficiencies – which began on April 29 and continued and finished on April 30 – that Defendants' first raised any whisper of "deficiencies" in ***<u>Plaintiff's</u>*** discovery responses – a full month and a half after Plaintiff served them.

During the meet-and-confer call, the AAG challenged Plaintiff's deferring answers to contention interrogatories until later in or at the close of discovery. Counsel explained Plaintiff's position that it was premature for responses to be made to Defendants' contention interrogatories at the outset of discovery, but agreed to take Defendants' request for earlier responses under consideration.

On May 5, 2008, Plaintiff's counsel emailed a letter to the AAG memorializing the meet-and-confer session, including a reiteration of Plaintiff's offer to take the requests under consideration. [Ex. C to Defs. Mtn. to Compel.] A few days later, Plaintiff received a letter from the AAG (also dated May 5) reiterating Defendants' position that contention interrogatories (Interrogatories 13 through 25) needed to be answered immediately. [Ex. B to Defs. Mtn. to Compel.] For the first time, Defendants also complained about the completeness of Plaintiff's responses to Interrogatories 7 and 9.

Contrary to Defendants' implication otherwise (at 4, 14), Plaintiff responded to Defendants' May 5 letter with a letter dated May 15, 2008, which explained *in detail and with case law support* why Plaintiff was not required to answer these Interrogatories at this time.[1] [Attached as Ex. A.] The AAG later called to inform Plaintiff that Defendants would be moving to compel responses to the contention interrogatories. Not then, or at any time prior or after, have Defendants explained why responses to their contention interrogatories were immediately necessary, in derogation of the common practice of

---

[1] Far from giving Defendants' the back of her hand, as Defendants' motion suggests, this May 15 letter shows Plaintiff's careful consideration of Defendants' request, but ultimate conclusion that Plaintiff's objections were solidly supported by law and routine practice under the Federal Rules of Civil Procedure. She, nonetheless, remained willing to consider the Defendants' counterarguments and any supporting authority, but Defendants never provided any.

reserving such responses for the end of discovery. Nor, as indicated above, did they respond to Plaintiff's invitation to provide alternative authority supporting their position.

As is evident from a long list of cases and our own difficult experiences litigating against the District of Columbia, Defendants continue to regard the obligation to confer in "good faith," *see* Rule 37(a)(1) and LCvR7(m), as an empty formality – simply a box to check off. See also, *e.g.*, October 18, 2005 Order in *Ricks* v. *District of Columbia, et al.*, Civil Action 05-01756 (HHK)(attached as Ex. B). Without engaging in any discussion of the merits of Defendants' position or citation of support for it, the AAG relied on nothing more than the unvarnished assertion that the information sought by the contention interrogatories is discoverable and, therefore, required an immediate response.[2] It was followed by a telephone call announcing that they would be filing the Motion to Compel to which we now respond.

## ARGUMENT

### I.     Plaintiff's Responses to Defendants' Contention Interrogatories Are Properly Deferred Until the Close of Discovery.

Defendant served fourteen (14) contention interrogatories asking plaintiff to identify the specific facts and evidence (including witnesses and exhibits) that form the basis of her contentions and which she intends to introduce at trial to prove ***each*** of her specific causes of action. Plaintiff objected to these contention interrogatories as premature because discovery had barely commenced and because Plaintiff is still developing her factual support. (As evidenced by Plaintiff's own comprehensive Motion to Compel, Defendants have produced but a tiny fraction of the discovery requested.)

---

[2] See Defendants' counsel's May 5 letter, Ex. B to Defs. Mtn. to Compel. (Stating for each Interrogatory "[t]he information sought is discoverable; and require [sic] a response.")

Nonetheless, Plaintiff directed Defendants to the Arrest Prosecution Report (PD 163) and the facts provided in her extraordinarily detailed Amended Complaint.

Interrogatories 9 and 13-25 are classic contention interrogatories. Contention interrogatories ask a party to state what it contends, and to state all of the facts upon which it bases its contention. See, *e.g.*, *Everett v. USAir Group, Inc.,* 165 F.R.D. 1, 3-4 (D.D.C. 1995). Here, for ***each*** of plaintiff's causes of action against the District of Columbia and ***each*** of her causes of action against the individual defendants, defendants seek to have plaintiff identify the ***specific*** facts, witnesses, and exhibits that plaintiff will use to support each individual cause of action.[3]

Both Rule 33 and the case law recognize that it is generally appropriate to defer responses to contention interrogatories until after discovery has been completed. *Id.*; *Nestle Foods Corp. v. Aetna Casualty & Surely Co.*, 135 F.R.D. 101, 110-111 (D.N.J. 1990); *see also* Fed. R. Civ. P. 33 advisory committee's note to 1970 Amendments, subdivision (b) (postponement of responses to contention interrogatories proper to prevent parties from being "chained to misconceived contentions or theories" before other discovery is completed).

Courts correctly defer contention interrogatories until much or all of the other discovery has been completed for at least two reasons. First, it prevents parties from being "chained to misconceived contentions or theories" before other discovery is completed. See Fed. R. Civ. P. 33 advisory committee's note to 1970 Amendments,

---

[3] Defendants served a series of Interrogatories, running through each of plaintiff's causes of action, stating: "Describe in detail the basis of your claim that [specific cause of action], <u>including but limited to</u> the factual support you intend to introduce to prove this claim, the witnesses you intend to call to support this claim and the substance of their likely testimony, and the exhibits that you intend to introduce to support these claims. Attach all documents related to this interrogatory." See Defs. Ints. 13-25. Interrogatory 9 asks Plaintiff to delineate the facts that support suing the individual defendants in their official capacity and in their individual capacities.

subdivision (b).  Second, it avoids the inefficiency and burden of requiring a plaintiff to respond before she has crafted the final articulation of her causes of action and, consequently, compelling serial supplements to account for new information received in discovery and every refinement of her application of the law to that evidence.  *Nestle*, 135 F.R.D. at 110-11. ("This Court agrees that judicial economy as well as efficiency for the litigants dictate that contention interrogatories are more appropriate after a substantial amount of discovery has been conducted.").

Defendants have proffered no unique or unfair prejudice from deferring answers to their contention interrogatories.  There is no mystery about the general contours, if not all of the specifics, of Plaintiff's contentions.  An unlawful arrest without probable cause made by intemperate officers who did not appreciate Plaintiff's criticisms obviously implicates Plaintiff's rights to speak freely (First Amendment), enjoy due process (Fifth Amendment), and the right to be free from detention, search and arrest without probable cause (Fourth Amendment; false imprisonment), just as conditioning plaintiff's release from an unlawful arrest on the posting and forfeiture of a money bond is an excessive bail or fine (Eight Amendment).  The specific articulations of these theories turn upon the evidence Plaintiff expects to be produced in discovery, and she is not required to commit to the means and manner by which these deprivations were visited upon her until the evidence upon which she will base her contentions is produced.

Defendants only specific argument (at 14) against Plaintiff's objection is that "Defendants have a right to know the factual basis for Plaintiff's claims against them." But Defendants have not asked in these Interrogatories for facts.  Instead, they have asked Plaintiff to layout how she will prove each specific cause of action, including what facts

she will rely on, what witnesses she will call at trial (including what she will ask them), and what exhibits she will introduce. This, Plaintiff is not and should not be required to do until she has *all* of the facts, evidence, documents, witnesses, testimony, and exhibits she might obtain in discovery to choose from. *Then* she will decide (amongst the available options) what facts and evidence she will rely on to prove each specific cause of action. Plaintiff is not required to commit to a theory or to specific evidence until she has the opportunity to *discover* what evidence exists.[4]

This point is especially meaningful where, as here, virtually all of the factual information upon which responses to the contention interrogatories depend is in the Defendants' possession. Plaintiff has already identified all of the witnesses she can identify. The remaining witnesses are police officers or police personnel or other bystanders whose identities Plaintiff is seeking through discovery. (Plaintiff did not even know the identities of the arresting officers – and consequently had to file her initial complaint against "three unknown MPD officers" – until they were revealed through the progress of this case.) Similarly, the documentary evidence is exclusively within the Defendants' control.

To give an example, the Defendants ask Plaintiff to explain all of the facts and identify all of the evidence she will introduce to support her claim that the District of Columbia is liable for violations of her Fourth Amendment rights under the United States Constitution (Interrogatory 24). Municipal liability under § 1983 turns on Plaintiff's ability to prove that the District has a policy or custom of allowing punitive disorderly

---

[4] Defendants also attack (at 14) Plaintiff's reference to her highly-detailed, 20-page Amended Complaint and the Arrest Prosecution Report as a violation of Fed. R. Civ. P. 33(d), which allows a party to answer an interrogatory by reference to "business records." But these references were not intended to comply with Rule 33(d) and are not intended to be a substitute for responses to Defendants' contention interrogatories at the appropriate juncture in this case.

conduct arrests without probable cause. *See Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658 (1978). Plaintiff can go about this in many ways, but it will depend on what evidence she turns up in discovery.

Hypothetically, a plaintiff in Ms. Huthnance's position might establish the District's liability by showing a pattern and practice of disorderly conduct arrests made without probable cause that rises to the level of custom based on the District's disorderly arrest statistics; she may present an expert case based on analysis of those records; she might establish a custom through the number of filed complaints and the District's approach to them; she may find that assessments by the MPD or the Mayor of the use of the disorderly offense and the post-and-forfeit procedure (including those required by statute) indicate the continuing custom of violations; she may establish liability by virtue of inaction or willful ignorance in the face of reports revealing problems with MPD's use of the disorderly conduct statute and post-and-forfeit procedures;[5] she may show that the MPD's training of its officers was inadequate to correct problems it knew, or should have known, about; she may choose to use an expert to support the inadequacy of the training; she may demonstrate that the District fails to supervise its officers' use of procedures that it knew, or should have known, they were routinely abusing; she may demonstrate that the MPD failed to establish policies to regulate use of procedures it has been alerted were being abused; she may discover some other, previously unanticipated evidence during

---

[5]*See, e.g.,* 2003 Citizen Complaint Review Board Report: "Disorderly Conduct Arrest Made by Metropolitan Police Officers (Excerpt at Ex. C, full report provided as Rec. Doc. 43-9), at 10, stating:
  "The [Office of Citizen Complaint Review] complaint examiner decisions indicate that there are instances where officers do not know or are not following the law when making disorderly conduct arrests. These decisions and the allegations in other complaints under investigation by OCCR suggest that there will likely be more instances in which it is confirmed that improper arrests for disorderly conduct have been made. Such improper arrests, whether the result of lack of knowledge or intentional action, are intolerable, and, depending on the circumstances, may constitute an abuse or misuse of police power. <u>CCRB believes that these complaints are an important warning sign that requires action.</u>" (emphasis added).

depositions, or she may rely on a combination of different types of evidence. Of course, Ms. Huthnance's choice will depend on evidence that she is entitled to receive, but is still waiting for, in response to her discovery requests, as well as information that will be developed at depositions which cannot reasonably be scheduled until Defendants' documentary discovery has been produced.

Because responses to the contention interrogatories would be premature at this time, Defendants' motion to compel should be denied as to them.

### II. Federal Rules of Civil Procedure 33 Does Not Require Plaintiff to Provide a Statement "in Her Own Words."

Defendants also improperly asked plaintiff to "***State in your own words exactly and in detail*** how the incident that is the subject of this litigation occurred . . ." (Interrogatory 7) (emphasis added). What Defendants essentially seek is plaintiff's sworn testimony, the equivalent of a signed statement "in her own words" or a deposition upon written question describing in detail all aspects of her interaction with the police, her arrest, her detention, her processing, and her release. The Defendants are entitled to use Rule 33 Interrogatories to seek information, facts, opinions, and even, at the proper time, legal contentions. And they are entitled to have Ms. Huthnance verify those responses. What Rule 33 Interrogatories are not, however, is the discovery device for obtaining Plaintiff's sworn ***testimony***. The proper device for such a purpose is the Rule 30 Deposition by Oral Examination or the Rule 31 Deposition by Written Questions, ***but not both***. See Fed. R. Civ. P. 30(a)(2) and 31(a)(2).

Presuming, as we do, that Defendants will eventually seek to take Plaintiff's deposition, Defendants cannot get both a written and an oral deposition by labeling a written deposition question as a Rule 33 interrogatory. Should Defendants agree to waive

their right to depose Plaintiff orally, however, she will gladly answer written deposition

questions like the one at Interrogatory 7 and any others Defendants choose to pose

pursuant to Rule 31.  But outside the confines of Rule 31, Plaintiff cannot be made to

respond to Interrogatory 7 in the form Defendants demand.

## CONCLUSION

For the reasons stated above, the Defendants' Motion to Compel should be

denied.

DATED:  June 26, 2008

Respectfully submitted,


_____//s//_____
John Moustakas (DC Bar # 422076)
Sarah Keast (DC Bar # 493632)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346 – 4000
(202) 346 – 4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser (DC Bar # 455377)
American Civil Liberties Union
          of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Plaintiff Lindsay Huthnance

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| LINDSAY HUTHNANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-1871 (HKK) |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## [PROPOSED] ORDER

Before the Court is the District of Columbia's motion to compel responses to

Plaintiff's Interrogatory responses 7, 9, and 13 through 25.  Upon consideration of the

parties' submissions, the motion is hereby DENIED.


DATED:


So ORDERED:


_____
United States Magistrate Judge
John M. Facciola

# Exhibit A

**Keast, Sarah**

---

| | |
|---|---|
| **From:** | Keast, Sarah |
| **Sent:** | Thursday, May 15, 2008 7:31 PM |
| **To:** | 'eric.glover@dc.gov' |
| **Cc:** | Moustakas, John; Rutkowski, Barbara E |
| **Subject:** | Huthnance v. DC, 06-18871 (HKK) |
| | |
| **Attachments:** | 5-15 letter to Mr. Glover.pdf |

Please see the attached letter from John Moustakas and myself.



5-15 letter to Mr.
Glover.pdf ...

Sarah S. Keast
**Goodwin Procter** LLP
901 New York Ave. NW
Washington, D.C. 20001
T: 202-346-4109
F: 202-346-4444
skeast@goodwinprocter.com

# GOODWIN | PROCTER

John Moustakas
202.346.4236
jmoustakas@
goodwinprocter.com

Goodwin Procter LLP
Counselors at Law
901 New York Avenue NW
Washington, DC 20001
T: 202.346.4000
F: 202.346.4444

May 15, 2008

Eric S. Glover, Esq.
Assistant Attorney General
  for the District of Columbia
441 4th Street, N.W.
6th Floor North
Washington, D.C.  20001

Re:  **_Huthnance v. District of Columbia, et al._, 06-1871 (HKK)**

Dear Mr. Glover:

We write in response to your letter of May 5, 2008 which prematurely demands responses to contention interrogatories, including the identification of exhibits and witnesses.  Although we have considered this request thoughtfully, we stand by our prior view that postponing responses to Defendants' contention interrogatories is wholly justified by the circumstances of this case and the current status of discovery.

As we explained during our April 29, 2008 telephonic "meet-and-confer" session, it is much too early in discovery to expect Ms. Huthnance to provide detailed responses to contention interrogatories.  Both Fed. R. Civ. P 33 and the cases construing it recognize that it is generally more appropriate to defer responses to contention interrogatories until after a substantial amount of discovery has been completed.  *See, e.g., Everett v. USAir Group, Inc.*, 165 F.R.D. 1, 3-4 (D.D.C. 1995); *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 110-111 (D.N.J. 1990); see also Fed. R. Civ. P. 33 advisory committee's note to 1970 Amendments, subdivision (b) (postponement of responses to contention interrogatories proper to prevent parties from being "chained to misconceived contentions or theories" before other discovery is completed).

Defendants acknowledge having failed to respond adequately to Plaintiff's discovery requests, despite having received two extensions of time.  Given that contention interrogatories are commonly deferred until the **_end_** of discovery, it makes little sense to expect responses to contention interrogatories at the **_beginning_** of discovery.  Simply put, Defendants' failure to adequately respond to Plaintiff's discovery requests make it impossible for Plaintiff to provide any more detail about her contentions than she included in her uncommonly detailed complaint. A request for more information is simply futile as Plaintiff has no further detail to provide on her

GOODWIN | PROCTER

Eric S. Glover, Esq.
May 15, 2008
Page 2

causes of action until Defendants either voluntarily honor their discovery obligations or are compelled to do so by the Court.

Defendants have proffered no unique or unfair prejudice from deferring answers to their contention interrogatories. Nor, in light of the uncharacteristic detail included in the complaint, could they demonstrate such prejudice. There is no mystery about factual bases for Plaintiff's contentions. What remains to be disclosed – the application of those facts to legal and constitutional standards – is controlled by Defendants and the pace at which they choose to produce requested discovery.[1] The lack of any contemporaneous objection to the deferral of contention interrogatories confirms that Defendants understood as much.

In addition to the objection to responding to contention interrogatories at this time, Plaintiff also continues to stand on her objections to Interrogatories 7 and 9 – neither of which was identified as deficient during two lengthy conferences. As a procedural matter, unless and until Defendants arrange for a meet and confer to address them, these objections cannot, consistent with local rules, form the basis of any request for court intervention.

Defendants fare no better on the substance: there is no basis for demanding that Plaintiff state "in her own words" everything she has to say about "the incident that it is the subject of this litigation." We reiterate our willingness to consider the legal authority you believe compels such an approach; however, you have thus far provided none. In the absence of any such authority, we submit that a Rule 30 deposition is a more appropriate and less burdensome alternative to obtaining Ms. Huthnance's account "in her own words." In the event that your attempt to obtain a personal account in Plaintiff's own words is meant to obviate the need for an oral deposition, Defendants are free to proceed by means of deposition upon written questions under Rule 31. The structure and plan of the discovery rules are clear: a party is **_not_** entitled to proceed both by written **_and_** oral deposition without leave of the court. See Rule 30(a)(2) and Rule 31(a)(2). Defendants cannot have it both ways merely by labeling a written deposition question as an interrogatory.

---

[1] Given the known facts, it takes very little imagination to understand the contours, if not all the specifics, of Plaintiff's contentions. A unlawful arrest without probable cause made by intemperate officers who did not appreciate Plaintiff's criticisms obviously implicates Plaintiff's rights to speak freely, enjoy due process, and the right to be free from detention, search and arrest without probable cause, just as conditioning plaintiff's release from an unlawful arrest on the posting and forfeiture of a money bond is an excessive bail or fine. Although the specific articulations of these theories turn upon the evidence that she expects to be produced in discovery, Plaintiff is not required to commit to the means and manner by which these deprivations were visited upon her until the evidence upon which she will base her contentions is produced.

# GOODWIN | PROCTER

Eric S. Glover, Esq.
May 15, 2008
Page 3


If you have any questions, please do not hesitate to call us.

Respectfully submitted,

John Moustakas
Sarah Keast

# Exhibit B

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| **LAFAYETTE RICKS,** |
| **Plaintiff,** |
| **v.** |
| **MPD OFFICER TOMMY BARNES** **and** **THE DISTRICT OF COLUMBIA,** |
| **Defendants.** |

**Civil Action 05-01756 (HHK)**

**O R D E R**

      Before the court is the unopposed motion of defendants for an extension of time until

October 28, 2005, to file an Answer to the complaint in this case.  The motion is granted.

      The court will not comment on the statements of each counsel in this cases regarding

the other's conduct, attitude, professionalism, etcetera, except to say that the Assistant

Attorney General  who represents defendants hardly has a meritorious basis for taking

umbrage with what she characterizes as plaintiff's counsel's "carping" style. The Assistant

Attorney General  did not follow this court's rule and "doth protest too loudly" when called to

task for it. Local Rule 7.1 (m) could not be clearer. It states:

> Before filing any nondispositive motion in a civil action, counsel shall discuss
> the anticipated motion with opposing counsel, either in person or by telephone,
> in a **good faith effort** to determine whether there is any opposition to the relief
> sought and, if there is opposition, to narrow the areas of disagreement. A party
> shall include in its motion a statement that the required discussion occurred,
> and a statement as to whether the motion is opposed.

> LCvR 7 (m)(emphasis supplied).

The instant motion was not preceded by a good faith effort to determine whether there was opposition to the relief sought.  Rather, by the Assistant Attorney General's on account, the motion was made on the day defendants' answer was due, after a phone call to the office of plaintiff's counsel "on the late evening" of that day, at which time, a "detailed voice mail message" was left "that this motion would be filed."  Defts.' Mot. at 2.  The facts speak for themselves.

**SO ORDERED**

Henry H. Kennedy, Jr.
United States District Judge

Dated:  October 18, 2005

# Exhibit C



# Disorderly Conduct Arrests Made by Metropolitan Police Department Officers

Report and Recommendations of the

**Citizen Complaint Review Board**

to

**Mayor Anthony A. Williams,
The Council of the District of Columbia, and
Chief of Police Charles H. Ramsey**

**November 19, 2003**

**Citizen Complaint Review Board**

**Maria-Cristina Fernández, Chair
Dr. Patricia Fisher
Michael Sainte-Andress
Inspector Stanly Wigenton
Marc Schindler**

730 11th Street, N.W., Suite 500
Washington D.C.  20001
(202) 727-3838
Website:  www.occr.dc.gov

during their own interviews and in their reports about the incident, neither of the officers identified any other facts that would support a disorderly conduct arrest.[34]

Beyond the complaint examiner decisions, OCCR also is investigating a number of other complaints that involve disorderly conduct arrests. While many of the complaints appear to involve proper disorderly conduct arrests, a significant number resemble the fact patterns in the decisions where the officer made an arrest either incorrectly or without regard for the law, and appeared to be retaliating against the citizen for his or her behavior during the encounter with the officer. Up to this point, OCCR has not been keeping statistical information regarding complaints that involve a disorderly conduct arrest. In the future, however, OCCR will keep this statistical information so that it can report about the complaints in a more systematic and thorough manner.

The complaint examiner decisions indicate that there are instances where officers do not know or are not following the law when making disorderly conduct arrests. These decisions and the allegations in other complaints under investigation by OCCR suggest that there will likely be more instances in which it is confirmed that improper arrests for disorderly conduct have been made. Such improper arrests, whether the result of lack of knowledge or intentional action, are intolerable, and, depending on the circumstances, may constitute an abuse or misuse of police power. CCRB believes that these complaints are an important warning sign that requires action.

## V.    MPD AND NATIONWIDE ARREST STATISTICS

CCRB examined MPD's arrest statistics from 1995 to 2000 to determine the frequency with which MDP officers make disorderly conduct arrests.[35] CCRB also looked at nationwide data and statistics for cities with a population of 250,000 or greater to have some basis for comparison with the MPD statistics. The nationwide and large city statistics cover the same six-year period and were taken from the Uniform Crime Reports (UCR) prepared by the Federal Bureau of Investigation (FBI).[36]

---

[34]    OCCR Consolidated Complaint Nos. 02-0318 & 02-0319, Findings of Fact and Merits Determination (August 21, 2003).

[35]    MPD's Office of Organizational Development provided disorderly conduct arrest statistics to OCCR on July 29, 2003. The remaining statistics regarding MPD arrests were taken from MPD's 1998, 1999, and 2000 Annual Reports, which are available on MPD's website, www.mpdc.dc.gov. *See* Metropolitan Police Department, Washington, D.C., *1998 Annual Report*, at 22-23 (1999); Metropolitan Police Department, Washington, D.C., *1999 Annual Report*, at 24-25 (2000); Metropolitan Police Department, Washington, D.C., *2000 Annual Report*, at 20-21 (2001). Population information for the District of Columbia was obtained from the U.S. Census Bureau website, www.census.gov, and is taken from the 2000 Census.

[36]    The Uniform Crime Reports are available on the FBI website, http://www.fbi.gov/ucr/ucr.htm. CCRB took statistical data from the 1995 through 2000 reports. *See* Federal Bureau of Investigation, Uniform Crime Reports for the United States 1995 (1996), Table 31, at 210-11; Federal Bureau of Investigation, Uniform Crime Reports for the United States 1996 (1997), Table 31, at 216-17; Federal Bureau of Investigation, Uniform Crime Reports for the United States 1997 (1998), Table 31, at 224-25; Federal Bureau of Investigation, Crime in the United States 1998, Uniform Crime Reports (1999), Table 31, at 212-13; Federal Bureau of Investigation, Crime in the United States 1999, Uniform Crime Reports (2000), Table 31, at 214-15; Federal Bureau of Investigation, Crime in the United States 2000, Uniform Crime Reports (2001), Table 31, at 218-19.