IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| LINDSAY HUTHNANCE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06-CV-1871 (HKK) |
| | ) |
| DISTRICT OF COLUMBIA, ET AL. | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT DISTRICT OF
COLUMBIA'S JUNE 20 MOTION FOR A PROTECTIVE ORDER**

Plaintiff, Lindsay Huthnance, through undersigned counsel, respectfully opposes the Defendant District of Columbia's unsupported and improper Motion for Protective Order and reiterates her request – included in her previously filed Motion to Compel – that Defendant be compelled to produce evidence probative of the adequacy of the District's training of Officers Acebal, Antonio, and Morales (hereinafter, "the Individual Defendants") and their supervisors.

Among other things, Ms. Huthnance has sued Defendant District of Columbia (hereinafter, "the District") on account of myriad constitutional deprivations. Under 42 U.S.C. § 1983, a municipality – like the District – can be sued for formal policies or informal customs that constitute a "moving force" behind the deprivations alleged. *See, e.g.*, *Monell* v. *Dept. of Social Services of New York*, 436 U.S. 658 (1978). A municipality is liable under § 1983 when it fails to train its employees, and the failure to train amounts to deliberate indifference to an obvious need for such training, and the

failure to train will likely result in the employee making a wrong decision. See *City of Canton* v. *Harris*, 489 U.S. 378 (1989).

Ms. Huthnance – a District resident with an unblemished record of lawful behavior – contends that the Individual Defendants arrested her because of criticisms she leveled against their lack of professionalism, or for what amounts, in the vernacular, to "contempt of cop." Ms. Huthnance asserts – as she must to satisfy the stringent requirements for making out a successful *Monell* claim – that the police practice of misapplying the "disorderly conduct" statute is not an isolated incident. See *Oklahoma City* v. *Tuttle*, 471 U.S. 808 (1985) (isolated unconstitutional incidents, without more, cannot bind a municipality). Rather, Plaintiff may proceed under the theory that the MPD's officers are either (1) affirmatively trained to manipulate the malleable "disorderly conduct" statute to reach legally permissible conduct that is, nonetheless, bothersome to officers; or (2) not adequately trained to recognize the difference between valid and invalid arrests for "disorderly conduct" in the face of considerable evidence that such training is needed. In addition, Ms. Huthnance alleges that the police systematically use the so-called "post-and-forfeit" procedures so as to cover up unlawful arrests for "disorderly conduct" and that this, too, results from either affirmative or tacit approval by the District as communicated through training or a lack thereof.

Discovery of whether or not the Individual Defendants were trained on the ubiquitous "disorderly conduct" offense, as well as the substance of any training received, is crucially important to Plaintiff's case. Their training on the use of "post-and-forfeit" release is, likewise, of considerable importance. In short, the evidence sought by Ms. Huthnance is plainly relevant.

Without *any* legal analysis, the District says it "believes" that the training records of the Individual Defendants and their supervisors "are precluded from disclosure," without any explanation of the basis for that belief.[1] What the District *doesn't say* is perhaps most telling. First, it cites no supporting caselaw. Second, it provides no analysis. Third, it is unsupported by the Individual Defendants – whose privacy interests the District purports to invoke. Specifically, the Individual Defendants have neither joined the District's motion, submitted affidavits in support of it, nor filed motions of their own. Fourth, admitting that it is only seeking a protective order "[o]ut of an abundance of caution," the District concedes an absence of any conviction that the Individual Defendants' training records are protected from disclosure without a protective order.

In offering no analysis, the District apparently expects the Court to fashion arguments for it out of thin air. Filling the District's huge gaps is not the Court's responsibility. Nor is it possible to do so since there is no reasonable basis for regarding disclosure of training records as a "clearly unwarranted invasion of personal privacy." Indeed, the District does not provide a single case or bit of legal reasoning to support the notion that police officers have a legitimate privacy interest in the training the public pays for them to undergo. To the contrary, training records are universally ordered to be produced over privacy objections in civil rights cases. See, *e.g.*, *Griffis* v. *Medford*, 2007

---

[1] Privacy appears to be the common theme among the inapt provisions the District cryptically cites. D.C. Code §1-631.01 says that personnel records should be established, maintained, and disposed of in a manner designed to respect employee privacy. Section 1-631.03 says that personnel information will be given to law enforcement authorities, unless disclosure would constitute an invasion of personal privacy or is prohibited by law. Section 2-534(a) is a Freedom of Information Act ("FOIA") provision that says that information of a personal nature may be exempt from public disclosure that would otherwise constitute "a clearly unwarranted invasion of personal privacy." FOIA provisions do not excuse the District's discovery obligations as a party to litigation in federal court. See, *e.g.*, *Rollins* v. *Barlow*¸188 F. Supp. 2d 660, 663 (S.D.W.Va. 2002) ("Generally speaking, FOIA provisions do not govern civil discovery.").

U.S. Dist. LEXIS 9335 at *7-8 (W.D. Ark. Feb. 7, 2007) (ordering production of training records over privacy objections); *Tubar* v. *Clift*, 2006 U.S. Dist. LEXIS 18500 at * 12 (W.D. Wash. Mar. 2, 2006) (documents detailing employment history, training record, disciplinary proceedings and complaints filed against Defendant not sufficiently personal or sensitive to compel protection against embarrassment or oppression); *Beyah* v. *Goord*, 309 A.D.2d 1049, 1052, 766 N.Y.S.2d 222 (3d Dept. 2003) (although training records were deemed "personnel records," their production was not "an unwarranted invasion of personal privacy").

It is well-settled that the District bears the burden of establishing its entitlement to a protective order to avoid "annoyance, embarrassment, oppression, or undue burden or expense." See, *e.g.*, *Doe* v. *Provident Life & Accident Ins. Co.*, 247 F.R.D. 218, 221 (D.D.C. 2008); *Fonville* v. *District of Columbia*, 230 F.R.D. 38, 40 (D.D.C. 2005). To meet that burden, it "must establish 'good cause' under Rule 26(c) 'by demonstrating the specific evidence of the harm that would result. . .'" *Id.* The Court employs a balancing test in determining whether to grant a motion for protective order, weighing the burdensomeness to the moving party against the requestor's need for, and relevance of the information sought. See *Alexander* v. *F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998).

As a preliminary matter, we note the important presumption that discovery is to be open and public:

> "For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule."

*United States* v. *Bryan*, 339 U.S. 323, 331 (1950) (citations omitted); *Avirgan* v. *Hull*, 118 F.R.D. 252, 255 (D.D.C. 1987) ("The presumption inherent in Rule 26(c) is that discovery should be open.").[2]

No less significant are the First Amendment interests in full disclosure – interests that have special force where, as here, constitutional violations occurred at a public place at the hands of public officials.  Circumstances militating against a protective order include where "confidentiality is being sought over information to public health and safety;" where the party seeking to benefit from a protective order is a "public entity or official;" and where "the case involves issues important to the public."  See *Glenmede Trust Co.* v. *Thompson*, 56 F.3d 476, 483 (3rd Cir. 1995).  All of these factors are present here and merit denial of the District's motion.

The District does not carry its burden of showing a need for the protection of specific information or documents.  A party must have "specific facts showing 'clearly defined and serious injury' resulting from the discovery sought," and it cannot rely on speculative or conclusory statements.  See *Avirgan*, 118 F.R.D. at 254; see also *Friends of the Earth* v. *Dept. of the Interior*, 236 F.R.D. 39, 41 (D.D.C. 2006).  Having shown no specific and serious injury, the protective order requested "***out of an abundance of caution***" simply cannot issue.

Finally, the District's motion is out of time.  Courts routinely impose a requirement that motions for protective order be seasonably brought.  See, *e.g.*, 6

---

[2] See also *Does I-IV* v. *Yogi*, 110 F.R.D. 629, 632 (D.D.C. 1986) ("The Federal Rules of Civil Procedure create a statutory presumption in favor of open discovery, extending even to those materials not used at trial."); *Citizens First Nat'l Bank of Princeton* v. *Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999) ("Most cases endorse the presumption of public access to discovery materials.").

James Wm. Moore *et al.*, Moore's Federal Practice ¶ 26.102[2] n.9 (collecting cases). A motion for protective order is generally considered untimely if made *after* the date set for production. See, *e.g.*, *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 622 n.2 (10th Cir. 1982) (citing *United States* v. *Int'l Bus. Mach. Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976)). The District filed this motion well after the date for production passed. As such, it is untimely and should be denied for this reason as well.

For all the foregoing reasons, the District's Motion for Protective Order should be denied.

DATED: July 7, 2008

Respectfully submitted,

\_\_\_\_\_//s//_____
John Moustakas (DC Bar # 422076)
Sarah Keast (DC Bar # 493632)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser (DC Bar # 455377)
American Civil Liberties Union
    of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Plaintiff Lindsay Huthnance

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| LINDSAY HUTHNANCE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 06-CV-1871 (HKK) |
| DISTRICT OF COLUMBIA, ET AL. | ) |
| Defendants. | ) |

**[PROPOSED] ORDER**

Before the Court is the District of Columbia's June 20, 2008, motion for a protective order. Upon consideration of the parties' submissions, the motion is hereby DENIED.

DATED:

So ORDERED:

_____
United States Magistrate Judge
John M. Facciola