**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION**

| | | |
|---|---|---|
| LINDSAY HUTHNANCE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-1871 (HKK) |
| | ) | |
| | ) | |
| DISTRICT OF COLUMBIA, ET AL. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF HER MOTION TO
COMPEL DISCOVERY**

Plaintiff files this reply brief in support of her motion to compel and to address

the changed circumstances of certain of her requests in light of the District's belated

production of additional responsive materials.

The District's opposition is based on ***subsequently amended discovery responses***

that were not mailed to Plaintiff before the opposition was filed and, cousequently, were

not received until several days later.  The District included its "amended" responses in its

opposition brief.  Because they represent the current state of discovery, Plaintiff will

address these amended responses in this brief.

With only a couple of exceptions, the amended responses remain woefully

inadequate.  The District's new production is hugely disappointing.  The optimism that

the new production's heft of approximately 450 pages encouraged was quickly dispelled

when Plaintiff realized that the bulk of the production consisted of either material the

District had previously produced to her (51 pages) or material that she had previously

provided to the District being reproduced back to her (223 pages).  Although the District

did provide some new documents and information, they remain a fraction of what Plaintiff is entitled to receive. Moreover some of the newly-provided documents are simply unresponsive.[1] Similarly, other documents appear to be deliberately-obtuse attempts to create the appearance of compliance without actually providing the requested information.[2]

The District also attempts to interject new objections to Plaintiff's discovery requests in these newly amended responses, and then rely on those objections in its opposition brief.  Of course, the time for asserting objections is long past, *see* Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); *Peskoff v. Faber*, 244 F.R.D. 54, 64 (D.D.C. 2007), and such new objections are waived.

## I.    <u>Requests for Production</u>

*Request for Production No. 2* (documents and things from Plaintiff's arrest and detention, including police reports, witness statements, log entries, video recordings, post and forfeit paperwork, and radio communications):

Following the District's newly amended response, the sole remaining open issue under this request is the radio communications.[3]  In its amended response, the District states:  "the District has search [sic] several sources in an effort to obtain any radio

---

[1] For example, the District has produced two versions of procedures for issuing a PD 61D violation citation. This is a ticket, issued in lieu of arrest.  A PD 61D was not issued in this case.  None of plaintiffs discovery requests (other than the request for all general orders) sought documents about this non-arrest procedure. The District similarly produced a General Order covering "handling intoxicated persons," although this is responsive to none of Plaintiff's requests and none of its terms appear to have been applied in this case.

[2] For example, the District provided a useless and non-responsive 62 page directory of 459 civil cases, in response to Plaintiff's request for other civil actions about the use of post and forfeit (a sample page is attached as Ex. A).  This directory is not a directory of post and forfeit cases: it includes all cases that the D.C. OAG's office defended in the last eleven years that it placed into a category in its own internal categorization system that included the word "police."  The District claims: "It is overly burdensome for the District to pull each of the cases to determine whether there is [sic] any allegations related to post and forfeit."  It is hard to credit this response as anything but deliberately obtuse.  Of course, the AAG in charge of this case could have gotten the answer by simply asking his coworkers (the other AAGs and the section chiefs in his own office) whether they had ever handled or heard of anyone handling a case involving allegation about post and forfeit.

[3] Of course, if the District finds other additional materials responsive to Plaintiff's request, it is under a duty to supplement this and all responses.  <u>See</u> Fed. R. Civ. P. 26(e)(1).

communications pertaining to the plaintiff [sic] arrest. As result of its search, , [sic] the District has concluded that there are no radio communications related to plaintiff's arrest[.]"  But the *radio log* excerpts provided by the District (as Attachment 21 to its amended discovery responses, attached to this Motion as Ex. B) shows that there *was* at least one radio communications made and logged.  Furthermore, given the practice of MPD officers to conduct records checks by radio, to take themselves out of and put themselves back into "service" by radio, and to call for transport by radio, the District's claim is simply not credible.

Plaintiff requests that the Court require the District to account for its search, including by providing an explanation of what document retention policies applied to the radio communications and by identifying when these communications were destroyed, if it indeed contends they were.  Such a requirement is justified by Plaintiff's entitlement to know whether spoliation of evidence has occurred.

Plaintiff has specifically requested the District's document retention policies (see Request for Production 18), but the District has failed to produce them.[4]  Plaintiff is entitled to determine whether the radio communications were destroyed in the ordinary course, intentionally, or as a result of a failure by the District to preserve evidence during the lengthy delays of this case.  She may be entitled to an adverse inference or other relief if the communication were actually destroyed and that destruction was constitutes spoliation.  *See, e.g., Rice v. United States*, 917 F.Supp. 17, 19-21 (D.D.C. 1996).

---

[4] The District has provided only one retention policy, wholly inapplicable to this case, which deals with record retention in homicide and serious and violent crimes, as well as disposal of physical evidence, to implement the Milicent Allewelt Act of 2004.

*Request for Production No. 3* (documents identifying officers deployed or working in or near PSA 301):

In this request, Plaintiff sought records identifying those officers working at PSA (Police Service Area) 301 and on other details deployed in or around PSA 301 from 3 p.m. on November 15, 2005 through the end of the day shift on November 16, 2005.

Subsequent to Plaintiff filing her motion to compel on June 6, the District produced (on June 20) roll call and log book pages providing a portion (but by no means all) of the requested information. In particular, it provided the computer-printed roll call sheets for 0600-1430 on November **15**, 2005, and handwritten log-book pages 2200 to 0630 on November **16**, 2005.[5] Plaintiff is entitled to both types of records for the entire time period she requested, and their production should be compelled forthwith.

To justify the continuing incompleteness of its response, the District for the first time raises breadth and relevance objections to portions of the time period in its opposition brief and its amended response. First, the District waived these objections when it failed to make them in its first set of discovery responses. See Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); *Peskoff v. Faber*, 244 F.R.D. 54, 64 (D.D.C. 2007). Second, the very documents that the District has produced belie the validity of the objections.

Plaintiff is trying to identify the additional officers who may have been at or near the scene on the night Plaintiff was arrested, as well as those officers she interacted with at the police station after her arrest. Plaintiff has asked the District to identify these officers directly in Interrogatory 3, but the District has continued to fail to do so. So Plaintiff seeks to identify the potential pool of witnesses through the District's attendance

---

[5] It is not clear from these pages whether the covers the log book pages dates November 16, 2005, cover the night of November 15 2005, going into the morning of November 16, or whether they cover the night of November 16, 2005, going into the morning of November 17.

records.  She needs to identify those officers on duty near PSA 301 between the time of her first interaction with the police (late on November 15 or early on November 16) through the time of her release (between 6 and 7 a.m. on November 16).

Plaintiff does not know how the District shift structure works, or how the District staffs its different PSAs, so she attempted a reasonably description of shifts and of geographic limitation (PSA 301 and other details that would be operating in or around PSA 301).  The records produced by the District show the inherent imprecision in trying to narrow Plaintiff's request in the abstract, as the District wants to do.  The District provided computer printout roll call sheets from November 15, 0600 to 1430 (a time period that the District claims in its opposition brief is irrelevant).  *See* Ex. C.  The three Individual Defendants appear on this report because they went on duty at 1400 on November 15 (and off duty at 0330 on November 16).  To capture everyone on duty during the relevant time period for this case, the District will also need to provide the same print out for the remainder on November 15 and for November 16 at least through 7 a.m.  The print out also reveals that two of the Individual Defendants were not actual assigned to PSA 301 (but to PSA 302 instead), despite their presence at the 301 substation.  Therefore, the District should be required to provide the roll call for all substations, as it already has done in Ex. C, and for the Third District Headquarters for each of these time periods.

The District also produced hand-written attendance logs revealing additional, different officers on duty during this time period.  They provided one log page for the 2200 shift on November 15 and several pages of logs for the 2200 shift on November 16. First, the District needs to affirmatively determine which of these is the overnight shift

for November 15 into November 16.  Second, the District needs to provide these logs for

the day of November 15 through 7 a.m. on November 16 so that Plaintiff can identify the

officers on duty (regardless of what time they went on duty) during times relevant to this

case.  Notably, the Individual Defendants do not appear on any page of the hand-written

logs provided, demonstrating that the 2200-0630 is *not* the only relevant time period, for

looking at the log book entry only for that time period would not have revealed the

Individual Defendants' identities.

    To avoid further unnecessary back-and-forth, Plaintiff suggests that the District be

compelled to produce all roll call and attendance logs from the Third District and its

PSAs for November 15 and 16, 2005, so that Plaintiff can sort through when shifts began

and ended to determine what officers were on duty at the time of Plaintiff's arrest and

through her detention.  The District has demonstrated that it cannot accomplish this by

itself.  Moreover, it is a very minimal burden.

*Request for Production No. 4* (the Individual Defendants' personnel records, including
performance evaluations, informal and formal complaints filed against them, and any
disciplinary actions taken against them):

    This request has been the subject of extended argument in the context of the

District's motion for a protective order.  [Rec. Doc. 47.]  As discussed in Plaintiff's

opposition, the cited statutory sections are no basis for denying Plaintiff relevant

discovery.  [Rec. Doc. 54.]

    The District also states in its brief that the case *Truelove v. Trustees of Univ. of

D.C.*, 1991 U.S. Dist. Lexis 1512 (D.D.C. 1991) *holds* "that § 1-632.3 prevents the

disclosure of discovery without a court order."  This is simply not true.  The court stated

that, "[e]ven if read to announce a broad principle," (which the court did not find), "*at*

*most*" the language of (then) § 1-632.3 could be read to prevent release of information

6

absent a court order. *Id.* at *3. This is dicta; not a holding. Most importantly, the Court went on to state: "[§ 1-632.3, now § 1-631.03] does not create a privilege against discovery." *Id.* at *3-4.

The District's only tool for responding to this RFP was to seek and prove its entitlement to a protective order.[6] Cynically, the District instead cited the statutory provisions as a privilege and a basis for objecting to the discovery requests, so as to shift the burden of proof to Plaintiff.[7] This is part of a pattern and practice of discovery misconduct and should be stopped.[8]

Beyond that, the District never bothers to even show that, if they did apply to civil discovery, these provisions cover the materials its seeks to withhold. It does not bother to identify the specific information at issue, explain why the officers have a personal privacy interest in that information, or explain why its disclosure would be an "unwarranted invasion."

*Request for Production No. 5* (MPD General Orders):

In this request, Plaintiff seeks all of the MPD's General Orders. As we understand it, the General Orders represent the policies and procedures of the MPD. Plaintiff is entitled to these policies and procedures in context for purposes of

---

[6] It was certainly entitled, prior to when its responses were due, to move for a protective order arguing that providing specific documents would be "an unwarranted invasion of the personal privacy" of its employees and that this is "good cause" for denying the discovery.

[7] This is all the more insidious because it forces Plaintiff to argue in the abstract. The District knows what documents are at issue and therefore can explain to the Court with specificity why their production would be an unwarranted invasion of personal property. Plaintiff cannot do the converse (especially given the District's failure to provide a privilege log, which it would have had to have provided if these provisions could legitimately be asserted as a discovery privilege).

[8] Compounding this, at the Eleventh Hour, after Plaintiff's attempts to resolve this dispute failed and she informed the District that she would be filing her motion to compel, including on this basis, the District sent an after-hours missive informing Plaintiff that it would *now* seek a motion for a protective order. The District now has the gall to argue that this "notice" preempted Plaintiff's right to file her motion to compel indefinitely until the District drafted, met and conferred about, and filed its motion (which it had no obligation ever to do).

investigating her claim that the policies and procedures for disorderly conduct arrest, post and forfeit, and citation release were inadequate.

Because the District is unable to identify and provide all the General Orders relevant to this case, Plaintiff should be entitled to receive *all* of the General Orders. Plaintiff asked for General Orders (amongst other documents) relating to use of the disorderly conduct offense, post and forfeit, and citation release in other discovery requests. The District, as it admits,[9] provided General Orders only relating to citation release. It is hard to believe that the District has *no* General Orders relating to Disorderly Conduct or the post-and-forfeit procedure (a procedure used, according to the District's discovery responses, to resolve almost 1,200 disorderly arrests in 2005). In any case, after this many months of stonewalling from this District, Plaintiff ought to be able to verify that for herself.

Furthermore, the documents that the District has produced identify relevant applicable General Orders that the District has failed to produce. For example, General Order 308.02 (produced by the District as Attachment 9, and attached here as Ex. 8, at pg. 6), dealing with Violation Citations, applies only to the violations listed in General Order 503.3. The District has not produced General Order 503.3. Without that Order, neither Plaintiff nor the fact finder can assess whether General Order 308.02 could apply in this case. Similarly, the June 29, 1984, Special Order produced as relevant by the District (produced by the District as Attachment 20, and attached here as Ex. E) was, by its terms, to be incorporated into General Order 502.1 (Processing Prisoners). But the District has not provided General Order 502.1.

In addition to these shortcomings, the District has failed to produce the General Order regarding citation release that was in effect at the time of Plaintiff's arrest. It has produced two General Orders, one has an effective date of March 19, 2007, and one has an effective date of June 20, 1980 (and appears to have been pulled from a public website). Plaintiff needs the General Order in effect at the time of her arrest in order to probe the efficacy of the District's policies and procedures. Plaintiff believes that the General Orders in effect (not just those that became effective) between 2003 and the present would constitute an appropriately limited time period for evaluating the District's supervision and training in response to the specific criticisms leveled in 2003 and to evaluate subsequent corrective measures.

Further, the *absence* of a General Order is just as relevant to proving the District's failure to train and supervise its officers regarding disorderly conduct and the use of post and forfeit and citation release. Finally, the burden of producing the General Orders – which are surely maintained in a serial fashion – is minimal.

In an attempt to disparage Plaintiff's request, the District attaches three unrelated General Orders. But the District misses the point; no one is arguing that the General Order on animal complaints is directly relevant to the treatment of disorderly arrests. But what subjects are included among the General Orders and the length of treatment they receive gives perspective to the subjects left out of the General Orders. Plaintiff can point to the fact that District has a 22-page order on animal complaints and a 16-page order on canine teams, and yet had failed to put in to place similar guidance on the use of the disorderly conduct offense and the post and forfeit procedure, despite that these

---

[9] The District's opposition brief states (at 5): "The District has provided plaintiff with the MPD's General Order *pertaining to its Citation Release Program.* Because the District has provided the requested

procedures were applied in almost 1,200 arrests in 2005 and the District's supervision of them was criticized in 2003.

*Request for Production No. 6* (formal or informal MPD general orders, rules, regulations, policies, procedures, or practices in effect or under consideration at any time that concern **post and forfeit** or **citation release**.):

Despite providing a supplemented discovery response, the District still has not provided **any** of its policies or procedures related to the post-and-forfeit procedure used to resolve arrests. In fact the only MPD document that the District has produced that discusses the post and forfeit procedure is a 1984 Special Order telling officers to make sure that they complete a Prosecution Report when they apply post and forfeit. Attached as Ex. E. This order is so old that it predates the combined Arrest/Prosecution Report that the MPD has used for several years. Plaintiff does not object to receiving this older document, but that it is the sole MPD document discussing post and forfeit that the District has produced thus far underscores the deficiency of the District's response.

Post and forfeit (as opposed to citation release) is the procedure the officers used to resolve Plaintiff's arrest. Plaintiff alleges that the officers either chose this procedure to cover up her unlawful arrest or made the unlawful arrest knowing that it would not be scrutinized due to use of the procedure. Plaintiff asked for documents constituting or referring to general orders, rules, regulation, policies, procedures, or practices relating to **both** post-and-forfeit and citation release because she contends that citation release should have been offered to her, as well.[10] The District chose to respond by providing documents related to the citation release procedure and the unrelated, non-arrest PD-61D (violation citation) procedure. *See* Defs. Br. at 9. While Plaintiff asked for and

---

documents that are responsive to plaintiff's request, plaintiff's motion must be denied" (emphasis added).

appreciates the citation release procedures (which according to the District were employed in zero disorderly arrests in 2005), she also requested and is entitled to the post-and-forfeit procedures (which were applied in her case, and, according to the District, 1,194 other disorderly arrests in 2005). Despite having provided none of the MPD's documents related to the post-and-forfeit procedure (other than the stray 1984 Special Order), the District brazenly asserts to this Court "the District has met its discovery obligation [as to this request] and plaintiff's motion to compel should be denied." The District has not, and should produce the relevant documents forthwith.

*Request for Production No. 7* (documents defining or otherwise giving meaning to the offense of ***disorderly conduct***):

Initially, the District provided plaintiff with ***no*** documents responsive to this request. In its amended response, it points Plaintiff to the 2003 CCRB Report (which Plaintiff herself provided to the District's counsel) and to an "October 2005 D.C. Criminal Code Handout." While this handout is responsive to the request, it must be but a small sliver of the documents in the District's possession. Plaintiff does not know all of what the District possesses, but she surmises it must at least have the following (and is required to search for whatever else it has):

- The training material in use in 2003 and identified in the 2003 CCRB Report include a lecture script, a handout, "several special orders" that are attached to the handout, and a video. *See* Rec. Doc. 43-9, at 19.

- The revised training materials recommended by the CCRB and discussed in the annual reports. The CCRB recommended "additional instruction to [MPD's] officers about the law and procedure related to disorderly arrests," possibly added through training at roll call or as an additional lesson at the annual in-service training attended by all officers. *See* Rec. Doc. 43-9, at 20. The CCRB made further recommendation about what the MPD should consider when it engaged in the internal process of revamping its training. *Id.* The CCRB also recommended

---

[10] In fact, the officer were to give a written notice which includes discussion of the availability of citation release to all arrestees offered post-and-forfeit. D.C. Code § 5-335.01(c) & (d).

a message be delivered from the Chief reinforcing officer and supervisor responsibilities in this area. *Id.* In 2004, the MPD reported that "refresher training on disorderly conduct law and procedure will be included as a topic area in the annual in-service and roll call training plans for all officers, and training tapes produced for the in-service training component on disorderly conduct will include an introduction from Chief Ramset." Rec. Doc. 43-11, at 33. In 2005, the MPD reported that disorderly conduct had been covered at a June 2005 roll call, that it would be covered in the 2006 annual in-service, and that the training video regarding it was being remade. Rec. Doc. 43-12, at 43. In 2006, this videotape was still pending. Rec. Doc. 43-13, at 39. Plaintiff is entitled not only to the final products but also the District's considerations about what training to implement.

- Documents evidencing internal discussion at the MPD in response to the 2003 CCRB Report, including documents from the MPD discussing its officers use of this offense.

- Policy, procedure, or training documents put into use by the MPD in response to the 2003 CCRB Report.

- Training materials and handouts in use on dates other than October 2005. (Including, training materials and handout the Individual Defendants received; training materials and handouts in use when the 2003 report was issued; and training materials and handouts in use after the 2003 report through present).[11]

- Sampling or studies of the use of the disorderly conduct arrest, as recommended by the CCRB. *See* Rec. Doc. 43-9, at 20.

That the District, even in its amended response, did not produce documents known to exist – and pointed out to it by Plaintiff (e.g., lecture script, handout and attached special orders, and video) does not inspire confidence in the searches being performed by the District.

*Request for Production No. 8* (materials related to the MPD's training and supervision of its officers' use of ***post and forfeit***):

In its opposition brief, the District does not engage Plaintiff's arguments at all, and merely supplements its response to identify the ***citation release*** and ***PD 61D (violation citation)*** procedures that it produced in response to RFP 6. Not one of the

documents is relevant to the post-and-forfeit procedure for resolving arrests.  Not one of the documents relates to the training of officers in the use of the post-and-forfeit procedures or the supervision of officers' use of the post-and-forfeit procedures.  The District has simply not responded to Plaintiff's request.

The 2003 Report identifies that the District was training its officers in the use of disorderly conduct (including resolution through post-and-forfeit) with a lecture script, handout with attached special orders, and a training video.  As discussed above, Plaintiff is entitled to these documents, any updated training materials that were created, and any training specific to post and forfeit separate from the disorderly conduct unit.

Plaintiff is also entitled to documents related to what training and supervision of its officers the District considered, evaluated, implemented, or rejected related to use of post and forfeit to resolve disorderly conduct arrests.  While the District may have considered these matters at various times, it certainly did in response to the 2003 Report. (The annual reports show that there was a continuing dialogue between the CCRB and the MPD, and the MPD represented that it was working on these issues).  Defendant has produced none of this.

*Request for Production No. 9* (training records of the individual defendants and their supervisors):

The District filed a motion for a protective order on June 20, 2008, related to these materials, claiming that their release needs to be subject to a confidentiality order. Plaintiff has addressed these arguments further in opposition to that motion.  [Rec. Doc. 54.]  She argues that neither the District nor the officers have a particular privacy interest

---

[11] As discussed in Plaintiff's motion to compel, documents from all of these time periods are relevant to showing the District's response or lack of response to concerns raised about use of this offense, a key component to proving her claim under *Monell*.

in what training classes the officers attended and therefore there is no "good cause" basis

for the protective order that the District seeks.

*Request for Production No. 10* (reports, studies, evaluations, recommendations, or data
compilations related to post-and-forfeit or citation release):

The District now complains about the open-ended time frame of the request

(although it originally made only boiler plate objections). Plaintiff has offered to accept

documents created in or evaluating the time period of 2003 through 2006. *See* Rec. Doc.

43-2, at 27 n. 12. The District ignores this proposal. The District also objects to being

asked for documents "created by any individual or entity." This objection fails. The

District must produce document in its custody or control, regardless of who authored

them.

The District has "amended" its response by adding a reference to and producing

back to Plaintiff the very Citizen Complaint Review Board and Office of Police

Complaints documents that Plaintiff attached to her motion to compel.[12] It produced no

other new documents. Yet it is likely that the District created such documents because:

1.) the Mayor's office is statutorily required to do so (see D.C. Code § 5-335.01(h)), and

2.) one of the recommendations of the 2003 Report was that the MPD conduct a study of

a statistically significant sample of disorderly conduct arrests, *see* Rec. Doc. 43-9, at 19.

Moreover, if the MPD created any reports, studies, evaluations, recommendations, or data

compilations in response to the 2003 Report or for any other reason, those are responsive

here. Further, if the OPC compiled data or otherwise evaluated the relevant procedures

---

[12] Gallingly, at the same time that the District produced back to Plaintiff the very documents she provided
to it, the District represents to the Court (at 12): "Since the filing of its initial response to plaintiff [sic]
[RFP], the District **has received** and forwarded to plaintiff documents responsive to plaintiff's demand."
The only new documents sent were those provided by Plaintiff in the first place.

internally, even if it did not make those public, those materials are also obviously within the District's custody or control.

Plaintiff asks that the inapplicable (and apparently abandoned) assertion of deliberative process privilege be stricken, as well as the boiler plate objections.  If it is the District's position that the only reports, etc., in its possession are the CCRB and OPC reports (i.e., that it has not complied with D.C. Code § 5-335.01(h) or the CCRB recommendation), then that answer should stand on its own.

*Request for Production No. 11* (annual public reports required by D.C. Code § 5-335.01(h)):

The District has now amended its response to state that it does not have the statutorily-required annual report in its possession for any year since the passing of the law requiring it (D.C. Code § 5-335.01(h)).  This presumably means that the District never created the report.  Plaintiff requests that the inapplicable, un-argued, and unsupported objections be stricken so that the District's response can stand for itself.

*Request for Production Nos. 12 & 13* (documentation of other arrests – by the individual defendants or otherwise – involving disorderly conduct, post and forfeit, or citation release):

Plaintiff discussed these requests, and why they are not overly broad and unduly burdensome, in detail in her Opposition to the District's June 11 Motion for a Protective Order.  [Rec. Doc. 54.]  Plaintiff hereby incorporates those arguments here.  As discussed in that briefing, the District's arguments of burden are not tied to what would actually be required to find the responsive materials.  The statistics in the burden affidavits do not hold up to scrutiny, as discussed in Rec. Doc. 54.

*Request for Production No. 14* (civil, criminal or other actions (including citizen complaints) against any of the Individual Defendants):

The District concedes that some documents responsive to this request are relevant but argues that others are not. The District then states that it would be willing to produce the materials that it considers relevant subject to an appropriate protective order.[13] The District's "offer" is very belated. Even if part of a request is objectionable, a party must respond to the non-objectionable part.[14] Fed. R. Civ. P. 34(b)(2)(C). The District's request for a protective order is also puzzling as the District has two motions for protective orders pending, neither of which covers this request. Certainly, this off-hand request for a protective order is untimely, *See* 6 James Wm. Moore et al., Moore's Federal Practice ¶ 26.102[2] n.9 (collecting cases); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 622 n.2 (10th Cir. 1982) (citing *United States v. Int'l Bus. Mach. Corp.*, 70 F.R.D. 700, 701 (S.D.N.Y. 1976)), and, in any case, unsupported.

Plaintiff nonetheless agrees that a limitation to all documents related to any civil, criminal or other actions (including citizen complaints) against any of the Individual Defendants ***related to these defendants' performance as Police Officers*** is appropriate. Plaintiff is entitled, however, to all actions – of any kind – initiated against the Individual Defendants on account of their conduct as police officers, regardless of where the action was initiated.

The District argues to excise the portion of Plaintiff's request seeking "other actions," including administrative discipline and citizen complaints, on a very narrow

---

[13] The District seeks to limit the request to civil or criminal complaints (and not other actions) related to these defendants' performance as D.C. Metropolitan Police Officers.

reading of relevance, noting (at 14), by way of example, that "discipline meted out to any of the officers for even a no show in court would be responsive to the request." There are two problems with this argument. First, "other actions" could include not only discipline for a no show in court but also discipline for an improper disorderly conduct arrest or misuse of post and forfeit. These latter have core relevancy. Second, it is relevant to Plaintiff's case for *Monell* liability if the MPD is harsh in disciplining no shows in court but fails to follow through with discipline for complaints about disorderly conduct or release procedures.

Lastly, the District adds the caveat that it will only provide information on complaints about the Individual Defendants "if the District has that knowledge." Of course, the Individual Defendants are employees of the District, and so the District's attorney must seek their knowledge when responding to this request.

## II.    Interrogatories

*Interrogatory No. 1* (current home address of each of the Individual Defendants):

The District has incorporated the arguments from its Motion for a Protective Order (Rec. Doc. #46), and so Plaintiff similarly incorporates in response its arguments from its opposition to that motion (Rec. Doc. 54).

*Interrogatory No. 2* (identification of the Individual Defendants' supervisors):

The District rectified much of the extreme deficiency of its original response in its amended response. But the District's response also appears contradictory with other discovery responses. The District stated in its original response that Sgt. Smith with the sergeant for substation 301. Other responsive materials produced by the District, *see* ex.

---

[14] Nor did the District engage in this attempt at resolution, despite Plaintiff's efforts, during the meet and confer sessions.

C, show that only one of the three Individual Defendants (Antonio) was stationed at substation 301.  The District needs to provide the supervisor for each of the three Individual Defendants.

*Interrogatory No. 3* (identification of officers at the scene of Plaintiff's interaction with the Individual Defendants and her arrest):

The District amended its response to include the identity (insufficiently, on information and belief) of the officer who drove Ms. Huthnace to the Third District stationhouse.  It failed to identify any of the additional officers present at the time of Plaintiff's arrest, stating instead "[t]he District is ***unaware of then*** [sic] ***names*** of the any other officers who may have been on the scene at the time of plaintiff's arrest."  As discussed in Plaintiff's motion, the identity of the officers is within the District's custody and control and is obtainable through a reasonable investigation.  The District should be required to determine the answer to this interrogatory by reasonably available means – including inquiries made to officers on duty on the night of Plaintiff's arrest at PSA 301 and 302 (or any other deployments it learns might have been present at the 7-Eleven outside of which Ms. Huthnance was arrested).

*Interrogatory No. 4* (identification of the Third District station crew):

The District provides no arguments to counter Plaintiff's motion to compel, and Plaintiff stands by her arguments therein.

*Interrogatory No. 5* (identification of the officers who interacted with Plaintiff or authored any of the police paperwork related to Plaintiff):

The District provides no arguments to counter Plaintiff's motion to compel, and Plaintiff stands by her arguments therein.

*Interrogatory Nos. 6 and 7* (relating to Plaintiff's allegations regarding one of the Individual Defendant's suggestion that she post collateral on the scene):

Plaintiff accepts the District's amended responses to these requests and therefore withdraws her motion to compel as to these two Interrogatories.

*Interrogatory No. 8* (statistics about the number of disorderly conduct arrests resolved by post and forfeit, citation release, or neither):

The District provides no arguments to counter Plaintiff's motion to compel, and Plaintiff stands by her arguments therein.

*Interrogatory Nos. 9 and 10* (information regarding other disorderly conduct arrests and non-disorderly conduct arrests where post and forfeit was used):

The District has incorporated the arguments from its Motion for a Protective Order (Rec. Doc. #46), and so Plaintiff similarly incorporates in response its arguments from its opposition to that motion (Rec. Doc. 54).

*Interrogatory No. 11* (total number of arrests where post and forfeit was applied):

The District provides no arguments to counter Plaintiff's motion to compel, and Plaintiff stands by her arguments therein.

*Interrogatory No. 12* (complaints about the individual defendants):

The District has amended its response to raise additional objections, which it is not permitted to do at this stage. Fed. R. Civ. P. 33(b)(4) and 34(b)(2)(B); *Peskoff v. Faber*, 244 F.R.D. 54, 64 (D.D.C. 2007),   The District incorporates the arguments from its Motion for a Protective Order (Rec. Doc. #46), and Plaintiff will incorporate its arguments from its opposition to that motion.

*Interrogatory No. 13* (identification of how the MPD records the time at which an arrestee is released from jail and identification of where and for how long that information is stored):

The District has amended its response to state that: "at the time of the plaintiff's arrest on November 16, 2005, said information was maintained on a log sheet.[15] The log sheet is no longer in existence." The District ignores the portion of the request asking about the retention policy for this information. For the same reasons laid out above related to Request for Production 2, Plaintiff asks the Court to order the District to provide an accounting of the log sheet's destruction and to produce the relevant document retention policies.

### III. Expenses

The District also opposes Plaintiff's request for expenses associate with this motion. Expense shifting is ***presumptive***, both if this motion is granted "or if the disclosure or requested discovery is provided ***after*** the motion was filed." Fed. R. Civ. P. 37(a)(5)(A). The District can only rebut this expense shifting in the narrow circumstances that it can show that its response was "substantially justified" or that "other circumstances make an award of expenses unjust." *Id. See also* 7 *Moore's Federal Practice* § 37.239[1].

The District has not and cannot show either of these things. As detailed extensively in Plaintiff's opening brief, despite multiple extensions, the District simply did not provide responsive information to the bulk of Plaintiff's requests. In some cases,

---

[15] The District also disingenuously claims that the deficiency in its response that required Plaintiff to move to compel resulted because "the District was unclear as to the specific information the plaintiff sought as to this request." But Plaintiff clarified any confusion during the meet-and-confer calls and in its May 5 letter to the District's counsel, Rec. Doc. 43-6. The District then submitted amended discovery responses on May 15, and yet still did not clarify this response. It does so now only in the face of a motion to compel.

it asserted unsupported burden and privilege objections and other boiler-plate objections[16] (without following the proper procedures for doing so), and in other cases it simply did not provide admittedly responsive materials because, according to the AAG assigned to this case, although he had forwarded Plaintiff's requests to someone at the MPD, he had not yet received the responsive information from his client. There is nothing substantially justified about this cavalier attitude toward discovery obligations, and there is nothing unjust in requiring the District to bear the costs its behavior caused to be incurred. This is especially true given Plaintiff's extensive-but-rebuffed efforts to work out these disputes without coming to the Court.

The only specific reason that the District gives for why costs should not be imposed is the claim that: "Prior to Plaintiff filing the instant motion, the District notified her of its decision to move for a protective order for the overly burdensome discovery."[17] This statement is misleading in the extreme. After Plaintiff received the District's substantially unresponsive discovery response, her counsel engaged the AAG in lengthy discussions on at least two occasions and also provided an lengthy letter discussing the issues. It was only because, 34 days after her first attempt to resolve the issue, the District could not show that it had taken any steps toward actual compliance that Plaintiff informed the District on June 3, 2008, that she would be filing her motion to compel.[18] At 7:44 p.m. that night, the AAG sent an email to Plaintiff's counsel, (email at Rec. Doc. 54-4), announcing its intention to file a motion for a protective order. Plaintiff responded

---

[16] Even if one assumed that some of the District's privilege, burden, or other objections might have some basis when applied to *specific* documents, the District's utter failure to follow the proper procedures (e.g., provide a privilege log, move for a timely protective order, make its objections with the required specificity), also obviates any possible argument that its responses were "substantially justified."

[17] Note, also, that the District's June 11 motion for a protective order only covered a handful of the discovery requests to which it had interposed burden objections.

[18] She finalized and filed the motion three days later, on June 6, 2008.

requesting the required meet and confer about such a motion. The District did not participate in that meet and confer for nearly a week (until June 9, 2008), after Plaintiff had already filed her motion to compel, and did not follow through with filing its motion until June 11, 2008. In fact, Plaintiff tried to dissuade the District at that point from filing its motion to the extent that it was duplicative of her motion to compel and because it was untimely.

The logical result of the District's erroneous argument is that one party may hold the other party's motion to compel hostage indefinitely merely by sending a missive stating an intention to file an untimely motion for a protective order, even after the parties had met-and-conferred about the motion to compel. This is not so. For all Plaintiff knew, the District *might never have filed* the threatened motion, and the District is not entitled to give itself another *de facto* discovery extension (by delaying Plaintiff's motion to compel) by threatening to file an (untimely) motion for a protective order. At that point, it was no longer Plaintiff's *choice* to file a motion to compel. She was compelled to do so to protect her interests. This procedural posture was entirely of the District's making, and the fact that the District belatedly filed a motion for a protective order duplicative of issues raised in Plaintiff's motion to compel, multiplying the expenses in this case, is in no way a justification of *relieving* itself of the presumption of shifted expenses.

Of course, Plaintiff might have been spared *some* of the expense of preparing this motion if the District had *timely* filed a motion for a protective order before the discovery responses were due, or at least once Plaintiff had formally demanded the materials in the parties' first meet-and-confer call. *See* 6 James Wm. Moore et al., Moore's Federal

Practice ¶ 26.102[2] n.9 (collecting cases); *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 622 n.2 (10th Cir. 1982) (citing *United States v. Int'l Bus. Mach. Corp*., 70 F.R.D. 700, 701 (S.D.N.Y. 1976)).  But it did not.

Nor, of course, does the District's belated supplemental production, mailed to Plaintiff on the very same day that the District filed its opposition brief, save the District from paying the expenses of this motion.  *See* Fed. R. Civ. P. 37(a)(5)(A); see also 7 *Moore's Federal Practice* § 37.23[9].  A party that forces another party to file a motion to compel and then voluntarily provides the discovery is equally caught by Rule 37(a)(5)'s expense shifting provisions.  *Id*.

DATED:  July 11, 2008

Respectfully submitted,

_____//s//_____
John Moustakas (DC Bar # 422076)
Sarah Keast (DC Bar # 493632)
Goodwin | Procter LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 346-4000
(202) 346-4444 (fax)

Arthur B. Spitzer (DC Bar #235960)
Frederick V. Mulhauser (DC Bar # 455377)
American Civil Liberties Union
         of the National Capital Area
1400 20th Street, NW, Suite 119
Washington, DC 20036
(202) 457-0800
(202) 452-1868 (fax)

Attorneys for Plaintiff Lindsay Huthnance

# Exhibit A

# Prolaw Matters Listing with Matter Category

Category contains 'police' and area of law = 'civil litigation defensive'

| Matter ID | Matter Description | Status | Opened Date | Matter Category | Assigned Professionals |
|---|---|---|---|---|---|
| 134875 | Abbate v DC., 03-00767 | Closed | 1/28/2005 | Police False Arrest-Assault Civil Right | Richard S. Love<br>Thomas Koger<br>Irish Thomas |
| 120525 | Adams, Goddess Joann L. v. DC, 04-2445, alleged asault by police officer. | Closed | 5/20/2004 | Police False Arrest- Assault Common Law | Pat Jones<br>Damon Pace |
| 43806 | Alliance for Global Justice et al, v. DC 01-811 Class action complaint about the tactics of the Metropolitan Police Department at the April 2000 World Bank demonstrations.<br>s | Open | 7/31/2002 | Police False Arrest-Assault Civil Right | Chad Copeland<br>Ellen Efros |
| 122526 | Amey, Maurice v. DC, 04-0963, excessive force and failure to provide timely medical care | Closed | 6/23/2004 | Police False Arrest-Assault Civil Right | Pat Jones<br>Leah Brownlee Taylor |
| 125421 | Anglade, Jean  v. DC. et al 04-1250.  Plaintiffs allegedly assulted on his job by Sheri Fox. | Closed | 8/6/2004 | Police False Arrest-Assault Civil Right | Pat Jones<br>Leah Brownlee Taylor<br>Marlene Bailey |
| 128908 | Anthony Coachman v. DC, 04-6922.  Plaintiff claims false arrest and rectal search by John Doe officers on Sept. 14, 2003, at  429 Sixtieth St., N.E | Closed | 10/4/2004 | Police False Arrest-Assault Civil Right | Pat Jones<br>George Rickman<br>Marlene Bailey |
| 39505 | Archibald Carter v DC, 01-1050 (GK) | Closed | 6/19/2002 | Police False Arrest-Assault Civil Right | Teresa Quon<br>Leon Swinson<br>Irish Thomas |

# Exhibit B

| AGENCY | DATE/TIME | DISPATCH DATE/TIME | UNIQUE ID | CASE NUMBER | ADDRESS |
|--------|-----------|--------------------|-----------|-------------|---------|
| MPD | | | | | |
| MPD | | | | | |
| MPD | 20051116020505ES | 20051116020506ES | 5118642 | R2005155750 | 3100 MOUNT PLEASANT ST NW |
| MPD | | | | | |

| INTERSECTION | PSA | CALL CODE | CALL TYPE | PRIORITY | DISPOSITION |
|---|---|---|---|---|---|
|  |  |  | T |  |  |
| IRVING ST NW & KENYON ST NW | 301 | DISO | DISORDERLY | 3 | ASSNCASE |
|  | 30 |  |  | 2 |  |

# Exhibit C

JUN-17-2008 10:59 From:GENERAL COUNSEL    2027273308    To:97418939    Page:1/22
JUN-17-2008 10:50 From:3D ADMIN    2026737630    To:97273308    Page:2/23

```
06-17-08              *** DAILY ROLL CALL ***                  10:47 AM
BUREAU: RN DIST: 3____  SECTR: PSA   SECTN: 301   SQD: ____  ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 301                       TOUR OF DUTY: 0600 1430
WATCH CMDR:                         PREP BY: _
PRIORITY: _____          CHK OUT: _
  ASSIGNMENT   UNIT NUM  RNK   NAME                BADGE SX CU TECH   IN  OUT CT
 1 PSA LT
 2 PSA CAR 0
 3 PSA CAR 9            MPO   SHYMANSKY JR., EDWAR 2633  M  Y 23    2200 1001 *
 4 PSA SGT             LT    JACKSON, CHESTER           M  Y       0630 1500
 5 PSA CAR 1            OFF   CRUZ JR., ALFREDO    5239  M          2200 0630
 6 PSA CAR 1            OFF   MITCHELL, CARLOS     2395  M
 7 PSA CAR 1            OFF   ROBERTS, MICHAEL     2025  M          2200 0630
 8 PSA CAR 1            OFF   ANTONIO, JAMES       4409  M          1400 0330
 9 PSA CAR 1            OFF   DIGGS III, COY       2983  M          0700 1600
10 PSA CAR 1            OFF   BURGOS, JOSE         5141  M
11 PSA CAR 1            OFF   GARRETT, LARRY       2396  M
12 PSA CAR 1            OFF   QUILES, IVAN         4375  M          1715 2230 *
13 PSA CAR 2            OFF   HARRELL, ROY         2916  M  Y       0600 1530
14 PSA CAR 3
15 PSA CAR 4
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08                    *** DAILY ROLL CALL ***                      10:47 AM
BUREAU: RN DIST: 3____   SECTR: PSA___ SECTN: 302___ SQD:____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 302          ——→            ⇐—— TOUR OF DUTY: 0600 1430
WATCH CMDR:                              PREP BY: _
PRIORITY:                                CHK OUT:
   ASSIGNMENT   UNIT NUM   RNK   NAME              BADGE SX CU TECH   IN   OUT CT
 1 PSA LT                  INSP  DELGADO, EDWARD   I0059 M  Y         0600 1430 *
 2 PSA CAR 0               SGT   WEEKS JR., CHARLES S0676 M           2100 0530
 3 PSA CAR 9               MPO   WOMACK, ANTONIO   2221  M     23     0600 1800
 4 PSA SGT                 SGT   EVANS, ERNESTINE  S0671 F  N         1400 0330
 5 PSA SGT                 SGT   SIMMONS, CRAIG    S0554 M           1400 2230
 6 PSA SGT                 SGT   MCLEAN, JOHNIE    S0752 M           0600 1600
 7 PSA CAR 1               OFF   GILARDI, ANTHONY  4288  M
 8 PSA CAR 1               OFF   HARMON, MOSETTE   4181  F           1400 2200
 9 PSA CAR 1               OFF   HALL, ROBERT      2628  M
10 PSA CAR 1               OFF   HAAG, JEFFREY     4252  M
11 PSA CAR 1               OFF   PRINCE, SHEREE    4326  F           0600 1700
12 PSA CAR 1               OFF   MORALES JR., JOSE 3577  M           1400 0330
13 PSA CAR 1               OFF   WATSON II, ALVES  3220  M           2200 0630
14 PSA CAR 1               OFF   HART, JOHN        3900  M           0500 1330
15 PSA CAR 1               OFF   NEVITT, CHRISTOPHER 2071 M          2200 0630
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:00 From:GENERAL COUNSEL    2027273308    To:97418939    Page:3/22
JUN-17-2008 10:51 From:3D ADMIN    2026737630    To:97273308    Page:4/23

```
06-17-08              *** DAILY ROLL CALL ***                    10:47 AM
BUREAU: RN DIST: 3____  SECTR: PSA__  SECTN: 302__  SQD: ___  ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 302                          TOUR OF DUTY: 0600 1430
WATCH CMDR: _____       PREP BY: _
PRIORITY: _____   CHK OUT: _
    ASSIGNMENT   UNIT NUM  RNK   NAME                 BADGE SX CU TECH   IN  OUT CT
 1 PSA CAR 1              OFF   NGUYEN, STEVEN        4088  M            1400 2230
 2 PSA CAR 1              OFF   FOREMAN, CELESTE      4281  F
 3 PSA CAR 1              OFF   ACEBAL, LILIANA       4331  F            1400 0330 *
 4 PSA CAR 1              OFF   JONES, RICHARD        3291  M            1400 2230
 5 PSA CAR 1              OFF   FADAIRO, OLUGBENGA    3403  M            1400 2230
 6 PSA CAR 1              OFF   HART, LASHONDA        3436  F            0600 1500
 7 PSA CAR 1              OFF   ROTHMAN, JARED        4302  M
 8 PSA CAR 1              OFF   ALAS, NELSON          3355  M
 9 PSA CAR 1              OFF   EAGAN, TRAVIS         3822  M            1400 2230
10 PSA CAR 1              OFF   CARTER, JEFFREY       2736  M
11 PSA CAR 1              OFF   MAHL, MATTHEW         2392  M            1400 2230
12 PSA CAR 1              OFF   MONTER, SARAH         4093  F            2200 0630
13 PSA CAR 1              OFF   WHITFIELD, JERRY      4046  M
14 PSA CAR 1              OFF   WILLIS, CALEB               M            1400 2230
15 PSA CAR 1              OFF   GREEN, TANDREIA       4370  F            1616 2230 *
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:00 From:GENERAL COUNSEL    2027273308    To:97418939    Page:4/22
JUN-17-2008 10:51 From:3D ADMIN    2026737630    To:97273308    Page:5/23

```
06-17-08              *** DAILY ROLL CALL ***              10:47 AM
BUREAU: RN DIST: 3____  SECTR: PSA__ SECTN: 302__ SQD: ___ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 302                      TOUR OF DUTY: 0600 1430
WATCH CMDR: _____    PREP BY: _
PRIORITY: _____      CHK OUT: _
   ASSIGNMENT  UNIT NUM  RNK   NAME              BADGE SX CU TECH   IN   OUT CT
 1 PSA CAR 1             OFF   FIREHOCK, BENJAMIN  2143  M
 2 PSA CAR 1             OFF   HEMPHILL, PATRICK   2478  M                0700 1430 *
 3 PSA CAR 1             SGT   THOMPSON, SHAN     S0733  F                0500 1330
 4 PSA CAR 1             MPO   TIPTON, TIMOTHY     2408  M    23          1452 2230 *
 5 PSA CAR 1             OFF   WATSON, MAKHETHA    3378  F                1400 2230
 6 PSA CAR 1             OFF   KENNEY, WENDELL     3970  M                0600 1430
 7 PSA CAR 1             OFF   HACKLEY II, JOHN    5299  M
 8 PSA CAR 1             OFF   VAZQUEZ, ANGEL      4374  M                1400 2230 *
 9 PSA CAR 2             OFF   RODRIGUEZ, LIVIO    4236  M
10 PSA CAR 2             OFF   AMIGO, JONATHAN     3385  M                2200 0630
11 PSA CAR 2             OFF   REID, STEVEN        3152  M                0600 1430
12 PSA CAR 2             OFF   MONTANO, FRANCISCO  5126  M
13 PSA CAR 2             OFF   EAST, JOHN                M                1430 2300 *
14 PSA CAR 2             OFF   HAYNES SR., DENSON  2481  M                2200 0630
15 PSA CAR 2             SGT   DAVIS, ARTHUR      S0426  M                1400 2230
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help 'cncl exit info mastr hours prev next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08              *** DAILY ROLL CALL ***              10:47 AM
BUREAU: RN DIST: 3_____  SECTR: PSA__ SECTN: 302__ SQD: ___ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 302                          TOUR OF DUTY: 0600 1430
WATCH CMDR:                            PREP BY: _
PRIORITY:                              CHK OUT:
   ASSIGNMENT   UNIT NUM   RNK   NAME              BADGE SX CU TECH  IN   OUT CT
 1 PSA CAR 2               OFF   MONROE, CARLA                       2200 0630
 2 PSA CAR 2               OFF   JONES, GREGORY      2244   M  Y     2200 0630
 3 PSA CAR 2               OFF   PITTMON, LYNN       2248   M        0500 1330
 4 PSA CAR 2               OFF   BROCK, DAVID        4226   M
 5 PSA CAR 2               SGT   HART, JONATHAN      S0452  M        1400 2230 *
 6 PSA CAR 3               OFF   NAMDAR, MARK        4320   M        0500 1330
 7 PSA CAR 3               OFF   KOLB, RYAN          3456   M
 8 PSA CAR 3               OFF   HORN, CYNTHIA       3427   F        2200 0630
 9 PSA CAR 3               OFF   GRAHAM JR., ANTHONY 2169   M        2200 0630
10 PSA CAR 3               OFF   KELSEY JR., JOHN    4358   M  Y     0700 1530
11 PSA CAR 4               OFF   JEVRIC, ENIS        3728   M
12 PSA CAR 4               OFF   KING, BRIDGETTE     4206   F
13 PSA CAR 5               OFF   WOODEN, DEVINCI     4386   M        0600 1730 *
14 PSA CAR 6
15 PSA CAR 7               OFF   BROWNLEE, EDWARD    4348   M        1100 1830
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
       help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:00 From:GENERAL COUNSEL     2027273308     To:97418939     Page:6/22
JUN-17-2008 10:51 From:3D ADMIN     2026737630     To:97273308     Page:7/23

```
06-17-08                *** DAILY ROLL CALL ***                    10:48 AM
BUREAU: RN DIST: 3____   SECTR: PSA__ SECTN: 302__ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 302                        TOUR OF DUTY: 0600 1430
WATCH CMDR:                         PREP BY:  _
PRIORITY:                           CHK OUT:  _
    ASSIGNMENT   UNIT NUM  RNK  NAME              BADGE SX CU TECH   IN  OUT CT
 1 PSA CAR 8
 2 PSA MARKED
 3 PSA TACT
 4 PSA UNMARK
 5 PSA SCOOTR
 6 PSA BIKE
 7 PSA FOOT A
 8 PSA FOOT B
 9 PSA FOOT C
10 PSA FOOT D
11 PSA FOOT E
12 DETAILED              OFF  BROWN II, WALTER    IV1757 M Y 9    1000 1830
13 DETAILED              OFF  MCKOY, LETICIA      2717   F        0600 1430 *
14 DETAILED              OFF  RANDALL, WARREN     2047   M        1000 1830
15
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:01 From:GENERAL COUNSEL        2027273308        To:97418939        Page:7/22
JUN-17-2008 10:51 From:3D ADMIN               2026737630        To:97273308        Page:8/23

```
06-17-08                *** DAILY ROLL CALL ***                    10:48 AM
BUREAU: RN DIST: 3____  SECTR: PSA__ SECTN: 303___ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 303                          TOUR OF DUTY: 0600 1430
WATCH CMDR:                                  PREP BY: _
PRIORITY:                                    CHK OUT:
   ASSIGNMENT  UNIT NUM  RNK  NAME              BADGE SX CU TECH  IN   OUT CT
 1 PSA LT
 2 PSA CAR 0
 3 PSA CAR 9            MPO  BUENTELLO, FRANK    5399  M  Y 23   0400 2200
 4 PSA SGT
 5 PSA CAR 1            OFF  MCANDREW, DOUGLAS   2471  M         1400 2230
 6 PSA CAR 1            OFF  FAIR, LAKISHA       2660  F
 7 PSA CAR 1            OFF  KURTZ, GREGORY      5359  M         1400 0230
 8 PSA CAR 1            OFF  BELFIORE III, JOSEPH 3156 M         1130 2000
 9 PSA CAR 1            OFF  JAMES, CHRISTOPHER  3883  M  Y      1400 2230
10 PSA CAR 1            OFF  RIVERA, DAMARIS     3708  F         0600 1430
11 PSA CAR 1            OFF  FLORES, WILBERTO    3751  M         2200 0630
12 PSA CAR 2            OFF  JACKSON, CHARLES    3605  M  Y      0600 1430
13 PSA CAR 2            OFF  SZEWCZYK, ROBIN     3372  F         0445 1315
14 PSA CAR 3
15 PSA CAR 4            OFF  MACK, TONYA         3354  F         2200 0630
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:01 From:GENERAL COUNSEL      2027273308      To:97418939      Page:8/22
JUN-17-2008 10:51 From:3D ADMIN              2026737630      To:97273308      Page:9/23

```
06-17-08              *** DAILY ROLL CALL ***               10:48 AM
BUREAU: RN DIST: 3____  SECTR: PSA__  SECTN: 303___ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 303                          TOUR OF DUTY: 0600 1430
WATCH CMDR: _____  PREP BY: _
PRIORITY:  _____  CHK OUT: _
   ASSIGNMENT  UNIT NUM  RNK  NAME          BADGE SX CU TECH  IN  OUT CT
 1 PSA CAR 5
 2 PSA CAR 6
 3 PSA CAR 7
 4 PSA CAR 8
 5 PSA MARKED
 6 PSA TACT
 7 PSA UNMARK
 8 PSA SCOOTR
 9 PSA BIKE
10 PSA FOOT A           OFF  COUNTEE, GREGORY  2981  M        0600 1430
11 PSA FOOT B
12 PSA FOOT C
13 PSA FOOT D
14 PSA FOOT E
15 DETAILED             OFF  KYLE, TRAVIA      3927  F        1430 2330
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help cncl exit info mastr hours prev next check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08                *** DAILY ROLL CALL ***                      10:48 AM
BUREAU: RN DIST: 3____ SECTR: PSA__ SECTN: 304__ SQD: ___ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 304                            TOUR OF DUTY: 0600 1430
WATCH CMDR:                            PREP BY:  _
PRIORITY: _____                      CHK OUT:
   ASSIGNMENT   UNIT NUM  RNK   NAME                  BADGE SX CU TECH  IN  OUT CT
 1 PSA LT
 2 PSA CAR 0
 3 PSA CAR 9              OFF   BARNES, WILLIAM       2719  M          1500 2330
 4 PSA SGT
 5 PSA CAR 1              OFF   COLLADO, MADELINE     2563  F
 6 PSA CAR 1              OFF   OROURKE, JOSEPH       4681  M          2300 0730
 7 PSA CAR 1              OFF   LONG JR., LEONARD     2676  M
 8 PSA CAR 1              OFF   VARVOUNIS, ALEXANDRO  2802  M
 9 PSA CAR 1              OFF   SHILEY, JENNIFER      5231  F
10 PSA CAR 1              OFF   STEWART JR., JEFFREY  3831  M          1500 0330
11 PSA CAR 1              OFF   RODRIGUEZ, JOSE       3062  M          2300 0930
12 PSA CAR 1              OFF   GUNNELLS, DORAN       3465  M          2300 0845 *
13 PSA CAR 1              OFF   PUENTES, DANILO       3886  M          2300 0930
14 PSA CAR 1              OFF   GUILFOYLE, NATHAN     2022  M
15 PSA CAR 1              OFF   DOBBINS, JOHN         3251  M  Y       0700 1530
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08                 *** DAILY ROLL CALL ***                10:48 AM
BUREAU: RN DIST: 3____   SECTR: PSA__ SECTN: 304__ SQD: ___  ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 304                          TOUR OF DUTY: 0600 1430
WATCH CMDR:                          PREP BY: _
PRIORITY:                            CHK OUT: _
   ASSIGNMENT   UNIT NUM  RNK   NAME              BADGE SX CU TECH   IN  OUT CT
 1 PSA CAR 1              OFF   JOLLY, DARRYL      2994  M  Y        0600 1430
 2 PSA CAR 2              OFF   HAMPTON, ERIC      2859  M     11    0700 1530
 3 PSA CAR 3              OFF   MARTINEZ, CONFESOR 4775  M           1500 2330
 4 PSA CAR 3              SGT   PONGRATZ, JONATHON S0882 M           1500 2330
 5 PSA CAR 3              OFF   HAMMOND, STEVEN    2704  M           ____ ____
 6 PSA CAR 4
 7 PSA CAR 5              OFF   MAZAKIS, ROBERT    3100  M           1500 2330
 8 PSA CAR 6
 9 PSA CAR 7
10 PSA CAR 8
11 PSA MARKED
12 PSA TACT
13 PSA UNMARK
14 PSA SCOOTR
15 PSA BIKE
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help cncl exit info mastr hours prev next check mode print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:01 From:GENERAL COUNSEL        2027273308          To:97418939          Page:11/22
JUN-17-2008 10:52 From:3D ADMIN              2026737630          To:97273308         Page:12/23

```
06-17-08                *** DAILY ROLL CALL ***                    10:48 AM
BUREAU: RN DIST: 3____  SECTR: PSA__ SECTN: 304___ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 304                          TOUR OF DUTY: 0600 1430
WATCH CMDR: _____        PREP BY: _
PRIORITY: _____    CHK OUT: _
   ASSIGNMENT    UNIT NUM  RNK   NAME              BADGE  SX CU TECH  IN  OUT CT
 1 PSA FOOT A             OFF   BAEZ, SONIA        3046   F  Y       0700 1530
 2 PSA FOOT B
 3 PSA FOOT C
 4 PSA FOOT D
 5 PSA FOOT E
 6 DETAILED              OFF   SAVOY, NARBERT      3446   M          0600 1430
 7 DETAILED              OFF   LAMBERT, DEBORAH    2031   F          0700 1530
 8 DETAILED              SGT   MATTHEWS, MARY      S0439  F          0700 1530
 9
10
11
12
13
14
15
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08                *** DAILY ROLL CALL ***                    10:48 AM
BUREAU: RN DIST: 3____  SECTR: PSA__ SECTN: 305___ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 305                          TOUR OF DUTY: 0600 1430
WATCH CMDR:                          PREP BY: _
PRIORITY: _____  _____  CHK OUT: _
   ASSIGNMENT   UNIT NUM  RNK  NAME              BADGE SX CU TECH  IN   OUT CT
 1 PSA LT
 2 PSA CAR 0
 3 PSA CAR 9
 4 PSA SGT
 5 PSA CAR 1              OFF  COUGHLIN, THOMAS   2852  M  18      1400 2230
 6 PSA CAR 1              OFF  BIALESKI, MICHAEL  2531  M
 7 PSA CAR 1              OFF  STAGON, BRANDON    4218  M          2300 1055 *
 8 PSA CAR 1              SGT  TAYLOR JR,, KENNETH S0817 M          2200 0630
 9 PSA CAR 1              OFF  MARBLEY, NINYA     4022  F
10 PSA CAR 1              OFF  PEZZAT, SARAH      5161  F          ____ ____
11 PSA CAR 1              OFF  BUSH, EDWARD       3384
12 PSA CAR 1              SGT  NEVEL, DUSTIN      S0902 M          1400 2230
13 PSA CAR 1              OFF  CARTWRIGHT, CHRISTOP 5401 M         0600 1430
14 PSA CAR 1              OFF  BROWN, TANYA       3928  F          2200 0630
15 PSA CAR 1              MPO  WILSON, JERMAINE   3441  M  23      1400 2230
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help 'cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08              *** DAILY ROLL CALL ***                    10:48 AM
BUREAU: RN DIST: 3_____  SECTR: PSA__ SECTN: 305___ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 305                          TOUR OF DUTY: 0600 1430
WATCH CMDR:                          PREP BY: _
PRIORITY:                            CHK OUT: _
   ASSIGNMENT    UNIT NUM  RNK  NAME              BADGE SX CU TECH   IN   OUT CT
 1 PSA CAR 1               OFF  PINCKNEY JR., ERVIN 3103  M  Y       2200 0630
 2 PSA CAR 1               OFF  JONES JR., ROBERT   4215  M          0600 1700
 3 PSA CAR 1               OFF  BINES, CORY         4245
 4 PSA CAR 2               OFF  GROVES, JUDITH      2880  F          0600 1430
 5 PSA CAR 3
 6 PSA CAR 4               OFF  ARROYO, MICHELLE    3585  F          1400 2230
 7 PSA CAR 4               OFF  SCOTT, MAURICE      3713  M          1400 2230
 8 PSA CAR 5
 9 PSA CAR 6
10 PSA CAR 7
11 PSA CAR 8
12 PSA MARKED
13 PSA TACT                OFF  GREENE, ADBUL       2608  M          0600 1430
14 PSA TACT                OFF  JEFFERSON, REUBEN   2614  M  Y       0600 1430 *
15 PSA TACT                OFF  ROBINSON, DANA            F          0600 1530
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help 'cncl exit info mastr hours prev next check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:02 From:GENERAL COUNSEL        2027273308            To:97418939            Page:14/22
JUN-17-2008 10:52 From:3D ADMIN               2026737630            To:97273308            Page:15/23

```
06-17-08                    *** DAILY ROLL CALL ***                      10:48 AM
BUREAU: RN DIST: 3____  SECTR: PSA__ SECTN: 305__ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 305                              TOUR OF DUTY: 0600 1430
WATCH CMDR:                             PREP BY: _
PRIORITY: _____  CHK OUT: _
    ASSIGNMENT   UNIT NUM   RNK   NAME              BADGE SX CU TECH   IN  OUT CT
 1 PSA UNMARK
 2 PSA SCOOTR
 3 PSA BIKE                 OFF   KING, DERRICK      0618  M Y        0600 1430
 4 PSA FOOT A               OFF   FAILS, SONIA       2771  F Y        0600 1430
 5 PSA FOOT B
 6 PSA FOOT C
 7 PSA FOOT D
 8 PSA FOOT E
 9 DETAILED                 OFF   HALL, CHRISTOPHER  3899  M          0700 2230
10 DETAILED                 MPO   WHITE, LAURA       0490  F Y 23     1500 0630
11 DETAILED                 OFF   SAUNDERS, VIRGINIA 4366  F Y        0630 1500
12 DETAILED                 OFF   LEONARD, JAMES     4069  M          0700 2330
13
14
15
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:02 From:GENERAL COUNSEL     2027273308     To:97418939     Page:15/22
JUN-17-2008 10:52 From:3D ADMIN     2026737630     To:97273308     Page:16/23

```
06-17-08              *** DAILY ROLL CALL ***                    10:49 AM
BUREAU: RN DIST: 3_____  SECTR: PSA__ SECTN: 306___ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 306                          TOUR OF DUTY: 0600 1430
WATCH CMDR:                         PREP BY: _
PRIORITY: _____            CHK OUT: _
   ASSIGNMENT  UNIT NUM  RNK  NAME              BADGE SX CU TECH  IN  OUT CT
 1 PSA LT
 2 PSA CAR 0
 3 PSA CAR 9
 4 PSA SGT                 OFF  BERRY, MICHAEL           M         1500 0030
 5 PSA CAR 1               OFF  GRIFFIN, KEVIN     0070   M         2300 0730
 6 PSA CAR 1               OFF  KENNEDY, RICHARD   1595   M Y       1500 2330
 7 PSA CAR 1               OFF  HOFFSTETTER, ERNST 3576   M         1500 2330
 8 PSA CAR 1               OFF  SERVIS JR., FRANK  4308   M         1500 2330
 9 PSA CAR 1               OFF  MCKNIGHT, JOHN     2641   M Y       1500 2330
10 PSA CAR 1               OFF  METCALF, PAUL      0728   M         2200 0630
11 PSA CAR 1               OFF  WILCOX, OLIVIA     0738   F         1400 2230
12 PSA CAR 1               OFF  PARRISH, RICHARD   1290   M         1500 2330
13 PSA CAR 1               OFF  GLEAN, MICHAEL     1095   M         2300 0730
14 PSA CAR 1               OFF  ALEMIAN, GREGORY   3090   M         1500 2330
15 PSA CAR 1               OFF  FETTING, BENJAMIN  3053   M         2300 1003 *
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
     help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:02 From:GENERAL COUNSEL        2027273308        To:97418939        Page:16/22
JUN-17-2008 10:53 From:3D ADMIN        2026737630        To:97273308        Page:17/23

```
06-17-08              *** DAILY ROLL CALL ***                    10:49 AM
BUREAU: RN DIST: 3____  SECTR: PSA__ SECTN: 306__ SQD: ___ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 306                       TOUR OF DUTY: 0600 1430
WATCH CMDR:                         PREP BY:  _
PRIORITY: _____           CHK OUT:  _
   ASSIGNMENT  UNIT NUM  RNK  NAME            BADGE SX CU TECH  IN  OUT CT
 1 PSA CAR 3             OFF  RIOS, PEDRO      4295  M Y       0400 1411 *
 2 PSA CAR 4             OFF  ROFF, JONATHAN   5253  M         2300 0931 *
 3 PSA CAR 4             OFF  PATTERSON, ANTON 5165  M         2300 0929 *
 4 PSA CAR 5
 5 PSA CAR 6
 6 PSA CAR 7
 7 PSA CAR 8
 8 PSA MARKED
 9 PSA TACT              OFF  ASHBY, EDUARDO   2756  M Y       0600 1430
10 PSA UNMARK
11 PSA SCOOTR
12 PSA BIKE
13 PSA FOOT A            OFF  CRANDALL, DARRELLE 2400 M        1000 1830
14 PSA FOOT B
15 PSA FOOT C            OFF  HAWKINS, CAMERON 5270  M         0700 1530
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help cncl exit info mastr hours prev next check mode print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08                *** DAILY ROLL CALL ***                    10:49 AM
BUREAU: RN DIST: 3____    SECTR: PSA__ SECTN: 306___ SQD:    ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 306                              TOUR OF DUTY: 0600 1430
WATCH CMDR:                            PREP BY:  _
PRIORITY: _____    CHK OUT:  _
   ASSIGNMENT   UNIT NUM   RNK   NAME                 BADGE SX CU TECH   IN  OUT CT
 1 PSA FOOT D              OFF   THOMPSON, DARRYL     3809  M    12     1200 2030
 2 PSA FOOT E
 3 DETAILED               OFF   SANTIAGO, DAVID      2441  M  Y        0700 1530
 4 DETAILED               OFF   STEWART JR., ROBERT  3756  M           2200 0630
 5 DETAILED               OFF   FORD, TIMOTHY        3043  M           2000 0830
 6 DETAILED               OFF   CLEMENS, CHRISTOPHER 4151  M           0730 2400
 7 DETAILED               SGT   WASHINGTON, LASWAUN  S0923 M           0400 1230
 8 DETAILED               OFF   SWOPE JR., PAUL      3517  M           0600 1430
 9 DETAILED               OFF   SINGLETON, LEAH      5336  F           1430 2300
10 DETAILED               OFF   OSBORNE, DOUGLAS     5368  M  Y        0500 2130
11 DETAILED               OFF   WINTERS, RHONDA      5205  F           2200 0630
12
13
14
15
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help cncl exit info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
JUN-17-2008 11:03 From:GENERAL COUNSEL        2027273308         To:97418939            Page:18/22
JUN-17-2008 10:53 From:3D ADMIN               2026737630         To:97273308           Page:19/23
```

```
06-17-08                    *** DAILY ROLL CALL ***                          10:49 AM
BUREAU: RN DIST: 3____    SECTR: PSA__ SECTN: 307___ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:   PSA 307                              TOUR OF DUTY: 0600 1430
WATCH CMDR:                                PREP BY: _
PRIORITY:                                  CHK OUT:
     ASSIGNMENT    UNIT NUM   RNK   NAME                    BADGE SX CU TECH   IN  OUT CT
 1 PSA LT
 2 PSA CAR 0                  SGT   JONES, DAREN            S0555 M            1400 2230
 3 PSA CAR 0                  SGT   PERREN, JOSEPH          S0695 M            0900 1900
 4 PSA CAR 9
 5 PSA SGT
 6 PSA CAR 1                  OFF   CARON, MICHELLE          3636 F            1400 2230 *
 7 PSA CAR 1                  OFF   HOLLAN, BRIAN            2391 M
 8 PSA CAR 1                  OFF   AMARO, ORLANDO          3024 M            1400 2230 ↓
 9 PSA CAR 1                  OFF   DORSEY, CHRISTOPHER      2106
10 PSA CAR 1                  OFF   HALL, RICHARD           2728 M Y          0600 1630
11 PSA CAR 1                  OFF   MAYOR, CRAIG             2033
12 PSA CAR 1                  OFF   SEAY JR., LARRY         3137 M            2200 0630
13 PSA CAR 1                  OFF   WHITE, EBONY            3628 F            2200 0630
14 PSA CAR 2                  OFF   LEO, SUZANNIE           2027 F Y          0700 1700
15 PSA CAR 3                  OFF   NEGRON, VICTOR          2820 M            1400 2230
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
       help  cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08                  *** DAILY ROLL CALL ***                    10:49 AM
BUREAU: RN DIST: 3____  SECTR: PSA__ SECTN: 307__ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 307                          TOUR OF DUTY: 0600 1430
WATCH CMDR:                          PREP BY: _
PRIORITY:                            CHK OUT:
   ASSIGNMENT   UNIT NUM   RNK   NAME              BADGE SX CU TECH  IN  OUT CT
 1 PSA CAR 3               OFF   DURHAM, DIANE     0596  F  Y        2300 0730
 2 PSA CAR 4
 3 PSA CAR 5               OFF   CARRUTH, MICHAEL   2043  M           1400 0230
 4 PSA CAR 6
 5 PSA CAR 7
 6 PSA CAR 8
 7 PSA MARKED
 8 PSA TACT                OFF   WILLIAMS, SEAN           M           0600 1430
 9 PSA UNMARK
10 PSA SCOOTR
11 PSA BIKE
12 PSA FOOT A
13 PSA FOOT B
14 PSA FOOT C
15 PSA FOOT D
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help cncl exit info mastr hours prev next check mode print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

```
06-17-08               *** DAILY ROLL CALL ***                    10:49 AM
BUREAU: RN DIST: 3____   SECTR: PSA__ SECTN: 308__ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 308                              TOUR OF DUTY: 0600 1430
WATCH CMDR:                              PREP BY: _
PRIORITY: _____   CHK OUT: _
    ASSIGNMENT   UNIT NUM   RNK   NAME                BADGE SX CU TECH   IN  OUT CT
 1 PSA LT
 2 PSA CAR 0               SGT   GOLPHIN, RUTH       S0518  F          0700 1800
 3 PSA CAR 9
 4 PSA SGT
 5 PSA CAR 1               OFF   PARKER, BARRY        4081  M          ____ ____
 6 PSA CAR 1               OFF   BARNHARDT, RALPH     5341  M Y        0700 1530
 7 PSA CAR 1               OFF   BHALLA, RAJ                M          1500 2330 *
 8 PSA CAR 1               OFF   SPENCE, ANDREW       2603  M
 9 PSA CAR 1               OFF   CARNES STINE, BRADLE       M          1400 2230
10 PSA CAR 1               OFF   WILKES, CANDICE      2276  F          0700 1530
11 PSA CAR 1               OFF   SARITA, RAFAEL       4349             1400 2230
12 PSA CAR 1               MPO   BARNES, TOMMY        2931  M    23    0700 2030
13 PSA CAR 1               OFF   ILARRAZA, ANGIE      3098  F
14 PSA CAR 1               OFF   TORRES, ORLANDO      2279  M          ____ ____
15 PSA CAR 1               OFF   HARRIS, MICHAEL      3743  M          2300 0730
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9--PF10--PF11--PF12---
     help cncl exit info  mastr hours prev next check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:03 From:GENERAL COUNSEL       2027273308          To:97418939          Page:21/22
JUN-17-2008 10:53 From:3D ADMIN              2026737630          To:97273308          Page:22/23

```
06-17-08                  *** DAILY ROLL CALL ***                       10:49 AM
BUREAU: RN DIST: 3____  SECTR: PSA__ SECTN: 308__ SQD: ___ ROLL DT: 11-15-0$ Tu
UNIT NAME:  PSA 308                            TOUR OF DUTY: 0600 1430
WATCH CMDR:                             PREP BY: _
PRIORITY: _____       CHK OUT:
   ASSIGNMENT     UNIT NUM  RNK  NAME                 BADGE SX CU TECH  IN   OUT CT
 1 PSA CAR 2                OFF  BUNNELL, BENSON      2456  M
 2 PSA CAR 2                OFF  GAINES, MARCUS       3275  M           0700 1530
 3 PSA CAR 2                OFF  ANDERSON, JAMES      3016  M  Y        2300 0945 *
 4 PSA CAR 3
 5 PSA CAR 4
 6 PSA CAR 5
 7 PSA CAR 6
 8 PSA CAR 7
 9 PSA CAR 8
10 PSA MARKED
11 PSA TACT
12 PSA UNMARK
13 PSA SCOOTR
14 PSA BIKE                 OFF  FLYNN, PATRICK       3724  M           1500 2330
15 PSA FOOT A
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12---
      help cncl  exit  info  mastr hours prev  next  check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

JUN-17-2008 11:04 From:GENERAL COUNSEL        2027273308        To:97418939        Page:22/22
JUN-17-2008 10:53 From:3D ADMIN               2026737630        To:97273308       Page:23/23

```
06-17-08              *** DAILY ROLL CALL ***                    10:49 AM
BUREAU: RN DIST: 3____   SECTR: PSA__ SECTN: 308___ SQD: ____ ROLL DT: 11-15-05 Tu
UNIT NAME:  PSA 308                            TOUR OF DUTY: 0600 1430
WATCH CMDR:                          PREP BY: _
PRIORITY: _____       CHK OUT: _
  ASSIGNMENT     UNIT NUM   RNK   NAME              BADGE  SX CU TECH  IN  OUT CT
 1 PSA FOOT B               OFF   MAY, TOWANNA       3843  F           0700 1530
 2 PSA FOOT C
 3 PSA FOOT D
 4 PSA FOOT E
 5 DETAILED
 6
 7
 8
 9
10
11
12
13
14
15
Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PF12--
      help cncl exit info mastr hours prev next check mode  print main
AVAILABLE ASSIGNMENTS FOR TODAYS ROLL CALL
```

# Exhibit D

| | Metropolitan Police Department Washington D. | | | |
|---|---|---|---|---|
| Subject:<br>**Nuisances, Incidentals, Defects And PD Form 61D (Violation Citation)** | Series<br>308 | Number<br>02 | Change | |
| | Effective Date<br>**June 20, 1980** | | | |
| | Revision Date<br>* | | | |

The purpose of this order is to establish policy and procedures for handling nuisances, incidentals, defects in public space and the issuance of PD Form 61D. This order consists of the following parts:

**PART I Responsibilities and Procedures for Members of the Department**

A.   Nuisances to be abated.
B.   Reporting Incidentals.
C.   Accidents involving Defects in Public Space.
D.   Damage to District of Columbia Government Property.
E.   Violation Citations.

**PART II Responsibilities and Procedures for Special Assignment Personnel**

A.   Station Clerks.
B.   Vending Coordinator.

**PART III Responsibilities and Procedures for Supervisory and Command Personnel**

A.   Commanding Officers.
B.   Identification and Recording Division.
C.   Court Liaison Division.

**PART I**

A.   <u>Nuisances to be Abated</u>.
Any member who discovers or whose attention is directed to a nuisance as described in Title 5, Section 504 of the D.C. Code (See Attachment "A") shall:

1.   Prepare a PD 251 (Event Report) to include:

a.   An accurate description of the nuisance.
b.   The exact location of the lot.
c.   The lot and square number.
d.   The name and address of the owner of the property.

NOTE:      Items b, c, and d are available .y calling the Maps and
           Title Section, Department of Finance and Revenue.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 2 of 12 |

2.    Notify the owner of record by one of the following methods:

    a.    If the owner can be served within the issuing
           district, the issuing officer shall prepare PD 166
           (Notice to Abate a Nuisance) in triplicate and serve
           the property owner with the original.

NOTE:      Title 5, Section 505 of the D.C. Code specifies that the
notice will be deemed to have been served if left at the usual
residence or place of business of the person to be notified, with a
person of suitable age and discretion then resident therein or
employed therein. Service on a corporation may be made on the
president, secretary, treasurer, general manager, or any principal
officer Of such corporation.

    b.    If the owner must he served by another district, the
           issuing officer shall prepare PD 166 in triplicate.
           The original and both copies shall be forwarded via
           department mail to the serving district that district
           shall serve the property owner with the original. The
           two copied copies shall be returned via department
           mail by the serving district to the issuing district.

    c.    If the owner cannot be served within the District of
           Columbia, the issuing officer shall:

      (1)    Notify the Department of Economic Development
               (DED). Office of Licenses and Permits for real
               property occupied by a dwelling of any kind, or

      (2)    Notify the Department of Environmental Services
               (DES) for vacant lots, commercial, or industrial
               property.

      (3)    Enter, on PD 251, the time, date, and the name of
               the person notified. The agency notified shall be
               responsible for notifying the property owner and
               assuring abatement of the nuisance.

3.    Turn in the copied copies of PD 166 to the station clerk.

4. Follow-up on his original report to assure that the nuisance has been abated.

    a. If PD 166 has been served and the nuisance has not been abated after 5 days from the date of service, the issuing officer shall issue PD 61D (Violation Citation) to the property owner citing "Maintenance of a Nuisance on Property". The collateral for the violation is $100.00.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 3 of 12 |

    b. If the person to be served lives in another district, both copies of PD 61D shall be forwarded via department mail to the serving district and that district shall be responsible for serving the property owner with the original. The second copy of PD 61D shall be copied and returned via department mail to the issuing district for filing in the Citation Violation File.

    c. If PD 61D has been served and, after 15 days from the date of service, the property owner has neither abated the nuisance nor requested a court date on the previously issued PD 61D, the issuing officer shall present the facts, i.e., the element file copies of PD 166 and PD 61D, and all other information required by General Order 702.1 (Arrest and Bench Warrants), to the Office of the Corporation Counsel (OCC) for issuance of a warrant.

5. Prepare PD 252 (Supplement Report) after the nuisance has been abated by the property owner. In the event the nuisance is not abated, prepare PD 252 listing all attempts to bring about compliance with the law, i.e., PD 61D issued, date, and time warrant applied for, date, and time, include an explanation if the warrant was denied.

B. Reporting incidentals.
Any member who discovers or whose attention is directed to an incidental shall:

1. Notify the proper authority as described in Attachment "B".

2. Make the appropriate entry on the district's Incidental Book to include:

    a. The type of incidental being reported.
    b. The exact location of the incidental.
    c. The date and time observed.

    d.    The name of the person observing the incidental if other than the reporting officer.

    e.    The date, time, name and agency of the person notified.

    f.    The reporting officer's name and badge number.

    g.    The complaint number, if a PD 251 or a PD 10 (Traffic Accident Report) is prepared.

C.    <u>Accidents Involving Defects in Public Space</u>.
Any member who discovers, or whose attention is directed to, an accident involving injuries or property damage due to defects in public space shall:

    1.    Take complete charge of the scene.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 4 of 12 |

    2.    Where possible, see that nothing is touched or moved.

    3.    Give immediate attention to any injured person making sure that medical care is obtained, if needed.

    4.    Obtain the names, addresses and statements from all witnesses and persons involved.

    5.    If a private vehicle is involved, record in his notebook a list of all pertinent articles which may be found in or near the car, such as alcoholic beverage or narcotic containers; the location and condition of Street lights; the exact condition of the street or sidewalk; and If the accident occurred at night, whether red lanterns had been placed on the obstruction or defect in public space, their number and location, whether or not they were Lighted, and if not lighted, the last time they were observed lighted, as well as any other facts that the member believes to be relevant.

    6.    Refrain from taking any measurements or photographs of the condition unless it is likely to change before the Investigative Section, OCC, arrives to take its own measurements.

NOTE:    This shall not be construed as relieving members from making measurements for the preparation of PD 10 or CC Form 3 (Vehicle Accident Report).

    7.    Mark with a yellow grease crayon all pertinent locations such as the position of cars, points of impact, skid marks, broken glass, and defects in the sidewalk,

8.  Refrain from making admissions or expressing an opinion indicating ideas concerning liability on the part of anyone.

9.  Notify the proper authority and make the appropriate entry n the Incidental Book as specified in Part 1B.

10. Notify the Investigative Section, OCC, as described in Attachment

11. Prepare PD 251 or PD 10, as applicable, to include:

   a.  The exact location of the obstruction or defect.

NOTE:    Members shall, when possible, have the injured person accompany them to the location where the accident took place so that the injured person may point out the exact location.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 5 of 12 |

   b.  The exact position of any vehicle involved, the location and length of any skid marks, and the location and amount of any glass.

   c.  The exact nature of any damage to property.

   d.  The condition of the street or sidewalk as to whether or not any defects were existent.

   e.  Weather conditions.

   f.  Whether anyone involved was charged with any violation of the traffic or other regulations.

   g.  The name of the hospital and doctor giving treatment, the nature of the injuries and whether or not the injured person was admitted, released or refused treatment.

   h.  The notification to the Investigative Section, OCC.

   i.  The notification to any other authority as specified in Part 1B.

NOTE:    Unless an officer actually witnesses the accident his report shall be written as having been reported

to him and not as he reports from actual knowledge.

D.   Damage to D.C. Government Property
     Any member who discovers or whose attention is directed to an
     accident involving damage to fire hydrants, water drinking
     fountains, Street lamps, traffic lights, magnetic traffic signal
     detectors, or fire alarm boxes shall:

     1.   Notify the investigative Section, OCC.
     2.   Prepare PD 251 or PD 10, as applicable, to include:

          a.   The extent of the damage.
          b.   A description of how the damage occurred.
          c.   The name of the person responsible for the damage.
          d.   The name of the person's insurance company.
          e.   Whether the person responsible for the damage is
               willing to pay to repair it.
          f.   The date, time, and name of the person notified at the
               investigative Section, OCC.

     3.   Make the appropriate entry on the incidental Book.
     4.   Make the appropriate notifications as required in Part 1B.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 6 of 12 |

E.   Violation Citations.

     1.   PD Form 61D (Violation Citation) may be issued for all
          violations coming under the jurisdiction of the Superior
          Court for which collateral may be accepted by the
          department. (See General Order 503.3, Attachment A,
          Distribution E, for a list of these violations).

     2.   PD Form 61D shall not be issued to persons having
          diplomatic immunity nor to juveniles.

     3.   Verbal warnings may be issued in lieu of PD Form 61D when,
          in the judgment of the member, a situation is at hand that
          can best be resolved through the issuance of a verbal
          warning.

     4.   Warning Citations.

          a.   Warning Citations shall only be issued for first
               offense violations of the Vending Regulations.

    b.   Warning Citations shall not be issued to persons who reside outside the Washington Metropolitan Area (defined as any point <u>outside</u> a 25 mile radius of the U.S. Capitol building) who are <u>vending without a license</u>. Persons who reside outside the Washington Metropolitan Area who are vending without a license shall be summarily arrested and transported to the district station house for processing.

    c.   Persons residing within the Washington Metropolitan Area (defined as any point extending to a 25 mile radius of the U.S. Capitol building) who are vending without a license may be issued a Warning Citation or a Violation Citation if, in the issuing officer's judgment, the vendor will immediately cease vending. If the officer believes that the vendor will continue vending without a license, the vendor shall be summarily arrested and transported to the district station house for processing.

5.    Preparation instructions for Violation Citations and Warning Citations are contained in the Field Report Writing Handbook.

6.    Distribution Instructions.

    a.   Violation Citations.
        1)  White — to violator.
        2)  Yellow - retain.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 7 of 12 |

    b.   Warning Citations.
        1)  White-retain.
        2)  Yellow - to violator.

    c.   The appropriate copy of the Violation Citation or the Warning Citation shall be turned over to a section sergeant before checking off duty.

7.    Obtaining Warrants.

    a.   The issuing officer shall be responsible for obtaining warrants for PD 61Ds that he has issued.

    b.   If, after 15 days from the date of service, the violator has neither requested a court date nor

forfeited collateral, the issuing officer shall present the
facts, i.e., the element file copy of PD 61D and all
other information required by General Order 702.1
(Arrest and Bench Warrants), to the Office of the
Corporation Counsel (OCC) for issuance of a warrant.

c.   If the Corporation Counsel approves the warrant, the
PD Form 61D shall remain at the OCC stapled to the
warrant application.

d.   If the Corporation Counsel disapproves the warrant the
PD Form 61T) shall be refilled in the element's
Violation Citation File. The 15 Day Suspense Book
shall he annotated to reflect "No Papers" along, with
the name of the prosecutor who "No Papered" the case.

8. Vending Violations.

a.   If the violation involves non-compliance with the
Vending Regulations, the officer shall request that
the vendor's name be checked through the WALES
Complainant Name File. inquiries shall be made as
follows:

1)   COMP/NAME/Last Name, First Name, Middle Name, or

2)   Last Name, First Name, Middle Name

b.   If the Complainant Name File indicates that the vendor
has not received a previous Warning Citation (PD 61D)
the officer shall acquaint the vendor with the city's
Vending Regulations and issue the vendor a Warning
Citation (PD 61D).

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 8 of 12 |

c.   If the Complainant Name File indicates that the vendor
has received a previous Warning Citation (PD 61D) for
a violation of any of the Vending Regulations, the
officer shall issue the vendor a Violation Citation
(PD 61D).

d.   Whenever a Violation Citation (PD 6 1D) is scheduled
for court, the issuing officer shall respond for
papering on the stipulated court date to the Office of
the Corporation Counsel, with the white copy and the
yellow copy of the Violation Citation (PD 61D) and the

white copy of the previously issued Warning Citation (PD 61D). The white copy of the previously issued Warning Citation (PD 61D) shall be obtained by calling the First District Vending Coordinator.

9. Trash Violations.

    a.    Enforcement of trash, garbage, and health regulations as contained in the Police Regulations and the D.C. Rules and Regulations shall first be accomplished by the issuance of a verbal warning to correct the existing condition which is in violation.

    b.    Failure to comply with the verbal warning within a reasonable amount of time (not to exceed 7 days) without a valid excuse shall lead to the issuance of a Violation Citation(PD 61D).

    c.    Commissioner's Order 73-73 established the Environmental Health School as an alternative to prosecution for violations of the anti-litter regulations as specified in Article 3, Sections 1, 2, 4, 8, 11, and 12 of the Police Regulations.

4.    Members Issuing PD 61D for any one of the above violations shall also Issue an ES Form 175 (Environmental Health School Information Card) to the violator.

PART V

A.    <u>Station Clerks</u> shall be responsible for:

1.    Maintaining the district's PD 166 5 day suspense file containing the first copied copy of PD 166.

2.    Forwarding the second copied copy of PD 166 to DED or as applicable.

3.    Preparing PD 107 (Outside Agency Report) for each item listed on the Incidental Book.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 9 of 12 |

    a.    PD 107 shall be prepared in duplicate.

    b.    A separate PD 107 shall be prepared for each outside agency that requires notification.

    c.    Incidentals involving injuries or property damage to

public space shall be clearly identified on PD 107 so that
the DOT Maintenance Engineer knows not to make repairs
until notified to do so by the investigative Section,
OCC.

 d. The original of PD 107 shall be forwarded to the
concerned outside agency and the copy shall be
retained at the element.

4. Forwarding the white copy of all Warning Citations (PD 61D)
to the ID Vending Coordinator's Office.

5. Filing the yellow copy of all Violation Citations (PD 61D) by
date of Issuance in the Violation Citation File

6. Logging the Violation Citation (PD 61D) on the element's 15
Day Suspense Book when it reaches an overdue date.

 a. The 15 Day Suspense Book shall contain the date of
issuance, the name of the violator, the name of the
issuing officer and a space for recording the final
disposition.

 b. A notification shall be placed in the officer's mail
box notifying him that the Violation Citation has
reached an overdue status.

7. Processing the PD LID, when the violator appears to forfeit
collateral, as follows:

 a. Obtain the white copy of the Violation Citation from
the violator.
 b. Collect the required collateral and issue PD 67
(Collateral Receipt) to the violator.
 c. Book the case on the Arrest Book.
 d. Prepare PD 255 (Arrest Report).
 e. Pull the yellow copy of PD 61D from the Citation
Violation
File, record the disposition on the reverse side,
staple the white and yellow copies together, and
refile same in the Citation Violation File.

8. Processing PD 61D, when the violator appears to post
collateral to appear in court, as follows:

 a. Performs items 7a-d, above.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 10 of 12 |

b.  Pull the yellow copy of the Violation Citation from the Violation Citation File and note the court date appearing on the reverse side.

c.  Advise the violator that he must appear in Superior Court at 0900 hours on the stipulated court date.

d.  Deliver the white and yellow copy of the Violation Citation to the issuing officer making sure that the issuing officer is aware that the case is schedule for court.

9.  Transferring Violation Citation cases as follows:

a.  If the violator posts collateral <u>to forfeit</u> at a location other than the issuing officer's element the case shall be booked in red using the issuing officer's element arrest number and transferred to the issuing officer's element so that the disposition may be recorded on the reverse side of the yellow copy in the Violation Citation File. The white copy shall be obtained from the violator and forwarded via department mail to the issuing officer's element so that it may be stapled to the yellow copy and ref lied in the Citation Violation File.

b.  If the violator posts collateral <u>to appear</u> at a location other than the issuing officer's element the case shall be booked in red using the issuing officer's element arrest number and transferred to the issuing officer's element. The station clerk at the issuing officer's element shall pull the yellow copy of the PD 61D and advise the calling element as to the issuing officer's next available court date. The white copy shall be obtained from the violator and forwarded via department mail to the issuing officer's element so that it may be delivered to the issuing officer along with the yellow copy. The issuing officer's station clerk shall be responsible for notifying the issuing off leer that the case is scheduled for court.

10.  Processing Environmental Health School cases as follows:

a.  Upon receiving notification from the Court Liaison Division that the violator plans to attend Environmental Health School, the station clerk shall withdraw the PD 61D from file, enter the projected attendance date, and re-file the PD 61D by the date of projected attendance.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 11 of 12 |

    b.   Upon receiving notification that the violator attended Environmental Health School, the station clerk shall withdraw PD 61D from file, enter the date of attendance, and refile PD 61D in the Citation Violation File by the date the violator attended the school.

11.   Maintaining and disposing of all records in accordance with the department's Records Disposition and Retention Schedule.

B.   <u>Vending Coordinator, First District</u> shall be responsible for:

1.   Filing all Warning Citations (PD 61D) in the Warning Citation File.

2.   Assuring that Warning Citations are available for court presentation, when needed.

3.   Entering all Warning Citations into the Complainant Name File.

4.   Coordinating the department's Vending Program to assure that the Vending Regulations are uniformly enforced throughout the department.

PART III.

A.   <u>Commanding Officers</u>.
Commanding officers shall direct all members of their command to be vigilant in noting violations of the above described regulations and to take immediate corrective action.

B.   <u>Identification and Records Division</u>.
The Director, Identification and Records Division, shall be responsible for:

1.   Forwarding a copy of PD 251 and/or PD 252 to the Department of Economic Development or the Department of Environmental Services, as applicable, in the case of all nuisances to be abated.

2.   Forwarding a copy of PD 251 or PD 10 to the investigative

Section, OCC, in the case of all injuries or accidents due to defects, obstructions, or depressions .in public space.

3. Forwarding a copy of PD 251 or PD 10 to the Investigative Section, OCC, in the case of all damage to D.C. government property as described in Part ID.

| Publication | Effective Date | Page Number |
|---|---|---|
| General Order 308.2 | June 20, 1980 | 12 of 12 |

C. <u>Court Liaison Division</u>.
The Court Liaison Officer shall be responsible for notifying the appropriate district whenever a notification is received from the Department of Environmental Services that a violator is scheduled to attend Environmental Health School, completed school, failed to attend, or is rescheduled.

*Burtell M. Jefferson*
Burtell M. Jefferson
Police

<u>Attachments</u>

**Title 5. Section 504 of the D.C. Code** states that "the existence on any lot or parcel of land, in the District of Columbia. of any uncovered well, cistern, dangerous hole, excavation, any dead. dangerous or diseased tree, or part thereof, or of any abandoned vehicles of any description or parts thereof, miscellaneous materials or debris of any kind, including substances that have accumulated as the result of repairs to yards or any building operations, insofar as they affect the public health, comfort. safety. and welfare is hereby declared a nuisance dangerous to life and limb, and any person. corporation, partnership, syndicate. or company, owning a lot or parcel of land in said District on which such a nuisance exists who shall neglect or refuse to abate the same to the satisfaction of the Commissioners (Mayor) of the District of Columbia. after 5 days notice from them (him) to do so. shall, on conviction in the Superior Court of the District of Columbia. be punished by a fine of not exceeding $50.00 for each and every day said person, corporation, partnership, or syndicate, fails to comply with such notice."

General Order 308.02
Attachment "A"

# Exhibit E

| SPECIAL ORDER | | SERIES 84 | NUMBER 34 | EFFECTIVE DATE June 29, 1984 |
|---|---|---|---|---|
| SUBJECT: Disorderly Conduct Arrests | | DISTRIBUTION A | | |
| | | ORIGINATING UNIT PDD | | |
| | | EXPIRATION DATE * | | |

When an arrest is made for disorderly conduct and the arrestee elects to forfeit collateral, no formal report of the circumstances of the arrest is made. In this instance, the only records of the arrest are the entry in the arrest book and the PD Form 255 (Arrest Report). With increasing frequency, however, officers are called upon to recall all of the essential facts in such cases, including the circumstances leading to the arrest and the identity of witnesses.

Therefore, effective immediately, the Department's official records of disorderly conduct arrests shall consist of the following:

    1.  PD Form 163 (Prosecution Report),
    2.  PD Form 255 (Arrest Report), and
    3.  PD Form 206 (Arrest Book) entry.

These forms shall be prepared and processed in accordance with existing directives.

*This special order shall remain in effect until its contents are incorporated into General Order 502.1 (Processing Prisoners).

Maurice T. Turner, Jr.
Chief of Police

MTT:VA:tmb

1933