## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LINDSAY HUTHNANCE,

      Plaintiff,

      v.

DISTRICT OF COLUMBIA *et al.*,

      Defendants.

Civil Action No. 06-1871 (HHK/JMF)

## MEMORANDUM OPINION

This case is before me for resolution of certain discovery motions.  Currently pending and ready for resolution are plaintiff's Motion to Compel Discovery [#43] and Defendant District of Columbia's Motion for Protective Order ("Defs. Mot.") [#47].  For the reasons stated herein, plaintiff's motion will be granted in part and denied in part and defendant's motion will be granted.

## INTRODUCTION

Plaintiff, Lindsay Huthnance, a resident of the District of Columbia, claims that on November 15th and 16th, 2005, she was illegally arrested and detained by Officer L. Acebal, Officer J. Antonio, and Officer J. Morales, all with the Metropolitan Police Department ("MPD").  Amended Complaint ("Amend. Compl.") at page 2.  According to plaintiff, the arrest occurred outside a 7-11 convenience store located at 3146 Mount Pleasant Street, N.W. in Washington, D.C. at approximately 12:00 a.m. Amend. Compl. ¶¶ 9, 16.  Plaintiff is suing the three MPD officers for 1) False Arrest, 2) Intentional

Infliction of Emotional Distress, 3) Assault and Battery, 4) Negligence Per Se, 5) Violation of First Amendment Rights, 6) Violation of Fourth Amendment Rights, 7) Violation of Fifth Amendment Rights, and 8) Violation of Eighth Amendment Rights. Amend. Compl. ¶¶ 47-85.  Plaintiff is suing the District of Columbia ("the District") for 1) False Arrest, 2) Violation of First Amendment Rights, 3) Violation of Fourth Amendment Rights, 4) Violation of Fifth Amendment Rights, and 5) Violation of Eighth Amendment Rights. Amend. Compl. ¶¶ 86-111.

Plaintiff's theory of the case is that MPD has a pattern and practice of abusing its power to arrest citizens for disorderly conduct and that MPD officers can ensure that their improper arrests escape any further scrutiny by offering the person arrested the option of posting collateral.  If the person forfeits the posted collateral, the matter is then completed without further adjudication. This would be in contrast to the person being arrested and being taken before a judge or being give a citation with a date to appear before a judge. See Plaintiff's Opposition to the District's June 11 Motion for a Protective Order ("Plains. Opp.") at 11-13.

## DISCUSSION

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense." Fed. R. Civ. P. 26(b)(1).  Although it need not be admissible in itself, the information sought must be, at a minimum, "reasonably calculated to lead to the discovery of admissible evidence." Id.  "'The scope of discovery is within the sound discretion of the trial court,' and a 'ruling by the trial court limiting or denying discovery will not be cause for reversal unless an abuse of discretion is shown.'" Sorrell v. District of Columbia, 252

F.R.D. 37, 38 (D.D.C. 2008) (quoting Chrysler Corp. v. Fedders, Corp., 643 F.2d 1229,

1240 (6th Cir. 1981)).

### Plaintiff's Motion to Compel Discovery

I.  Plaintiff's Requests for Production

A.  No. 2:  All Documents referring or relating to the arrest and detention of Plaintiff (and any encounter that preceded it) on November 15th and 16th, 2005, including, without limitation, any police reports, witness statements, log entries, video recordings, post and forfeit paperwork, and all radio communications / transmissions relating to Plaintiff's arrest, detention, and transportation and identifying all MPD personnel on the scene of Plaintiff's arrest, detention and transportation (and any encounter that preceded it) and returning to service thereafter.

Memorandum in Support of Plaintiff's Motion to Compel Discovery ("Plains. Mem.") at 15.

According to plaintiff, the only remaining issue with regard to this request is the

District's failure to produce the specified radio communications. Plaintiff's Reply in

Support of Her Motion to Compel Discovery ("Plains. Reply") at 2.  According to

plaintiff, the District's own radio logs indicate that there was in fact at least one radio

communication made and logged. Id. at 3.  Plaintiff also argues that it is "the practice of

MPD officers to conduct records checks by radio, and to call for transport by radio," and

therefore the District's failure to produce such records raises issues of spoliation. Id.

Attached to plaintiff's reply at Exhibit B is a copy of the radio log for the night in

question.  Although the District claims that "there are no radio communications related to

plaintiff's arrest," it provided plaintiff with the radio log and then conceded that the log

does reference a communication related to plaintiff's arrest. Defendant District of

Columbia's Opposition to Plaintiff's Motion to Compel ("Defs. Opp.") at 5.  The

question, therefore, as plaintiff rightly notes, is why the District is unable to produce the

actual communication.  To that end, plaintiff seeks the District's document retention

policies.  <u>See</u> Request for Production Number 18.[1]

Materials that detail the District's document retention policies are relevant in that

they may show whether the MPD radio communications were maintained according to

standard procedure.  <u>See</u> <u>Doe v. District of Columbia</u>, 230 F.R.D. 47, 56 (D.D.C. 2005)

("Rule 26(b)(1) may be construed to allow for discovery of document production policies

and procedures in allowing '[p]arties [to] obtain discovery regarding any matter . . .

including the existence, description, nature, custody, condition, and location of any . . .

documents.").  The District will therefore produce these documents.

> B.    <u>No. 3</u>:  All Documents identifying MPD officers working in PSA 301 on
> November 15th and 16th, 2005 (3-11 shift 11/15; midnight shift
> 11/15-16; day shift 11/16), and any other MPD officers on special
> assignments, details, initiatives, or shifts that involved deployment
> within or around PSA 301 on those dates, including but not limited
> to any log books entries, rosters, roll call attendance sheets, time
> and attendance records for the Third District Station and
> Substations, and any dispatcher records.

Plains. Mem. at 16.

Plaintiff contends that she has received an incomplete set of documents.

Specifically, plaintiff claims that while she received the computer-printed roll call sheets

for the 0600-1430 shift for November 15, 2005 and the handwritten log-book pages for

the 2200-0630 shift for November 16, 2005, she actually sought both types of records for

the entire time period in question.  <u>Plaintiff's Reply in Support of Her Motion to Compel</u>

<u>Discovery</u> ("Plains. Reply") at 4.

Initially, the District did not object to this request but only stated that it had no

responsive information but that it would produce what it had when it became available.

---

[1] <u>Plaintiff's First Set of Requests for Production of Documents to Defendant District of Columbia</u> is
attached  to Defs. Opp. [#50].

Plains. Mem. at 16.  Its claim, made for the first time in its objection to plaintiff's motion

to compel, that the request is overly broad, seems to have been waived. Peskoff v. Faber,

244 F.R.D. 54, 64 (D.D.C. 2007).  In any event, the District has already provided plaintiff

with a partial set of responsive documents.  It would not be unduly burdensome for it to

supplement its production by providing plaintiff with both the computer-printed roll call

sheets and the handwritten log-book pages for the three duty shifts identified by plaintiff

in this request for production.  This seems to present the best hope of capturing the names

of everyone on duty in the period of time when the plaintiff was in police custody and

seems to be the fastest and simplest way to do it.

> C.    No. 4:  For each of the Individual Defendants, all Documents constituting
> their personnel records including all Documents constituting,
> referring to, or relating to their performance evaluations, informal
> and formal complaints filed against them, and any disciplinary
> actions taken against them.

Plains. Mem. at 17.

The District argues that D.C. Code § 1-631.03[2] precludes its releasing the

requested information and that furthermore, "the personnel files of the named defendants

are not relevant to whether plaintiff was falsely arrested and/or whether she had a right to

be offered the option of citation release as opposed to post-and-forfeit." Defs. Opp. at 7-

8.  Plaintiff argues that the District's attempt to use D.C. Code § 1-631.03 as a privilege

against the discovery of these records is misplaced. Reply at 6-7.  According to plaintiff,

the District should instead have argued it was entitled to a protective order. Id. at 7.

The District has now moved for a protective order.  Pursuant to the analysis

provided below, the Court will grant both plaintiff's motion to compel and the District's

---

[2] All references to the D.C. Code or the United States Code are to the electronic versions that appear in
Westlaw or Lexis.

motion for a protective order as to this request.  I must first, however, define what I mean

by "personnel records."  While I have not seen the personnel records of these officers, as

a result of my experience as an Assistant United States Attorney and as a judge, I know

that they contain personal information, such as health and life insurance coverage, that

has nothing whatsoever to do with the way an individual performs his work

responsibilities.  Because it is possible that these police officers' personnel records have

similar information in them and because such information obviously has nothing to do

with this lawsuit, the only portion of the officers' personnel records that must be

disclosed are those dealing with the officers' hiring, training and performance of their

duties, including, as the request indicates, "their performance evaluations, informal and

formal complaints filed against them, and any disciplinary actions taken against them." [3]

        D.     <u>No. 5</u>:  A copy of the MPD General Orders.

Plains. Mem. at 19.

The District objected to the production of all of MPD General Orders on the

grounds that many of them are not relevant to plaintiff's claims. Defs. Opp. at 8.

However, plaintiff certainly has a right to all of the MPD General Orders which in any

way relate to her claims.  <u>See</u> <u>Austin v. District of Columbia</u>, No. 05-CV-2219, 2007 WL

1404444, at *6 (D.D.C. May 11, 2007) (discussing the relevancy of MPD General Orders

---

[3] Note that plaintiff argues that there is a presumption under Rule 26(c) that "discovery should be open." Plains. Opp. at 11 (<u>quoting</u> <u>Avirgan v. Hull</u>, 118 F.R.D. 252, 253 (D.D.C. 1987)).  I see no basis for such a presumption in that Rule.  <u>See</u> Richard L. Marcus, A MODEST PROPOSAL:  RECOGNIZING (AT LAST) THAT THE FEDERAL RULES DO NOT DECLARE THAT DISCOVERY IS PRESUMPTIVELY PUBLIC, 81 Chi.-Kent L. Rev 331 (2006).  To the contrary, in my view, determining whether there should be public access to materials disclosed in discovery requires a nuanced balancing of various factors, including "(1) the need for public access to the documents at issue; (2) the extent to which the public had access to the documents prior to the sealing order; (3) the fact that a party has objected to disclosure and the identity of that party; (4) the strength of the property and privacy interests involved; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced." <u>Anderson v. Ramsey</u>, No. 04-CV-56, 2005 WL 475141, at *2 (D.D.C. Mar. 1, 2005) (<u>citing</u> <u>United States v. Hubbard</u>, 650 F.2d 293, 324-25 (D.C. Cir. 1980)).

to plaintiff's ability to establish the applicable standard of care within the police force).

The issue is whether it is simply easier for the District to turn over all of the General

Orders and let plaintiff sift through them or whether the District will, on its own, identify

and provide those General Orders relevant to plaintiff's claims.

Since it appears as though the District has to date only turned over those General

Orders relating to its Citations Release Program, Defs. Opp. at 9, it is clear that its

production is lacking.  Rather than attempt to delineate for the District or have plaintiff

delineate for the District those relevant areas as to which there likely are corresponding

General Orders, the District will, as plaintiff originally requested, turn over all General

Orders.

   E.   No. 6:  All Documents constituting, referring to, or relating to any formal
                or informal MPD general orders, rules, regulations, policies,
                procedures, or practices in effect or under consideration at any
                time that concern post and forfeit or citation and release.

Plains. Mem. at 20.

Plaintiff argues that the District has yet to produce any of its policies or

procedures relating to its post-and-forfeit procedure except for a 1984 Special Order

regarding a Prosecution Report which is no longer used. Plains. Reply at 10.  The District

argues that the request is overly broad and that it fails to specify a relevant time frame.

The information plaintiff seeks is clearly relevant to her claim.  However,

plaintiff's request for all documents that were in either in effect or under consideration at

any time is overly broad.  Therefore, the District will produce only the requested

documents concerning post and forfeit or citation and release that were in effect at the

time of plaintiff's arrest.

   F.   No. 7:  All Documents constituting, referring to, or relating to any formal

7

> or informal MPD general orders, rule, regulations, policies, procedures, or practices in effect or under consideration defining or otherwise giving meaning to the offense of disorderly conduct, including any guidance provided on the appropriate use of the designation "Disorderly Conduct - Loud & Boisterous" and under what circumstances such behavior warrants detention or arrest.

Plains Mem. at 21.

According to plaintiff, although the District initially provided her with no responsive documents, it has since provided two documents, the 2003 CCRB Report and an October 25 D.C. Criminal Code Handout. Plains. Reply at 11.  Based on references within these two documents, plaintiff then surmises that there must be more responsive documents. Id.  For example, plaintiff requests 2003 training materials based on a reference in the 2003 CCRB Report to a lecture script, a handout, special orders attached to the handout, and a video. Id.

Generally, the court is loathe to credit a party's mere hunch about the existence of additional documents responsive to a particular discovery request:

> Courts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed. Speculation that there is more will not suffice;  if the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end. Instead of chasing the theoretical possibility that additional documents exist, courts have insisted that the documents that have been produced permit a reasonable deduction that other documents may exist or did exist and have been destroyed.

Hubbard v. Potter, 247 F.R.D. 27, 29 (D.D.C. 2008) (citing Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 313 (S.D.N.Y. 2003)).

In this case, however, plaintiff's allegations are amply supported in that one of the documents the District produced references other documents and materials, which the plaintiff now seeks.  See Plains. Reply at 11-12.  The District will therefore produce those

materials identified by plaintiff in her reply, as well as any other responsive documents.

Id.

G.    No. 8:  All Documents constituting, referring to, or relating to any formal
or informal MPD general orders, rules, regulations, policies,
procedures, or practices in effect or under consideration
concerning the training or supervision of MPD officers regarding
the post and forfeit procedure; including any training materials,
and any Documents identifying the times, dates, and content of any
such training.

Plains. Mem. at 25.

According to plaintiff, the District has failed to respond at all to this request,

which seeks information relating to the training of MPD officers with regard to the post

and forfeit procedure. Plains. Reply at 13.  In support of her contention that there exist

additional materials that the District has failed to produce, plaintiff again points to the

2003 Report, which references a lecture script, handout with special orders, and a training

video that were used by MPD for training purposes related to disorderly conduct. Id.

Again, because plaintiff's claim that there must be additional responsive materials is

supported by the District's very own document, the District will provide the above-

referenced materials and any other documents that are responsive to plaintiff's request.

H.    No. 9:  All Documents constituting, referring to, or relating to any records
reflecting training actually received by the Individual Defendants
and all of their supervisors relating to: post and forfeit procedure,
citation release procedure, or the bases for arrest for the offense of
disorderly conduct, and the times, dates, and content of any such
training.

Plains. Mem. at 26.

In response to this request, the District filed a motion for a protective order.  See

Defs. Mot.  Plaintiff, on the other hand, contends that neither the District nor the

individual MPD officers have a privacy interest in the materials and that they should

therefore be produced. Plains. Reply at 13-14.  The District contends that it cannot produce such training records in that these records are unavailable in civil discovery absent the officers' consent or a court order. Defs. Mot. at 4.

I find that the training the officers and their supervisors received as to the topics denominated in this request are potentially relevant either to show that none of them received any such training or, if they did, that their training was inadequate or their behavior as to plaintiff was inconsistent with the training they received.  Any of these alternatives would bear on plaintiff's ability to establish that what happened to her was the result of a policy or practice, a failure to train officers, or the District's deliberate indifference to the officers' acting inconsistently with the training they received.

Furthermore, I do not see how the authorities cited can be construed by the District to create a privilege from discovery in a civil suit.  Indeed, the District makes no such argument, but only expresses its concern that they might be construed to prohibit the disclosure of training records without a court order.  Since I am ordering the District to produce the records, the District's concern is moot.

Finally, I appreciate the District's concern that the records might invade the officers' privacy unnecessarily if they show, for example, that an officer initially flunked a test but then passed it or was permitted to become an officer despite flunking. Therefore, any record showing that an officer or supervisor flunked a test may be considered confidential and subject to the protective order I am issuing.

    I.      <u>No. 10</u>: All reports, studies, evaluations, recommendations or data compilations created by any individual, group, or entity concerning the post and forfeit or citation release procedures.

Plains. Mem. at 26.

The District makes several objections to this request.  First, the District argues that it is not limited to a specific time frame and that it asks for information created by virtually anyone in relation to this topic. Defs. Opp. at 12.  In response, plaintiff indicated that she would narrow her request to include only those documents created in or evaluating the years 2003 through 2006. Plains. Reply at 14.  Plaintiff also argues that her request for all information related to this topic is, of course, limited to the information within defendants' custody or control. Id.

As to this first aspect of the request, the District's objections are overruled and it will produce the relevant documents.  Clearly, plaintiff is not asking the District to produce materials other than those within its custody or control.

The District next claims that it has produced all responsive materials. Defs. Opp. at 12.  Again, but for the fact that plaintiff appears to have identified, through one of the District's own documents, a likelihood that there exist additional responsive materials, the Court would let the matter rest.  However, in light of plaintiff's noting that the 2003 Report called, for example, for the additional study of disorderly conduct arrests, the District must search its records once again for any additional responsive documents.  Of course, the District is already bound to do this because of its ongoing obligation to supplement its discovery responses. Fed. R. Civ. P. 26(e).

> J.    No. 11: All Documents constituting, referring to, or relating to the annual public reports submitted by the Mayor to the D.C. Council as required by D.C. Code § 5-335.01(h).

Plains. Mem. at 28.

According to the District, it does not have these documents.  Simply stated, the District cannot produce what it does not have.

K.    <u>No. 12</u>: All Documents related to arrests made between November 15, 2003 and November 16, 2007 involving either post and forfeit release, citation release, or arrest for Disorderly Conduct.

<u>No. 13</u>: All Documents referring or relating to arrests made by or involving the participation of any of the Individual Defendants in the following circumstances: (a) where post-and forfeit release was either offered or utilized; (b) where citation release was either offered or utilized; or (c) where arrestees were charged with Disorderly Conduct.

Plains. Mem. at 28-29.

Plaintiff has since narrowed this request to the period between November 2004 and November, 2005.  <u>See</u> Plains. Opp. at 18.

The District however argues that the request is overly broad and burdensome. Defs. Opp. at 13.  In support of its contention, it offers the declaration of Deloris Hunter, Manager of MPD's Record Branch Unit, which maintains the Criminal Justice Information System (CJIS) database as well as the hard copies of the arrest reports, including the PD 163s (arrest/prosecution reports), the PD 251s (incident reports), and the PD 252s (supplemental reports). <u>Id.</u>

According to Hunter, it would take the District 3,773.33 days to retrieve 22,640 files, at a cost of $181,104.00. <u>Id.</u>  The reason, according to Hunter, why the cost would be so high and the search would be so cumbersome is because the information plaintiff seeks is not maintained by the District in an electronic format. <u>Id.</u> at 1.  Rather, states Hunter, hard copies of the requested files would have to be searched and copied manually. <u>Id.</u> at 2.  Finally, the District also argues that the requested documents should be shielded from disclosure by the protective order it currently seeks. Defs. Opp. at 14.

Plaintiff, on the other hand, contends that "[t]he documents requested are essential to Plaintiff to establish the District's municipal liability under § 1983 by showing that the

District 'policy or custom'—not merely the isolated acts of certain officers—injured her."
Plains. Mem. at 29.  Plaintiff adds that "[t]he documents requested in RFPs 12 and 13
will be provided to Plaintiff's expert for statistical or expert analysis to determine
whether the type of misuse of post-and-forfeit and the disorderly conduct offense at issue
in this case rise to the level of 'policy or custom.'" Id.

This is not the first time this court has confronted the issue of the ability of the
Metropolitan Police Department to use its electronic capability to search databases for
relevant information.  In McDowell v. District of Columbia, 233 F.R.D. 192 (D.D.C.
2006), plaintiff claimed that her civil rights were violated by District of Columbia police
when she was subjected to illegal strip and body cavity searches, in violation of 18
U.S.C. § 1983. Id. at 200-01.  In support of her claim, McDowell sought copies of the
MPD's PD 163s. Id. at 201.  In response to McDowell's request, the District indicated,
through the testimony of Deloris Hunter, that the discovery sought was overly
burdensome given the fact that the information was only available in hard copy and that
the Record Branch Unit was severely understaffed. Id. at 199-200.  As the opinion notes,
I believed it necessary to hold an evidentiary hearing to probe as effectively as I could the
capability of the records unit to produce both the electronically stored information and
the hard copies of police records that met plaintiff's request.  I shall do so again here to
aid the parties in devising a systematic approach to searching MPD databases and other
databases to which it has access for the information requested.

> L.      No. 14: Except in the instant case, all Documents related to any
> civil, criminal or other actions (including citizen complaints)
> against any of the Individual Defendants.

Plains. Mem. at 30.

The District argues that plaintiff's request is overly broad in that it is not limited to a specific time period, to relevant work-related complaints, or to complaints made in this jurisdiction. Defs. Opp. at 14-15.  The District also again notes that they have moved this court for a protective order as to this information. <u>Id.</u>

First, plaintiff argues that the District has not in fact moved for a protective order as to this specific information. Plains. Reply at 16.  However, plaintiff agrees to limit the request to "all documents related to any civil, criminal or other actions (including citizen complaints) against any of the Individual Defendants related to these defendants' performance as Police Officers." <u>Id.</u> (emphasis in original).  Plaintiff does not however, agree to limit her request to only those actions initiated in this jurisdiction. <u>Id.</u>  Nor does plaintiff agree that certain disciplinary actions taken against the individual officers are not relevant, arguing that "it is relevant to Plaintiff's case for *Monell* liability if the MPD is harsh in disciplining no shows in court but fails to follow through with discipline for complaints about disorderly conduct or release procedures." <u>Id.</u> at 17 (emphasis in original).  Finally, plaintiff argues that because the individual defendants are District employees, the District is bound to consult them before responding to plaintiff's requests, thus ensuring that any incidents the District may not be aware of are nevertheless included in its responses. <u>Id.</u>

One way in which plaintiff may pursue her § 1983 claim that there exists a policy or custom which was the driving force behind the officers' actions on the night of her arrest is by showing that that District failed "to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." <u>Baker v. District of</u>

Columbia, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  In other words, "the absence of proper

supervision, training and discipline . . . is enough to demonstrate deliberate indifference

and may form the basis of a [constitutional] claim." Thomas v. District of Columbia, 887

F. Supp. 1, 4 (D.D.C. 1995) (citations omitted).

     The way in which the District disciplines its officers is clearly relevant to

plaintiff's claim.  While at first blush, the District's failure, for example, to discipline no-

shows in court may appear irrelevant to its resolution of complaints regarding disorderly

conduct, it may be relevant if plaintiff's theory of the case is that there exists an

overarching policy or custom of deliberate indifference when it comes to the discipline

and training of the District's police officers.  It is not for the court to limit, at this stage in

the proceedings, plaintiff's access to the discovery of materials which may themselves be

relevant or lead to the discovery of relevant materials.  Furthermore, while the District

balks at having to produce documents relating to claims against their officers that it is not

aware of, this very lack of knowledge, if shown, would support a claim of deliberate

indifference and therefore is discoverable.

     Finally, in preparing its response to this request, the District can not limit its

production to solely those documents of which it has direct knowledge.  In other words,

the District "'can not complain merely because in order to answer the plaintiff's

interrogatories it must interrogate its personnel or compile information within its

control.'" Alexander v. FBI, 192 F.R.D. 50, 53 (D.D.C. 2000) (quoting Harvey v. Eimco

Corp., 28 F.R.D. 381, 381 (E.D. Pa. 1961)).  Under Rule 33 of the Federal Rules of Civil

Procedure, "[w]hile a party may not have a duty to search out new information, it is

undisputed that a party has a duty to provide all information available to him." Trane Co.

v. Klutznick, 87 F.R.D. 473, 476 (W.D. Wis. 1980) (citing Hickman v. Taylor, 329 U.S.

495 (1947) and 8 CHARLES ALAN WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE

§ 2172 (1970)).  I therefore expect the Attorney General's Office to make specific inquiry

of the individual defendants before it responds to this request for production as to all

disciplinary matters and all civil or criminal complaints, irrespective of jurisdiction.

II.    Interrogatories

      A.    No. 1:  List the current home address of each of the Individual Defendants.

Plains. Mem. at 30.

      I am reluctant to compel police officers to reveal their home addresses.

Accordingly, the badge number and present duty assignment of any officer identified in

this response or any other discovery response will suffice.  I expect the Attorney General

to make these officers available to plaintiff for depositions so that plaintiff will not have

to serve them with any additional process now that they have answered the complaint.

      B.    No. 2:  Identify the immediate supervisors of each of the Individual
             Defendants on November 15th and 16th, 2005. Plaintiff's
             Instructions requested that the District identify individuals by
             providing: his or her name, present or last known address, present
             or last known employer, and, for MPD employees, badge number,
             position or job title at time of employment with the District of
             Columbia (whether as a consultant, part-time employee, full-time
             employee, or other type of employment) and dates of employment
             with the District of Columbia.

Plains. Mem. at 31.

      Plaintiff argues that although the District indicated that Sgt. Michael Smith was

the supervisor at Substation 301, where Officer Antonia was stationed, the District failed

to provide the names of Officer Acebal's and Officer Morales's supervisors. Plains.

Reply at 18.  According to plaintiff, only Officer Antonia was actually stationed at Substation 301. Id.

The District will clarify whether Officer Antonia was the only one stationed at Substation 301.  If the other two officers were stationed elsewhere, the District will then provide the names of their immediate supervisors on the dates in question.  If, on the other hand, Officers Acebal and Morales were also stationed at Substation 301, the District will so indicate.

Once again, as to the supervising police officers' home addresses, I expect the Attorney General to make the officer available for depositions if necessary.  If the supervising officer is retired and plaintiff wishes to speak to him or her, I expect the Attorney General to provide plaintiff, on a confidential basis, with the officer's phone number.  If the Attorney General does not wish to do that, and has an address for the retired officer, I expect the Attorney General to contact the retired officer and ask him or her whether plaintiff may have access to his or her phone number with the understanding that it will be kept confidential by plaintiff's counsel.

  C. <u>No. 3</u>: Identify each MPD officer present in the 3100 Block of Mount
       Pleasant NW, Washington, DC, whether inside the 7-Eleven,
       on the street, or elsewhere, from any time between 11:00 p.m. on
       November 15, 2005 through 3:00 a.m. on November 16, 2005, and
       describe what, if any, contact each had with Plaintiff.

Plains. Mem. at 32.

Although the District objected to this interrogatory as overly broad, burdensome, and irrelevant, it indicated that Officer James Paige was the officer who drove plaintiff to the police station. Defs. Opp. at 16.  Plaintiff, however, quarrels with the District's assertion that it is "unaware" of any other officer who may have been on the scene,

arguing that the District has an affirmative obligation to identify the other officers who may have been in the vicinity.

In responding to interrogatories, all parties are bound to "provide true, explicit, responsive, complete and candid answers." Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash., 103 F.R.D. 52, 61 (D.D.C. 1984).  Furthermore, all answers must be signed and their accuracy attested to by the person making them.  See Fed. R. Civ. P. 33(b)(2); Shepherd v. Am. Broad. Cos., 62 F.3d 1469, 1482 (D.C. Cir. 1995).

In the case at bar, plaintiff has provided no reason for the court to doubt the completeness of the District's answer.  Furthermore, the court disagrees with plaintiff's interpretation of the District's use of the word "unaware."  That the District used the word "unaware" does not necessarily mean that the District failed to conduct a proper search for the identities of officers who may have been in the area around the time of the incident.  In an abundance of caution however, the District will supplement its answer by clarifying for plaintiff the efforts it made to identify other officers who may have been in the vicinity on the night in question.

     D.     No. 4:  Identify the station crew on duty at the time of Plaintiff's transportation to the MPD station or substation to which she was brought on November 16, 2005.

Plains. Mem. at 33.

After again objecting to the interrogatory on the basis that it was overly broad, burdensome, and irrelevant, the District indicated that Toniere Lee, David Anderson, Latrice Washington-Burney, and Everette Copland were the station crew during the midnight shift on November, 15, 2005, and that Suzette Little and Carlos Carter were the station crew during the day tour on November 16, 2005. Defs. Opp. at 16.

Plaintiff maintains her contention that the District's answer is incomplete in that the District does not explicitly indicate whether the individuals named constitute the entire crew on duty that evening. Plains. Reply at 34.  Plaintiff also claims that the individuals listed were on duty for the midnight shift (2200 to 0630) and that the District did not provide the names of the officers on duty for the shift beginning at 0630 on November 16, 2005. Id.  The District will therefore supplement its answers to identify all individuals on duty for both the 2200 to 0630 shift on November 15-16, 2005 and the shift beginning at 0630 on November 16, 2005.

  E. <u>No. 5</u>: Identify each individual who interacted with Plaintiff or authored any of the police paperwork relating to her arrest or release between November 15th and 16th, 2005.

Plains. Mem. at 34.

The District objected to this interrogatory on the grounds that it was overly broad, burdensome, and irrelevant. Defs. Opp. at 17.  Nevertheless, the District identified two officers, Officer Acebal and Station Clerk Lee, as having processed paperwork associated with plaintiff's arrest. Id.  While the District identified two individuals who were involved in processing plaintiff's paperwork, it did not identify those individuals who "interacted" with plaintiff.  I will interpret that word as the on-line Oxford English Dictionary does: "to act reciprocally, to act on each other." http://dictionary.oed.com/cgi/entry/50119743?.  The District will therefore supplement its answer to this interrogatory by identifying any officer who spoke to plaintiff during the period of time identified in the request.

  F. <u>No. 8</u>: For each of the years 2004-2007, provide the total number of MPD arrests for Disorderly Conduct: (a) in which the post and forfeit was involved; or (b) in which citation release was involved; or (c) in which neither procedure was utilized.

Plains. Mem. at 36.

Initially, plaintiff argued that it was unclear whether the statistics provided by the District were for all MPD arrests or just disorderly conduct. Plains. Mem. at 36.  As the District has now clarified that the figures were solely for disorderly conduct, there is nothing further to resolve as to this interrogatory.

> G.    No. 9:  For each of the arrests identified in response to Interrogatory 8, provide the following information:
> a. Name of Arrestee
> b. Date and Time of Arrest
> c. Arrest Number
> d. Location of Arrest
> e. Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)
> f. Whether Arrestee was permitted to post and forfeit, was given citation release, or neither.

> No. 10: For every arrest between November 15, 2003 and November 16, 2007 involving post and forfeit or citation release for all offenses other than Disorderly Conduct, provide the following information:
> a. Name of Arrestee
> b. Date and Time of Arrest
> c. Arrest Number
> d. Location of Arrest
> e. Name of Arresting Officer (AO) and Assisting Arresting Officer (AAO)
> f. Whether Arrestee was permitted to post and forfeit, was given citation release, or was held.

Plains. Mem. at 37.

The District objects to these two interrogatories on the grounds that they are overly broad and also the subject of their motion for a protective order. Defs. Opp. at 19, Defendant District of Columbia's Motion for Protective Order ("Defs. Mot.") at 6.

I intend to consider whether to grant the District's motion at the evidentiary hearing I will be holding, described above.

> H.    No. 11: Including the arrests identified in Interrogatories 7 and 9, provide

> the total number of MPD arrests that involved the post and forfeit
> procedure between November 15, 2003 and November 16, 2007.

Plains. Mem. at 39.

The District has provided plaintiff with an answer to the interrogatory and there is therefore nothing left to compel.  Plaintiff's objection to the District's use of the phrase "upon information and belief" in its answer is simply unwarranted.

> I.      No. 12: For each Complaint that has been made to or filed with the MPD,
> the Office of Police Complaints, or the Office of Professional
> Responsibility (or any other municipal entity) about or against any
> of the Individual Defendants, provide the following information:
> a. Name and Address of Complainant
> b. Date of Complaint
> c. Nature of the Complaint
> d. Date of Incident about which Complaint was made
> e. Name and Badge Number of each MPD Officer, including any
> of the Individual Defendants, named in Complaint
> f. Disposition of Complaint, including any disciplinary action
> taken

Plains. Mem. at 39.

Plaintiff argues that the District improperly asserted additional objections to this interrogatory in its opposition.  In response, the District filed a motion for a protective order.  Pursuant to the analysis provided below, the Court will grant both plaintiff's motion to compel and the District's motion for a protective order as to this interrogatory.

> J.      No. 13: Identify whether the date and time an individual who is arrested is
> released is recorded, and, if so, identify where and for how long
> this information is stored.

Plains. Mem. at 40.

Plaintiff argues that because the District has admitted that the log sheet, which would have contained the requested information, is no longer in existence, she is entitled to information regarding the District's document retention policies. Plains. Mem. at 20.

In light of the District's admission that certain materials are no longer in existence, the District's document retention policies are clearly relevant to plaintiff's case.  See Doe, 230 F.R.D. at 56.  They therefore will be produced.

### Defendant District of Columbia's Motion for Protective Order

In this motion, the District of Columbia argues that "[w]hile many of Plaintiff's discovery requests lack relevance, they require the disclosure of confidential and/or privileged information, and/or seek overly broad, burdensome, and costly discovery." Defs. Mot. at 3-4.  Nevertheless, the District does not seek to preclude the disclosure of certain information but instead seeks a protective order that specifies the means by which such disclosure is made. Id. at 5.  Plaintiff counters that in order to support her claim that the District is liable under 42 U.S.C. § 1983 for violating her constitutional rights, she needs evidence regarding the training received by the individually named officers and their supervisors. Plains. Opp. 1-2.  According to plaintiff, her goal in seeking this discovery is to show that "the MPD's officers are either (1) affirmatively trained to manipulate the malleable 'disorderly conduct' statute to reach legally permissible conduct that is, nonetheless, bothersome to officers; or (2) not adequately trained to recognize the difference between valid and invalid arrests for 'disorderly conduct' in the face of considerable evidence that such training is needed." Id. at 2.

In the District of Columbia, the disclosure of certain personnel information by the District is regulated by two statutes and a provision in the D.C. Personnel Manual to which the District refers. Defs. Mot. at 5 (citing D.C. Code §§  1-631.03; 2-534(a); D.C. Personnel Reg. § 31A District Personnel Manual 3116j.).

As plaintiff points out, none of the sources can be read to create a privilege from discovery, let alone a privilege from court-ordered discovery pursuant to an order that protects the information at least until discovery has ended.  Nevertheless, given that some of the information sought is not publicly available and appears to be protected from disclosure under the District of Columbia Freedom of Information Act insofar as it constitutes an unwarranted invasion of the privacy of the police officers, I believe that, pursuant to Rule 26 of the Federal Rules of Civil Procedure,[4] the District has made a sufficient showing of good cause in support of its motion for a protective order.  "[G]ood cause exists under Rule 26(c) when justice requires the protection of a party or a person from any annoyance, embarrassment, oppression, or undue burden or expense." Fonville v. District of Columbia, 230 F.R.D. 38, 40 (D.D.C. 2005), but "[t]he party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will be suffered without one." Id.  "Accordingly, courts apply a balancing test, weighing the movant's proffer of harm against the adversary's 'significant interest' in preparing for trial." Doe, 230 F.R.D. at 50.

In Fonville, the tension between these "two competing interests" arose as a result of plaintiff's motion to compel the production of information the District claimed was protected by D.C. Code § 1-631.03. Fonville, 230 F.R.D. at 44.  Plaintiff, a demoted police officer sued the District of Columbia, claiming that the MPD violated his due process rights. Id. at 39-40.  In order to prove his claim, plaintiff sought information about other MPD Commanders who had been demoted, including such information as

---

[4] Under Rule 26, "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending." Fed. R. Civ. P. 26(c).

their names, the dates of their demotions, the lengths of their tenure as Commanders, the reasons for their demotions and their current position within the MPD or the ranks they last held. Id. at 44.  The District, on the other hand, argued that the information was not relevant and that it was protected from disclosure by the statute.

Ultimately, I concluded in Fonville that "the best way to resolve this problem is for plaintiff and defendant to submit a stipulated protective order to the court and, upon its approval, produce the responsive documents according to the terms of the protective order." Id. at 44-45.  I noted further that "[i]n this way, plaintiff can receive all of the information relevant to [her] claims, but any invasion into other individuals' privacy will be minimized." Id.  Accord O'Malley v. Village of Oak Brook, No. 07-CV-1679, 2008 WL 345607, at *2 (N.D. Ill. 2008) (treating police officer's personnel records as confidential so as not to implicate privacy or safety interests); Megargee v. Wittman, No. 06-CV-684, 2007 WL 2462097, at *2 (E.D. Cal. Aug. 27, 2007) (concluding that information in officer's personnel files and training records was relevant to plaintiff's claim of excessive force but requiring a stipulated protective order to address officers' legitimate privacy concerns); Chapin v. Sell, No. 04-CV-208, 2005 WL 2076591, at *7 (E.D. Wis. Aug. 25, 2005) (granting plaintiff's motion to compel defendant police officer's personnel records as relevant to plaintiff's negligent supervision claim but ordering that their production be made pursuant to a protective order).

As in Fonville, plaintiff in the case at bar has a legitimate need for this information.  Although there may be limitations on the ways in which plaintiff may introduce such evidence at trial, this court has held that the information contained within an officer's personnel file, as I have restricted it above, is relevant to a § 1983 *Monell*

claim.  See Carter v. District of Columbia, 795 F.2d 116, 129-32 (D.C. Cir. 1986) (holding that the trial judge committed reversible error when he allowed plaintiff's counsel to read into the record excerpts from the personnel files of individual officers in order to prove plaintiff's § 1983 claim but indicating also that it would have been permissible for the trial judge to allow plaintiff's counsel to present brief summaries of the allegations in the personnel files coupled with inquiries of the witnesses on the stand); Steele v. D.C. Hous. Auth., No. 02-CV-1420, 2006 WL335770, at *10-12 (D.D.C. Feb. 14, 2006) (citing individual officer's official training transcript in analyzing whether the District of Columbia Housing Authority adequately trained its officers in the use of force and citing individual officer's employment record in analyzing whether defendant failed to properly hire security personnel).

On the other hand, the disclosure of information about disciplinary actions taken against these officers or other deficiencies in their performance as disclosed by their performance evaluations, would invade their privacy and their reasonable expectation that their superiors' view of  how they performed their duties would remain within the MPD's official records and not be publicly disclosed.  Ultimately, although plaintiff opposes the District's motion for a protective order, such an order best satisfies the parties' competing interests.

## CONCLUSION

Two Orders, one a Confidentiality Order modeled on the Order in the Fonville case, accompany this Memorandum Opinion.


_____/S/_____
JOHN M. FACCIOLA

UNITED STATES MAGISTRATE JUDGE

Dated:  December 15, 2008