UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LINDSAY HUTHNANCE,

    Plaintiff,

v.

DISTRICT OF COLUMBIA *et al.*,

    Defendants.

Civil Action No. 06-1871 (HHK/JMF)

## MEMORANDUM OPINION

Currently pending and ready for resolution is Plaintiff's Motion to Compel Production ("Plains. Mot.") [#148]. For the reasons stated below, a ruling on plaintiff's motion will be deferred until after the court has had an opportunity for an *in camera* review of the document at issue.

## BACKGROUND

In brief, plaintiff claims that she was falsely arrested and detained by three officers of the Metropolitan Police Department ("MPD"). Amended Complaint ("Am. Compl.") at 2. She is suing the three officers for 1) false arrest, 2) intentional infliction of emotional distress, 3) assault and battery, 4) negligence per se, 5) violation of her first amendment rights, 6) violation of her fourth amendment rights, 7) violation of her fifth amendment rights, and 8) violation of her eighth amendment rights. Am. Compl. ¶¶ 47-85. Plaintiff is also suing the District of Columbia ("the District") for 1) false arrest, 2) violation of her first amendment rights, 3) violation of her

fourth amendment rights, 4) violation of her fifth amendment rights, and 5) violation of her eighth amendment rights. Am. Compl. ¶¶ 86-111.

**DISCUSSION**

I.  Legal Standard

In the current motion, plaintiff moves, pursuant to Rule 37 of the Federal Rules of Civil Procedure, to compel the District to produce a 2009 report detailing the District's internal investigation of disorderly conduct arrests. Rule 37 states the following:

> A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
> (i)   a deponent fails to answer a question asked under Rule 30 or 31;
> (ii)  a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or
> (iv)  a party fails to respond that inspection will be permitted–or fails to permit inspection–as requested under Rule 34.

Fed. R. Civ. P. 37(a)(3)(B).

II.  Analysis

A.  The 2009 Report Is Responsive To a Discovery Request and the Court's Order

In plaintiff's first set of requests for production of documents, plaintiff requested, *inter alia*, the following:

> All Documents constituting, referring to, or relating to any formal or informal MPD general orders, rules, regulations, policies, procedures, or practices in effect or under consideration defining or otherwise giving meaning to the offense of disorderly conduct, including any guidance provided on the appropriate use of the designation "Disorderly Conduct - Loud & Boisterous" and under

2

what circumstances such behavior warrants detention or arrest.

Plains. Mot., Exhibit 2 at 5.

In response, defendants stated the following:

> Objection as overly broad. See Attachment 12, Report and Recommendations of the Citizen Complaint Review Board [CCRB], November 13, 2007, Report, titled Disorderly Conduct Arrests Made by Metropolitan Police Department Officers; and Attachment 13, October 2005 D.C. Criminal Code Hand Out.

Id.

Concluding that the District's response was insufficient, plaintiff moved to compel, specifically noting that since the District's initial response to this request, it had provided plaintiff with two additional documents, one of them being a 2003 CCRB report. In the court's opinion resolving plaintiff's motion, the court emphasized the District's continuing obligation to search for and produce responsive materials:

> The District next claims that it has produced all responsive materials. Defs. Opp. at 12. Again, but for the fact that plaintiff appears to have identified, through one of the District's own documents, a likelihood that there exist additional responsive materials, the Court would let the matter rest. However, in light of plaintiff's noting that the 2003 Report called, for example, for the additional study of disorderly conduct arrests, the District must search its records once again for any additional responsive documents. Of course, the District is already bound to do this because of its ongoing obligation to supplement its discovery responses. Fed. R. Civ. P. 26(e).

Memorandum Opinion (12/15/08) [#67] at 11.[1]

---

[1] The District argues that in the court's December 15, 2008 Memorandum Opinion, "Judge Facciola directed the District to search its records for documents relating to **post and forfeiture,** not disorderly conduct." Defendant District of Columbia's Opposition to Plaintiff's Motion to Compel Production ("Defs. Opp.") [#151] at 1 (emphasis in original). As noted in that portion of the opinion reproduced above, this is clearly an inaccurate statement.

3

Discovery in this case closed on December 2, 2009.  See Minute Order (10/22/09).  All depositions were to be completed no later than January 29, 2010.  See Order (12/20/09) [#101] at 2.  On the last day for the taking of depositions, plaintiff took the deposition of MPD Inspector Keith Williams, defendant's 30(b)(6) witness.  In that deposition, plaintiff learned for the first time that in 2009, Williams had been directed by MPD Chief Cathy Lanier to prepare a report in response to a report previously issued by the Citizens Complaint Review Board in 2003. Plains. Mot., Exhibit 1 at 13, 41.  Since defendants conceded that the 2003 CCRB report was responsive, the court is hard pressed to understand (without seeing it) how it is that the 2009 report, which addresses the same issues, is non-responsive.

According to Williams, when asked what he concluded in the 2009 report, he testified as follows:

> There were several findings in it.  One is that through some sampling, we found that our legal sufficiency for disorderly conduct arrests had improved from the CCRB report.  That, also, disorderly conduct arrests had precipitously decreased each year from near 2000, which was the year of the statistics that the CCRB report referenced, from 2000 to 2008.  Along the same lines, D.C.'s population had risen and our arrests for offenses other than disorderly conduct also rose.  So we are seeing a decrease in disorderly conduct arrests, and an increase in other type of arrests.  Also, there was, I don't want to say significant, but there was a greatly improved training curriculum by the Metropolitan Police Academy discussing the importance of articulating and ensuring that you have probable cause in disorderly conduct situations.  Specifically, they referenced the 2003 CCRB report in a later curriculum, about how important it was to act in accordance with how the police department would expect.

Plains. Mot., Exhibit 1 at 14-15.

At a minimum, therefore, the 2009 report seems to be discoverable because it relates to

plaintiff's claim that she was falsely arrested for disorderly conduct, albeit even though she was arrested well before the 2009 report was created. The next issue is whether, as the District claims, the document is possibly protected by the deliberative process privilege.

> B. The 2009 Report May Be Protected By the Deliberative Process Privilege

According to the District, the 2009 report is "protected from disclosure based on the deliberative process privilege, as the report is in draft form and has not been formally adopted by the Metropolitan Police Department." Plains. Mot., Exhibit 13 at 1. Plaintiff counters that the report is not privileged because it is not deliberative. Plains. Mot. at 9.

In a recent opinion, I discussed in great detail the parameters of the privilege:

> The deliberative process privilege provides protection for those documents which reflect "advisory opinions, recommendations, and deliberations that are part of a process by which Government decisions and policies are formulated." Dep't of the Interior v. Klamath Water Users Protective Assoc., 532 U.S. 1, 8-9 (2001) (citing N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)). The purpose of the privilege is three-fold: first, it "protects candid discussions within an agency"; second, "it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy;" and, third, "it protects the integrity of an agency's decision," preventing the public from judging officials based on information they may have considered prior to issuing their final decision. Alexander v. F.B.I., 192 F.R.D. 50, 55 (D.D.C. 2000) (citing Judicial Watch v. Clinton, 880 F.Supp. 1, 12 (D.D.C. 1995), aff'd, 76 F.3d 1232 (D.C. Cir. 1996)). The privilege promotes the quality of agency decision-making by protecting decision-makers' ability to communicate freely and privately without concern that deliberations will become the subject of discovery. Klamath Water Users Protective Assoc., 532 U.S. at 8-9.
>
> For the privilege to apply, communications must be pre-decisional. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. at 151. Not every document related to a given decision will be protected by the

privilege simply because it is pre-decisional. N.L.R.B. v. Jackson Hosp. Corp., 257 F.R.D. 302, 308 (D.D.C. 2009). Pre-decisional documents must also be deliberative to qualify for the privilege. Id. "A document is 'predecisional' if it plays a role in the agency's decision-making process, and information within that document is deliberative if it involves the weighing of arguments for and against various outcomes." Wilson v. Dep't of Justice, 87-CV-2415, 1991 WL 111457, at *4 (D.D.C. June 13, 1991) (citing Access Reports v. Dep't of Justice, 926 F.2d 1192 (D.C. Cir. 1991). A document is deliberative if it reflects the give-and-take of the consultative process. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980). In other words, "the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975). Thus, purely factual material is not protected, "'unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.'" N.L.R.B. v. Jackson Hosp. Corp., 257 F.R.D. at 308 (quoting In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir.1997)).[ ] Therefore, documents will not be protected in their entirety, unless redacting the portions of the documents that reveal deliberations is impossible. Id. at 309. Documents that "'memorialize or evidence the policy an agency ultimately adopts on an issue'" or "documents that the agency used in dealing with the public" are not privileged. Id.

To properly withhold a document on the grounds that it is privileged, the party seeking privilege must "describe the nature of the documents, communications, or tangible things not produced or disclosed and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Thus, for the [party's] description to be adequate, "the Court and [plaintiffs] must be able to determine, from the privilege log, that the documents withheld are (1) pre-decisional; (2) deliberative; (3) do not 'memorialize or evidence' the agency's final policy; (4) were not shared with the public; and (5) cannot be produced in a redacted form." N.L.R.B. v. Jackson Hosp. Corp., 257 F.R.D. at 309. Further, an assertion of privilege requires: "(1) a formal claim of privilege by the 'head of the department' having control over the requested information; (2) assertion of the privilege based on actual personal consideration by that official; and (3) a detailed specification of the information for

> which the privilege is claimed, with an explanation why it properly falls within the scope of the privilege." Landry v. F.D.I.C., 204 F.3d 1125, 1135 (D.C. Cir. 2000) (citations omitted).
>
> Thus, "to properly assert the privilege, defendant must 'establish a formal, considered, detailed claim of privilege.'" Doe v. Dist. of Columbia, 230 F.R.D. 47, 51(D.D.C. 2005) (quoting Tri-State Hosp. Supply Corp. v. U.S., 226 F.R.D. 118, 134 (D.D.C. 2005) (citations omitted)). A common practice of agencies seeking to invoke the deliberative process privilege is to establish the privilege through a combination of privilege logs, which identify specific documents, and declarations from agency officials explaining "what the documents are and how they relate to the [agency] decision." N.L.R.B. v. Jackson Hosp. Corp., 257 F.R.D. at 308 (citing Landry, 204 F.3d at 1134; Colo. Wild Horse and Burro Coal., Inc. v. Kempthorne,, 571 F. Supp. 2d 71, 73 n. 2). To avoid waiving the privilege, the defendant agency must "make a detailed argument, including affidavits from the proper governmental authorities, in support of the privilege" because, "without a specific articulation of the rationale supporting the privilege," a court cannot rule on whether the privilege applies. Doe, 230 F.R.D. at 51-52.[ ]

Ascom Hasler Mailing Sys., Inc. v. U.S. Postal Serv., — F.R.D. —, 2010 WL 143709, at *2-3 (D.D.C. 2010).

In support of its contention that the deliberative process privilege shields the disclosure of the 2009 report, the District offers the affidavit of MPD Assistant Chief Alfred Durham. In his affidavit, dated May 13, 2010, Durham stated the following:

> In early 2009, the Chief of Police, Cathy L. Lanier, requested that a report be prepared related to disorderly conduct arrests as discussed in the 2003 Civil Complaint Review Board Report. In 2009, Inspector Keith Williams prepared a draft report, titled "Disorderly Conduct Arrest Review," for this office's review and consideration. The report essentially does the following: (1) undertakes an evaluation of a sampling of arrests made by MPD officers for disorderly conduct and other types of arrests[;] (2) reviews a comparison of statistics referred to in the OPC report to statistics from the year 2008; (3) provides a suggested reason for the changed statistics; and (4) analyzes the training provided by

7

> MPD compared to past training for disorderly conduct arrests. The purpose of the report is to allow the Department to determine what measures should be taken or continued with respect to training MPD officers on arrests for disorderly conduct. Both I and Chief Lanier have reviewed the report, but no decision has been made about what changes need to be made or will be made to the department's training based on the information contained in the report.

Defs. Opp., Exhibit 1 at 2.

Williams, on the other hand, suggested in his deposition that the 2009 report is both deliberative and non-deliberative. First, he testified that problematic arrests were identified in the report and that a recommendation was made: "And [the examples of the problematic arrests] were put through, like I stated earlier, in the body of the report as here are two that we've identified, and this is, you know, our response and what we recommend." Plains. Mot., Exhibit 1 at 7. Later, however, Williams testified as follows: "So I don't know that I made specific recommendations other than pointing out the two problematic arrests. So I don't know [the 2009 report] required responses. It was—I don't want to say it was a rebuttal report, but it was more to provide the chief with information about how we are conducting ourselves now compared to what was alleged in 2003." Id. at 8.

Utilizing the standard articulated by the court in N.L.R.B. v. Jackson Hosp. Corp., 257 F.R.D. at 309, and without seeing the report, the court can conclude only that parts of the report may be protected by the deliberative process privilege whereas other parts may not. It is equally clear that the court cannot make a final, accurate determination without seeing the report.

The court will, therefore, order the District to submit the 2009 report to chambers for an *in camera* review. Depending on the court's determination as to the portions (if any) of the

report that are shielded by the deliberative process, the court will then confront the issues of whether the privilege should nevertheless yield as argued by the plaintiff. At this point, the court need not consider whether the District waived the privilege or whether the plaintiff made a sufficient showing of need to overcome the privilege.

    C.    <u>Plaintiff's Request For Fees and Costs</u>

Plaintiff also seeks to recover her fees and costs in bringing her current motion to compel. The court will defer its ruling on this aspect of plaintiff's motion until it has had an opportunity to review the documents *in camera*. At that time, the court will issue a supplemental order regarding plaintiff's entitlement to any reimbursement.

An Order accompanies this Memorandum Opinion.

 

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE