UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LINDSAY HUTHNANCE, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : C.A. No. 1:06-CV-001871 (RCL) (JMF) |
| | : |
| DISTRICT OF COLUMBIA, *et. al.* | : |
| | : |
| Defendants | : |
| | : |

THE DISTRICT OF COLUMBIA'S
OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO STRIKE
SUPPLEMENTAL DISCOVERY RESPONSES AND FOR THE IMPOSITION OF SANCTIONS

On March 6, 2011, in response to supplemental discovery provided by the District of Columbia, plaintiff filed an Emergency Motion to Strike Supplemental Discovery Responses and for the Imposition of Sanctions [Docket # 208].  Virtually all of the motion contained arguments that the District should not be permitted to introduce the newly produced information.  *Id.*  The Court granted that request.  Because the Court has already ruled on the exclusion of the evidence, and because the trial is over, the District does not address that request or the Court's order granting it.

Instead, this filing addresses only the last paragraph of the motion, which asserts that the Court should impose individual monetary sanctions on undersigned counsels.  That request should be denied.  *First*, the sole authority relied on in plaintiff's brief (Fed. R. Civ. 37(c)) does not authorize individual sanctions against attorneys, and the only paragraph that addresses individual sanctions at all does not identify the authority on which plaintiff relies to justify that request.  *Second*, the requested sanctions are unjustified because there was no bad faith here.  Instead, undersigned counsels made these supplemental disclosures based on information they

learned in the course of final preparations for trial. The information they learned revealed the inaccuracy of prior disclosures, made before either counsel became involved in the case. Even where inconvenient, attorneys are supposed to correct information they believe to be inaccurate. There is no basis for individual monetary sanctions. This motion sets forth in the Factual Background section the reasons for the supplementation and explains in the Argument section why the supplementation does not provide a basis for sanctions.

## FACTUAL BACKGROUND

Discovery in this case closed on December 2, 2009. During the discovery period of this case, former counsel of record answered the written discovery (which amounted to the exchange of thousands of documents), defended numerous depositions, and made and responded to all plaintiff's filings, including several motions to compel. Several months later, undersigned counsel Dwayne Jefferson entered his appearance in the case, *see* Docket Entry No. 133, although he did not become lead counsel or assume anything other than discrete tasks in the case until November of 2010, when former lead counsel, who had handled the discovery, was required to go on leave due to a medical emergency. Attorney Michael Lanzdorf did not begin his employment with the Office of the Attorney General until August of 2010, and entered his appearance in this case on October 29, 2010. *See* Docket Entry No. 183.

As part of its Order granting the Defendants' Emergency Motion to Continue Trial, the Court re-opened discovery "for the limited purpose of permitting plaintiff to re-depose Inspector [Keith] Williams and conduct limited discovery about the 2009 Report." *See* Docket Entry No. 195 at 8. Plaintiff was also allowed the opportunity to depose Philip Eure "if the District of Columbia [was] unable to set up a meeting between plaintiff and Philip Eure before November 20, 2010…." *Id.* Mr. Eure was deposed on November 23, 2010. *See* Docket Entry No. 204.

On December 20, 2010, plaintiff served the District with her 2nd Set of Interrogatories as well as her 5th Set of Production Requests in accordance with the Court's November 28, 2010 Order.[1] *See* Plaintiff's 2nd Set of Interrogatories (attached as Exhibit "B"); *see also* Plaintiff' 5th Set of Production Requests (attached as Exhibit "C"). However, while the interrogatories served by plaintiff were purportedly eleven (11) in number, they actually exceeded twenty-five (25) because of their discrete subparts, seeking information about a variety of topics. Nonetheless, undersigned counsel searched for responsive information and data and timely produced the District's responses on January 19, 2011. Standing alone, this document production involved more than 1,500 pages. *See* District's Responses to Plaintiff's 2nd Set of Interrogatories (attached as Exhibit "D"); *see also* District Responses to Plaintiff's 5th Set of Production Requests (attached as Exhibit "E"). Undersigned counsel later supplemented these responses by producing even more documents on or about February 16, 2011. *See* District 02/16/2011 Supplemental Response Letter (attached as Exhibit "F").

### MARCH 5, 2011
### COUNSEL RECEIVES TWO-SIDED COLLATERAL BOND RECEIPT

One of the documents produced in discovery was a copy of a Collateral Bond Receipt-PD 67 (hereafter referred to as "PD-67"). As plaintiff notes, this document was listed as an exhibit by both parties in the initial exhibit list. As listed, the exhibit was one-sided. Neither undersigned counsel became aware that the document had two sides until March 5, 2011, and only became aware of this fact because, as part of final trial preparations, and in order to discern whether the PD 67 form had been revised since plaintiff's arrest, undersigned counsels requested that MPD provide a current copy of the PD-67. As a result, undersigned counsels received, by e-

---

[1] Former counsel of record withdrew his appearance from the case on December 22, 2010. Docket Entry No. 205.

mail, a blank two-sided PD-67 with a revision date identical to the form used in conjunction with plaintiff's arrest (*i.e.*, both forms recited a 07/25/2004 revision date). Recognizing the obvious relevance of the document, but unsure whether the document had previously been produced in discovery, undersigned counsel Dwayne Jefferson immediately produced a copy of the document to plaintiff along with the other supplemental discovery responses discussed in the next section.

**COUNSEL SUBMITS SUPPLEMENTAL DISCLOSURES
TO CORRECT INACCURACIES IN THE RECORD REVEALED
AS A RESULT OF TRIAL PREPARATION AND
THE DEPOSITION OF INSPECTOR KEITH WILLIAMS**

On March 5, 2011, undersigned counsel amended and supplemented the following discovery that had been produced to plaintiff in 2008, by former counsel of record.

a. 3rd Supplemental Responses to Plaintiff's 1st Set of Interrogatories
b. 1st Supplemental Responses to Plaintiff's 2nd Set of Interrogatories
c. 1st Supplemental Responses to Plaintiff's 1st Set of Requests for Admission — with attached:
General Order 503.3: List of Bonds and Collateral Applicable to the District of Columbia Superior Court (attached as Exhibit "Z")

*See* Supplemental Responses (attached as Exhibit "I"). The circumstances that led to this supplementation were as follows.

On April 18, 2008, and in response to plaintiff's Interrogatory No. 8, the District identified the MPD number of total disorderly conduct arrests in which post and forfeit was involved, in which citation release was involved, and in which neither procedure was utilized for each of the years 2004–2007. [Docket # 43-3 at pp. 5–6]. Similarly, on June 20, 2008, the District responded to plaintiff's Interrogatory No. 3 by stating that Officers Acebal and Antonio were present in the 7-11 on the date in question. Finally, on October 14, 2008, in objecting to plaintiff's Admission Request Nos. 32, 33 and 80, the District explained that "citation release is within the discretion of the arresting officer." Trial counsels had not been involved in the

preparation of any of these responses and did not become involved in the case until after they were produced. As explained in the remainder of this section, in the course of preparing for trial, District trial counsels learned information that convinced them that these responses were inaccurate.

## *ARREST DATA*

With respect to arrest data, years after providing arrest data responsive to plaintiff's Interrogatory No. 8, the District produced a draft report prepared by Inspector Keith Williams that contained similar arrest data. On December 20, 2010, plaintiff submitted a supplemental interrogatory asking the District to explain the basis for the discrepancies. After meeting with Inspector Williams, because the District did not have a clear answer, on January 19, 2011, the District responded that it would supplement the response when it had sufficient information to do so. *See* Exhibit "D" at Interrogatory Response No. 8. From that point, District counsels continued working to attempt to resolve the discrepancy and explain Inspector Williams' numbers. Ultimately, during his February 22, 2011 deposition, Inspector Williams was unable to recall or recreate his own methodology but, following the deposition, District counsels and Inspector Williams identified data of which District counsels had previously been unaware. The newly discovered data was different from both the District's original interrogatory response and the Williams draft report, but more closely resembled the data in the Williams report. Because it had previously been released to the public by MPD, and because District counsels could not confirm the methodology that was the basis for the interrogatory response or the Williams draft, the District amended its response to include this published data. *See* Exhibit "I."

### ADMISSION CONCERNING THE DISCRETION TO GRANT CITATION RELEASE

Trial counsels first became concerned about the accuracy of the prior admission response concerning officer discretion to grant citation release after learning that Officers Acebal and Antonio (who were not parties to the original admission) did not believe that they had the discretion to grant citation release. Again, however, District counsels recognized that they needed to be sure that the District's prior admission was incorrect before amending it. They therefore spoke with a number of different individuals [in the week prior to trial, including, but not limited to, an official from Pre-Trial Services (a federal agency) and desk clerk Toniere Lee. This investigation, made difficult by the inability to locate any written guidance on the question, confirmed that Officers Acebal and Antonio were correct and that the District's prior admission had been wrong. After an instruction by their supervisor to review the requests for admission to confirm there were no inaccuracies in light of the inaccurate interrogatory responses already discussed, and appreciating the lateness of the response, but believing that they had an obligation to supplement and that the District should not be found liable (and Officers Acebal and Antonio should not be contradicted at trial) based on an inaccurate response, District counsels disclosed the amended response.

### RESPONSE ADDRESSING WHETHER OFFICERS ACEBAL AND ANTONIO WERE IN THE 7-11 PRIOR TO THE ARREST

In the course of preparing Officers Acebal and Antonio for their testimony beginning approximately two weeks before trial, District counsels learned from those officers that they were not in the 7–11 at any point prior to the arrest. This was consistent with their prior deposition testimony on the issue. *See* Acebal Deposition 138:17–22; 149:20–150:13; 157:8–18; 161:2–18 (attached as Exhibit "G"); Antonio Deposition 73:13–76:8 (attached as Exhibit "H"). Appreciating the inconsistency between this statement and the prior interrogatory response, and

the significance of amending a prior discovery response on an important issue, District counsels wanted to be sure that the prior response was wrong before amending it and took care to ensure that Officers Acebal and Antonio truly were not in the 7-11 before amending the response. These subsequent interactions, together with the drafting of the response by trial counsels and supervisory review of the draft responses, took place in the week before trial, and the District produced the response on March 5, 2011.

### RESPONSE CONCERNING INFORMATION PROVIDED AT THE SCENE REGARDING POST-AND-FORFEIT

The District's amendment to its prior response to Interrogatory No. 6 as well as plaintiff's discussion of that response in her motion have proven to be the product of a mutual misunderstanding that resulted from the District's misunderstanding as to which words the words, "on the scene," were intended to modify. The interrogatory and original answer appeared as follows:

> **INTERROGATORY NO. 6:** Identify anyone involved in informing Plaintiff or Adrien Marsoni that Plaintiff's release could be secured by payment of a $25.00 bond on the scene.
>
> **RESPONSE:** Objection as overly broad and unduly burdensome, and as vague. Notwithstanding the objections and further answering, upon information and belief, Officer James Antonio informed both the plaintiff and Adrien Marsoni at the scene that the plaintiff could be bailed out at the Third District Stationhouse.

In reviewing the responses just prior to trial, counsels for the District became concerned that the interrogatory and response could be read to suggest that Officer Antonio informed Mr. Marsoni that he could secure plaintiff's release by paying $25 "on the scene," and thus that Officer Antonio was effectively soliciting a bribe. The District thus amended the response to assert that "no officer informed both the plaintiff and Adrien Marsoni that Plaintiff's release could be secured by payment of a $25.00 bond on the scene." *See* Exhibit "I." As the District's

—7—

placement of the words "on the scene" reflects, the intent was to clarify that there was no suggestion that the payment could itself be made on the scene, not that the asserted conversation did not take place on the scene.  At the hearing on plaintiff's motion, however, plaintiff clarified that this was not the intent of the interrogatory and that plaintiff only sought to ascertain who on the scene informed Mr. Marsoni about post and forfeit.  The District did not deny that this conversation had taken place on the scene, and its amended response was not intended to assert otherwise.  Accordingly, for all relevant purposes, the District did not change its answer on this issue at all.

**PLAINTIFF FILES A MOTION SEEKING SANCTIONS,
AND THE COURT EXCLUDES THE EVIDENCE**

In response to the supplemental responses, on March 6, 2011, at 8:41 p.m., plaintiff filed a twelve (12) page motion to strike the District's supplemental discovery responses and to exclude Inspector Williams as a trial witness.  *See* Docket No. 208.  Most of the motion addressed why the evidence should be excluded, but in the final two paragraphs of the motion, plaintiff sought sanctions against individual counsel.  *Id.* at 10.

Because of the timing of plaintiff's motion, on March 7, 2011, having no opportunity to fully assess and/or address plaintiff's arguments, or to file an opposition brief in accordance with LCvR 7(b), undersigned counsel Dwayne Jefferson argued against the relief sought in plaintiff's motion.  The Court granted plaintiff's motion in part by precluding the District from using its amended responses, and by excluding Inspector Williams as a trial witness.  Lastly, the Court took plaintiff's sanction request against undersigned counsels under advisement.  *See* Docket No. 209.

## ARGUMENT

I. **PLAINTIFF CITES NO AUTHORITY JUSTIFYING HER REQUEST FOR INDIVIDUAL MONETARY SANCTIONS AGAINST TRIAL COUNSEL**

LCvR 7(a) requires that "[e]ach motion shall include or be accompanied by a statement of the specific points and authority that support the motion…." Plaintiff does not identify the authority on which plaintiff purports to rely in connection with her request for individual sanctions. Moreover, the lone authority cited by plaintiff in support of the motion – Fed. R. Civ. P. 37(c) – does not authorize the imposition of sanctions on attorneys. *See Insurance Benefit Administrators v. Martin*, 871 F.2d 1354, 1360 (7th Cir.1989) (IBA) (holding Rule 37(c) does not permit the imposition of sanctions on attorneys); *see also Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1014 (2d Cir.1988) (holding that by its express terms, Rule 37(c) only applies to a party, and refused to extend Rule 37(c) sanctions to counsel); Fed.R.Civ.P. 37(c) advisory committee's note to 1970 amendment (Rule 37(c) requires "that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial.") Because plaintiff cites no authority in support of the request for individual sanctions against attorneys, and because the lone authority cited elsewhere in plaintiff's motion does not authorize such sanctions, plaintiff has provided no basis for this request, and the request for sanctions should be denied.

II. **THE REQUEST FOR SANCTIONS SHOULD BE DENIED BECAUSE THERE WAS NO BAD FAITH ON THE PART OF TRIAL COUNSEL**

Apart from plaintiff's failure to cite any authority justifying the request, plaintiff's request for individual monetary sanctions should be denied because there was no bad faith on the part of trial counsels in making these disclosures. Any potential source of authority for sanctioning individual attorneys requires such a showing of bad faith. For example, 28 U.S.C. §

1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." However, "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *See Grider v. Keystone Health Plan Cent.*, Inc., 580 F.3d 119, 142 (*quoting LaSalle Nat'l Bank v. First Connecticut Holding Group, L.L.C. XXIII*, 287 F.3d 279, 289 (3d Cir. 2002). Any attempt to obtain her requested sanction against undersigned counsels under the inherent powers of the court would require a showing of willful disobedience committed by undersigned counsels. *See United States v. Johnson*, 327 F.3d 554 (7th Cir. 2003) (disallowing a punitive sanction under the inherent powers of the court where there was no bad faith).

      Plaintiff has not produced any evidence to support the necessary showing. To the contrary, the foregoing demonstrates that there was no bad faith here. Instead, trial counsels were in the unenviable position of learning information just prior to trial that contradicted earlier responses that they were uninvolved in preparing. Counsels believed both that they had a duty to the Court and plaintiff to supplement incorrect answers and a duty to their clients to ensure that they were not found liable based on information that counsels believed to be incorrect. There is accordingly no justification for the repeated assertion that these supplemental disclosures were "an attempt to ambush" plaintiff, a construction used at least five times in plaintiff's filing and one that wrongly suggests that the timing of the request was part of a strategic plot to occupy plaintiff's time. As discussed in the background section, the belated nature of the disclosure resulted from belated awareness on the part of District counsels of the information, together with

the obligation to conduct a due diligent investigation before submitting any discovery response to ensure its accuracy. Plaintiff did not have the benefit of this explanation at the time plaintiff filed her motion, but even if it was not clear then, it should be quite clear now that there is no basis for plaintiff's request for individual sanctions.

While not the primary basis for the District's motion given the importance of certain of the changes, plaintiff exaggerates in certain respects the "game-changing" nature of certain of the additions. For example, as explained above, the amendment related to what was said at the scene concerning post and forfeit proved to be the result of a misunderstanding. The District was not changing its response in the way that plaintiff asserts in her motion, and indeed, given plaintiff counsel's statements concerning the intent of the interrogatory, was not changing its response at all. Plaintiff also emphasizes the significance of the interrogatory response addressing whether Officers Antonio and Acebal were in the 7-11, Pl. Mot. at 6, but plaintiff was long aware of those officers' deposition testimony that they were not in the 7-11. *See* Acebal Deposition 138:17–22; 149:20–150:13; 157:8–18; 161:2–18 (attached as Exhibit "G"); Antonio Deposition 73:13–76:8 (attached as Exhibit "H"). Indeed, plaintiff's counsel admitted at the hearing that he knew that contrary testimony would be presented but stated only that plaintiff wanted to use the District's prior answer to impeach that testimony. *See* Trial Transcript (Day 1: AM Session): 96:14–24. The District, however, did not seek to prevent plaintiff from doing so by, for example, filing a motion *in limine*. Instead, it sought only to amend a response it believed to be incorrect. Thus, even apart from the Court's ruling in plaintiff's favor, nothing about the District's response would have affected plaintiff's ability to use the interrogatory response in the way plaintiff intended.

Other disclosures were more significant in that they substantively changed prior responses or, in the case of the new form, produced an important document that plaintiff claimed not to have seen before. District counsels, however, had an absolute obligation to produce that document when they learned of it, and they did so. This was not an attempt to ambush, but rather the fulfillment of basic supplementation obligations. The amendment concerning the arrest data also was relevant, but plaintiff had long been aware that the District was working to attempt to reconcile a contradiction between two sets of data, and thus had long been aware that there was uncertainty about the validity of the District's original response. Moreover, plaintiff specifically asked the District to reconcile that contradiction. Obviously, plaintiff's counsel did not anticipate that the District would uncover new data in response to the request, but neither did District counsels. District counsels can hardly be faulted (let alone accused of bad faith) for supplementing their response with the very results of the investigation that plaintiff herself had prompted, particularly when District counsels had no confidence that the original answers were correct once the investigation was concluded.

The District and its counsel appreciate and regret the frustration that plaintiff experienced when confronted with new discovery responses just before trial. The need for these corrections, however, was the result of mistakes made prior to trial counsel's entry into the case, together with trial counsel's lack of awareness of a problem concerning those responses until just prior to trial and their justifiable belief that incorrect responses should be corrected. No individual sanctions are appropriate under such circumstances.

ACCORDINGLY, the District requests that Plaintiff's motion be denied for the reasons set forth herein and those argued on March 7, 2011.

        Respectfully Submitted,

        IRVIN B. NATHAN
        Acting Attorney General for the District of Columbia

        GEORGE C. VALENTINE
        Deputy Attorney General, Civil Litigation Division

        __/s/  Patricia A. Oxendine_____
        PATRICIA A. OXENDINE
        D.C. Bar No. 428132
        Chief, General Litigation Sec. IV

        ____/s/ Dwayne C. Jefferson_____
        DWAYNE C. JEFFERSON
        D.C. Bar No. 980813
        MICHAEL J. LANZDORF
        D.C. Bar No. 997821
        Assistant Attorney General
        One Judiciary Square
        441 4th St., N.W., 6th Floor South
        Washington, D.C. 20001
        (202) 724-6649; (202) 724-6648; (202) 727-6295;
        (202) 741-0554 fax
        dwayne.jefferson@dc.gov;
        Michael.lanzdorf@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| LINDSAY HUTHNANCE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 1:06-CV-001871 |
| | : | (RCL) (JMF) |
| | : | |
| DISTRICT OF COLUMBIA, *et. al.* | : | |
| | : | |
| Defendants | : | |
| | : | |

ORDER

UPON CONSIDERATION of Plaintiff's Emergency Motion to Strike Supplemental Discovery Responses and for the Imposition of Sanctions, the District of Columbia's opposition thereto, and the record herein, it is this _____ day of _____ 2011, hereby:

ORDERED: that Plaintiff's request for sanctions against Dwayne Jefferson, Assistant Attorney General, and Michael Lanzdorf, Assistant Attorney General, is DENIED for the reasons set forth in the District's opposition.

SO ORDERED.

_____
**HON. ROYCE LAMBERTH**
Chief Judge, U.S. District Court for the District of Columbia