UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
                                    )
**LINDSAY HUTHNANCE,**              )
    Plaintiff,  )
                                    )
    v.          )    Civil Action No. 06-1871 (RCL)
                                    )
**DISTRICT OF COLUMBIA,** *et al.*, )
    Defendants. )
                                    )
_____ )

## MEMORANDUM AND ORDER

**I.    Introduction**

On the first day of trial in this case, this Court granted plaintiff's motion to prohibit the District from using several pieces of evidence it attempted to introduce on the eve of trial. At that time, the Court took plaintiff's Motion for Sanctions against the District's counsel under advisement. This Court has now had ample time to consider the sanctions issue. Having reviewed the Motion for Sanctions, the District's Opposition, plaintiff's Reply, the record of this case, and the applicable law at length, the Court denies plaintiff's Motion for Sanctions for the reasons that follow.

Huthnance's indignation at the District is understandable. Her fourth trial date was hours away. Her case—which she had honed and tweaked for years in preparation for this trial date—was premised on the District's admissions, answers to key interrogatories, and production of certain smoking-gun documents. Both parties knew about and had relied upon these key pieces of evidence for years, and Huthnance and this Court heard nary a peep of dissent or dispute regarding any of them from the District at any point during the years leading up to this the fourth

1

trial date. Yet, shockingly, the District decided to try to change many of these fundamental factual predicates the Saturday evening before the Monday morning trial—without moving this Court for leave to do so. Thus, Huthnance was forced to flitter away the critical moments leading up to her trial date drafting a motion to shelter herself from the District's most recent bombshell.

Huthnance might find some comfort in the fact that it could be worse; she could have received this discovery after trial ended. *See DL v. District of Columbia*, No. 05-1437, 2011 WL 1770468 (D.D.C. May 9, 2011). Indeed, the District's behavior in this case may have surprised Huthnance, but it wouldn't surprise anyone familiar with the District's unique approach to the discovery process. This sort of behavior is quickly becoming the rule for the District—not the exception. It's no exaggeration to say that to be on the safe side, the District's litigation adversaries would be well-advised not to begin preparing for trial until after it's under way because it's very likely that the District will not produce key discovery until then—at the earliest. *Id.*

The question before this Court today, though, isn't whether the District's conduct in this case meets the Federal Rules' standard—it clearly hasn't. The question is whether the District's current counsel ought to pay the price for the District's serious transgressions. Thus, this Court must carefully identify that portion of the District's intolerable discovery conduct—if any—for which its current counsel ought to be held liable.

Drawing that distinction is made particularly difficult by another of the District's common practices—switching lead counsel in the months leading up to trial. District counsel understandably point out that—to a large extent—they're just victims of circumstance. Defs' Opp'n to Plaintiff's Emergency Mot. Strike Supplemental Discovery Responses and Imposition of Sanctions ("Opp'n") 10, Apr. 28, 2011, ECF No. 242. They can't possibly be held responsible

for this situation, the argument goes, because they only arrived on the scene in October and November 2010, very late into this years-old litigation. Opp'n 2. They found themselves saddled with the unenviable responsibility of undoing the mistakes of those who came before them. Opp'n 10.

Huthnance concedes that this is true for the most part. Pl.'s Reply Support Mot. Sanctions ("Reply") 3, May 9, 2011, ECF No. 246 ("Plaintiff and her counsel accept the factual representations made by defense counsel in the District's opposition."). She only holds the District's current counsel responsible for a few discrete aspects of the current messy situation. First, she claims that even if they were late to the game, there was no excuse for the serious tardiness of these discovery alterations. Reply 3. Second, she claims that the District was aware of many of these problems two weeks before it decided to attempt these changes and thus should have let her and this Court know about them earlier. Reply 3. Finally, she argues that to the extent the District's counsel was allowed to make these changes, it had to seek leave of court to do so, and its failure on that front is sanctionable. Reply 3.

Having won her case already, Huthnance seeks only nominal sanctions, which she says would serve the symbolic purpose of putting the District, its counsel, and others on notice that this sort of behavior won't be tolerated. Reply 3. Although it's a close question, this Court concludes that the District's counsels' behavior in this case doesn't warrant even nominal sanctions against the currently assigned counsel.

**II.    Legal Standard Under 28 U.S.C. § 1927**

Under 28 U.S.C. § 1927, a court "may," but need not, sanction (1) an "attorney or other person admitted to conduct cases" in federal court (2) who "multiplies the proceedings . . . unreasonably and vexatiously" (3) with "the excess costs, expenses and attorneys' fees" (4)

"reasonably incurred" by an opposing party "because of such conduct." 28 U.S.C. § 1927 (2008). Although a finding of bad faith is essential to the imposition of sanctions under a court's inherent power, the D.C. Circuit "has not yet established whether the standard [for unreasonable and vexatious conduct under section 1927] should be 'recklessness or the more stringent 'bad faith.'" *La Prade v. Kidder Peapody & Co., Inc.*, 146 F.3d 899, 905 (D.C. Cir. 1998) (citing *United States v. Wallace*, 964 F.2d 1214, 1218–19 (D.C. Cir. 1992)).

Even assuming, for the sake of argument, that recklessness is the appropriate standard, Section 1927 may not be used as a "'catch-all' provision . . . for sanctioning any and all . . . conduct courts want to discourage." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997). Recklessness is a "high threshold . . . and in general requires deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores." *Wallace*, 964 F.2d at 1219–20 (emphasis added) (internal citation omitted). Accordingly, even under a recklessness standard, the assessment of attorneys' fees and costs under Section 1927 would remain "'a power which the courts should exercise only in instances of a serious and studied disregard for the orderly process of justice.'" *Id.* at 1220 (quoting *Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983)).

Thus, in the only case where the D.C. Circuit has awarded Section 1927 sanctions based on a recklessness standard, counsel had refused—both in the trial court and at several turns on appeal—to identify the disputed facts that he contended required a trial of the case. *Reliance Ins. Co. v. Sweeney Corp., Md.*, 792 F.2d 1137, 1138–39 (D.C. Cir. 1986). This was the very sort of "repeated or singularly egregious" behavior required before Section 1927 may be employed. *Wallace*, 964 F.2d at 1220.

By the same token, courts shouldn't use Section 1927 to penalize "an attorney who might be guilty of no more than a mistake in professional judgment." *Baker Indus. v. Cerberus, Ltd.*, 764 F.2d 204, 209 (3d Cir. 1985). Courts are unanimous that unintended, inadvertent, or even negligent conduct won't support an assessment of fees and costs under Section 1927, no matter how "annoying" or frustrating to the trial judge it might be. *Wallace*, 964 F.2d at 1219, 1220; see also Holmes v. City of Massillon, 78 F.3d 1041, 1049 (6th Cir. 1996) (holding that to justify Section 1927 sanction, "attorney's misconduct, while not required to have been carried out in bad faith, must amount to more than simple inadvertence or negligence that has frustrated the trial judge"). Moreover, regardless of whether a bad faith or a recklessness standard applies, a finding of "vexatiousness" under Section 1927, like a finding of litigation misconduct under a court's inherent power, must be supported by clear and convincing evidence. *E.g.*, *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996). There is no such evidence in this case.

**III. Analysis**

Huthnance's first and second arguments are really just two ways of saying the same thing: the District's counsel should have notified Huthnance and the Court of these problems sooner. The problem with this argument is that the District's current counsel aren't responsible for the mistakes that led to the need for these late changes. Instead, they discovered the mistakes of lawyers who were on the case before them. If anyone should be held personally liable for those mistakes, it's the lawyers who made them. After all, the District's prior counsel could have prevented these problems if they had (1) not made these mistakes years ago in the first place or (2) investigated these problems and warned the District's new counsel of these problems when the case was handed off to them.

5

Thus, the only way to make a case for punishing the District's current counsel for these errors would be to show that they knew or should have known of the errors earlier. The only evidence Huthnance produces to support that contention is that the District's counsel says, on page six of their Opposition, that they became suspicious of some of these problems "[i]n the course of preparing Officers Acebal and Antonio for their testimony beginning approximately two weeks before trial." Opp'n 6. Huthnance argues that counsels' failure to alert her and this Court the moment they had an inkling something might be wrong was sanctionable misconduct. This Court disagrees.

Huthnance cites no authority, and this Court is aware of none that obligated counsel to notify Huthnance or the Court of a "suspicion" that something might be wrong with some of the District's discovery responses. It's unclear that counsels' decision to delay long enough to investigate its uneasy feeling about some of prior counsels' discovery responses was even negligent, much less the sort of "deliberate action in the face of a known risk, the likelihood or impact of which the actor inexcusably underestimates or ignores" that would justify sanctioning them personally. *Wallace*, 964 F.2d at 1219–20 (emphasis added) (internal citation omitted).

Huthnance's remaining argument—that this Court should sanction the District's counsel for failing to seek leave of court before attempting these dramatic discovery alterations—is similarly unpersuasive. It's true that the Rules require parties seeking to make these sorts of changes to do so only after seeking leave of Court. Fed. R. Civ. P. 36(b). Thus, the Court would like to discourage counsel from ignoring the rules and attempting these sorts of changes without filing a motion. That said, the Court reiterates that it can't use Section 1927 to sanction all undesirable litigation behavior. *Peterson*, 124 F.3d at 1396. No matter how frustrating that behavior is, unless it was "deliberate action in the face of a known risk, the likelihood or impact

of which the actor inexcusably underestimates or ignores," this Court may not impose Section 1927 sanctions. *Wallace*, 964 F.2d at 1219–20 (emphasis added) (internal citation omitted). Here, counsel for the District couldn't seek leave to make these changes because it only became aware of the need for them the Saturday before the Monday morning trial. Thus, a motion would have been futile. Indeed, drafting such a motion would have taken even more time and therefore would have resulted in Huthnance having even less time to respond and prepare to the proposed changes.

Obviously, one wonders whether the District's counsel could have found out about these problems sooner had they been more diligent. But Huthnance has neither theory nor evidence to support such a claim. Indeed, she accepts the District's counsel's factual account of what happened here, including the fact that they only found out about these problems immediately before trial. Reply 3. Thus, this Court has no reason to doubt counsel's contentions. Even if it did, though, it couldn't use Section 1927 to spur counsel on to act more quickly in rooting out these sorts of problems. Again, Section 1927 isn't a cure-all for courts to punish any and all non-ideal litigation behavior. Instead, it's reserved for "instances of a serious and studied disregard for the orderly process of justice.'" *Wallace*, 964 F.2d at 1220 (quoting *Overnite Transp. Co. v. Chi. Indus. Tire Co.*, 697 F.2d 789, 795 (7th Cir. 1983) (emphasis added)). Although this situation is very frustrating to this Court and to Huthnance, Section 1927 sanctions are simply inappropriate here.

The Court pauses to note that although it holds that the District's counsel don't deserve sanctions here, the District itself isn't "off the hook" by any stretch of the imagination. This Court has gone on the record here and elsewhere about its strong disapproval of the District's discovery habits. It won't continue to beat the proverbial dead horse. Instead, it merely notes that

the District's behavior in this case was the symptom of a clear disease of habit that the District must cure.

This problem will persist and recur as long as the District adheres to its habit of switching counsel as trial approaches. The District's current counsel were correct in their assessment of the predicament they found themselves in, calling it "unenviable." They've avoided sanctions in this case because the Court was unconvinced that in this instance they were on notice of prior counsel's errors. But the District's problematic litigation antics have ossified into what unfortunately must be recognized as habits. Thus, the argument that saved the District's counsel from sanctions here—that they simply weren't aware of prior counsel's mistakes—will grow weaker and weaker over time as this disappointing drama repeats. At some point, this Court will be compelled to hold the District's trial counsel personally responsible for this predictable problem. Otherwise, the District will be able to flaunt the discovery rules with impunity simply by switching counsel in the months or weeks leading up to trial. Although that tactic saves the District's trial counsel in this case, others in their situation in the future would be well-advised to review the work of those who went before them carefully because this Court won't turn a blind eye to this dysfunctional behavior forever.

**SO ORDERED.**

Signed by Royce C. Lamberth, Chief Judge, on June 22, 2011.